# EXHIBIT D



Pomerantz LLP is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. The Firm was founded in 1936 by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field." [1] Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery." [2] Today, led by Co-Managing Partners Jeremy A. Lieberman and Patrick V. Dahlstrom, the Firm maintains the commitments to excellence and integrity passed down by Mr. Pomerantz.

For over 80 years, the Firm has consistently shaped the law, winning landmark decisions that have expanded and protected investor rights, and initiated historic corporate governance reforms. The Legal 500 honored Pomerantz as a Leading Firm in 2016 and 2017; many of our attorneys are chosen by their peers, year after year, as Super Lawyers® Top-Rated Securities Litigation Attorneys and Rising Stars.

Pomerantz is headquartered in New York City, with offices in Chicago, Los Angeles and Paris.

# SECURITIES LITIGATION

## SIGNIFICANT LANDMARKS
## IN SECURITIES-RELATED LITIGATIONS

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain of Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes ("PwC Brazil"), bringing the total recovery for Petrobras investors to $3 billion. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion dollar money-laundering and bribery scheme, which was concealed from investors.

---

[1] New York Law Journal (August 1, 1983).
[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

The settlement was achieved after nearly three years of hard-fought litigation, including U.S. and foreign discovery and complex motion practice before Judge Jed S. Rakoff, United States District Judge for the Southern District of New York; an appeal before the United States Court of Appeals for the Second Circuit. Defendants also filed a petition for writ of certiorari with the United States Supreme Court.

In addition to the outstanding multi-billion recovery to investors, Pomerantz secured precedent-setting decisions during the litigation. In a February 2016 Opinion and Order, the district court certified all the classes proposed by plaintiffs, encompassing not only purchasers of Petrobras American Depository Receipts, but also Petrobras bondholders who acquired securities pursuant to domestic transactions. Plaintiffs asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Defendants appealed the district court's certification opinion on multiple grounds, including for failure to satisfy the requirement of ascertainability and for failure to satisfy the burden of showing that the Petrobras securities at issue traded in efficient markets. The Second Circuit accepted the appeal and largely rejected defendants' arguments, sending the case back to the district court for further proceedings.

The Second Circuit's decision is important and favorable precedent in several respects. First, in an issue of first impression, the Second Circuit squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the United States Court of Appeals for the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable.

With respect to Petrobras' bondholders, the court vacated the district court's granting of class certification, but only to the extent that it did not perform an analysis regarding the impact of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) on the predominance requirement of class certification, acknowledging that "the district court might properly certify one or more classes that capture all of the Securities holders who fall within the Classes as currently defined."

The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (*i.e.*, via an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

Pomerantz is also sole Lead Counsel in *Strougo v. Barclays PLC,* 14-cv-5797, a high-profile securities litigation alleging that defendants concealed information and misled investors regarding its management of its "LX" dark pool, a private trading platform where the size and price of the orders are not revealed to other participants. On November 6, 2017, the Second Circuit affirmed former District Court Judge Shira S. Scheindlin's February 2, 2016 Opinion and Order granting plaintiffs' motion for class certification in the case.

The Court of Appeals in *Barclays* held that direct evidence of price impact is not always necessary to demonstrate market efficiency, as required to invoke the *Basic* presumption of reliance, and was

not required here. Significantly, when handing down its decision, the Second Circuit cited its own *Petrobras* decision, stating, "We have repeatedly—and recently—declined to adopt a particular test for market efficiency."

The court held that defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. The court further held that it would be inconsistent with *Halliburton II* to "allow defendants to rebut the *Basic* presumption by simply producing some evidence of market inefficiency, but not demonstrating its inefficiency to the district court." The court rejected defendants' contention that Federal Rule of Evidence 301 applies and made clear that the *Basic* presumption is a judicially created doctrine and thus the burden of persuasion properly shifts to defendants. The court thus confirmed that plaintiffs have no burden to show price impact at the class certification stage—a significant victory for investors.

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in *Kaplan v. S.A.C. Capital Advisors, L.P.* This securities class action stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

In July 2017, Pomerantz secured the right of investors in BP p.l.c. to pursue "holder claims." The ruling, by Judge Keith P. Ellison of the U.S. District Court for the Southern District of Texas, is significant, given the dearth of precedent from anywhere in the U.S. that both recognizes the potential viability of a holder claim under some body of non-U.S. federal law and holds that the plaintiffs pursuing one had sufficiently alleged facts giving rise to reliance and other required elements of the underlying legal claims. Since 2012, Pomerantz has pursued ground-breaking claims on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange) stemming from the 2010 Gulf oil spill. The threshold challenge was how to litigate in U.S. court in the wake of the Supreme Court's 2010 decision in *Morrison v. Nat'l Australia Bank*, which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz secured a series of significant victories in individual actions pursued on behalf of institutional investors in *In re BP plc. Securities Litigation*, MDL 2185 (U.S.D.C. S.D. Tex.). Pomerantz defeated BP's *forum non conveniens* arguments seeking dismissal of U.S. institutions and, later, foreign institutions, pursuing English common law claims seeking recovery of investment losses stemming in both NYSE-traded American Depository Shares and London Stock Exchange (LSE)-traded common stock. Pomerantz also defeated BP's attempt to extend the Securities Litigation Uniform Standards Act to dismiss these claims. Thanks to these rulings, Pomerantz now leads the only litigation, post-*Morrison*, where U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in foreign-traded stocks, are doing so in a U.S. court.

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settled proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities

Litigation Reform Act ("PSLRA").[3] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries – $60 million – from an individual officer-defendant, Comverse's founder and former CEO, Kobi Alexander. *In re Comverse Technology, Inc. Sec. Litig.,* No. 06-CV-1825 (E.D.N.Y.)

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.* (S.D.N.Y.).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would have obtained had they remained in a related federal class action. *Treasurer of the State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Co.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analysts AT&T Litig.,* (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.,* (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Sec. Litig.,* (D. Mass), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico Educational Retirement Board), that had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See New Mexico State Inv. Council v. Countrywide Fin. Corp., et al.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which are listed below:

- *Universities Superannuation Scheme Limited v. Petróleo Brasileiro S.A. Petrobras*, 14-cv-9662 (S.D.N.Y. 2018)
$3 billion settlement of securities class action in which Pomerantz was Lead Counsel.
- *In Re American Capital, Ltd. Shareholder Litigation.,* C.A. No. 422598-V (2018)
    $17.5 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *Kaplan v. S.A.C. Capital Advisors, L.P.,* No. 12 Civ. 9350 (S.D.N.Y. 2017)
$135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *In re: Physicians Formula Holdings Inc.,* C.A. No. 7794-VCL (Del. Ch. 2017)
$5.6 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *Thomas v. Magnachip Semiconductor Corp. et al,* No. 14-cv-01160 (N.D. Cal. 2016)
$23.5 million partial settlement of class action in which Pomerantz was sole Lead Counsel.

---

[3] Institutional Shareholder Services, *SCAS "Top 100 Settlements Quarterly Report,"* (Sept. 30, 2010).

- *In re Lumber Liquidators, Inc. Securities Litigation,* No. 4:13-cv-00157-AWA-DEM (E.D. Va. 2016)

$26 million and 1 million shares of common stock tentative settlement in class action in which Pomerantz was sole Lead Counsel.

- *Richard Thorpe and Darrel Weisheit v. Walter Investment Management Corp., et al.,* No. 1:14-cv-20880-UU (S.D. Fla. 2016)

$24 million settlement of class action in which Pomerantz was sole Lead Counsel.

- *In re Groupon, Inc. Securities Litigation,* No. 12-cv-02450 (N.D. Ill. 2015)

$45 million settlement of class action in which Pomerantz was sole Lead Counsel.

- *In re Sealed Air Corp. Sec. Litig.* (D.N.J. 2010)

$20 million settlement in class action in which Pomerantz was Co-Lead Counsel representing the Louisiana Municipal Police Employees' Retirement System.

- *In re Elan Corp. Sec. Litig.* (S.D.N.Y. 2005)

$75 million settlement in class action arising out of alleged accounting manipulations.

- *In re Livent, Inc. Noteholders Sec. Litig.* (S.D.N.Y. 2005)

$17 million settlement for the class; plus summary judgment against remaining defendants for $36 million (including pre-judgment interest); totaling over 100% of claimed damages.

- *In re Safety-Kleen Corp. Stockholders Litig.* (D.S.C. 2004)

$54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.

- *Mardean Duckworth v. Country Life Insurance Co.* (Ill. Cir. Ct., Cook Cty. 2000)

$45 million recovery.

- *Snyder v. Nationwide Insurance Co.* (Sup. Ct., Onondaga Cty. 1998)

Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.

- *In re National Health Lab., Inc. Sec. Litig.* (S.D. Cal. 1995)

$64 million recovery.

- *In re First Executive Corp. Sec. Litig.* (C.D. Cal. 1994)

$102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.

- *In re Boardwalk Marketplace Sec. Litig.* (D. Conn. 1994)

Over $66 million benefit in securities fraud action.

- *In re Telerate, Inc. Shareholders Litig.* (Del. Ch. 1989)

$95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Communications, Inc. Secs. Litig.* (W.D. Mo.) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re American Italian Pasta Securities Litigation* (W.D. Mo.) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson and CC Partners, LLC v. Gray* (Sup. Ct. N.Y. Cty.); and *In re Summit Metals,* (Bankr. D. Del.) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for

two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

## SHAPING THE LAW

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake S'holder Deriv. Litig*., No. CJ-2009-3983 (Dist. Okla.), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There, we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The *Wall Street Journal* (November 3, 2011) characterized the settlement as "a rare concession for the 52-year old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. Waggoner v. Barclays PLC, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC* in the court below)
- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC* in the court below)
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Limited v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017)
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015)
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China North East Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012)
- a mortgage-backed securities ("MBS") holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. *New Mexico State Inv. Council v. Countrywide Fin. Corp., et al.,* No. D-0101-CV-2008-02289, Transcript of Proceedings on March 25, 2009 (N.M. 1st Dist. Ct.)
- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Technology Inc. Sec. Litig*., 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y., Mar. 2, 2007).
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated:  "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co*., 5 N.Y. 3d 11 (2005).

- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, 2002 U.S. Dist. LEXIS 13986 (D. Minn. 2002).
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970).
- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726 (2d Cir. 1987).
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190  (2d Cir. 1984).
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971).
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest."  *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## COMMENTS FROM THE COURTS

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

In approving the settlement in *Richard Thorpe and Darrel Weisheit, et al. v. Walter Investment Management, et al.*, No. 1:14-cv-20880-UU (S.D. Fla.) the Judge Ursula Ungaro wrote,

> Class Counsel has developed a reputation for zealous advocacy in securities class actions....The settlement amount of $24 million is an outstanding result.

Judge Jed S. Rakoff, in certifying two Classes in *In re Petrobras Sec. Litig.* in February 2016, wrote:

> "...[O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." ...[T]he Pomerantz firm has both the skill and resources to represent the Classes adequately."

At the May 2015 hearing wherein the court approved the settlement in *Courtney, et al. v. Avid Technology, et al.*, No. 1:13-cv-10686-WGY (D. Mass.) following oral argument by Jeremy A. Lieberman, Judge William G. Young stated,

> This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. (Tr. at 8-9)

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Shareholder Derivative Litig.* No. CJ-2009-3983 (Okla. Dist.), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated,

> Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times in 25 years. It is an extreme pleasure to deal with counsel of such caliber.
> (Tr. at 48)

In approving the $225 million settlement in *In re Comverse Technology Inc. Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

> As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action. ... The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and ... Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02-CV-1186 2005 U.S. Dist. LEXIS 14772 (E.D. Mo., June 30, 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts:

> This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial. In awarding fees to Pomerantz, the Court cited "the vigor with which Lead Counsel ...investigated claims, briefed the motions to dismiss, and negotiated the settlement."

In approving a $24 million settlement in *In re Force Protection, Inc.* 08 CV 845 (D.S.C. 2011), Judge C. Weston Houk described the Firm as "attorneys of great ability and great reputation" and commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV-0725-W-ODS (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "...has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs I think did an excellent job.... They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial."

- In *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633, (N.Y. Supreme Court, Onondaga County), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was

a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (2004 U.S. Dist. LEXIS 17669 at *24)

- In *Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal.), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering ...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92)

- In *Nodar v. Weksel*, 84 Civ. 3870  (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90)

- In *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent ...absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87)

- In *Digital Sec. Litig.*, 83-3255Y (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86)

- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y.), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, 88 Civ. 15624 (Sup. Ct. N.J.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

# ANTITRUST LITIGATION

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct, such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or co-leadership roles in several high-profile multi-district litigation class actions. The Firm currently represents a class of lending institutions in New York that originated, purchased outright, or purchased a participation interest in loans paying interest rates tied to the U.S. Dollar Interbank Offered Rate (USD LIBOR), *The*

*Berkshire Bank v. Bank of America Corp.* (S.D.N.Y.) (2012). It is alleged that the class suffered damages as a result of collusive manipulation by the contributor panel banks that artificially increased the USD LIBOR rate during the class period, causing them to receive lower interest than they would have otherwise.

Pomerantz also currently represents baseball and hockey fans in a potentially game-changing antitrust class action against Major League Baseball and the National Hockey League challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y.) (2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa.) (2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del.) (2006) ($11 million); and
- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa.) (2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Mkt.-Makers Antitrust Litig.* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litig.* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litig.* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# CORPORATE GOVERNANCE LITIGATION

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz partners are frequent speakers at domestic and international conferences on the importance of securities fraud actions in such countries as the United Kingdom, France, and Israel. According to Partner, Marc Gross, "We need to have these kinds of legal remedies available in order to maintain corporate honesty and accountability."

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors [*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)]. There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors, and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In Re American Capital, Ltd. Shareholder Litigation*., C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, … has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million.  Pomerantz served as co-lead counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car

allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be required to have at least five independent directors -- as defined under the New York Stock Exchange rules -- by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings Inc. over an ignored merger offer in 2012. *In re: Physicians Formula Holdings Inc.*, C.A. No. 7794-VCL (Del. Ch. Ct.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, SUCV 2015-00807 (Super. Ct. Mass.) the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch. Ct.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. lululemon athletica, Inc.*, Civil Action No. 8522-VCP (Del. Ch. Ct.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored The Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues

concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

# PARTNERS

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman is Pomerantz's Co-Managing Partner with Patrick Dahlstrom. Mr. Lieberman became associated with the Firm in August 2004, and became a partner in January 2010. He has been honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2016, 2017, and 2018 – a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. The Legal 500, in honoring Pomerantz as a Leading Firm for 2016 and 2017, stated, "In New York, Jeremy Lieberman is 'super impressive – a formidable adversary for any defense firm."

Mr. Lieberman led the litigation in *In re Petrobras Sec. Litig.,* a closely-watched securities class action arising from a multi-billion dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. – Petrobras, in which Pomerantz was sole Lead Counsel. The biggest corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Mr. Lieberman achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Mr. Lieberman also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation.

Mr. Lieberman is Lead Counsel in a putative securities class action that alleges Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turns on the duty of integrity owed by Barclays to its clients. In November 2017, he achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Mr. Lieberman has had an integral role in a number of high-profile securities class and derivative actions, including *Comverse Technology Sec. Litig.*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Mr. Lieberman also serves as Lead Counsel in a number of the most high-profile securities class actions pending in the U.S. courts, such as *In re Mylan N.V. Sec. Litig., In re Perrigo Co. Sec. Litig., In re Yahoo!, Inc. Sec. Litig.* and *In re Fiat Chrysler Automobiles N.V. Sec. Litig.* He is Lead Counsel in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations.

Mr. Lieberman serves as Interim Class Counsel on behalf of a class lenders and financial institutions litigating claims arising out of the London Interbank Offered Rate ("LIBOR") rate rigging scandal. He was Lead Counsel in *In re Medicis Corp. Sec. Litig.*, in which the court approved an $18 million settlement, and is Lead Counsel in a number of the Firm's other litigations.

In In re *China North East Petroleum Corp. Sec. Litig.*, Mr. Lieberman achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal*, and provides critical guidance for assessing damages in a § 10(b) action.

Mr. Lieberman regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Mr. Lieberman is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. Nat'l Australia Bank, Ltd.*, which limited the ability of foreign investors to seek redress under the federal securities laws. Currently, Mr. Lieberman is representing several UK and EU pension funds and asset managers in individual actions against BP plc in the United States District Court for the Southern District of Texas.

Mr. Lieberman is a frequent lecturer regarding current corporate governance and securities litigation issues. In March 2017, he spoke at the ICGN conference in Washington D.C., regarding recent trends in foreign securities litigation. He also recently led a discussion regarding U.S. securities class actions in Paris, France.

Mr. Lieberman graduated from Fordham University School of Law in 2002. While in law school, he served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Mr. Lieberman is admitted to practice in the State of New York; the U.S. District Courts for the Southern and Eastern Districts of New York, the Southern District of Texas, the District of Colorado, the Eastern District of Michigan and Northern District of Illinois; the U.S. Courts of

Appeals for the Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits; and the United States Supreme Court.

## PATRICK V. DAHLSTROM

Patrick Dahlstrom is Pomerantz's Co-Managing Partner with Jeremy A. Lieberman. Mr. Dahlstrom joined Pomerantz as an associate in 1991 and became a partner in January 1996. He is based in the Firm's Chicago office. Mr. Dahlstrom was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2018.

Mr. Dahlstrom is a member of the Firm's Institutional Investor Practice and New Case Groups, and has extensive experience litigating cases under the PSLRA. He was partner-in-charge of *In re Comverse Technology Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class – the second-highest ever for a case involving the back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and ...Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), Mr. Dahlstrom obtained the first class certification in a federal securities case involving fraud by analysts.

Mr. Dahlstrom's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz' clients for Lead Plaintiff status, but also in discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Sec. Litig.* and *Comverse* are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Mr. Dahlstrom was a member of the trial team in *In re ICN/Viratek Sec. Litig.* (S.D.N.Y.), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class ...This was a very hard fought case. You had very able, superb opponents, and they put you to your task ...The trial work was beautifully done and I believe very efficiently done."

Mr. Dahlstrom's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot Court Board representing Washington College of Law in the New York

County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Mr. Dahlstrom is admitted to practice in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, Western District of Pennsylvania, the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits, and the United States Supreme Court.

## GUSTAVO F. BRUCKNER

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice area, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Mr. Bruckner's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted frequently by *Bloomberg*, *Law360*, *The New York Times*, and *Reuters* and was honored in 2016, 2017, and 2018 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. Mr. Bruckner regularly appears in state and federal courts across the nation.

In September 2017, Mr. Bruckner's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class, in Pomerantz's litigation against Ocean Shore Holding Co. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors [*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)]. Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Mr. Bruckner successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed do not apply to shareholders affected by the transaction. In the process, Mr. Bruckner and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the "going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer; Jessos derivatively on behalf of Lithia Motors, Inc. v. DeBoer* (Or. Cir. 2017), Mr. Bruckner and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of the company. Lithia Motors' board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, SUCV 2015-00807 (Mass. Sup. Ct. 2015), Mr. Bruckner and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, 15 CVS 14696 (N.C. Super. Ct. 2015), Mr. Bruckner and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. lululemon athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. Ct. 2014), in an issue of first impression in Delaware, Mr. Bruckner successfully argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Mr. Bruckner was Co-Lead Counsel in the matter of *In re Great Wolf Resorts, Inc. Shareholders Litigation*, No. C.A. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Mr. Bruckner received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Mr. Bruckner served as Chief-of-Staff to a New York City legislator.

Mr. Bruckner is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989.

Mr. Bruckner is a Trustee and the Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Mr. Bruckner is licensed to practice in New York and New Jersey and is admitted to practice before the United States District Court for the Eastern and Southern Districts of New York, the United States District Court for the District of New Jersey, United States Court of Appeals for the Second and Seventh Circuits, and the United States Supreme Court.

## EMMA GILMORE

Emma Gilmore is a partner at the Firm and is regularly involved in high-profile class-action litigation. Ms. Gilmore was honored as a 2018 Super Lawyer® in the New York Metro area. In 2017 and

2018, Ms. Gilmore was selected to the Lawyers of Distinction, an exclusive list of top practitioners in the nation.

Ms. Gilmore recently played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel.  The biggest corruption in the history of Brazil has ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Ms. Gilmore deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She also played an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts.  She opposed defendants' petition for a writ of certiorari to the Supreme Court.  In a significant victory for investors, Pomerantz has achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff.

Ms. Gilmore played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleges Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems.  She defeated defendants' efforts to dismiss the action and more recently contributed to securing an important precedent-setting opinion from the Second Circuit, holding that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Ms. Gilmore also plays a leading role in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century.

She also represents Safra Bank in a class action against Samarco Mineracao S.A., in connection with the Fundao dam-burst disaster, which is widely regarded as the worst environmental disaster in Brazil's history.

Ms. Gilmore also plays a leading role in the Firm's class action litigation against Yahoo! Inc., in which the Firm is lead counsel. The case involves the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

Among other cases, Ms. Gilmore is part of the team prosecuting securities fraud claims against BP on behalf of many foreign and domestic public and private pension funds arising from the company's 2010 Deepwater Horizon oil spill.  *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.).  She helped devise a cutting-edge strategy that established the right of individual foreign investors who purchased foreign-traded shares of a foreign corporation to pursue claims for securities fraud in a U.S. court, thereby overcoming obstacles created by the U.S. Supreme Court's 2010 decision in *Morrison v. Nat'l Australia Bank Ltd.*

Ms. Gilmore secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefitting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted vis-a-vis innocent third parties despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600 plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the Arkansas Times, the Wall Street Journal, and the New York Times.

Before joining Pomerantz, Ms. Gilmore was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP and Sullivan & Cromwell, LLP, where she was involved in commercial and securities matters. Her experience includes working on the *WorldCom Securities Litigation* representing more than a dozen prominent banks and also representing clients such as General Electric, Columbia University, Samsung, LG Electronics, Sony, Philips, BT, and JVC.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Ms. Gilmore graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, being the highest scoring student in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

Ms. Gilmore is admitted to practice in the State of New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Ninth Circuit.

## JENNIFER PAFITI

Jennifer Pafiti became associated with the Firm in May 2014, and became a partner in December 2015. A dual-qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Investor Relations and also takes an active role in complex securities litigation, representing clients in both class and non-class action securities litigation. In 2016, the *Daily Journal* selected Ms. Pafiti for its prestigious "Top 40 Under 40" list of the best young attorneys in California. In 2017, Ms. Pafiti was named a Southern California Rising Star by Super Lawyers. Ms. Pafiti has also been included in Super Lawyers and Rising Stars: Top Women Attorneys in Southern California for the year 2017.

Ms. Pafiti was an integral member of the Firm's litigation team for *In re Petrobras Sec. Litig.*, a case relating to a multi-billion dollar kickback and bribery scheme at Brazil's largest oil company, Petróleo Brasileiro S.A .- Petrobras, in which the Firm was sole Lead Counsel. She helped secure a

significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Ms. Pafiti is also involved in the litigations of *Dabe v. Calavo Growers*, *Flynn v. Sientra, Inc., Isensee v. KaloBios, Robb v. FitBit, Inc., Monachelli v. Hortonworks, Inc., Plumley v. Sempra Energy, and Greenberg v. Sunrun, Inc.,* in which the Firm is Lead Counsel.

Ms. Pafiti earned a Bachelor of Science degree in Psychology at Thames Valley University in England prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K. Ms. Pafiti is admitted to practice law in England and Wales (Solicitor) and in California.

Before studying law in England, Ms. Pafiti was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a Solicitor, Ms. Pafiti specialized in private practice civil litigation which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Ms. Pafiti was an associate with Robbins Geller Rudman & Dowd LLP in in their San Diego office.

Ms. Pafiti regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries.

Ms. Pafiti serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Ms. Pafiti is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of Country Retirement Systems, the National Association of State Treasurers, the National Conference of Employee Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Ms. Pafiti is admitted to practice in England and Wales; the State of California; and the United States District Courts for the Northern, Central and Southern Districts of California. She is based in Los Angeles.

## JOSHUA B. SILVERMAN

Joshua B. Silverman specializes in individual and class action securities litigation. He was Lead Counsel in *In re Groupon, Inc. Sec. Litig.*, achieving a $45 million settlement, representing one of the highest recoveries as a percentage of damages in the Seventh Circuit. Mr. Silverman was also Co-Lead Counsel in *In re MannKind Corp. Sec. Litig.*, reaching a settlement valued at more than $23 million and setting precedent regarding the use of expert information in a shareholder complaint. He served as Co-Lead Counsel for three large public funds in *New Mexico State Investment Council, et al. v. Countrywide Fin. Corp., et al.*, resulting in a very favorable confidential settlement. He regularly represents clients in controversies involving securities fraud, private equity investments, hedge fund investments, structured financial instruments, securities lending arrangements, and investment consultants. In addition, Mr. Silverman was Co-Lead Counsel in *New Mexico State Inv. Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million), played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge*, and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Sec. Litig.* ($20 million settlement), *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Sec. Litig.* ($7 million settlement); and *In re Hemispherx BioPharma Sec Litig.* ($2.75 million settlement).

Before joining Pomerantz, Mr. Silverman practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Mr. Silverman is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Mr. Silverman is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeal for the First, Second, Third, Seventh and Eighth Circuits, and the United States Supreme Court.

## LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar, formerly Of Counsel to Pomerantz, became a partner in January 2012.

As a member of Pomerantz' Securities Litigation Group, Ms. Smollar plays a key role in litigating class actions against public companies for securities fraud. She was a member of the Pomerantz team in its successful litigation on behalf of three New Mexico pension funds related to Countrywide's mortgage-backed securities, resulting in a very favorable confidential settlement. Ms. Smollar has been a member of the Pomerantz litigation team for many of the cases where significant settlements were obtained. *See In re Sealed Air Corp. Sec. Litig.*, No. 03-CV-4372 (D.N.J.)($20 million settlement approved December 2009); and *In re Safety-Kleen Stockholders Securities Litigation*, 3:00-736-17 (D. S.C.) (as Co-Lead Counsel, Firm obtained a $54.5 million settlement).

In June 2011, as a panelist at the Illinois Public Employee Retirement Systems Summit in Chicago, Illinois, Ms. Smollar gave a presentation entitled "Carrying Out Fiduciary Responsibilities in Management and Investments." She authored several articles and updates for the Illinois Institute for Continuing Legal Education (IICLE) including "Shareholder Derivative Suits and Stockholder

Litigation in Illinois," published in IICLE Chancery and Special Remedies 2004 Practice Handbook; "Prosecuting Securities Fraud Class Actions," published in IICLE Chancery and Special Remedies 2009 Practice Handbook, including a 2011 supplement to Chancery and Special Remedies; and a new chapter in the 2013 Edition of the Chancery and Special Remedies Practice Handbook. She also recently submitted an article for publication for the *Loyola Law Journal* entitled "The Importance Of Conducting Thorough Investigations of Confidential Witnesses in Securities Fraud Litigation," expected for publication in 2015.

Ms. Smollar is currently litigating *In re Galena Biopharma, Inc.*, 3:14-cv-00367 (D. Or.); *Alizadeh v. Tellabs, Inc.* et. al, 13-cv-537 (N.D. Ill.); *Lubbers v. Flagstar Bancorp, Inc.*, 14-cv-13459 (E.D. MI); and *Cooper v. Thoratec Corp.*, 14-cv-360 (N.D. Ca).

She is a 1993 graduate of the University of Illinois at Champaign-Urbana, where she graduated from the School of Commerce with high honors, and a 1996 graduate of the Chicago-Kent College of Law. Ms. Smollar spent the next five years specializing in insurance defense litigation.

Ms. Smollar is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## MATTHEW L. TUCCILLO

Matthew L. Tuccillo joined Pomerantz in 2011 and was named a Partner in December 2013.  He is responsible, on an ongoing basis, for the Firm's litigation of numerous securities fraud class actions pending nationwide, currently including:   *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.); *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.); *Altayyar v. Etsy, Inc.*, No. 17-1180 (2d Cir.); and *In re Toronto-Dominion Bank Securities Litigation*, 1:17-cv-01735 (D.N.J.).

Mr. Tuccillo oversees and is the lead litigator on the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation 2185, *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.).  He briefed and argued successful oppositions to three rounds of BP's motions to dismiss the claims of roughly 100 institutional investors, drawing the court's praise for the "quality of lawyering," which it called "uniformly excellent."   In leading the BP litigation, Mr. Tuccillo has secured some of the Firm's most ground-breaking rulings:

- He successfully argued that foreign and domestic investors had asserted viable "holder claims" seeking to recover investment losses due to their retention of already-owned shares in reliance upon the fraud, which is believed to be the first ruling by a U.S. court sustaining such a theory under English common law.

- He successfully argued against *forum non conveniens* dismissal, obtaining the first ruling after the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) to permit foreign investors pursuing foreign law claims to seek recovery for losses on a foreign stock exchange in a U.S. court.

- He successfully argued that the Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal securities

laws, should not be extended to foreign common law claims being pursued by both domestic and foreign investors.

- He successfully argued that the pendency of a class action extends tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) to both the statute of limitation and the statute of repose applicable to the Securities Exchange Act of 1934.

Mr. Tuccillo also fulfills Pomerantz's roles as MDL 2185 Individual Action Plaintiffs Steering Committee member and sole Liaison with BP and the Court. The Firm's BP clients include nearly three dozen public and private pension funds, investment management firms, limited partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia, seeking recovery for losses in BP's common stock (traded on the London Stock Exchange) and American Depository Shares (traded on the NYSE).

As the Firm's lead litigator in *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.), Mr. Tuccillo overcame an initial dismissal to secure an order upholding the pleading in a second amended complaint of five separate threads of fraud over a multi-year period by an education funding company and its executives. Among other rulings, court agreed that the company's reported financial and operating results violated Regulation S-K, Item 303, 17 C.F.R. §229.303, for failure to disclose known trends regarding the underlying misconduct and its impacts on reported results – a rare ruling in the absence of any accounting restatement. The matter has been settled on a class-wide basis for $7.5 million, pending court approval.

As the Firm's lead litigator in *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), Mr. Tuccillo negotiated two separate class-wide settlements worth over $3.25 million in the aggregate, from a bankrupt pharmaceutical company, its jailed former CEO, and two separate D&O insurers. Significantly, he secured payments of cash and stock directly from the bankrupt company, which were twice approved by the bankruptcy court.

Mr. Tuccillo was the Firm's lead litigation lawyer in *In re Silvercorp Metals, Inc. Secs. Litig.*, No. 1:12-cv-09456 (S.D.N.Y.), a securities class action involving a Canadian company with mining operations in China and stock traded on the NYSE. He worked closely with mining, accounting, damages, and market efficiency experts to defeat a motion to dismiss and oversee discovery. After two mediations, the case was resolved for a $14 million all-cash fund. In granting final approval of the settlement, Judge Rakoff noted that the case was "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence requiring translation.

Mr. Tuccillo's prior casework also includes litigation and resolution of complex disputes over roll ups of consulting companies and of commercial real estate interests. At Pomerantz, he was on the multi-firm team that litigated and settled *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (N.Y. Sup. Ct.), representing investors in public and private commercial real estate interests against the long-term lessees/operators, the Malkin family and the Estate of Leona Helmsley, regarding a proposed consolidation, REIT formation, and IPO centered around New York's iconic Empire State Building. These efforts achieved broad relief for the class, including a $55 million cash/securities settlement fund, a restructured deal creating a tax benefit estimated at $100 million, expansive remedial disclosures, and important deal protections.

Mr. Tuccillo has also handled shareholder books and records demands, as well as shareholder derivative, consumer, wage and hour, and mergers and acquisitions litigation.  His handling of *GSS 5-08 Trust v. Arch Chemicals, Inc.*, et al., No. X-08 FST-CV11-6010654-S (Conn. Sup. Ct.), concerning a Swiss multi-national's acquisition of a Connecticut-based chemicals company, earned the court's praise for his "preparation" and "hard work."

Before joining Pomerantz, Mr. Tuccillo began his career at a large full-service Boston firm, litigating primarily for corporate clients. He also worked at plaintiff-side firms in Boston and Connecticut, litigating securities, consumer, and wage and hour class actions, as well as complex sale of business disputes. He has helped negotiate numerous multi-million dollar settlements, at times through the use of alternative dispute resolution.  His pro bono work includes securing Social Security benefits for a veteran suffering from non-service-related disabilities.

Since 2016, Mr. Tuccillo has been a recommended securities litigator by The Legal 500, which evaluates law firms worldwide for cutting edge, innovative work based on client feedback, practitioner interviews, and independent research.  He was honored as a 2016, 2017, and 2018 Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area, after a rigorous process overseen by Thompson Reuters.   Since 2014, he has maintained Martindale-Hubbell's highest-available AV® Preeminent™ peer rating, scoring 5.0 out of 5.0 in Securities Law, Securities Class Actions, and Securities Litigation while being described as a "First class, top flight lawyer, especially in complex litigation."  Mr. Tuccillo graduated from the Georgetown University Law Center in 1999, where he made the Dean's List.  He graduated from Wesleyan University in 1995, and he currently serves as President of the Wesleyan Lawyers Association.

Mr. Tuccillo is a member of the Bars the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut, Massachusetts, the Northern District of Illinois, and the Southern District of Texas.  He is regularly admitted to practice *pro hac vice* in state and federal courts nationwide.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

Ms. Steven Walsh joined the Firm in 1998 and became a partner in 2007. During her career at Pomerantz, Ms. Steven Walsh has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys in prosecuting *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Ms. Steven Walsh was also part of the team litigating the *EBC I v. Goldman Sachs* case, where the Firm obtained

a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Ms. Steven Walsh, along with Senior Partner Jeremy Lieberman, manages the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. She is currently litigating *Ruiz v. Citibank*, Case No. 10-cv-5950 ((S.D.N.Y); *Thorpe v. Walter Investment Management Corp*., Case No. 14-cv-20880-UU (S.D. Fla.); and *Klein v. Conformis*, Case No. 1:15-CV-13295-GAO (D. Mass.).

Ms. Steven Walsh serves on the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She also serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession are discussed. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Ms. Steven Walsh served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted to practice in New York, the United States District Court for the Southern District of New York, the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Sixth Circuit.

## MICHAEL J. WERNKE

Michael J. Wernke, who joined Pomerantz as Of Counsel in 2014 and became Partner in 2015, specializes in securities fraud litigation. He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp. et al*, in which he recently achieved a $23.5 million partial settlement with certain defendants, pending court approval, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played an integral role in *In re Lumber Liquidators, Inc. Sec. Litig.*, in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class.

Mr. Wernke, with Pomerantz Co-Managing Partner Jeremy A. Lieberman, leads the Firm's litigation in *In re Libor Based Financial Instruments Antitrust Litig*. Pomerantz is Interim Lead Counsel for the Lender Class in this closely-watched multi-district litigation, which concerns the manipulation of the critical LIBOR rate by the sixteen banks reporting their lending costs to the British Bankers Association. This action was filed against each of the Contributor Panel banks for the USD LIBOR panel, which includes Bank of America Corporation, Citigroup Inc., Credit Suisse Group AG, Bank of Tokyo-Mitsubishi UFJ Ltd., Barclays Bank plc, HSBC Holdings plc, and Deutsche Bank AG. The action seeks hundreds of billions of dollars in damages. Pomerantz has prevailed against defendants' motions to dismiss the claims of our clients, Directors Financial Group and The Berkshire Bank.

During the nine years prior to coming to Pomerantz, Mr. Wernke was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena. He brings to Pomerantz a unique perspective, with his extensive, successful experience in defending large, multinational financial institutions in securities fraud and commercial litigations.

In 2014 and 2015, Mr. Wernke was voted by his peers, through Super Lawyers, as a "New York Metro Rising Star."

In 2004, Mr. Wernke received his J.D. from Harvard Law School. He also holds a B.S. in Mathematics and a B.A. in Political Science from The Ohio State University, where he graduated *summa cum laude*.

Mr. Wernke is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

# Senior Counsel

## Marc I. Gross

Marc I. Gross has been with Pomerantz LLP over four decades, serving as its Managing Partner from 2009 - 2016. During that time frame, Mr. Gross led securities lawsuits against SAC Capital (Steven Cohen- insider trading); Chesapeake Energy (Aubrey McClendon- insider bail out); Citibank (analyst Jack Grubman - AT&T research report upgrade to facilitate underwriting role); Charter Communications (Paul Allen-accounting fraud); and numerous others. He also litigated the market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras*.

Mr. Gross is the President-Elect of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 60 cases, including several by the Supreme Court. http://www.ilep.info.

Mr. Gross has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola University Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; and a panel entitled "Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory" sponsored by the Duke Law School Center for Judicial Studies.

Mr. Gross is also valued by foreign investors for his expertise, having addressed the Tel Aviv Institutional Investors Forum, the National Association of Pension Funds Conference in Edinburgh, and law students at Bar Ilan University in Tel Aviv.

Among other articles, Mr. Gross authored *Back to Basic(s): Common Sense Trumps Econometrics*, New York Law Jrl. (Jan. 8, 2018) (with Jeremy Lieberman); *Class Certification in a Post-Halliburton II World*, 46 Loyola-Chicago Law Jrl. 485 (2015); and *Loser-Pays - or Whose "Fault" Is It Anyway: A*

*Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It,'"* 64 Law & Contemporary Problems (Duke Law School) (2001).

Mr. Gross is also a Board member of T'ruah, The Rabbinic Call for Human Rights, and graduate of NYU Law '76 and Columbia College '73.

Mr. Gross is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

## STANLEY M. GROSSMAN

Stanley M. Grossman, Senior Counsel, is the former Managing Partner of Pomerantz. He is recognized as a leader in the plaintiffs' securities bar. He was selected by *Super Lawyers* magazine as an outstanding attorney in the United States for the years 2006 through 2011, and was featured in the *New York Law Journal* article "*Top Litigators in Securities Field – A Who's Who of City's Leading Courtroom Combatants.*" Mr. Grossman has litigated securities (individual and class), derivative and antitrust actions with the Firm for 39 years.

Mr. Grossman has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See. e.g., Ross v. Bernhard*, 396 U.S. 531; *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem*, 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig*, 9 F.3d 230 (2d Cir.). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007). Other cases where he was the Lead or Co-Lead counsel include: *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Mr. Grossman. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct. N.J.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and

ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Mr. Grossman frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he presented *Silence Is Golden – Until It Is Deadly:  The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Mr. Grossman was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled "*StoneRidge-* Is There Scheme Liability or Not?"

Mr. Grossman served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Mr. Grossman served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He serves on the board of the Appleseed Foundation, a national public advocacy group.

Mr. Grossman is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

# OF COUNSEL

## MICHELE S. CARINO

Michele S. Carino joined Pomerantz as Of Counsel in 2014. An experienced litigator and professional legal writer, Ms. Carino's practice focuses on securities fraud, corporate governance, mergers and acquisitions, and complex commercial cases.

Before joining Pomerantz, Ms. Carino honed her skills as a securities and corporate governance attorney at Stroock and Grant & Eisenhofer, serving clients on both the defense and plaintiff side of class actions, shareholder derivative actions, and other investor protection cases.

Ms. Carino received her Bachelor of Arts in Economics from Binghamton University with Phi Beta Kappa honors in 1992 and graduated *magna cum laude* from Georgetown University Law Center in 1999. She has taught a legal research and writing seminar at Columbia University Law School, and has served as a Mentor and Coach to Legal Outreach, a constitutional law and college preparatory program for New York City public high school students.

Ms. Carino is admitted to practice law before the Supreme Court of the United States and the United States District Courts for the Southern District of New York and the District of Delaware, and is a member of the bar of the states of New York and Delaware.

## MICHAEL GRUNFELD

Michael Grunfeld joined Pomerantz in July 2017 as Of Counsel. He has extensive experience in securities, complex commercial, and white collar matters in federal and state courts around the country. In particular, Mr. Grunfeld has represented issuers, underwriters, and individuals in securities class actions dealing with a wide variety of industries. He has also represented financial institutions and individuals in cases related to RMBS, securities lending, foreign exchange practices, insider trading, and other financial matters. Mr. Grunfeld was honored in 2018 as a Super Lawyers® Rising Star.

Mr. Grunfeld is the co-author of a chapter on damages in securities class actions in the LexisNexis treatise, *Litigating Securities Class Actions*.

Mr. Grunfeld served as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he was a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP. Mr. Grunfeld graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar and Submissions Editor of the *Columbia Business Law Review*. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Mr. Grunfeld is admitted to practice in the State of New York, the Second, Fourth, and Sixth Circuit Courts of Appeals, and the United States District Courts for the Southern and Eastern Districts of New York.

## JOHN A. KEHOE

John A. Kehoe played a leading role in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

He has served as lead or Co-Lead Counsel in numerous securities and financial fraud cases in federal and state courts on behalf of institutional and individual clients, including *In re Bank of America Corporation Securities Litigation* ($2.4 billion settlement); *In re Wachovia Preferred Securities and Bond/Notes Litigation* ($627 million settlement); *In re Initial Public Offering Securities Litigation* ($586 million settlement resolving 309 consolidated actions); *In re Lehman Brothers Securities and ERISA Litigation* ($516 million settlement); and *In re Marvell Technology Group Ltd. Securities Litigation* ($72 million settlement). Mr. Kehoe is a program faculty member with the National Institute of Trial Advocacy, and served three years as an adjunct faculty member with the Trial Advocacy Training Program at Louisiana State University School of Law.

Prior to joining Pomerantz, Mr. Kehoe was a partner with Girard Gibbs LLP and Kessler Topaz Meltzer & Check, LLP representing institutional investors in securities class and direct actions, and was previously associated with Clifford Chance LLP, a London-based law firm where he represented Fortune 500 companies in securities and antitrust civil litigation, and enforcement actions brought by the Department of Justice, the U.S. Securities and Exchange Commission and the Federal Trade Commission.

Mr. Kehoe is a frequent speaker at conferences focused on shareholder rights and corporate governance issues, including the 2013 National Conference on Public Employee Retirement Systems (Rancho Mirage, CA); 2013 Investment Education Symposium (New Orleans, LA); 2013 Public Funds East Conference (Newport, RI); 2012 Rights and Responsibilities for Institutional Investors (Amsterdam, Netherlands); 2011 European Investment Roundtable (Stockholm, Sweden); 2011 Public Funds Symposium (Washington, D.C.); 2011 National Conference on Public Employee Retirement Systems (Miami Beach, FL); 2010 ESG, USA Global Trends and U.S. Sustainable Investing (NY, NY); 2010 ICGN Annual Conference: "The Changing Global Balances" (Toronto, Canada); 2010 Public Funds West Summit (Scottsdale, AZ); 2009 ICGN Annual Conference: "The Route Map to Reform and Recovery" (Sydney, Australia); and the 2007 European Pensions Symposium (Marbella, Spain).

Mr. Kehoe received his Juris Doctorate, *magna cum laude*, from Syracuse University College of Law, was an associate editor of the Syracuse Law Review, associate member of the Syracuse Moot Court Board and alternate member on the National Appellate Team. He received a Master of Public Administration from the University of Vermont and Bachelor of Arts from DePaul University. Prior to attending law school, Mr. Kehoe served as a law enforcement officer in the State of Vermont where he was a member of the Special Reaction Team.

Mr. Kehoe is admitted to practice in the States of New York and Pennsylvania, the United States District Court for the Southern District of New York, the U.S. Court of Appeals for the Second Circuit, and the United States Supreme Court.

## H. ADAM PRUSSIN

Mr. Prussin specializes in securities litigation and has extensive experience in derivative actions. He was special litigation counsel in the derivative actions on behalf of Summit Metals, Inc., actions which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. Mr. Prussin is Co-Lead Counsel in several of Pomerantz's pending derivative actions.

Mr. Prussin has published several articles on the subject of the standards and procedures for the maintenance or dismissal of derivative actions, including "Termination of Derivative Suits Against Directors on Business Judgment Grounds:  From Zapata to Aronson," 39 The Business Lawyer 1503 (1984); "Dismissal of Derivative Actions Under the Business Judgment Rule:  Zapata One Year Later," 38 The Business Lawyer 401 (1983); and "The Business Judgment Rule and Shareholder Derivative Actions:  Viva Zapata?," 37 The Business Lawyer 27 (1981). In June 2009 he spoke at the 6th Annual Securities Litigation Conference in New York, participating in the panel discussion,

"From Behind Enemy Lines: The Perspective of Two Prominent Plaintiff Attorneys."

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. He played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Mr. Prussin graduated *cum laude* from Yale College in 1969 and, after obtaining a Master's Degree from the University of Michigan in 1971, received his J.D. degree from Harvard Law School in 1974.

Mr. Prussin is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Ninth and D.C. Circuits.

## BRENDA SZYDLO

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel. She brings to the Firm more than twenty-five years of experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation.

Ms. Szydlo played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Ms. Szydlo has represented investors in class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*. In addition, Ms. Szydlo has experience in mergers and acquisitions litigation. She played a significant role in obtaining a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids, in *In re Del Monte Co. Shareholder Litigation*.

Prior to joining Pomerantz, Ms. Szydlo served as Senior Counsel at Grant & Eisenhofer P.A., where she represented plaintiffs in securities and financial fraud litigation, and litigation against pharmaceutical corporations and accounting firms. Ms. Szydlo also served as Counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense, and commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University in 1985.

Ms. Szydlo is admitted to practice in the State of New York; United States District Courts for the Southern and Eastern Districts of New York; the U.S. Court of Appeals for the Second and Ninth Circuits; and the United States Supreme Court.

## NICOLAS TATIN

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Mr. Tatin advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Mr. Tatin was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Mr. Tatin began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Mr. Tatin graduated in International law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

## AUSTIN P. VAN

Austin P. Van joined Pomerantz in January 2017 as Of Counsel. He brings to the Firm experience in a variety of federal and state securities law matters, including disputes involving publicly traded stocks, RMBS and other ABS, securities lending disputes, and breach-of-trust matters arising in the securities law context. Mr. Van was honored in 2018 as a Super Lawyers® Rising Star.

Mr. Van also has experience in complex commercial litigation, including contract disputes, business torts, consumer fraud, and antitrust matters. He has represented investment banks and other financial sector clients, as well as public and private companies in the technology, energy, pharmaceutical, telecommunications and shipping industries, among others. Mr. Van was previously an associate at WilmerHale and Cravath, Swaine & Moore, both in New York City.

Mr. Van received a J.D. from Yale Law School, where he was an editor of the *Yale Law Journal* and the *Yale Journal of International Law*. He has a B.A. from Yale University and an M.Sc. from the London School of Economics.

Mr. Van is admitted to practice law in the State of New York and in the United States District Courts for the Southern and Eastern Districts of New York.

## TAMAR A. WEINRIB

Tamar A. Weinrib joined Pomerantz in early 2008 and became Of Counsel to the Firm in 2014. Ms. Weinrib focuses on securities fraud litigation. She was honored by Super Lawyers® as a New York Metro Rising Star every year from 2014 through 2018.

Ms. Weinrib, with Co-Managing Partner Jeremy Lieberman, is Lead Counsel in *Strougo v. Barclays PLC*, a high-profile securities class action alleging that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turns on the duty of integrity owed by Barclays to its clients. In November 2016, she and Mr. Lieberman achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Ms. Weinrib was the attorney responsible for the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz recently achieved a settlement of $8,500,000 for the Class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation* to reverse the district court's dismissal of the defendants on scienter grounds. In addition to her involvement in several other securities matters pending nationwide, Ms. Weinrib is the Pomerantz attorney responsible for the litigation of *KB Partners I, L.P. v. Pain Therapeutics, Inc., et al.*, a securities fraud case for which Judge Sparks of the Western District of Texas recently granted final approval for a settlement of up to $8,500,000 for class members.

Before coming to Pomerantz, Ms. Weinrib had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Ms. Weinrib has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib graduated from Fordham University School of Law in 2004 and, while there, won awards for successfully competing in and coaching Moot Court competitions.

Ms. Weinrib is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second, Third, Fourth, and Ninth Circuits.

# ASSOCIATES

## SAMUEL J. ADAMS

Samuel J. Adams focuses on corporate governance litigation.

Mr. Adams was previously an associate at Robbins Geller Rudman & Dowd LLP, where he focused his practice on securities fraud litigation and other complex matters. He has been recognized as a

SuperLawyers® "Rising Star" for the New York Metro area for every year from 2015 through 2018.

Mr. Adams is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Mr. Adams is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States District Court for the Eastern District of Wisconsin.

## HUI CHANG

Hui Chang joined Pomerantz in 2015 and focuses her practice on antitrust and securities fraud litigation. As a member of the Firm's new matter group, she is responsible for investigating potential violations of the federal securities laws. Ms. Chang was a member of Pomerantz's team in the securities class action against Brazilian oil giant, Petrobras, *In re Petrobras Sec. Litig.,* in which the firm recently achieve a historic $3 billion settlement for the Class.

Ms. Chang received her J.D. from University of California, Hastings College of the Law, and her B.A. in Political Science from University of California, Berkeley.

Ms. Chang is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

## JESSICA N. DELL

Jessica Dell focuses her practice on securities fraud litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation. Ms. Dell has expertise in managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Ms. Dell graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and National Advocates for Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully filed petition under the Violence Against Women Act. She also successfully petitioned for the release of survivors incarcerated as "drug mules" in Central America. After Hurricane Katrina, Ms. Dell traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Ms. Dell is a member of the New York City and State Bar Associations and the National Lawyers Guild.

## MARC C. GORRIE

Mr. Gorrie joined Pomerantz in 2014. He focuses his practice on securities fraud litigation and is actively involved in the Firm's securities lawsuit concerning Petróleo Brasileiro S.A.- Petrobras. As a member of the Firm's new matter group, he identifies and investigates potential violations of the federal securities laws.

Prior to joining the Firm, Mr. Gorrie focused his practice on a major securities fraud litigation with a prominent New York law firm. He was actively engaged in legal outreach for the Center for Seafarers' Rights of the Seamen's Church Institute of New York and New Jersey. Mr. Gorrie has previously served as a consultant for an EU development project on the rule of law in The Gambia. He has authored articles on international humanitarian and human rights law published by organizations including the Foreign Policy Association and the Revue de Droit Comparé du Travail et de la Sécurité Sociale. Mr. Gorrie currently serves a member of the Ambassadors Advisory Group for One to One International Consulting, an international aid and development consulting firm headquartered in Ghana.

Mr. Gorrie is a 2010 graduate of Indiana University Maurer School of Law - Bloomington (JD) where he held a research fellowship in legal ethics and was consistently on the Dean's List. He is a 2012 graduate of University of Lund, Sweden (LLM, in conjunction with the Raoul Wallenberg Institute of Human Rights and Humanitarian Law) where he earned honors marks, lectured on U.S. Legal Ethics and on Federal Indian Law, and delivered his thesis on the interaction of tribal, state, federal, and international human rights and labor laws in the United States. Mr. Gorrie is a 2005 graduate of Sarah Lawrence College with a BA in Liberal Arts.

Mr. Gorrie is admitted to practice in New Jersey and the United States District Court, District of New Jersey.

## GABRIEL HENRIQUEZ

Gabriel Henriquez focuses his practice on corporate governance litigation. He also has experience in commercial real estate, trusts & estates, and general business law in the Southern California region.

Mr. Henriquez is a 2012 graduate of the University of Southern California Gould School of Law. During his time there, he co-founded the Critical Legal Scholars Association and served as its vice president. He also clerked for Judge Kelvin Filer at the Superior Court of California in Compton. Mr. Henriquez earned his LL.M. in International Business and European Union Law from the Université Lyon III in France.

Mr. Henriquez is admitted to practice in New York and California State Courts, as well as the United States District Courts for the Central District of California, the Southern District of New York, and the Eastern District of New York.

## J. Alexander Hood II

J. Alexander Hood II focuses his practice on securities litigation. As a member of the Firm's new matter group, he identifies and investigates potential violations of the federal securities laws.

Prior to joining Pomerantz, Mr. Hood was a litigation associate at Alston & Bird LLP and an attorney at Bernstein Litowitz Berger & Grossmann LLP, where he was involved in commercial, financial services, corporate governance and securities matters.

Mr. Hood graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). While in law school, Mr. Hood clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill. Mr. Hood graduated from Johns Hopkins University with a BA in History.

Mr. Hood is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York, the District of Colorado, and the Eastern District of Michigan.

## Aatif Iqbal

Aatif Iqbal focuses his practice on securities fraud litigation.

Before joining Pomerantz, Mr. Iqbal was a litigation associate at Cleary Gottlieb Steen & Hamilton LLP, where his practice involved bankruptcy, securities, and complex commercial litigation matters. Mr. Iqbal also served as a law clerk for the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida.

Mr. Iqbal graduated cum laude from Harvard Law School, where he earned a Dean's Scholarship in First Amendment Law and served as Managing Editor of the *Harvard International Law Journal* and Managing Technical Editor of the *Harvard Human Rights Journal*. He graduated cum laude from Yale University with a B.A. in Political Science.

Mr. Iqbal is admitted to practice in New York.

## Omar Jafri

Omar Jafri's practice focuses on securities fraud litigation.

Before joining Pomerantz LLP, he was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia. Mr. Jafri was also an associate at Jenner & Block LLP's Chicago Office, where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense and internal investigations.

During the last several years, Mr. Jafri has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes relating to Collateralized Debt Obligations, Residential Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. He also has provided pro bono representation to several individuals charged with first-degree murder and attempted murder in the State and Federal courts of Illinois.

Mr. Jafri graduated, magna cum laude, from the University of Illinois College of Law, where he was a Harno Scholar, and represented the College of Law in the Midwest Moot Court competition, winning second place for best oral advocate in the preliminary round and first place for best oral advocate in the semi-final round. He received his B.A. from the University of Texas at Austin, where he was on the Dean's Honor List and the University Honors List.

Mr. Jafri is admitted to practice in Illinois, and the United States District Courts for the Northern District of Illinois and the Northern District of Indiana.

## ADAM GIFFORDS KURTZ

Adam Giffords Kurtz focuses his practice on antitrust litigation.

Mr. Kurtz was a member of the Firm's litigation team in the securities class action against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class.

Mr. Kurtz served as a law clerk to the Honorable Juan G. Burciaga, then Chief United States District Judge, District of New Mexico and began his career as a litigation associate at Cravath, Swaine & Moore, where he worked on complex securities fraud and antitrust litigation. He was also a solo practitioner in New Mexico where he concentrated on federal criminal defense and civil litigation. In addition, Mr. Kurtz served as an Assistant Corporation Counsel in the General Litigation and Labor and Employment law divisions of the New York City Law Department.

Mr. Kurtz graduated *cum laude* from New York Law School in 1988, where he was Book Review Editor of the New York Law School Law Review. In June 2009, Mr. Kurtz received an MBA from the Baruch/Mt. Sinai Graduate Program in Health Care Administration. He is a member of the American Health Lawyers Association.

Mr. Kurtz is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## LOUIS C. LUDWIG

Louis C. Ludwig focuses his practice on securities fraud litigation. He has been honored as a 2016 and 2017 Super Lawyers® "Rising Star," and as a 2018 Super Lawyers® "Top-Rated Securities Litigation Attorney."

Mr. Ludwig graduated from Rutgers University School of Law in 2007, where he was a Dean's Law Scholarship Recipient, interned at South Jersey Legal Services, served as a Certified Legal Intern in the Rutgers-Camden Children's Justice Clinic, and participated in Advanced Moot Court.

After serving as a law clerk to the Honorable Arthur Bergman, Superior Court of New Jersey, Mr. Ludwig began his career as a litigation associate at a boutique Chicago law firm specializing in consumer protection class actions.

Mr. Ludwig is admitted to practice in New Jersey, Illinois, the United States Courts of Appeal for the Seventh and Ninth Circuits, and the United States District Courts for the District of New Jersey and the Northern District of Illinois.

## MATTHEW C. MOEHLMAN

Matthew C. Moehlman focuses his practice on securities fraud litigation.

Prior to joining Pomerantz in 2015, Mr. Moehlman practiced securities litigation at two prominent federal securities law firms, where he represented institutional investors in complex securities fraud cases, shareholder advocacy, corporate governance matters, and mergers and acquisitions litigation. Mr. Moehlman was a member of the Lead or Co-Lead counsel teams that successfully prosecuted *In re Aeropostale Securities Litigation*, *In re Colonial BancGroup, Inc. Securities Litigation*, *Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.* ("*Freddie Mac*"), *In re Delphi Corporation Securities Litigation*, *In re SFBC International, Inc. Securities Litigation*, *In re Converium Holding AG Securities Litigation*, and *In re Suprema Specialties, Inc. Securities Litigation*. His M&A litigation experience includes *In re El Paso Corporation Shareholder Litigation*.

Mr. Moehlman received a J.D. from the University of Virginia School of Law. He earned an A.B. in English and American Literature & Language from Harvard University.

Mr. Moehlman is admitted to practice in New York and Texas, and the United States District Court for the Southern District of New York.

## VERONICA V. MONTENEGRO

Veronica V. Montenegro focuses her practice on securities fraud litigation.

Prior to joining Pomerantz, Ms. Montenegro served for seven years as an Assistant Attorney General in the Investor Protection Bureau in the Office of the New York State Attorney General. Ms. Montenegro represented the Office in some of its most high-profile financial fraud prosecutions. She worked on a case against a Madoff feeder-fund manager which resulted in the return of millions of dollars to defrauded investors. She was a member of the Residential Mortgage Backed Securities (RMBS) Working Group, comprised of State and Federal prosecutors tasked with investigating and prosecuting mortgage securities fraud, which has resulted in billions of dollars in recoveries. In recognition of her work in the RMBS Working Group, Ms. Montenegro was awarded the Louis Lefkowitz Award for Exceptional Service. Ms. Montenegro also worked on cases involving insider trading, auction rate securities and foreign exchange execution.

Ms. Montenegro graduated from Fordham University School of Law in 2008. During law school, she served as a member of the *Fordham International Law Journal* and in Fordham's Moot Court Board. Additionally, she served as a judicial extern to the Honorable Ronald L. Ellis, Magistrate Judge for the Southern District of New York. Ms. Montenegro graduated from New York University's College of Arts and Science is 2004, cum laude, with a double major in Political Science and Latin American Studies.

Ms. Montenegro is admitted to practice in the States of New York and New Jersey and the United States District Court for the Southern District of New York.

## JUSTIN S. NEMATZADEH

Justin S. Nematzadeh focuses his practice on securities fraud litigation. Louis C. Ludwig focuses his practice on securities fraud litigation. In 2018, he was honored as a Super Lawyers® "Rising Star."

Mr. Nematzadeh played a key role in the Firm's seurities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz in 2015, Mr. Nematzadeh practiced at Gibson, Dunn & Crutcher LLP. His practice at Gibson Dunn involved federal and state complex litigation and internal and regulatory investigations, focusing on securities and antitrust litigation. Additionally, for his work in representing plaintiffs in *Toney-Dick v. Doar*, he was awarded a 2013 Pro Bono Publico award from The Legal Aid Society.

Mr. Nematzadeh earned his J.D. degree, *cum laude*, from Fordham University School of Law. During law school, he served as a member of the *Fordham Urban Law Journal* and as a business editor of the Fordham Dispute Resolution Society. Additionally, he served as a judicial intern to the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York. He earned his B.B.A. degree, with distinction, from the University of Michigan Stephen M. Ross School of Business, with an emphasis in finance and corporate strategy. During business school, he was awarded a University of Michigan Alumnae Council MBNA Scholarship.

Mr. Nematzadeh is the co-author of the *Delaware Business Court Insider* article entitled "Lead Plaintiffs' Shareholdings Draw Chancery Review." He has also contributed to chapters in the American Bar Association's *Antitrust Law Developments*, Matthew Bender's *Antitrust Laws and Trade Regulation*, and to Professor Deborah W. Denno's chapter entitled "When Willie Francis Died: The 'Disturbing' Story Behind One of the Eighth Amendment's Most Enduring Standards of Risk" in John H. Blume and Jordan M. Steiker's book, *Death Penalty Stories*.

Mr. Nematzadeh is admitted to practice law in New York and the United States District Courts for the Southern and Eastern Districts of New York. He is a member of the American Bar Association and the New York State Bar Association.

## JENNIFER BANNER SOBERS

Jennifer Banner Sobers focuses her practice on securities fraud litigation.

In addition to her involvement in numerous cases pending nationwide, Ms. Sobers played an integral role on the team litigating *In re Petrobras Sec. Litig.,* arising from a multi-billion dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. - Petrobras. The Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement on behalf of investors in Petrobras securities.

Prior to joining Pomerantz, Ms. Sobers was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Ms. Sobers earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Ms. Sobers received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law were she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the New York City and New York State Bar Associations. She is also a member of the Association of Arbitrators.

Ms. Sobers is admitted to practice in New York, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Second and Ninth Circuits.

## SUSAN J. WEISWASSER

Susan J. Weiswasser focuses her practice on securities fraud litigation.

Ms. Weiswasser graduated from Brooklyn Law School in 2000. While there, she served as a law clerk intern to the Honorable Edward R. Korman, Judge of the United States District Court for the Eastern District of New York. She also served as a legal intern with the New York State Capital Defender Office. As an attorney, she has worked with the Pro Bono Bankruptcy Clinic of the New York City Bar Association. For the last several years, Ms. Weiswasser has been a volunteer lawyer with the City Bar's Monday Night Law Clinic, a community service program providing the public with free consultations in several areas including consumer, landlord-tenant, and matrimonial law.

At Pomerantz, Ms. Weiswasser was a member of the team litigating the securities class action lawsuit against Brazilian oil giant, Petróleo Brasileiro (Petrobras) in which the firm achieved, in January 2018, a historic $2.95 billion partial settlement for the Class. She also plays an active role in other high-profile securities fraud cases.

Ms. Weiswasser is a member of the New York City Bar Association and the Federal Bar Council. She is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit.

# STAFF ATTORNEYS

## ÁTILA DE CARVALHO BEATRICE CONDINI

Átila de Carvalho Beatrice Condini, an international attorney at Pomerantz, focuses on class action securities litigation.

Mr. Condini brings to Pomerantz his 13 years' expertise in complex Brazilian federal legal, procedural, and regulatory issues. He is a member of Pomerantz's team for three securities class actions against Brazilian companies: *In re Petrobras Sec. Litig.*, *Manidhar Kukkadapu, et al. v. Embraer, et al.*, and *Banco Safra S.A. - Cayman Islands Branch* v. *Samarco Mineração S.A.* et al.

Mr. Condini is a partner (on leave) at the law firm, Condini & Tescari Advogados, in São Paolo, Brazil, where he was responsible for the tax and litigation divisions. Before that, he was an associate and senior associate at two other major Brazilian law firms in São Paolo. During that period, he successfully worked on cases that became benchmarks in the Brazilian legal scenario. In one of them, he prepared a brief in the Extraordinary Appeal n° 559.937, whose thesis was accepted by the Brazilian Supreme Court, reducing the social contribution taxes (PIS / COFINS-Importação) levied on imports. In another case, he defended an advanced interpretation about D&O responsibilities, which was also accepted by the Brazilian Supreme Court in the Extraordinary Appeal n° 562.276.

Mr. Condini has also been attentive to social causes, not only practicing pro bono, but also in the human rights field. For example, Mr. Condini conducted a legal research project that ultimately resulted in the human rights group, Tortura Nunca Mais, being able to help fund and support the creation of a free virtual library focused on keeping alive Brazilian recent history for future generations. In 2006, Mr. Condini received a Bachelor of Law degree from Pontifical University Catholic of São Paulo ("PUC/SP"). In 2008, he received a specialized law degree in taxation from PUC/SP.

## LAURA M. PERRONE

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Ms. Perrone worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

More recently, Ms. Perrone has represented bondholders against Citigroup for its disastrous investments in residential mortgage backed securities, and shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX.

Ms. Perrone graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's *Arts and Entertainment Law Journal*, and was the recipient of the Jacob Burns Merit Scholarship.

Ms. Perrone is admitted to practice in the New York State Courts, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and the Fifth Circuits.

## <u>SAMIR SIDI</u>

Samir Sidi's practice focuses on antitrust and securities fraud litigation.

Previously, Mr. Sidi represented plaintiffs in high-stakes disputes related to a variety of financial investments, including the Federal Home Loan Bank of Seattle and the FDIC in their multi-billion dollar actions against securities dealers to rescind the purchase of certificates backed by residential mortgage loans. He also represented institutional investors in a securities fraud action against Vivendi Universal (*In re Vivendi Universal, S.A. Sec. Litig.*, 02 Civ. 5571 (S.D.N.Y.)), where in January 2010 the jury returned a verdict that at the time had an estimated value of up to $9 billion.

Mr. Sidi also served as a judicial intern for the Administrative Office of the Federal Judiciary – Office of Legislative Affairs in Washington, D.C.

Mr. Sidi received his LL.L. from the University of Ottawa, and his LL.M. in Banking & Financial Law from the Boston University School of Law.

Mr. Sidi is admitted to practice in New York State.