**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
DAVID R. STICKNEY (Bar No. 188574)
(davids@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323

        -and-

AVI JOSEFSON
(avi@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Proposed Lead Plaintiff
Public Employees' Retirement System of
Mississippi, and Proposed Lead Counsel
for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAN YUAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., MARK E. ZUCKERBERG and DAVID M. WEHNER, <br><br> Defendants. | Case No. 5:18-cv-01725-EJD <br><br> <u>CLASS ACTION</u> <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF ALL RELATED ACTIONS, AND IN OPPOSITION TO COMPETING MOTIONS** <br><br> Date:  August 30, 2018 <br> Time: 9:00 a.m. <br> Dept.: Courtroom 4, 5th Floor <br> Judge: Hon. Edward J. Davila |

*Caption continued on next page.*

ERNESTINE BENNETT, Individually and
on Behalf of All Others Similarly Situated,

Plaintiff,

v.

FACEBOOK, INC., MARK ZUCKERBERG,
DAVID M. WEHNER, and SHERYL K.
SANDBERG,

Defendants.

Case No. 5:18-cv-01868-EJD

CLASS ACTION

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ...................................................................................................................... 3

     A.    MissPERS Is Not A Professional Plaintiff .......................................................... 3

     B.    MissPERS Is Not Subject To A Conflict Of Interest .......................................... 7

     C.    MissPERS And Its Counsel Fully Disclosed All Information Required By The PSLRA And The Local Rules ............................................................................ 12

CONCLUSION ................................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                    PAGE(S)

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ........................................................6

*In re Atlantic Power Corp. Sec. Litig.*,
    2014 WL 12628589 (D. Mass. Mar. 31, 2014)........................................12

*Bach v. Amedisys, Inc.*,
    2010 WL 4318755 (M.D. La. Oct. 22, 2010) ....................................3, 6

*Belmont Holdings Corp. v. Suntrust Banks, Inc.*,
    2009 WL 3188695 (N.D. Ga. Sept. 29, 2009) ........................................5

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016)......................................................................13

*Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*,
    2014 WL 1847833 (N.D. Ill. May 8, 2014) ...........................................13

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .....................................................................1

*Craig v. CenturyLink Inc.*,
    2017 WL 4768566 (W.D. La. Oct. 20, 2017) ..........................................6

*Cunha v. Hansen Natural Corp.*,
    2009 WL 2029797 (C.D. Cal. July 13, 2009) ..........................................6

*In re Diamond Foods, Inc. Sec. Litig.*,
    281 F.R.D. 405 (N.D. Cal. 2012)........................................................ *passim*

*Dupont v. Wyly*,
    61 F.R.D. 615 (D. Del. 1973) ...................................................................10

*In re Extreme Networks Inc. Sec. Litig.*,
    2016 WL 3519283 (N.D. Cal. June 28, 2016) ......................................4, 6

*GGCC, LLC v. Dynamic Ledger Solutions, Inc.*,
    2018 WL 1388488 (N.D. Cal. Mar. 16, 2018)........................................13

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ...................................................................10

*In re Internap Network Services Corp. Sec. Litig.*,
    2012 WL 12878579 (N.D. Ga. Aug. 23, 2012) .....................................10

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing &*
    *Securitization, LLC,*
    616 F. Supp. 2d 461 (S.D.N.Y. 2009)........................................................................3

*Knurr v. Orbital ATK, Inc.,*
    220 F. Supp. 3d 653 (E.D. Va. 2016) ......................................................................6

*McGee v. Am. Oriental Bioengineering, Inc.,*
    2012 WL 12895668 (C.D. Cal. Oct. 16, 2012)......................................................12

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.,*
    2010 WL 11507255 (C.D. Cal. Aug. 27, 2010)....................................................3, 4

*Naiditch v. Applied Micro Circuits Corp.,*
    2001 WL 1659115 (S.D. Cal. Nov. 5, 2001) ...........................................................4

*In re Netflix, Inc. Sec. Litig.,*
    2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .........................................................4

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.,*
    306 F.R.D. 175 (N.D. Ill. 2014).............................................................................13

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.,*
    2012 WL 12985571 (D. Vt. Apr. 27, 2012).............................................................3

*In re SiRF Tech. Holdings, Inc. Sec. Litig.,*
    2008 WL 2220601 (N.D. Cal. May 27, 2008) ......................................................4, 5

*In re Unumprovident Corp. Sec. Litig.,*
    2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) ......................................6

*W. Palm Beach Police Pension Fund v. DFC Global Corp.,*
    2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...........................................................6

*In re Wash. Mut. Inc. Sec. Deriv. & ERISA Litig.,*
    2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) .....................................................6

**STATUTES**

15 U.S.C. § 78u-4(a)(2)(A)(iv) ......................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................1, 2

15 U.S.C. § 78u-4(a)(3)(B)(vi) ....................................................................................4, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e)(2)...................................................................................................10

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).................3, 4

5 MOORE'S FEDERAL PRACTICE - CIVIL § 23.25[2][b][vi] (2018)....................................................10

New York Consolidated Laws, Retirement and Social Security Law § 14 ....................................11

Ohio Rev. Code § 109.02................................................................................................................9

The Public Employees' Retirement System of Mississippi ("MissPERS") respectfully submits this reply brief in further support of its motion to be appointed lead plaintiff, for approval of its selection of lead counsel, and for consolidation of the related Actions (*see* ECF No. 39), and in opposition to the competing motions. *See* ECF Nos. 25, 28.[1]

## PRELIMINARY STATEMENT

There is no dispute that MissPERS has the largest financial interest in this case. Accordingly, under well-established Ninth Circuit law, MissPERS is the presumptive lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). In order to rebut the strong presumption to appoint MissPERS as lead plaintiff, a competing movant must present "proof" that MissPERS is inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists: MissPERS is an exemplary lead plaintiff with claims that are typical and is adequate to represent the Class. MissPERS is widely recognized by courts as a committed and responsible investor advocate, having recovered over $3.5 billion as lead plaintiff in securities class actions that it led with distinction in this courthouse and around the country. In fact, counsel for Amalgamated in this case has expressly endorsed the adequacy of MissPERS in multiple cases, stating on the record that MissPERS was "unquestionably adequate" to serve as lead plaintiff for a class. Reply Declaration of David R. Stickney ("Stickney Decl."), Ex. A at 15; *see also* Ex. B at 31, Ex. C ¶164.

Unable to contest MissPERS' superior financial interest and successful track record, Amalgamated wrongly contends that MissPERS is precluded from serving as lead plaintiff under the so-called "professional plaintiff" bar, and resorts to pure speculation and innuendo to contest the adequacy of a $28 billion state pension fund that is represented by the Office of the Attorney General of Mississippi ("OAG"). Because Amalgamated cannot offer any "proof" to rebut the strong statutory presumption to which MissPERS is entitled, its contentions fail.

Specifically, Amalgamated's argument that institutional investors are limited in the number of cases in which they can serve as lead plaintiff has been repeatedly rejected by the

---

[1] All capitalized terms are defined in MissPERS' initial and opposition briefs, unless otherwise indicated. *See* ECF Nos. 39, 45. All references to "ECF No." are to the *Yuan* docket, unless otherwise indicated.

overwhelming majority of courts throughout the country, recognizing that Congress did not intend to limit institutional investors that have the incentive, resources and experience to serve as lead plaintiff.   Instead, the PSLRA—which was expressly intended to increase participation of institutional investors as lead plaintiff—precludes ***individual*** investors from serving as lead plaintiff in more than five cases filed within a three-year period.  *See In re Diamond Foods, Inc. Sec. Litig.*, 281 F.R.D. 405, 410 (N.D. Cal. 2012) ("the 'professional plaintiff' provision of the PSLRA was not intended to apply to institutional investors") (collecting cases).  Amalgamated's counsel is well aware of this overwhelming authority, having repeatedly argued in other cases that the professional plaintiff provision does not apply to institutions such as MissPERS.  *See, e.g.*, Stickney Decl., Ex. D.  As set forth in the accompanying Declaration of Special Assistant Attorney General George W. Neville ("Neville Decl."), MissPERS and the OAG embody all of the characteristics of the quintessential institutional lead plaintiff envisioned by Congress in enacting the PSLRA.  *See* Neville Decl. ¶¶2-9

Significantly, no court has ever applied the professional plaintiff provision to MissPERS and at least seven have expressly refused to apply the provision to MissPERS.  Amalgamated has not identified a single instance where MissPERS was unable to fully meet its obligations as lead plaintiff, and has therefore failed to meet the burden of "proof" required by the PSLRA to rebut MissPERS' presumptive status.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Diamond Foods*, 281 F.R.D. at 409-12 (rejecting argument that MissPERS was subject to professional plaintiff provision when opposing movant failed to prove MissPERS would not be able to adequately represent class).  Moreover, Amalgamated misreads the statute to drastically overstate the number of cases that MissPERS has prosecuted as lead plaintiff for purposes of that provision. In doing so, Amalgamated identifies numerous instances when courts determined that no aspect of the PSLRA barred the appointment of MissPERS.

Amalgamated's contention that MissPERS is subject to a conflict of interest simply because the OAG sent a letter to Facebook is similarly meritless.  The Neville Declaration reaffirms that MissPERS and the OAG are committed to achieving the best possible result in this case.  *See* Neville Decl. ¶16.  The OAG has not commenced any formal investigation or action

against Facebook, has not procured any non-public information relating to the subject matter of this case, and has stringent safeguards in place to protect the integrity of any investigation as well as the confidentiality of any information to prevent even the appearance of a conflict.  *See id.* ¶¶10-14.  Amalgamated's unsupported speculation to the contrary does not come close to establishing the "proof" required to rebut the presumption, and its argument should be rejected.

## ARGUMENT

### A.   MissPERS Is Not A Professional Plaintiff

Amalgamated claims that MissPERS "cannot be appointed lead plaintiff" because it was appointed in more than five cases filed in the past three years.  ECF No. 47 at 4.  Virtually every court that has considered Amalgamated's contention in the past decade has refused to apply the "professional plaintiff" provision to institutional investors like MissPERS.  No court has ever applied the provision to MissPERS and at least seven (including two in California) have expressly rejected the very argument Amalgamated advances against MissPERS here.[2]  Amalgamated's counsel has unsuccessfully attempted to challenge MissPERS on this basis multiple times— including less than a year ago in the securities litigation against Signet Jewelers Limited in which MissPERS was appointed lead plaintiff.  *See* Stickney Decl., Ex. F.

Courts uniformly recognize that the intent of the PSLRA is to "encourage" the appointment

---

[2] *See Diamond Foods*, 281 F.R.D. at 412 (appointing MissPERS because Congress "contemplated that institutional investors will serve as lead plaintiff in more than five cases during any three-year period"); *Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *6 (C.D. Cal. Aug. 27, 2010) (certifying MissPERS as a class representative despite the fact that it "has served as lead plaintiff in more than five securities class actions in a three-year period"); *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) ("accumulated experience of MissPERS in pursuing multiple securities fraud actions seems a benefit more than a detriment"); *Bach v. Amedisys, Inc.*, 2010 WL 4318755, at *5 (M.D. La. Oct. 22, 2010) (refusing to apply provision to MissPERS as the "application of the restriction under such circumstances would be contrary to the intent of Congress in that it would minimize the control of a sophisticated institutional investor whose losses significantly exceed those of any other potential lead plaintiff"); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2012 WL 12985571, at *4 (D. Vt. Apr. 27, 2012) (appointing MissPERS and explaining that "the five suit limit was intended mainly to deter private individuals from becoming professional plaintiffs"); Stickney Decl., Exs. E-F (rejecting arguments that MissPERS was subject to the professional plaintiff provision).

of institutional investors as lead plaintiff—indeed, this was the primary aim of the PSLRA's lead plaintiff provisions.  H.R. Conf. Rep. No. 104-369, at *32-33 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731-32 (1995) ("Conference Report").  Simply put, institutional investors are ***not*** the "professional plaintiffs" identified in the statute.  The Conference Report is unequivocal: "professional plaintiffs" are "***[i]ndividuals*** who are motivated by the payment of a bounty" and "who own a nominal number of shares in a wide array of public companies." *Id*.  The provision was not intended to be applied to institutions such as MissPERS.  *See, e.g.*, *In re Netflix, Inc. Sec. Litig.*, 2012 WL 1496171, at *6 (N.D. Cal. Apr. 27, 2012) ("It is beyond dispute that Congress passed the PSLRA in part to encourage institutional investors . . . to take the lead in private securities class actions" and the argument "that this very experience disqualifies [institutional investors] as professional plaintiffs [] misapprehends both the spirit and the letter of the PSLRA"); *Naiditch v. Applied Micro Circuits Corp.*, 2001 WL 1659115, at *3 (S.D. Cal. Nov. 5, 2001) ("For such a large institutional investor, 11 appointments as lead plaintiff is quite understandable, and in fact could evince a laudatory zeal to fulfill its fiduciary duties").  Numerous decisions from this District and Circuit are in accord.[3]

Undeterred, Amalgamated wrongly claims that the unambiguous congressional intent reflected in the Conference Report is somehow inconsistent with the statutory text of the PSLRA.  *See* ECF No. 47 at 9.  To the contrary, the statutory text of the PSLRA specifically states that the professional plaintiff provision must be construed "consistent with the purposes of [the PSLRA]." 15 U.S.C. § 78u-4(a)(3)(B)(vi).  In construing the statute to be "consistent with the purposes of" the PSLRA—which are enunciated in the Conference Report—courts widely hold that institutional

---

[3] *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *7 (N.D. Cal. June 28, 2016) ("any interpretation that the 5-and-3 cap applies to institutional investors would contravene the very purpose for which the professional plaintiff bar was enacted"); *Diamond Foods*, 281 F.R.D. at 412 ("The conference report contemplated that institutional investors will serve as lead plaintiff in more than five cases during any three-year period"); *Semtech*, 2010 WL 11507255, at *6 (professional plaintiff provision not intended to apply to institutional investors); *In re SiRF Tech. Holdings, Inc. Sec. Litig.*, 2008 WL 2220601, at *3 (N.D. Cal. May 27, 2008) (applying 5-in-3 provision to institutional investor "would be [] at 'cross purposes' with the 'most adequate plaintiff' provision . . . [and] precisely contrary to congressional intent").

investors such as MissPERS do not represent the type of "professional plaintiff" the PSLRA was designed to disqualify.  Indeed, to hold otherwise would ignore the text and legislative history of the statute, which was intended to encourage the appointment of institutional investors as lead plaintiff.  *See supra* at n.3.  Moreover, the text of the statute is explicit that this provision is discretionary.  In exercising its discretion regarding the application of the provision, the Court can clearly consider the legislative history and Congressional intent, as well as the overwhelming precedent that rejects application of the provision to MissPERS.

Significantly, in arguing for the application of this provision to bar MissPERS, Amalgamated overstates MissPERS' caseload and misapplies the PSLRA, omitting key words. Specifically, as set forth in its Certification (*see* ECF No. 40-1), MissPERS was appointed in seven PSLRA cases that were filed during the prior three years.  Amalgamated misstates the statute to suggest that the PSLRA "bars service in 'more than 5 securities class actions . . . during any 3-year period'" (ECF No. 47 at 4-5 n.9), conspicuously deleting language from the provision that counts only cases "brought" during the 3-year period.  15 U.S.C. § 78u-4(a)(3)(B)(vi).  Amalgamated then overstates MissPERS' relevant caseload, citing cases regardless of when they were brought or resolved.

Amalgamated also incorrectly suggests that MissPERS has the burden to prove that some special circumstance warrants waiver of the 5-in-3 provision.  *See* ECF No. 47 at 11.  This is not the law.  The PLSRA is clear and courts in this District have uniformly held that the burden lies with Amalgamated to rebut the presumption that MissPERS is entitled to appointment.  *See Diamond Foods*, 281 F.R.D. at 410 ("In [the Northern District of California], the argument over whether the professional plaintiff bar applies to institutional investors has been dealt with as part of the burden of the party trying to rebut the presumption that the institutional investor with the largest financial interest and who satisfies the FRCP 23 requirements is the most adequate lead plaintiff") (collecting cases).[4]  And regardless of the burden of proof, "[n]owhere does the PSLRA

---

[4] *See also* Stickney Decl. Ex. E at 10 (rejecting argument that MissPERS was subject to professional plaintiff provision when opposing movant failed to rebut presumption); *SiRF*, 2008

require that a showing of 'special circumstances' is needed in order to justify lifting the bar." *Diamond Foods*, 281 F.R.D. at 409-11 (appointing MissPERS as lead plaintiff when none of the circumstances applied); Stickney Decl., Ex. F (same).[5]

In any event, Amalgamated fails to offer any "proof" to suggest that MissPERS' caseload renders it incapable of adequately prosecuting this case. The only proof in the record—the Neville Declaration—demonstrates that MissPERS and the OAG have a history of successfully serving as lead plaintiff and more than adequate resources to oversee each matter in which MissPERS serves as lead plaintiff.[6] Neville Decl. ¶¶5-9. This includes a team of Special Assistant Attorneys General who are specialized in dealing with complex shareholder litigation. *Id.* ¶¶3, 7. There are already three such attorneys involved in this case who review and edit pleadings, meet and confer regularly with counsel, and will attend important hearings and mediations.[7] If anything, the number of times MissPERS has been appointed lead plaintiff "seems only to highlight how often courts have found

---

WL 2220601, at *3 (same with regard to different institutional investor); *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 2009 WL 3188695, at *3 (N.D. Ga. Sept. 29, 2009) (same).

[5] *See also Extreme Networks*, 2016 WL 3519283, at *8 (appointing institution that was lead plaintiff in 12 actions over three years where no special circumstance applied); *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 WL 1395059, at *10 (E.D. Pa. Apr. 10, 2014) (appointing institution that was lead plaintiff in seven actions over three years where no special circumstance applied).

[6] *See Diamond Foods*, 281 F.R.D. at 412 (rejecting "mere speculation" that MissPERS lacks resources to prosecute case when the "record shows that Mississippi PERS has extensive experience in serving as lead plaintiff in securities class actions and that the [OAG] has sufficient resources to devote to managing this action"); *Amedisys*, 2010 WL 4318755, at *5 (rejecting argument that MissPERS is "spread too thin").

[7] *Id.* The reasoning of *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999), was later rejected by *Diamond Foods*, explaining that "the text of the statute clearly provides courts with the authority to lift the bar." 281 F.R.D. at 411. *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 663 (E.D. Va. 2016), is an out-of-Circuit outlier that is at odds with the established law in this District and fails to address how mechanically barring institutional investors could be "consistent with the purposes of the PSLRA" and not at "cross-purposes" with the statute. The same is true in *Craig v. CenturyLink Inc.*, 2017 WL 4768566, at *4 (W.D. La. Oct. 20, 2017), which was appealed but rendered moot after the alleged professional plaintiff conceded it lacked the largest financial interest. In *Cunha v. Hansen Natural Corp.*, 2009 WL 2029797, at *3 (C.D. Cal. July 13, 2009), where the movant was involved in 21 cases, and *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *22 (E.D. Tenn. Nov. 6, 2003), there was significant evidence that the movants' resources were "spread too thin." No such concerns are present here.

---

it to be a proper plaintiff." *In re Wash. Mut. Inc. Sec. Deriv. & ERISA Litig.*, 2010 WL 4272567, at *10 (W.D. Wash. Oct. 12, 2010) (certifying institutional investor as class representative that was appointed in 40 securities cases in the past 10 years and seven in the last three years).

Clearly, Amalgamated's counsel, Robbins Geller, does not believe that the professional plaintiff provision should preclude MissPERS from serving as lead plaintiff.  Robbins Geller served as co-lead counsel in securities litigations against Morgan Stanley and Sears, where MissPERS served as lead plaintiff (together with clients of Robbins Geller).  *See* Stickney Decl., Exs. A, C.  In both cases, when appointed as lead plaintiff, MissPERS already had been appointed in more than five cases in the prior three years.  *See* Stickney Decl., Exs. G-H.  Contrary to the position Amalgamated's counsel takes here, in *Morgan Stanley*, Robbins Geller argued that MissPERS was "unquestionably adequate" and was fully "committed to representing the interests of all Class members" despite the fact that MissPERS was then serving as lead plaintiff in over five cases.  Stickney Decl., Ex. A at 15, Ex. B at 30.[8]  Counsel for Amalgamated has also consistently argued in this courthouse that institutions like MissPERS "do not represent the type of professional plaintiff [the PSLRA] seeks to restrict" and characterized arguments to the contrary as "[n]onsense."  Stickney Decl., Ex. D at 11.  In fact, less than five months ago, Robbins Geller expressly endorsed the appointment of an institutional investor that was then serving as lead plaintiff in nine PSLRA cases, claiming that "every single court in the Second Circuit . . . has refused to apply the 'professional plaintiff' provision to institutional investors."  Stickney Decl., Ex. I at 1-2.

**B.** **MissPERS Is Not Subject To A Conflict Of Interest**

Amalgamated's argument that MissPERS is subject to a conflict of interest is based on the incorrect premise that the OAG "already has access to Facebook information" through an investigation that the OAG is conducting into Facebook's privacy practices.  ECF No. 47 at 15. The OAG is not conducting a formal investigation into Facebook's privacy practices and has not

---

[8] Likewise, in *Sears*, Robbins Geller stated that MissPERS "will fairly and adequately represent and protect the interests of the members of the Class."  Stickney Decl., Ex. C ¶164.

received any non-public information relating to Facebook.  *See* Neville Decl. ¶10.  Three months ago, the OAG sent a letter to Facebook asking that it preserve relevant documents, and joined another letter with roughly 35 other state Attorneys General relating to the Company's misuse of customer data.  Other than MissPERS seeking appointment as lead plaintiff in this case, the letters are the complete extent of the OAG's activities relating to Facebook's exploitation of customers.  The OAG has not initiated any action, has not commenced a formal investigation, served any document requests, civil investigative demands, subpoenas, or requests for interviews relating to Facebook.  *See id.*  Amalgamated's suppositions to the contrary are wrong, contradicted by the Neville Declaration, and are precisely the type of unfounded speculation that courts routinely reject as insufficient to rebut the presumption that MissPERS is the presumptive lead plaintiff.  *See Diamond Foods*, 281 F.R.D. at 412 (rejecting "mere speculation" that MissPERS "cannot fairly and adequately protect the interests of the class").[9]

If, in the future, the OAG were to commence a formal investigation into Facebook, the OAG would comply with all of its obligations under the law, legal and ethics rules, including any obligations imposed by the PSLRA discovery stay, in order to prevent even the appearance of a conflict.  *See* Neville Decl. ¶11.  Indeed, the OAG is routinely involved in matters where multiple constituencies—including the people of Mississippi, Mississippi consumers and state agencies—are impacted by the same misconduct by the same or overlapping parties.  As a result, the OAG has developed practices and procedures to ensure the integrity of its various and sometimes parallel investigative, prosecutorial and representative activities, including with respect to any investigative, civil and criminal prosecutorial decision-making and the treatment of any confidential information.  *See id.* ¶¶12-14.  Notably, the OAG employs over 100 attorneys.  *See id.* ¶12.  In this case, the attorneys assigned to oversee this case would not be assigned to any criminal investigation or action, which would be conducted by an entirely different division within

---

[9] Amalgamated's hypotheticals regarding the OAG's *Brady* disclosure obligations in this case are baseless.  *See* ECF No. 47 at 16 n.27.  The OAG has not initiated criminal charges against Facebook and Amalgamated has failed to offer a modicum of "proof" that the OAG's compliance with *Brady* (in the event criminal charges were ever initiated) could prejudice the class.

the OAG comprised of a different group of lawyers.  *See id.* ¶13.  Moreover, any information the OAG might hypothetically obtain in any such hypothetical investigation would undoubtedly be produced only pursuant to the terms of a confidentiality agreement, as would any information produced in discovery in the securities class action.  The OAG requires its attorneys to act in accordance with their obligations under any applicable confidentiality agreements, any applicable discovery stay, and OAG protocols designed to protect the integrity of separate matters as well as the confidentiality of information.  *See id.*

The OAG has consistently followed similar protocols in numerous matters and with great success.  *See* Neville Decl. ¶14.  Specifically, the OAG oversaw the prosecution of *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.)—a securities class action against Merck in which MissPERS served as lead plaintiff and recovered $1 billion for the class—while simultaneously recovering $13.25 million for the State of Mississippi in a concurrently litigated state consumer action against Merck.  *See* Neville Decl. ¶14.  In each case, the OAG followed procedures to protect the integrity of each matter, and at no time did the defendants or the court in either action raise issues of conflicts.  *See id.*

Amalgamated's claim that MissPERS is somehow precluded from serving as lead plaintiff because under Mississippi statute "Mississippi Attorney General Hood effectively would serve as both lead plaintiff and counsel" (ECF No. 47 at 1) similarly fails.  Indeed, this contention simply repackages a failed argument Amalgamated's counsel lodged against MissPERS in *Diamond Foods*.  In that case, the court swiftly rejected the notion that MissPERS was somehow inadequate because the OAG was charged with managing securities litigation for MissPERS under state statute and, in fact, recognized that the OAG's resources further supported its appointment.  *See Diamond Foods*, 281 F.R.D. at 412.[10]  Robbins Geller's rejected argument fares no better here.

---

[10] Mississippi's statutory provisions governing the OAG's authority share striking similarities to other states where state public pension funds are represented by state attorneys general and which are routinely appointed as preferred lead plaintiffs under the PSLRA.  *See, e.g.*, Ohio Rev. Code § 109.02 ("no state officer or board, or head of a department or institution of the state shall employ, or be represented by, [] counsel [other than the attorney general]").  Not surprisingly,

1        Here, neither Attorney General Hood, the OAG, nor MissPERS will serve as counsel for

2   the Class in this case.  Bernstein Litowitz is the only law firm that MissPERS selected to be

3   appointed lead counsel on behalf of the Class.  *See* ECF No. 39 at 11.  The day-to-day

4   responsibilities for prosecuting this case will be handled by Bernstein Litowitz with oversight from

5   a team of Special Assistant Attorneys General—not the Attorney General.  *See* Neville Decl. ¶3.

6   MissPERS has already certified and reaffirmed that it fully understands its duties under the PSLRA

7   and will litigate this case in the best interests of the class, just as it has done in every other case in

8   which it has served as lead plaintiff.  *See* ECF No. 40-1; Neville Decl. ¶16.  And at the end of this

9   case, the Court will oversee the distribution of any judgment and assess the adequacy of any

10  settlement, which will only be approved "after a hearing and on finding that it is fair, reasonable,

11  and adequate." Fed. R. Civ. P. 23(e)(2).  This alleviates any concern that MissPERS could possibly

12  be prosecuting this case for some speculative independent interest of the OAG, as opposed to those

13  of the Class.  *See* 5 MOORE'S FEDERAL PRACTICE - CIVIL § 23.25[2][b][vi] (2018).[11]

14       Amalgamated's counsel explicitly refuted the very "sole decider" argument that it attempts

15  to make here when serving as co-lead counsel in *Morgan Stanley,* correctly describing it as

16  "flawed" and "founded on a false distinction."  Stickney Decl., Ex. B at 31.  Robbins Geller's

17  endorsement of MissPERS' adequacy in *Morgan Stanley* is particularly significant given that the

18  OAG was then pursuing separate litigation against two parties that were originally named as

19  defendants and were the subject of discovery in *Morgan Stanley*.  *See* Stickney Decl., Ex. J ¶¶19-

20

21  Amalgamated does not cite a single case in which the purported conflict it alleges here disqualified
    a public pension fund from serving as lead plaintiff.

22  [11] Amalgamated's authority is entirely inapposite.  In *Dupont v. Wyly*, 61 F.R.D. 615, 621-24 (D.

23  Del. 1973)—an out-of-Circuit district court case decided 45 years ago—an individual plaintiff

24  seeking to serve as a class representative had also filed a multiplicity of claims against a defendant
    with insufficient assets to resolve the matters.  Here, the OAG has not filed any claims against

25  Facebook (except for seeking to serve as lead plaintiff in this case) and Facebook is a solvent
    defendant.  The alleged conflicts in *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010), where

26  the Ninth Circuit found that a class action settlement did not release the claims of class members
    in an entirely different case, and *In re Internap Network Services Corp. Sec. Litig.*, 2012 WL

27  12878579, at *6 (N.D. Ga. Aug. 23, 2012), where the plaintiffs had retention agreements with five
    different law firms, three of which were not approved by the court to serve as counsel, are simply

28  not at issue here.

21, Ex. K at 14, Ex. L.   Virtually every court to consider the issue—including those in this District—has ruled that the involvement of the OAG **benefits** the Class, and no court has penalized MissPERS for having the resources of the OAG at its disposal.   *See Diamond Foods*, 281 F.R.D. at 412 (appointing MissPERS over objections that OAG will be managing litigation and explaining that the OAG's resources further support MissPERS' appointment).

Taken to its logical conclusion, Amalgamated's argument would preclude every pension fund represented by a state Attorney General from pursuing a securities class action against a company while, at the same time, pursuing (or even considering pursuing) a separate investigation into the defendants, regardless of the subject matter.   Such a position not only contradicts prior arguments made by Amalgamated's counsel as they relate to MissPERS, but also the multitude of matters in which this scenario has in fact occurred, such as *Merck*.   It is also incompatible with courts that have repeatedly recognized the benefits of the involvement of state Attorneys General in securities class actions prosecuted under the PSLRA, and the historical practices of state Attorneys General in antitrust, consumer, and securities class action litigation across the country.[12] The very purpose of the PSLRA's lead plaintiff provisions would be undermined if courts presumed that some of the nation's largest and most sophisticated pension funds were disqualified simply because their state's Attorney General manages their participation in litigation.

Amalgamated's and its counsel's contentions of purported conflicts and divided loyalties ring particularly hollow because of their involvement in other litigation against Facebook.   While Amalgamated wrongly accuses the OAG of having access to non-public information relating to this case, Robbins Geller currently serves as lead counsel in a certified class action on behalf of Facebook users in *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747-JD (N.D. Cal.) ("User Privacy Case").   In the Facebook User Privacy Case, Robbins Geller obtained discovery relating to what appears to be the same data policy at issue in this Action.   *See*

---

[12] *See also In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.) ($6.2 billion recovery achieved by New York State Common Retirement Fund ("CRF"), while the New York Attorney General as legal advisor to CRF resolved independently prosecuted claims).   *See* Stickney Decl., Ex. M; New York Consolidated Laws, Retirement and Social Security Law § 14.

Stickney Decl., Ex. N at 16, Ex. O.  Further, Amalgamated is currently serving as lead plaintiff in a breach of duty action against Facebook and Defendant Zuckerberg relating to Facebook's reclassification of stock.  *See In re Facebook, Inc. Class C Reclassification Litig.*, C.A. No. 12286-VCL (Del. Ch.).[13]  If the roles of Robbins Geller and Amalgamated in those actual cases do not preclude their appointment here, then neither can hypothetical discovery into hypothetical matters that the OAG may pursue someday in the future.[14]

**C.      MissPERS And Its Counsel Fully Disclosed All Information Required By The PSLRA And The Local Rules**

Recognizing MissPERS' entitlement to appointment as lead plaintiff, Amalgamated claims that MissPERS "withheld its financial interest" in this case. ECF No. 47 at 12.  This contention is baseless.  As required by the PSLRA, MissPERS identified all of its transactions in Facebook stock during the broadest possible period, demonstrating the superiority of its financial interest.  *See* ECF No. 40-1; 15 U.S.C. § 78u-4(a)(2)(A)(iv).[15]

Amalgamated's claim that MissPERS failed to comply with Civil Local Rule 3-7(c) is wrong.  MissPERS certified that it reviewed a complaint filed in the action (*see* ECF No. 40-1) and specified the allegations it adopts or intends to assert (*see* ECF No. 39 at 3-5); *see also* Neville Decl. ¶4 (adopting allegations).  Similarly, MissPERS' counsel complied with Civil Local Rule 3-

---

[13] While the underlying claims regarding Facebook's reclassification of stock have been resolved, Amalgamated is currently actively litigating a dispute with Facebook concerning its counsel's request for $129 million in attorneys' fees.  *See* Stickney Decl., Ex. P at 4, 15.

[14] Amalgamated's attempt to impugn the OAG's integrity by citing a partisan blog and mischaracterizing the OAG's role in prosecuting claims arising out of the opioid crisis and in seeking restitution for victims of Hurricane Katrina does not remotely establish a conflict, certainly does not constitute "proof" under the PSRLA, and should be rejected out of hand.

[15] Amalgamated neither submitted its loss under the prevailing last-in, first-out ("LIFO") accounting methodology nor included sufficient information with its motion for the parties to calculate its LIFO loss because Amalgamated withheld information relating to two sales of Facebook stock executed in April 2018.  *See* Stickney Decl., Ex. Q; *McGee v. Am. Oriental Bioengineering, Inc.*, 2012 WL 12895668, at *4 (C.D. Cal. Oct. 16, 2012) ("This Court agrees with this majority of courts that LIFO is the most appropriate technique for approximating which investor suffered the greatest losses").  As such, Amalgamated's case, *In re Atlantic Power Corp. Securities Litigation*, 2014 WL 12628589, at *1 n.1 (D. Mass. Mar. 31, 2014), if anything, supports MissPERS.

7(d) as "[e]ach lawyer seeking to serve as class counsel" in this case filed the necessary certification stating that they do not have a beneficial interest in Facebook stock in accounts for which they make investment decisions. *See* ECF Nos. 41-42. Moreover, any deficiencies in certifications are insufficient to rebut the strong presumption entitling MissPERS to appointment as lead plaintiff. *See GGCC, LLC v. Dynamic Ledger Solutions, Inc.*, 2018 WL 1388488, at *5 (N.D. Cal. Mar. 16, 2018) ("any deficiencies in [] certification [under Civil Local Rule 3-7(c)] . . . are not a 'determinative factor' in selecting the lead plaintiff").

MissPERS has acted with full transparency in this case and, as set forth in the Neville Declaration, has reaffirmed its commitment to fulfilling all the fiduciary obligations it will assume if appointed as lead plaintiff.[16] As courts in this District and across the country have repeatedly recognized—and the over $3.5 billion in recoveries that MissPERS has achieved for investors demonstrate—MissPERS will serve as an excellent steward of the Class.

## **CONCLUSION**

For the reasons discussed above, MissPERS respectfully requests that the Court appoint it lead plaintiff, approve its selection of Bernstein Litowitz as lead counsel for the Class, consolidate all related actions, and grant such other relief as the Court may deem just and proper.

---

[16] Amalgamated wrongly suggests in a footnote that MissPERS was remiss in not informing the Court about a dispute between its counsel, Bernstein Litowitz, and a former employee. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 136 (2d Cir. 2016). Amalgamated is wrong that this dispute has any bearing on the pending motions, or that MissPERS was required to disclose it. The Second Circuit explained that the allegations in that case "are exactly that—simply allegations, the truth of which has not been proven." *Id*. Moreover, at the time the former employee voluntarily dismissed his complaint, he acknowledged that his allegations faced insurmountable factual and legal challenges. *See* Stickney Decl., Ex. R. Another court held that these allegations had no bearing on MissPERS' adequacy. *See* Stickney Decl., Ex. F (appointing MissPERS as lead plaintiff). Moreover, if Amalgamated truly believed this disclosure was required, it would have apprised the Court that its chosen counsel, Robbins Geller, has repeatedly violated Rule 11 by engaging in "repeated misconduct," making "fundamental misrepresentations to the court," and filing frivolous lawsuits. *See City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 182-83 (N.D. Ill. 2014) (sanctions ordered given that "this is not the first instance where Robbins Geller has engaged in similar misconduct"); *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, 2014 WL 1847833, at *5, *8 (N.D. Ill. May 8, 2014) ("Rule 11 sanctions are appropriate because the original complaint was frivolous").

---

1   Dated:  June 11, 2018                      Respectfully submitted,

2                                              **BERNSTEIN LITOWITZ BERGER**
                                               **& GROSSMANN LLP**
3

4                                              */s/ David R. Stickney*
                                               DAVID R. STICKNEY
5                                              David R. Stickney (Bar No. 188574)
                                               davids@blbglaw.com
6                                              12481 High Bluff Drive, Suite 300
                                               San Diego, California 92130
7                                              Telephone: (858) 793-0070
                                               Facsimile: (858) 793-0323

8                                                      -and-

9                                              AVI JOSEFSON
                                               avi@blbglaw.com
10                                             1251 Avenue of the Americas, 44th Floor
                                               New York, New York 10020
11                                             Telephone: (212) 554-1493
                                               Facsimile: (212) 554-1444
12

13                                             *Counsel for Proposed Lead Plaintiff the Public*
                                               *Employees' Retirement System of Mississippi*
14                                             *and Proposed Lead Counsel for the Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

*/s/ David R. Stickney*
DAVID R. STICKNEY
David R. Stickney (Bar No. 188574)
davids@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Proposed Lead Plaintiff the Public Employees' Retirement System of Mississippi and Proposed Lead Counsel for the Class*