# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x
In re MORGAN STANLEY MORTGAGE　:　　Civil Action No. 1:09-cv-02137-LTS-SN
PASS-THROUGH CERTIFICATES　　　:
LITIGATION　　　　　　　　　　　　　:　　CLASS ACTION
—————————————————————　　:
　　　　　　　　　　　　　　　　　　　:
This Document Relates To:　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　ALL ACTIONS.　　　　　　　　　　:
—————————————————————— x

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS REPRESENTATIVES AND CO-CLASS COUNSEL

**[REDACTED VERSION]**

847205_1

Case 5:09-cv-02125-EJD   Document 521   Filed 06/10/13   Page 2 of 40

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.    ARGUMENT .....................................................................................................3

    A.    This Case Meets the Requirements of Rule 23(a) ...................................4

        1.    The Class Is Numerous ................................................................4

        2.    There Are Questions of Law and Fact Common to the Class.....................6

        3.    Plaintiffs' Claims Are Typical of the Class ...............................10

        4.    Plaintiffs Are Adequate............................................................14

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ................................17

        1.    Common Questions of Law and Fact Predominate ...................17

        2.    A Class Action Is Superior ......................................................23

III.    CONCLUSION.................................................................................................25

847205_1

# TABLE OF AUTHORITIES

Page

## CASES

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
No. 03-cv-1519 (AET), 2007 U.S. Dist. LEXIS 5410
(D.N.J. Jan. 22, 2007) ..................................................................................16

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
___ U.S. ___, 133 S. Ct. 1184 (2013) ..........................................................21

*Banyai v. Mazur*,
205 F.R.D. 160 (S.D.N.Y. 2002) ....................................................................4

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
269 F.R.D. 340 (S.D.N.Y. 2010) ..................................................................24

*Berkley v. United States*,
45 Fed. Cl. 224 (1999) ..................................................................................24

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ......................................................................................17

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012) ...........................................................13

*In re Constar Int'l Inc. Sec. Litig.*,
585 F.3d 774 (3d Cir. 2009) ................................................................4, 21, 22

*In re Dynex Capital Sec. Litig.*,
No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484
(S.D.N.Y. Mar. 7, 2011) ........................................................................ *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918
(S.D.N.Y. July 27, 2007) ..............................................................................24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ......................................................................10, 14

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ............................................................ *passim*

- ii -

Page

*In re: Lehman Bros. Sec. & ERISA Litig.*,
No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999
(S.D.N.Y. Jan. 23, 2013)................................................................................22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953
(S.D.N.Y. Dec. 23, 2009)................................................................................13

*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
MDL No. 1658 (SRC), 2013 U.S. Dist. LEXIS 13511
(D.N.J. Jan. 30, 2013)....................................................................................15

*In re Micron Techs, Inc.*,
247 F.R.D. 627 (D. Idaho 2007) ....................................................................16

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
No. 09 Civ. 2137 (LTS)(MHD), 2013 U.S. Dist. LEXIS 5285
(S.D.N.Y. Jan. 11, 2013)............................................................................9, 18

*In re Pfizer Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................6

*In re Schering-Plough Corp.*,
No. 8-397 (DMC)(JAD), 2012 U.S. Dist. LEXIS 138078
(D.N.J. Sept. 25, 2012) ..................................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................4, 10, 14

*In re Wash. Mut., Inc.*,
No. 2:08-md-1919 MJP, 2010 U.S. Dist. LEXIS 142992
(W.D. Wash. Oct. 12, 2010) ..........................................................................16

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972)...........................................................................6

*Kottler v. Deutsche Bank AG*,
No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590
(S.D.N.Y. Mar. 29, 2010) ..............................................................................10

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ...................................................................22

Page

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..................................................................................6

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993) ............................................................................3

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)............................................................................22

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
No. 08 Civ 5653 (PAC), 2011 U.S. Dist. LEXIS 92597
(S.D.N.Y. Aug. 16, 2011) .............................................................................3, 6, 18

*N.J. Carpenters Health Fund. v. Residential Capital, LLC*,
272 F.R.D. 160 (S.D.N.Y. 2011) .........................................................................13

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
288 F.R.D. 290 (S.D.N.Y. 2013) ...........................................................................5

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
No. 08 CV 8781 (HB), 2012 U.S. Dist. LEXIS 148865
(S.D.N.Y. Oct. 15, 2012) ...............................................................................3, 5, 18, 23

*NECA-IBEW Health & Welfare Fund. v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012), *cert. denied*,
*Goldman, Sachs & Co. v. NECA-IBEW Health & Welfare Fund*,
___ U.S. ___, 133 S. Ct. 1624 (2013)..............................................................13, 18

*Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
280 F.R.D. 130 (S.D.N.Y. 2012) ...................................................................*passim*

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................................*passim*

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)..............................................................................5, 10

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..................................................................................21

*Seijas v. Republic of Arg.*,
606 F.3d 53 (2d Cir. 2010)..............................................................................13, 22

847205_1

Page

*Tsereteli v. Residential*,
   283 F.R.D. 199 (S.D.N.Y. 2012) ................................................................. *passim*

*Wal-Mart Stores, Inc. v. Dukes*,
   ___ U.S. ___, 131 S. Ct. 2541 (2011) ..............................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77k....................................................................................................17
   §77k(e)................................................................................................22
   §77l(a)(2)............................................................................................17
   §77l(b)................................................................................................22

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................... *passim*
   Rule 23(a)...................................................................3, 4, 14, 25
   Rule 23(a)(2)........................................................................................6
   Rule 23(a)(4)......................................................................................14
   Rule 23(b) ...........................................................................................3
   Rule 23(b)(3).....................................................................17, 23, 25
   Rule 23(b)(3)(A)-(D)........................................................................24
   Rule 30(b)(6).......................................................................................8

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995)
   *reprinted in* 1995 U.S.C.C.A.N. 730 .............................................................17

J. William Hicks, 17 *Civil Liabilities: Enforcement & Litigation Under the 1933 Act*
   §4:43 (2013)............................................................................................18

## I.    INTRODUCTION

Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") and Named Plaintiffs NECA-IBEW Health and Welfare Fund ("NECA"), Pompano Beach Police and Firefighters' Retirement System ("Pompano"), and Carpenters Pension Fund of West Virginia ("West Virginia") (collectively, "Plaintiffs") respectfully request that the Court: (1) certify a class of all persons or entities who acquired the Mortgage Pass-Through Certificates issued by Morgan Stanley Capital I Inc. ("MSC") through any of the 13 offerings set forth in Exhibit 1 (the "Offerings");[1] (2) appoint Plaintiffs as Class Representatives; and (3) appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Class Counsel.

Defendants offered and sold approximately $8 billion of Mortgage Pass-Through Certificates (the "Certificates") to Plaintiffs and the proposed Class.[2]  Each Certificate was secured by a pool of residential mortgage loans that defendants purchased from a core group of common loan Originators. Defendants sold the Certificates through the same registration statement and uniform prospectuses and prospectus supplements ("Offering Documents") that contained essentially identical misrepresentations about the quality of the loans and the underwriting of those loans.  All of the Certificates were issued under the same Offering Documents, and were created, offered, and sold by the same Morgan Stanley personnel and entities using the same procedures and policies.

---

[1]    Unless otherwise noted, all "Exhibit" or "Ex." references are to the Declaration of Daniel S. Drosman in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Class Counsel, filed herewith.

[2]    Defendants refers to (1) Morgan Stanley; (2) Morgan Stanley Mortgage Capital Inc. ("MSMCI"); (3) Morgan Stanley Mortgage Capital Holdings LLC ("MSMCH") (MSMCI and MSMCH are collectively referred to herein as "MSMC"); (4) MSC; (5) Morgan Stanley & Co. Incorporated ("MS&Co"); and (6) individuals David R. Warren, Anthony B. Tufariello, William J. Forsell and Steven S. Stern (collectively, "Individual Defendants").

This case is perfectly suited for certification under Federal Rule of Civil Procedure 23 ("Rule 23") because all of Rule 23's requirements are met:

- **Numerosity** is established easily as there are at least 1,667 investors in the Class.[3]

- **Commonality** also is readily satisfied because (1) defendants used identical procedures, personnel, and entities to bring the 13 Offerings to market; (2) the Offerings were backed by loans originated by the same core group of common lenders; and (3) the Offering Documents for each Offering contained essentially the same false representations about the underwriting and purchasing standards used to originate and acquire the underlying loans, the appraisal standards used to value the mortgaged properties, and the resultant loan-to-value ratios ("LTVs"). *See* ¶¶4-5, 36-99.[4] These similarities across the Offerings, along with the fact that damages can be calculated Class-wide using the proscribed statutory method, are issues of fact and law common to the Class.

- **Predominance** is met because Plaintiffs will establish through common proof that defendants' systematic disregard of underwriting standards, coupled with the systemic flaws in Morgan Stanley's securitization process, infected uniformly all 13 Offerings and led to the common misrepresentations and omissions contained in the Offering Documents that accompanied the sale of each Offering. *See, e.g.*, *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) ("*IndyMac*") (granting class certification across 10 offerings in a mortgage-backed securities ("MBS") class action); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 offerings).

- **Adequacy** and **typicality** are satisfied because (1) Plaintiffs and the Class assert identical claims under §§11, 12 and 15 of the Securities Act of 1933 ("Securities Act") arising from the same course of events; and (2) Plaintiffs have no conflict with the Class, have been actively monitoring and supervising this action, and have retained experienced counsel with proven track records in securities class actions like this one. Moreover, courts in this district have previously appointed MissPERS as class representative in two residential mortgage-backed securities ("RMBS") actions.

- **Superiority** is satisfied because a class action is superior to any other method for adjudicating this controversy as multiple lawsuits would be costly – in many cases

---

[3] *See* Expert Report of Joseph R. Mason, Ph.D., dated August 30, 2013 ("Mason Report"), filed herewith, ¶102. The investor count includes unique investors identified by the Bank of New York Mellon Corporation ("BNY") and assumes no duplicates between BNY's data and investor information provided by Morgan Stanley and other third parties. *See* Mason Report, ¶102.

[4] Unless otherwise noted, references to "¶_" or "¶¶_" are to the Fourth Amended Complaint for Violations of the Federal Securities Laws (ECF No. 177) ("FAC").

cost-prohibitive – and inefficient, and no manageability issues arise from allowing this case to proceed in this forum.

Accordingly, the requirements of Rule 23 are satisfied. Plaintiffs request that the Court certify the following Class:

> All persons or entities who, prior to December 2, 2008, purchased or otherwise acquired any of the 13 mortgage-backed securities (collectively, the "Certificates") set forth in Exhibit 1 and were damaged thereby.[5]

This case is the latest of six cases in this Circuit, all decided in the last two years, in which courts certified classes of RMBS investors pursuing claims under the Securities Act.[6] Here, too, the requirements of Rule 23 are readily met.

## II.  ARGUMENT

Class certification is appropriate where plaintiffs satisfy the four elements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). An action must also meet the "predomina[nce]" and "superior[ity]" requirements of Rule 23(b).

"[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation . . . and has explicitly noted its preference for class certification in securities cases." *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y.

---

[5]  Excluded from the proposed Class are defendants, originators of any loans underlying the Certificates ("Originators"), such entities' successors and assigns, and the directors and officers of such entities at all relevant times, as well as members of such persons' immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any excluded party has or had a controlling interest.

[6]  *See Merrill Lynch*, 277 F.R.D. at 121; *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011) ("*DLJ Mortgage*"); *Tsereteli v. Residential*, 283 F.R.D. 199 (S.D.N.Y. 2012) ("*Tsereteli*"); *Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130 (S.D.N.Y. 2012) ("*Goldman*"); *IndyMac*, 286 F.R.D. 226; *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2012 U.S. Dist. LEXIS 148865 (S.D.N.Y. Oct. 15, 2012) ("*RALI II*"); *see also In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 5:09-cv-01376-LHK, ECF No. 473, Final Judgment and Order of Dismissal with Prejudice (N.D. Cal. Nov. 14, 2011) (certifying settlement class across 28 offerings).

1993).   Courts in this District routinely certify class actions asserting claims under §11 of the Securities Act, and MBS class actions are no exception to this trend.  *See, e.g.*, *IndyMac*, 286 F.R.D. at 234 ("Previous instances of [§11] claims readily have been found to meet the requirements of commonality, typicality, and adequacy of representation."); *Goldman*, 280 F.R.D. 130; *Merrill Lynch*, 277 F.R.D. 97.   Sections 11 and 12(a)(2) claims are particularly well-suited for class certification.   The "formulaic nature of §11 leaves defendants with little room to maneuver" at the class certification stage.  *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 784-85 (3d Cir. 2009).

Here, Plaintiffs easily meet their burden of establishing that this action should be certified as a class action.  Plaintiffs' evidence includes the accompanying expert report of Joseph R. Mason, Ph.D., public documents and testimony, Morgan Stanley's discovery responses and testimony of its corporate representative in this case, documents produced by Morgan Stanley and third parties in this case and in related litigations, and the supporting declaration of Co-Lead Counsel.

## A.    This Case Meets the Requirements of Rule 23(a)

### 1.    The Class Is Numerous

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity exists where "the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).  The precise quantification of class members is unnecessary "'because a court may make common sense assumptions regarding numerosity.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).[7]

All courts to consider the issue have determined that numerosity is satisfied in MBS class actions.  *See, e.g.*, *Goldman*, 280 F.R.D. at 134; *Merrill Lynch*, 277 F.R.D. at 104-05; *IndyMac*, 286

---

[7]    Unless otherwise noted, internal citations are omitted and emphasis is added.

F.R.D. at 233; *In re Dynex Capital Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484, at *4-*5 (S.D.N.Y. Mar. 7, 2011).  Notably, an MBS class action is properly certified "even where certain sub-groups of that class do not meet the presumptive 40-member requirement."[8]

Here, using a conservative method of counting investors, the proposed Class contains **at least** 1,667 members.[9]  Further, investors in the Offerings are geographically dispersed institutions and individuals with a wide range in the size of transactions, from $25,000 to hundreds of millions of dollars.  *See* Mason Report, ¶104; *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members . . . .").  The joinder of this vast number of investors would be impractical.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of even 100 sophisticated investors' claims would be impractical).  Certification therefore promotes judicial economy and uniformity of decision regarding Class members' claims.

---

[8]   *IndyMac*, 286 F.R.D. at 232 (finding numerosity where two of ten offerings had fewer than 40 purchasers); *see also Merrill Lynch*, 277 F.R.D. at 104-05 (finding numerosity where one of 18 offerings had fewer than 40); *RALI II*, 2012 U.S. Dist. LEXIS 148865, at *13 n.1 ("I disagree with RALI Defendants, who argue that numerosity can no longer be established with respect to RALI 2007-QH4 subclass which has only 22 putative members.  The courts in this district have concluded that a class may be certified even if certain sub-classes do not meet the presumptive 40-member requirement."); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013) (same); *Tsereteli*, 283 F.R.D. at 206.

[9]   *See* Mason Report, ¶¶102-103.  Discovery continues from large institutional clearing firms and may significantly increase the numbers of unique investors. *Id.*, ¶102. Specifically, as this Court is aware, after defendants refused to stipulate to numerosity for any of the Offerings, Plaintiffs submitted a letter seeking an order compelling BNY to produce unredacted "trade runs."  To date, BNY has produced information showing the number of unique investors in each deal, but has refused to produce information regarding investor identity that would allow Plaintiffs to ensure that investors are not being double-counted across deals.  As Dr. Mason's report details, while some duplicates may exist between the BNY data and the other numerosity data, the overwhelming likelihood is that there are greater than 40 investors in each deal.  The parties have agreed that Plaintiffs may submit any additional information provided by BNY that, if they do, defendants may file a brief for the limited purpose of responding to any such new information.

### 2.     There Are Questions of Law and Fact Common to the Class

Commonality requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Courts liberally construe this requirement, which demands only that plaintiffs' and class members' claims "share a common question of law or of fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2556 (2011) ("'Even a single [common] question' will do.").  This standard "does not 'mandate that all class members make identical claims and arguments.'" *Tsereteli*, 283 F.R.D. at 206.  Rather, the commonality requirement is satisfied "'where putative class members have been injured by similar material misrepresentations and omissions.'" *Goldman*, 280 F.R.D. at 134.

In the Second Circuit, commonality is "plainly satisfied [where] the alleged misrepresentations in the prospectus relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972); *see also In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).  Commonality is satisfied where, as here, "[t]he members of the proposed class were all allegedly damaged by the same alleged misstatements and omissions in the Offering Documents, which related to the Certificates that all of the members of the proposed class purchased."  *DLJ Mortgage*, 2011 U.S. Dist. LEXIS 92597, at *7.[10]  Both the "'existence and materiality of such misrepresentations obviously present important common issues.'" *Tsereteli*, 283 F.R.D. at 206.

---

[10]    *See, e.g.*, *Dynex*, 2011 U.S. Dist. LEXIS 22484, at *6 (finding commonality for mortgage-backed bonds collateralized by impaired mortgages, because class members "are alleged to have been impacted by the *same* misrepresentations and omissions") (emphasis in original).

- 6 -

Here, the Offering Documents uniformly misrepresented MSMC's loan purchasing standards and the underwriting standards used to originate the loans underlying all 13 Offerings. *See* ¶¶36-82. The Offering Documents represented that MSMC purchased or originated loans pursuant to prudent standards, which were specifically calculated to evaluate each borrower's credit standing and ability to repay their loan. *See* ¶38; *see, e.g.*, Ex. 2 at MS_PT_00042411. For example, the Registration Statement and ***all 13*** Prospectus Supplements represented that MSMC had purchased or originated the loans pursuant to the following guidelines:

> Based on the data provided in the application and certain verification (if required), a determination is made by the original lender that the mortgagor's monthly income (if required to be stated) will be sufficient to enable the mortgagor to meet its monthly obligations on the mortgage loan and other expenses related to the property such as property taxes, utility costs, standard hazard insurance and other fixed obligations other than housing expenses.

¶38.

This statement was false because neither MSMC nor the Originators of the loans determined whether borrowers could afford to repay their loans. *See* ¶¶38-46. Instead, MSMC routinely purchased or originated loans that were made regardless of the borrower's ability to repay, and borrowers frequently were approved for loans that they could not possibly repay. ¶39. MSMC also consistently acquired loans where the Originator had failed to determine that the borrower's monthly income would be sufficient to enable him or her to make the required monthly payments. *Id.* Furthermore, MSMC's purported purchasing standards omitted the fact that: (1) many Originators had aggressively implemented policies designed to extend mortgages to unworthy borrowers; and (2) many of the loans purchased by MSMC were extended to borrowers who had wrongly altered or failed to submit the required documentation with their loan applications. *See* ¶¶44-45.

The Offering Documents also included similar misstatements about the lending practices of particular Originators that acted as "bulk" loan-feeders to MSMC. *See* ¶¶48-97. For example, the

- 7 -

Offering Documents contained practically identical misstatements about the underwriting standards employed by certain bulk loan Originators, including: (1) American Home Mortgage Corp.; (2) First National Bank of Nevada; (3) GreenPoint Mortgage Funding, Inc.; (4) Wachovia Mortgage Corp.; and (5) Morgan Stanley Credit Corp. ("MSCC"). *See* ¶¶48-97; *see also* Table 2; Ex. 2 at MS_PT_00042413-16. ████████████████████

████████████████████████████████████████████████

The Offering Documents contained additional misrepresentations regarding the appraisals of the properties securing the loans that MSMC purchased or originated. *See* ¶¶83-97. Specifically, the March 14, 2006 amendment to the Registration Statement and *all 13* Prospectus Supplements stated:

> The adequacy of the mortgaged property as security for repayment of the related mortgage loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure guidelines for appraisals established by or acceptable to the originator. ***All appraisals conform to the Uniform Standards of Professional Appraisal Practice*** [("USPAP")] . . . . The appraisal procedure guidelines generally will have required the appraiser or an agent on its behalf to personally inspect the property and to verify whether the property was in good condition and that construction, if new, had been substantially completed. ***The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties*** and, when deemed applicable, an analysis based on income generated from the property or a replacement cost analysis based on the current cost of constructing or purchasing a similar property.

¶83. These representations were false and misleading because they failed to disclose that appraisals of properties securing the loans in the 13 Offerings were inflated, inaccurate and not in accordance with USPAP. *See* ¶¶89, 97. In fact, Morgan Stanley's Rule 30(b)(6) representative could not identify a *single* step Morgan Stanley had taken to confirm that the appraisals conformed to USPAP standards. *See* Ex. 3 at 242:11-243:9. As a result, the Offering Documents misstated the reported LTVs, which masked the Certificates' true risk profile and damaged the Class. *See* ¶¶98-99.

Accordingly, Plaintiffs' and proposed Class members' claims arise out of similar misstatements and omissions, raising a host of common questions, such as:

1.  Whether defendants violated the Securities Act by the acts and conduct alleged in the FAC;

2.  Whether defendants made materially false and misleading statements in the Offering Documents regarding MSMC's and the Originators' loan purchasing and underwriting standards;

3.  Whether MSMC and the Originators systematically abandoned the loan purchasing and underwriting standards;

4.  Whether the Offering Documents misstated or omitted material information about the appraisal standards and LTVs for loans purchased and originated by MSMC and Originators;

5.  Whether Individual Defendants were control persons of issuer MSMC;

6.  Whether Plaintiffs' and Class members' claims are subject to common affirmative defenses; and

7.  Whether the Class sustained damages and the appropriate measure thereof.

These questions are illustrative rather than exhaustive, but establish the commonality required by Rule 23. As the Court explained when it found that MissPERS has standing to assert claims for all Offerings, the allegations that Plaintiffs and proposed Class members "suffered injury because MSMC, in its capacity as a loan purchaser, misrepresented its compliance with its stated purchasing guidelines . . . 'implicate[] the same set of concerns'" across all of the Offerings. *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137 (LTS)(MHD), 2013 U.S. Dist. LEXIS 5285, at *11-*12 (S.D.N.Y. Jan. 11, 2013). Thus, "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers." *Merrill Lynch*, 277 F.R.D. at 106. This is especially true given that all of the Offerings at issue emanate from the same investment bank and were structured, offered, and sold by the same entities and personnel. *Id.*

- 9 -

### 3.      Plaintiffs' Claims Are Typical of the Class

"'While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions.'" *Vivendi*, 242 F.R.D. at 84-85.  To establish typicality, Plaintiffs must show that "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  The typicality requirement is not demanding and the focus "is not on the [plaintiff's] behavior, but rather on the [defendants'] actions." *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590, at *6 (S.D.N.Y. Mar. 29, 2010).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

Here, typicality is established because Plaintiffs and Class members assert identical legal theories arising from the same course of conduct by defendants: namely, defendants' systematic acquisition and securitization of shoddy loans and the Offering Documents' misstatements about the resultant Certificates.  *See IndyMac*, 286 F.R.D. at 235 ("'[A] common course of conduct and a unitary legal theory for the entire class period' is alleged, namely that the Offering Documents contain materially misleading statements or omissions, and commonality, typicality, and adequacy of representation are satisfied."); *Dynex*, 2011 U.S. Dist. LEXIS 22484, at *8-*9 (finding claims to be typical because legal theories and proof would be the same for claims alleging violations of underwriting and origination guidelines in the offerings).

The nature of MBS generally and the Offerings specifically is that each Certificate within an Offering represents a claim on cash flows from the underlying loans.  *See* Mason Report, ¶83.  Thus,

cash flows to all Certificates in each Offering are based on the performance of those underlying loans. *See id.*, ¶88. Therefore, to the extent that there are false statements or materially misleading omissions in the Offering Documents concerning the loans, all Certificates in each of the Offerings will be similarly and adversely affected. *See id.*; *Merrill Lynch*, 277 F.R.D. at 101 (holding that an MBS class action "depends, more than anything else, on establishing that certain statements and omissions common to all offerings were material misrepresentations").

Each plaintiff's claim is typical for purchasers in all Offerings. All of the Offerings were assembled by the same Morgan Stanley securitization platform using nearly identical processes and personnel, including the same sponsor, depositor and underwriter. *See* ¶¶19-20; Ex. 3 at 63:5-65:25; 71:13-72:9; 80:22-81:14; 115:11-116:24; 189:19-193:17; 196:3-200:20; 203:19-25; 206:11-20; 216:23-217:7. Additionally, the Offerings contain loans from many of the same Originators. Each of the 13 Offerings contained loans that MSMC originated or purchased. Each of the 13 Offerings also contained loans originated by 17 common Originators, which collectively accounted for more than 24% of the total loans underlying the Offerings. *See* Table 1. And another 17 common Originators contributed loans to 12 of the 13 Offerings. *Id.* Of the 235 Originators across the 13 Offerings, 190 are in the five deals purchased by Plaintiffs, accounting for 97.2% of the total loan amounts. *See* Charts 1A-1B. Moreover, all of the Offering Documents contained substantially similar untrue representations and omissions concerning underwriting, appraisal, and loan purchase practices, which resulted in similar undisclosed operational risks affecting all the Offerings. *See generally*, Mason Report, ¶¶89-92. As all Class members' claims arise from "the same course of

- 11 -

events" and each Class member will make "similar legal arguments to prove [defendants'] liability," typicality here, as with six prior MBS class actions, is readily established.[11]

The fact that systemic failure at various stages of the securitization process caused the material misrepresentations in the Offering Documents further shows that Plaintiffs' claims arise from the same course of events.  *See* ¶¶40-99; *see generally*, Ex. 5 at MS_0048498-511.  For example, an Internal Audit Report of the Residential Mortgage Conduit business in Boca Raton – the business unit that "was part of the Morgan Stanley Home Loan business (MSHL) within the Securitized Product Group (SPG)," which "reviewed, funded and managed post-acquisition the U.S. residential mortgages bought from either ***the conduit channel*** . . . or the ***bulk channel***" – rated the business unit as "Unsatisfactory."  *See* Ex. 5 at MS_00048498; *see also* Ex. 3 at 263:6-11; 276:19-277:18.  Furthermore, "[t]he review focused on identifying and assessing the major risks associated with Residential Finance Principal Transactions and Mortgage Conduit, which was risk assessed as High prior to the audit."  Ex. 5 at MS_00048499.

Morgan Stanley's Counterparty Risk Management Team, which was "responsible for reviewing and approving conduit loan sellers" and ensuring that loan seller's policies and procedures accounted for borrowers' affordability during the origination process, was not independent from the business unit, resulting in excessive risk.  *See* Ex. 3 at 232:4-233:15; Ex. 5 at MS_00048502.  In addition, the internal audit questioned the effectiveness of the due diligence team, which was supposed to detect borrower misrepresentations and verify creditworthiness.  *See* Ex. 5 at MS_00048504-05.  Consequently, the false and misleading statements about MSMC's loan purchasing standards, which were included in ***all*** of the Offering Documents, artificially and

---

[11]   *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 106; *Goldman*, 280 F.R.D. at 135; *IndyMac*, 286 F.R.D. at 235; *see also Dynex*, 2011 U.S. Dist. LEXIS 22484, at *8-*9.

substantially inflated the credit quality of the Certificates' underlying loans, and hence the value of the Certificates, in a uniform manner. *See* ¶¶38-39.

Any "'minor variations'" in the claims do not defeat typicality. *Merrill Lynch*, 277 F.R.D. at 106. The fact that Plaintiffs and the Class have purchased different tranches is immaterial. *See In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 778 (S.D.N.Y. 2012). Nor do "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities . . . destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *32 (S.D.N.Y. Dec. 23, 2009). Any differences in damages between Plaintiffs and the Class also do not defeat typicality: the fact that "damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010); *Goldman*, 280 F.R.D. at 135-36; *N.J. Carpenters Health Fund. v. Residential Capital, LLC*, 272 F.R.D. 160, 167 (S.D.N.Y. 2011) ("*RALI I*"). Here, damages will be calculated pursuant to a statutory formula that is applicable to all investors. *IndyMac*, 286 F.R.D. at 235 n.69; Mason Report, ¶¶105-109.

The Second Circuit's *Goldman Sachs* decision supports typicality here. In *Goldman Sachs*, the court explained that MBS purchasers have class standing for additional offerings that are "backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates" because similar originators implicate "the same set of concerns." *NECA-IBEW Health & Welfare Fund. v. Goldman Sachs & Co.*, 693 F.3d 145, 148-49 (2d Cir. 2012) ("*Goldman Sachs*"), *cert. denied, Goldman, Sachs & Co. v. NECA-IBEW Health & Welfare Fund*, ___ U.S. ___, 133 S. Ct. 1624 (2013). Here, as this Court has recognized, Plaintiffs have class

- 13 -

standing to pursue the Offerings because each contains loans originated by one or more of the Originators. *Morgan Stanley*, 2013 U.S. Dist. LEXIS 5285, at *11-*12; Table 1; Charts 1A-1B. For distinct, but logically consistent reasons, Plaintiffs' claims are typical of those investors in all Offerings. Similar Originators, coupled with identical conduct by defendants across the Offerings, will require Plaintiffs and the Class to prove defendants' liability using "'the same course of events'" and "'similar legal arguments.'" *Flag Telecom*, 574 F.3d at 35.

### 4. Plaintiffs Are Adequate

Rule 23(a) requires Plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Flag Telecom*, 574 F.3d at 35. Adequacy is satisfied if "the proposed class representatives have no 'interests [that] are antagonistic to the interest of the other members of the class.'" *Vivendi*, 242 F.R.D. at 85. "In order to defeat a motion for [class] certification, [a conflict of interest] 'must be fundamental.'" *Flag Telecom*, 574 F.3d at 35.

No fundamental conflict exists here. Indeed, Plaintiffs' interests are directly aligned with the interests of Class members, as they all purchased Certificates pursuant to the same Registration Statement and have a common goal of proving the same false and misleading statements and omissions in the Offering Documents. *See IndyMac*, 286 F.R.D. at 235 ("The commonality, typicality, and adequacy requirements may be met in a securities class action based on something as simple as a commonly alleged 'disregard of underwriting guidelines.'"). As with typicality, the existence of multiple securities within and across offerings is irrelevant to adequacy because Plaintiffs "still [have] the incentive to negotiate a settlement for the highest amount of damages possible and any perverse incentives that may arise given the waterfall structure of the tranches are

merely speculative at this stage." *Goldman*, 280 F.R.D. at 136; *see Dynex*, 2011 U.S. Dist. LEXIS 22484, at *7 ("While investors' repayment rights may vary slightly based on the seniority of the tranches they purchased, this does not present a 'fundamental' conflict within the class.").

Each proposed class representative is unquestionably adequate. All of the Plaintiffs already have demonstrated their commitment to monitor and supervise the prosecution of this action on behalf of the Class. Plaintiffs have received and reviewed periodic updates and other documents concerning the litigation, and have reviewed pleadings and consulted with their counsel regarding significant developments. Plaintiffs also have responded to interrogatories, collected and produced documents, and appeared (or will appear) at depositions.

- **MissPERS**: Lead Plaintiff MissPERS is a governmental defined-benefit pension plan covering nearly all non-federal public employees in the State of Mississippi. MissPERS provides current benefits to over 75,000 retirees and future benefits to more than 250,000 current and former public employees. ¶14. MissPERS is a fiduciary for its beneficiaries. MissPERS purchased 1,325,000 face value of certificates in offering 2006-14SL at a price of 95.3750. *See* Ex. 6. MissPERS sold all of those certificates in September 2008 at a price of 24.5000. *See* Ex. 7. As it stated under penalty of perjury in the Certification it filed with its Second Amended Complaint in this action (ECF No. 84), MissPERS understands the duties and responsibilities of acting as a class representative in this action. MissPERS has been appointed class representative in class actions across the country, including in two recent RMBS class actions in this Circuit.[12]

- **NECA:** Plaintiff NECA is a not-for-profit jointly-trusteed employee welfare benefit fund that is established and maintained in accordance with the Taft-Hartley Act and the Employee Retirement Income Security Act. NECA has approximately 23,000 participants and beneficiaries. NECA purchased MSM 2006-7, Class 5A2 certificates, with a face value of $145,000 at 99.68% of par value. *See* Ex. 8. NECA continues to hold its Certificates. As NECA stated under penalty of perjury in the Certification it filed with its Second Amended Complaint in this action (ECF No. 84), NECA stands willing to serve as a representative party in this action, including providing testimony at deposition and trial, if necessary.

---

[12] *See Merrill Lynch*, 277 F.R.D. at 110; *Goldman*, 280 F.R.D. at 135-36; *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 30, 2013); *In re Schering-Plough Corp.*, No. 8-397 (DMC)(JAD), 2012 U.S. Dist. LEXIS 138078 (D.N.J. Sept. 25, 2012).

NECA has served as a lead plaintiff in two RMBS actions, including the seminal *Goldman Sachs* case.[13]

- **Pompano**:  Plaintiff Pompano is an institutional investor established to manage and administer pension and retirement benefits for current and former police and firefighters or their surviving dependents.  Pompano has more than 500 participants and beneficiaries.  Pompano purchased MSM 2006-15XS, Class A6B certificates, with a face value of $40,000 at 100% of par value.  *See* Ex. 9.  On September 4, 2008, Pompano sold its certificates at a price of 55.63% of par value.  *Id.*  As Pompano stated under penalty of perjury in the Certification it filed with its Second Amended Complaint in this action (ECF No. 84), Pompano stands willing to serve as a representative party in this action, including providing testimony at deposition and trial, if necessary.  Pompano has previously been appointed class representative in securities class actions throughout the country.[14]

- **West Virginia**:  Plaintiff West Virginia is an institutional investor established to manage and administer pension and retirement benefits for current and retired carpenters and contractors and their surviving dependents.  West Virginia purchased MSM 2006-11, Class 1A6 certificates, with a face value of $40,000 at 100% of par value, and MSM 2006-12XS, Class A6A certificates, with a face value of $25,000 at 100% of par value.  *See* Ex. 10.  On October 2, 2007, West Virginia sold its 2006-11 certificates at a price of 96% of par value and sold its 2006 12-XS certificates at a price of 95.5% of par value.  *Id.*  As West Virginia stated under penalty of perjury in the Certification it filed with its Second Amended Complaint in this action (ECF No. 84), West Virginia stands willing to serve as a representative party in this action, including providing testimony at deposition and trial, if necessary.  West Virginia has previously been appointed class representative in securities class actions throughout the country.[15]

Plaintiffs are the very type of institutional investors that Congress sought to lead securities litigation when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Congress enacted the PSLRA in large part to encourage institutional investors like Plaintiffs to take control of securities class actions by "participat[ing] in the litigation and exercis[ing] control over the selection

---

[13]  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., et al.*, No. 1:08-cv-10783 (S.D.N.Y.); *Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., et al.*, No. 08-cv-10446 (D. Mass.).

[14]  *See, e.g.*, *In re Wash. Mut., Inc.*, No. 2:08-md-1919 MJP, 2010 U.S. Dist. LEXIS 142992, (W.D. Wash. Oct. 12, 2010); *In re Citigroup Inc., et al*, No. 1:02-cv-5779 (S.D.N.Y.); *Fosbre v. Las Vegas Sands Corp.*, 2:10-cv-765 (D. Nev.); *In re Dollar Thrifty S'holder Litig.*, No. 5458-VCS (Del. Chancery).

[15]  *See, e.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-cv-1519 (AET), 2007 U.S. Dist. LEXIS 5410 (D.N.J. Jan. 22, 2007); *In re Micron Techs, Inc.*, 247 F.R.D. 627, 636 (D. Idaho 2007).

847205_1

and actions of plaintiff[s'] counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731.[16]

In addition, Plaintiffs' counsel are qualified and capable of prosecuting this action, having prosecuted securities class actions – including RMBS cases – for many years with proven track records of success. *See* Exs. 11-12.

### B.     The Requirements of Rule 23(b)(3) Are Satisfied

#### 1.     Common Questions of Law and Fact Predominate

Under Rule 23(b)(3), predominance exists where the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Goldman*, 280 F.R.D. at 136 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)) (internal quotations omitted). This standard "'does not require a plaintiff to show that there are no individual issues.'" *IndyMac*, 286 F.R.D. at 236. Rather, where, as here, "issues of liability are 'common to the class, common questions are held to predominate over individual questions." *Id.*; *see also Tsereteli*, 283 F.R.D. at 210.

To establish liability, Plaintiffs need prove **only** that defendants made materially false or misleading statements of fact in the Offering Documents. 15 U.S.C. §§77k, 77l(a)(2). Because these claims focus on the contents of the Offering Documents – **with no requirement to show reliance, knowledge or causation** – they are particularly cohesive and well-suited for class treatment. *See Goldman*, 280 F.R.D. at 136 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983), and acknowledging the limited showing needed to establish a *prima facie* case under §§11 and 12). Courts and commentators alike have recognized that, for Securities Act claims like those asserted here, "a court can usually find that common factual and legal issues will

---

[16]     In the event the Court declines to appoint one or more of the proposed class representatives, the others individually are amply qualified to represent the Class for the 13 Offerings. *Cf. Goldman*, 280 F.R.D. 130.

predominate." J. William Hicks, 17 *Civil Liabilities: Enforcement & Litigation Under the 1933 Act* §4:43 (2013) (citing cases).

Where Plaintiffs' *prima facie* case may be established through common proof of defendants' liability, predominance will be found.[17]  As Judge Rakoff explained in *Merrill Lynch*:

> While an analysis of the alleged falsity of the statements in the Offering Documents will of course entail some individualized inquiry, the common issues here overwhelm the individual ones.  To begin with . . . "[e]ach of the Certificates purchased by the Plaintiffs and the Class were created and issued pursuant to [the] same process by the same Defendants."  . . . ***The alleged flaws common to that process, which resulted in the misstatements, will be the subject of common proof***.

277 F.R.D. at 113.

The same is true here.  The predominant common question in this action is whether the Offering Documents contained material misstatements about MSMC's and Originators' loan purchasing, underwriting and appraisal standards.  ¶¶36-82.  The proof on these issues will be the same for Plaintiffs as it is for other Class members and will be mostly the same across all 13 Offerings.  *See Goldman Sachs*, 693 F.3d at 163 (recognizing that class-wide evidence will be offered to prove that a given entity abandoned its stated underwriting guidelines).  As this Court recently found, MSMC's alleged misrepresentations concerning its stated purchasing guidelines in "each of the 14 offerings 'implicates the same set of concerns [as] the conduct alleged to have caused injury to other members of the putative class.'"  *Morgan Stanley*, 2013 U.S. Dist. LEXIS 5285, at *11-*12 (quoting *Goldman Sachs*, 693 F.3d at 162).

---

[17]   *See IndyMac*, 286 F.R.D. at 236, 240-42 (certifying class of MBS investors after finding predominance test satisfied); *Tsereteli*, 283 F.R.D. 199 (same); *Goldman*, 280 F.R.D. 130 (same); *Merrill Lynch*, 277 F.R.D. 97 (same); *DLJ Mortgage*, 2011 U.S. Dist. LEXIS 92597 (same); *see also RALI II*, 2012 U.S. Dist. LEXIS 148865, at *15, *19 (certifying MBS classes in two cases on an "expanded record" after initially denying certification, and citing "other district courts [that] have granted certification in similar MBS cases").

[black redaction bar]

[black redaction bar] The mortgage loans underlying ***all*** of the Offerings were originated by common Originators. *See* Tables 1-2. Morgan Stanley originated or purchased all of the mortgage loans underlying each of the 13 Offerings. *See* Ex. 3 at 129:23-130:11; 203:19-25; *see, e.g.*, Ex. 2 at MS_PT_00042318. In each of the Offerings, large percentages of loans were purportedly originated in accordance with MSMC's loan purchasing guidelines by MSMC's team of conduit correspondent lenders. *See* Table 2; ¶¶36-38; *see, e.g.*, Ex. 2 at MS_PT_00042355-56.

***Uniform Originator Approval Process and Personnel***: Morgan Stanley's Approval and Oversight Group in Boca Raton, Florida, reviewed all conduit and bulk sellers of loans contained in the 13 Offerings. *See* Ex. 3 at 84:21-85:3; 177:7-9. [black redaction bar]

[black redaction bar]

[black redaction bar] Similarly, Morgan Stanley used the same processes, procedures, criteria and personnel to evaluate all of the bulk Originators across all 13 Offerings. *See* Ex. 3 at 135:10-137:13.

***Uniform Due Diligence and Appraisal Processes and Personnel***: Morgan Stanley's fulfillment center in Boca Raton, Florida, performed due diligence on all mortgage loans before purchase. *See* Ex. 3 at 87:17-91:18; Ex. 5 at MS_0048498. The same "due diligence" teams led by Roger Yates and Pamela Barrow (for the conduit and bulk loans, respectively) worked on all of the Offerings. *See* Ex. 3 at 85:4-88:17. Likewise, the same valuation team, headed by Brad Davis, handled and supervised the property valuation process for the mortgage loans across all of the

Offerings.  *See id.* at 88:18-91:18.  The due diligence team was tasked with confirming that loan sellers conformed to underwriting guidelines.

On March 17, 2006, right before the first offering in this case, Brad Davis informed Barrow and others that appraisal quality had deteriorated across the entire origination market:

> Across the board, [they] have informed me [of] the deteriorating appraisal quality they are finding with all of the sellers . . . .  This feedback has directly surrounded this months Accredite d [sic] Decision One, WMC, and New Century trades, ***but we are seeing the same issues across the board with the majority of all sellers***.
>
> The deteriorating appraisal quality that is very flagrant are the use of superior quality comparable sales, all comps taken from a higher market outside the subject neighborhood, use of all dated sales in declining markets, etc.  In the past year, these issues have been there, but not to the magnitude we are starting to see.

Ex. 15.[18]

Morgan Stanley's own internal audits found uniform and pervasive flaws in the mortgage acquisition and securitization process, including deficiencies in seller approval, mortgage loan due diligence, valuation review, risk management and quality control that led to the systematic failure to comply with loan purchasing and underwriting guidelines and defects in property valuations.  *See* Ex. 5 at MS_0048501-05; ¶34.  Although Morgan Stanley churned out the Offerings at a rapid pace, it did not have "a quality control review process for the loans acquired from bulk sellers [to] validate the effectiveness of the due-diligence reviews and identify potential misrepresentations."  *See* Ex. 5 at MS_0048505.  The consequence of these failures was that Morgan Stanley purchased loans that failed to meet credit guideline requirements.  *See id.*  Moreover, for the bulk sellers, Morgan Stanley had no risk-monitoring policy and did not monitor exposures due to staffing constraints.  *See id.* at

---

[18]   While the message arises from an evaluation of "subprime trades," it is directly relevant to the Offerings here because (1) property appraisals are separate and distinct from borrower characteristics, (2) Davis and Barrow were responsible for the Offerings here, (3) the Offerings contained non-prime mortgages, (4) the Offerings contained mortgages from New Century and Decision One (originators specifically flagged by Davis as problematic), and (5) Morgan Stanley's due diligence process was the same for all loan types.  Ex. 16 at 41:4-12; 87:7-11.

MS_00048501, 504.  These weaknesses could result in the trading desks entering into higher risk transactions that exceeded Morgan Stanley's own risk appetite.

*Uniform Securitization Process and Personnel*:  The same personnel within the Securitized Products Group purchased the defective mortgage loans, structured the securitizations, marketed and distributed the Certificates, sold the loans into the Offerings, and created the Offering Documents that contained the material misstatements and omissions across all 13 Offerings.  *See* Ex. 3 at 63:5-65:25; 71:13-72:9; 80:22-81:14; 115:11-116:24; 189:19-193:17; 196:3-200:20.  Upon closing, the proceeds from all 13 Offerings went to Morgan Stanley's SPG Principal Group.  *See* Table 2.

As a result of the uniform process described above, the Offerings share fundamental similarities, including the same (1) sponsor/seller (MSMC); (2) conduit (MSMC); (3) depositor (MSC); and (4) underwriter (MS&Co.).  *See* ¶19; Ex. 3 at 63:5-22; 203:19-25; 206:11-20; *see, e.g.*, Ex. 2 at MS_PT_00042431.  Likewise, the same Morgan Stanley personnel worked on all Offerings.  *See* Ex. 3 at 90:4-91:18. ███████████████████████████

███████████████████████████████████████████████

Proof of falsity will therefore be common among Plaintiffs and absent Class members across all Offerings.

*Materiality*:  Predominance is further satisfied because Plaintiffs will prove materiality with generalized proof.  Because materiality is a decidedly *objective* standard under the federal securities laws, it is subject to generalized proof and common to all Class members.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, ___ U.S. ___, 133 S. Ct. 1184, 1195-96 (2013); *see also Rombach v. Chang*, 355 F.3d 164, 178 n.11 (2d Cir. 2004); *Merrill Lynch*, 277 F.R.D. at 139; *Constar*, 585 F.3d at 784-85; *Merrill Lynch*, 277 F.R.D. at 139.

*Control*:  The issue of "control" under §15 of the Securities Act also presents common questions: namely, whether Individual Defendants acted as "control person[s]" of other defendants during the relevant time period.  *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D. Conn. 2010).

*Damages*:  Class-wide "damages" will be proven by means of the statutory method described in the Securities Act.  *See* 15 U.S.C. §§77k(e), 77l(b).  Such damages are subject to a common methodology that is readily applicable to the Class.  *See* Mason Report, ¶¶105-109; *IndyMac*, 286 F.R.D. at 235 ("Similar[] [to demonstrating materiality], damages in Securities Act claims are calculated based on a statutory formula, so any differences in damages awards do not defeat class certification . . . .").  Although the specific amount of each Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Seijas*, 606 F.3d at 58 ("[I]t is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.").

*Affirmative Defenses*:  In this case, defendants' affirmative defenses actually bolster predominance.  For example, defendants' Eighteenth Affirmative Defense of "negative loss causation" is an important common question.  *See* Answer to Plaintiffs' Fourth Amended Complaint ("Defs.' Answer") (ECF No. 194); *Merrill Lynch*, 277 F.R.D. at 139; *Constar*, 585 F.3d at 784-85.  Many of defendants' other defenses present common questions, including: (1) whether the misrepresentations were false, misleading or material; (2) whether defendants had a duty to disclose the omitted information; and (3) whether the misrepresentations were protected as "forward-looking" statements.  Such defenses do not defeat predominance or prevent class certification.[19]

---

[19]  *See, e.g.*, *In re: Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999, at *22 (S.D.N.Y. Jan. 23, 2013); *IndyMac*, 286 F.R.D. at 237-42 (rejecting defendants' arguments that affirmative defenses of knowledge, statute of limitations, reliance, due

Moreover, in the lone instance where a court in this Circuit did not **initially** grant class certification to MBS investors – after finding that defendants' affirmative defense of "actual knowledge" created individualized issues capable of defeating predominance – the court later granted class certification when the record was developed further. *See RALI II*, 2012 U.S. Dist. LEXIS 148865, at *19-*20. In *RALI*, the court certified the class after plaintiffs' "expanded record" demonstrated that "adverse due diligence results and loan files, which could have yielded specific information about [the alleged] underwriting [non]compliance unlike loan tapes that merely convey loan characteristics, were not disclosed to the investors." *Id.* The court concluded that "even the most sophisticated class members . . . are therefore likely to be subject to the same knowledge . . . defense." *Id.* Here, too, the record shows that investors did not receive adverse due diligence results or loan files. *See* Mason Report, ¶28; Ex. 3 at 210:8-216:22.

### 2. A Class Action Is Superior

Rule 23(b)(3) is satisfied if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement. As the court in *Merrill Lynch* explained:

> "Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims."

277 F.R.D. at 120; *see also IndyMac*, 286 F.R.D. at 242 ("Requiring [a class of several hundred members] to bring individual actions, seek joinder, or else sit on their claims, would be inefficient."). Rule 23(b)(3) provides four factors for courts to consider in evaluating the superiority requirement:

---

diligence, and loss causation created individual issues sufficient to defeat predominance); *Tsereteli*, 283 F.R.D. at 212-17 (same as to knowledge, statute of limitations, reliance, and loss causation defenses); *Merrill Lynch*, 277 F.R.D. at 114-20 (same); *Goldman*, 280 F.R.D. at 137-41 (same as to knowledge, statute of limitations, and loss causation defenses).

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  These factors weigh heavily in favor of certifying the Class.

There is no overwhelming interest by Class members to proceed individually.  The only individual case of which Plaintiffs are aware that alleges Securities Act violations, *FHFA v. Morgan Stanley*, No. 11-cv-06739 (S.D.N.Y.), overlaps with just **one** Trust, 2006-16AX.  Plaintiffs also are aware of approximately six other actions asserting state-law claims; but they concern only a fraction of Certificates at issue.  "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010); *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *42 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").  To the contrary, individual litigation of Class members' claims would be extremely costly and time-consuming.  The vast majority of absent Class members will not have sufficient resources or economic incentives to pursue individual actions.  *See JPMorgan Chase*, 269 F.R.D. at 355; *see also* Mason Report, ¶104.

Here, a class action not only is superior to individual actions, it is the **only** sensible course. There are over 1,667 geographically dispersed Class members that realistically cannot be joined. More importantly, according to defendants, any action filed in the future would be barred by the Securities Act's three-year statute of repose.  Thus, this class action may be the only recourse available to purchasers who have not filed a separate action. *See Berkley v. United States*, 45 Fed.

- 24 -

Cl. 224, 234 (1999) ("[A]n expiring statute of limitations is a 'legitimate concern' when deciding whether or not to certify a class, and one which weighs in the plaintiff's favor.").

Moreover, it is desirable to concentrate litigation in this forum. This action has been pending in this forum since 2009. The Court has ruled on several motions to dismiss and various other motions, and is familiar with the claims and defenses. *Goldman*, 280 F.R.D. at 141 ("Concentrating litigation in this forum is desirable because the Court is familiar with the history of this case, having ruled on earlier motions and discovery disputes."). Given the existence of at least more than 1,500 geographically-diverse Class members (Mason Report, ¶¶102, 104), certifying a class in this forum is the most desirable and efficient option for managing this litigation and ensuring uniform rulings.

Finally, this Court is unlikely to face manageability difficulties with this class action. *See IndyMac*, 286 F.R.D. at 243. Class actions predicated on §11 claims like this one are relatively easy to manage because they focus on the existence of material misrepresentations and do not require a plaintiff to establish scienter, reliance or loss causation. Accordingly, this case and the proposed Class satisfy the requirements of Rule 23(b)(3).

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify this case as a class action pursuant to Rule 23(a) and (b)(3); (2) appoint Plaintiffs as Class Representatives; and (3) appoint Robbins Geller and Bernstein Litowitz as Co-Class Counsel.

DATED:  August 30, 2013

Respectfully submitted,

ROBBINS GELLER RUDMAN
    & DOWD LLP
ARTHUR C. LEAHY
DANIEL S. DROSMAN
DARRYL J. ALVARADO
L. DANA MARTINDALE
ANGEL P. LAU


                s/ DANIEL S. DROSMAN
_____
               DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
dand@rgrdlaw.com
dalvarado@rgrdlaw.com
dmartindale@rgrdlaw.com
alau@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)


Counsel for Named Plaintiffs and Co-Lead Counsel
for the Class

DATED: August 30, 2013

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
DAVID R. STICKNEY
TIMOTHY A. DELANGE
RICHARD D. GLUCK
MATTHEW P. JUBENVILLE
JONATHAN D. USLANER
L. REZA WRATHALL


        s/ DAVID R. STICKNEY

DAVID R. STICKNEY

12481 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone:  858/793-0070
858/793-0323 (fax)
davids@blbglaw.com
timothyd@blbglaw.com
rich.gluck@blbglaw.com
matthewj@blbglaw.com
jonathanu@blbglaw.com
laurence.wrathall@blbglaw.com

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
MAX W. BERGER
DAVID L. WALES
JEROEN VAN KWAWEGEN
KATHERINE STEFANOU
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone:  212/554-1400
212/554-1444 (fax)
mwb@blbglaw.com
davidw@blbglaw.com
jeroen@blbglaw.com
katherine.stefanou@blbglaw.com

Counsel for Lead Plaintiff and Co-Lead Counsel for
the Class

- 27 -

# TABLE 1
## Common Originators in the Offerings

| | Originators | In # of Deals | 4SL | 5AR | 6AR | 7 | 8AR | 9AR | 10SL | 11 | 12XS | 13ARX | 14SL | 15XS | 16AX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Amer Home Mort-Condu | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2 | Silver State Financi | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 3 | Alliance Mortgage | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 4 | Ideal Mortgage Banke | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 5 | WinStar Mortgage Partners, Inc. (DBA) | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 6 | Americash | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 7 | First California Mor | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 8 | George Mason Mortgag | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 9 | Realty Mortgage Corporation-Mi | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 10 | Worldwide Financial Resources, | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 11 | Home Savings Mortgage | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 12 | The Cal-Bay Mortgage | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 13 | First Preferred Mortgage Co. | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 14 | Mylor Financial (Realty Mtg)-C | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 15 | Prime Mortgage Financial, Inc. | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 16 | HomeBridge Mortgage Bankers Co | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 17 | PointBank | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | *17 common originators in all 13 Offerings with $1,950,330,965 in loan amounts, representing 24.4% of total loans* | | | | | | | | | | | | | | |
| 18 | Aegis Mortgage Corpo | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 19 | Mortgage IT | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 20 | Metrocities Mortgage, LLC | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 21 | FNBA Conduit | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 22 | Pioneer Mortgage, In | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 23 | Sunset Mortgage Comp | 12 | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 24 | Greenlight Financial | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 25 | nBank,N.A. | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 26 | Elite Funding Corpor | 12 | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 27 | Arlington Capital Mo | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 28 | 1st Advantage Mortga | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 29 | W. R. Starkey Mortga | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 30 | Summit Mortgage, LLC | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 31 | Trident Mortgage Co., LP | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 32 | Willow Bend Mortgage | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 33 | BM Real Estate Services, Inc | 12 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 34 | Community Banks of C | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | *34 common originators in at least 12 Offerings with $3,683,394,287 in loan amounts, representing 46.1% of total loans* | | | | | | | | | | | | | | |
| 35 | Realty Mortgage Corp | 11 | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 36 | US Mortgage Corp | 11 | ✓ | | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 37 | First NLC | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | | ✓ |
| 38 | Metropolitan National Bank Mortgage Company, LLC. | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 39 | Flick Mortgage Inves | 11 | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | | ✓ | ✓ |
| 40 | Evergreen Moneysource Mortgage | 11 | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 41 | Mountain Pacific Mor | 11 | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 42 | American Financial Resources, Inc. (DBA) | 11 | ✓ | | ✓ | ✓ | | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 43 | 1st Republic Mortgag | 11 | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ |
| 44 | Heartwell Mortgage C | 11 | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| 45 | Coastal Mortgage Ser | 11 | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 46 | American Mortgage Network Inc. | 10 | ✓ | ✓ | | ✓ | ✓ | | ✓ | | ✓ | ✓ | ✓ | | ✓ |
| 47 | The Mortgage Store F | 10 | ✓ | | ✓ | | | | ✓ | ✓ | ✓ | ✓ | | | ✓ |
| 48 | Stearns Lending, Inc | 10 | | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | | ✓ | ✓ |
| 49 | Provident Savings Ba | 10 | ✓ | | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | | ✓ |
| 50 | SCME Mortgage Bankers, Inc. | 10 | | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | | ✓ | ✓ |
| 51 | DHI Mortgage Company, Ltd. | 10 | | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | | ✓ | ✓ |
| 52 | Southern Trust Mortgage, LLC | 10 | | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | | ✓ | ✓ |
| 53 | First Mortgage Compa | 10 | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | | | | ✓ |
| 54 | Amera Mortgage Corporation | 10 | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | ✓ |
| 55 | Sunshine Mortgage Corp. | 10 | | | ✓ | ✓ | ✓ | | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ |
| 56 | American Lending Gro | 10 | | ✓ | ✓ | ✓ | ✓ | | ✓ | | ✓ | ✓ | | ✓ | ✓ |
| 57 | Saxon Equity Mortgag | 10 | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ | | | | |
| 58 | Professional Mortgage Partners, Incorporated | 10 | | | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | | ✓ | ✓ |
| 59 | DAS Acuisition Co. LLC dba USA | 10 | ✓ | | | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | | ✓ | ✓ |
| | *59 common originators in at least 10 Offerings with $4,971,160,305 in loan amounts, representing 62.2% of total loans* | | | | | | | | | | | | | | |

Sources: MS_PT_00063110-122.

## Table 2

## Conduit and Bulk Loans in the Offerings

| | No. of Mortgage Loans | MSMC Conduit Loans | MSCC Originated Loans | Bulk Loans | Net Proceeds to SPG Principal Group |
|---|---|---|---|---|---|
| 2006-4SL | 5,395 | 76% | | 24% | $307,160,186 |
| 2006-5AR | 1,561 | 48% | | 52%[1] | $559,644,279 |
| 2006-6AR (Groups 1-4) | 3,167 | 71%-97% | 0%-20% | 3%-26%[1] | $1,045,331,181 |
| 2006-7 (Groups 1-5) | 2,128 | 23%-83% | 12%-70% | 7%-40%[1] | $546,222,614 |
| 2006-8AR (Groups 1-6) | 1,469 | 0%-100% | 0%-100% | 0%-29%[1] | $792,007,355 |
| 2006-9AR | 2,152 | 76% | | 24%[1] | $664,248,795 |
| 2006-10SL | 4,845 | 91% | | 9% | $302,743,330 |
| 2006-11 (Groups 1-4B) | 2,667 | 38%-62% | 0%-6% | 34%-61% | $683,454,161 |
| 2006-12XS | 2,327 | 41% | | 59% | $537,637,018 |
| 2006-13ARX | 1,873 | 86% | | 14%[1] | $624,332,822 |
| 2006-14SL | 6,132 | 90% | | 10% | $356,822,292 |
| 2006-15XS | 2,653 | 45% | | 16% | $692,667,702 |
| 2006-16AX (Groups 1-3) | 2,907 | 71%-100% | | 0%-29% | $977,664,631 |
| | 39,276 | | | | $8,089,936,365 |

[1]Six Offerings included bulk loans from Wachovia Mortgage Corporation. *See* MS_PT_00004670-865 at 703; MS_PT_00038955-9188 at 9005; MS_PT_00040619-859 at 676; MS_PT_00042707-959 at 767; MS_PT_00044778-998 at 818; MS_PT_00051663-873 at 703.

Sources: MS_PT_00035218-5462 at 5246-5247; MS_PT_00004174-4437 at 4209-4210; MS_PT_00038586-8927 at 8634-8635; MS_PT_00040255-0591 at 0301, 0304; MS_PT_00042302-2674 at 2354, 2356; MS_PT_00044498-4775 at 4535-4536; MS_PT_00046467-6707 at 6495-6496; MS_PT_00047581-7925 at 7627, 7631; MS_PT_00049810-9933 at 9846-9847; MS_PT_00051388-51660 at 1426-1427; MS_PT_00053155-3415 at 3186-3187; MS_PT_00054439-4568 at 4475-4476; MS_PT_00056273-6456 at 6320, 6322; MS_PT_00002251; MS_PT_00004477; MS_PT_00007046; MS_PT_00009016; MS_PT_00011490; MS_PT_00013635; MS_PT_00017292; MS_PT_00020006; MS_PT_00020873; MS_PT_00024850; MS_PT_00029267; MS_PT_00032048; MS_PT_00033977.



**Chart 1A**
**190 of the 235 Originators or 80.9% of All Originators are in the Five Deals Purchased by Plaintiffs**

Sources: ¶¶14-17, MS_PT_00063110-112



**Chart 1B**
**$7.8 billion out of $8.0 billion or 97.2% of Total Loan Amounts were Originated by Originators in the Five Deals Purchased by Plaintiffs**

Sources: ¶¶14-17, MS_PT_00063110-112

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 30, 2013.

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: dand@rgrdlaw.com

847205_1

## Mailing Information for a Case 1:09-cv-02137-LTS-SN

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Matthew I. Alpert**
  malpert@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Mark W. Carbone**
  wvjustice@aol.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Timothy Alan DeLange**
  timothyd@blbglaw.com,denab@blbglaw.com,sara.muller@blbglaw.com,kayem@blbglaw.com,jessica.cuccurullo@blbglaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com,kcook@rgrdlaw.com

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **William Joseph Fenrich**
  william.fenrich@dpw.com,ecf.ct.papers@dpw.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Richard David Gluck**
  richard.gluck@dpw.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Christopher Anthony Gorman**
  cgorman@cahill.com

- **David J. Harris , Jr**
  dharris@rgrdlaw.com

- **Christopher Burch Hockett**
  chris.hockett@dpw.com

- **Matthew P. Jubenville**
  matthewJ@blbglaw.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Angel P. Lau**
  alau@rgrdlaw.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com

- **Nathan R. Lindell**
  stremblay@rgrdlaw.com,nlindell@rgrdlaw.com

- **Ryan A. Llorens**
  ryanl@rgrdlaw.com

- **L. Dana Martindale**
  dmartindale@rgrdlaw.com

- **Kristina Marie Mentone**
  kmentone@reedsmith.com

- **Brett M. Middleton**
  brettm@blbglaw.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Carissa Marie Pilotti**
  carissa.pilotti@davispolk.com

- **Caroline M Robert**
  crobert@rgrdlaw.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,tmccormick@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com,jdoty@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com

- **Dana Meredith Seshens**
  dana.seshens@dpw.com,ecf.ct.papers@dpw.com

- **Hayward Homes Smith**
  hayward.smith@rbs.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Katherine Anastasia Stefanou**
  katherine.stefanou@blbglaw.com,norbert.sygdziak@blbglaw.com,Lawrence.Silvestro@blbglaw.com,MartinB@blbglaw.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **David R. Stickney**
  davids@blbglaw.com,denab@blbglaw.com,errol.hall@blbglaw.com,kelly.mcdaniel@blbglaw.com

- **Susan G. Taylor**
  susant@rgrdlaw.com

- **David A. Thorpe**
  david@dstlegal.com

- **Carolina Cecilia Torres**
  ctorres@csgrr.com

- **Jeroen Van Kwawegen**
  jeroen@blbglaw.com,errol.hall@blbglaw.com,larry@blbglaw.com

- **David Lloyd Wales**
  dwales@blbglaw.com,errol.hall@blbglaw.com

- **Sarah Penny Windle**
  windls@cahill.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

- **Robin F. Zwerling**
  rzwerling@zsz.com,jtarshis@zsz.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David T. Biderman
Perkins, Coie, L.L.P.
1620 26th Street 6th
South Tower
Santa Monica, CA 90404-4013

Keith E. Eggleton
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

Judith B. Gitterman
Perkins Coie LLP (Santa Monica)
South Tower
1620 26th Street, 6th Floor
Canta Monica, CA 90404

Heather Brae Hoesterey
Reed Smith, LLP (San Francisco)
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111

David Andrew McCarthy
Wilson Sonsini Goodrich & Rosati (CA)
650 Page Mill Road
Palo Alto, CA 94304
```