# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PLUMBERS' & PIPEFITTERS' LOCAL #562
SUPPLEMENTAL PLAN & TRUST and
PLUMBERS' & PIPEFITTERS' LOCAL #562
PENSION FUND, on behalf of themselves and all         **REPORT AND**
others similarly situated,                            **RECOMMENDATION**
                     Plaintiffs,                 CV 08-1713 (ERK)(WDW)

      -against-

J.P. MORGAN ACCEPTANCE CORPORATION I,
et al.,
                     Defendants.
-------------------------------------------------------------X

**WILLIAM D. WALL, United States Magistrate Judge:**

      This matter has been referred to the undersigned by District Judge Korman for the purpose of issuing a report and recommendation with respect to the resolution of two motions for appointment as lead plaintiff in this class action litigation. Iron Workers Mid-America Pension Plan and the Structural Ironworkers Local Union No. 1 Pension Trust Fund (collectively "Iron Workers Funds") and the Public Employees' Retirement System of Mississippi ("MPERS") each seek an order that would appoint it as lead plaintiff and that would approve its selection of lead counsel. In the event MPERS is appointed lead plaintiff, the Iron Workers Funds alternatively seek an order to appoint them as co-lead plaintiffs. For the reasons set forth herein, the undersigned recommends that MPERS' motion to appoint it as lead plaintiff, and its request to approve its choice of two firms as co-counsel, Docket Entry ("DE") [18], be granted. It is further recommended that the Iron Workers Funds' motion, DE [15], be denied in its entirety.

## BACKGROUND

This securities fraud class action, initially filed in the Supreme Court of the State of New York for Nassau County, was brought on behalf of "all persons or entities who acquired the Mortgage Pass-Through Certificates and Asset-Backed Pass-Through Certificates ("Certificates") of J.P. Morgan Acceptance Corporation I." Compl. ¶1, DE [1]. Defendant J.P. Morgan Acceptance Corporation I ("J.P. Morgan") is a subsidiary of J.P. Morgan Securities, Inc. and was formed in 1988 for the purpose of acquiring, owning and selling interests in the Certificates. *Id.* ¶2. J.P. Morgan caused Registration Statements to be filed with the Securities and Exchange Commission in connection with the issuance of billions of dollars of Certificates that were backed by pools of mortgage loans. *Id.* ¶¶4, 5. According to plaintiffs, the Registration Statements omitted and/or misrepresented that many of the underlying mortgage loans had been issued to borrowers who were not qualified to borrow for various reasons. *Id.* ¶7. As the amount of uncollectible mortgage loans became public, rating agencies began to put negative watch labels on many of the Certificates, thus adversely affecting their value. *Id.* ¶10. Plaintiffs claim that the Certificates are no longer marketable at any price near the price originally paid for them, and that the plaintiffs, the Class, and the holders of the Certificates were exposed to a greater risk than the Registration Statements and Prospectus Supplements represented. *Id.*

Plaintiffs allege that the Registration Statements and other offering documents contained misrepresentations and omissions in violation §11 of the Securities Act of 1933. *Id.* ¶ 68 *et seq*. They commenced this case as a class action on behalf of a class of

all persons or entities that acquired the Certificates pursuant and/or traceable to the false and misleading Registration Statements. *Id.* ¶23.

On April 25, 2008, defendants removed the action to federal court.[1] Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1 *et seq.*, plaintiffs published a notice to the class members that informed them of their right to seek appointment as lead plaintiff in this case. 15 U.S.C. § 77z-1(a)(3)(A)(i). On March 23, 2009, MPERS and the Iron Workers Funds submitted motions to the court to be appointed lead plaintiff.

**DISCUSSION**

I. Appointment of Lead Plaintiff

The court must consider any motion made by a class member within 60 days of the publication of notice. 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). Here, the notice to class members was published in the *Business Wire* service on January 21, 2009, *see* Notice, Ex. A to Rosenfeld Decl., DE [17], and both motions were filed on March 23, 2009. Thus as a threshold matter, the court finds that the motions of both MPERS and the Iron Workers Funds were timely filed.

The PSLRA provides that a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 77z-1(a)(3)(B). PSLRA establishes a rebuttable presumption that the "most adequate"

---

[1] A second class action, *Public Employees' Retirement System of Mississippi v. Moody's Corp., et al.*, CV 09-3209, was consolidated with this case by electronic order dated October 21, 2009.

3

plaintiff is the person or group of persons that 1) either filed the complaint or made a motion in response to a notice, 2) has the largest financial interest in the relief sought by the class, and 3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). As both MPERS and the Iron Workers Funds have satisfied the initial requirement by filing the motions at issue here, the court will turn to analysis of the financial interests of these plaintiffs.

    A. Financial Interest in the Relief Sought

PSLRA mandates that there is a "rebuttable presumption in favor of the plaintiff with the largest financial interest in the relief sought by the class." *Levitt v. Rogers*, 257 Fed. Appx. 450, 452 (2d Cir. 2007). The PSLRA does not specify how to calculate a party's financial interest, and a definitive standard has not been established by either the Supreme Court or the Second Circuit. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 404 n.15 (S.D.N.Y. 2004). Courts in both the Eastern and Southern Districts have adopted a four part analysis that examines (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *See, e.g., In re Orion Sec. Litig.*, 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *3 (E.D.N.Y. May 2, 2007); *Pirelli*, 229 F.R.D. at 404; *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). Courts often place the most emphasis on "the approximate loss suffered by the movant." *In re Orion,* 2008 WL 2811358, at *5 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).

MPERS claims to have the largest interest, having purchased Certificates with a face value of $26,990,000. MPERS Mem. at 6, DE [19]. The Iron Workers Funds claim to have acquired approximately 10,500,000 Certificates and conclude that they have "a significant financial interest in the case." Iron Workers Funds Mem. of Law at 8, DE [16]. The Iron Workers Funds do not claim to have sustained the largest loss, and ultimately they "concede that MPERS has a larger financial interest." Iron Workers Funds Reply Mem. at 9, DE [27]. Although both movants dispute the exact financial loss suffered by the other, it is essentially undisputed that as between them, MPERS has the larger financial interest.[2] Based on the evidence presented, the court finds that MPERS has the largest financial interest in the relief sought by the class, and turns to a determination of whether it otherwise satisfies the requirements of Rule 23.

B. Satisfaction of Rule 23 Requirements

Once the court determines which plaintiff has the largest financial interest, further inquiry must determine if that plaintiff alone "meet[s] the requirements of Rule 23(a)." *Pirelli*, 229 F.R.D. at 411 (S.D.N.Y. 2004); *In re Orion,* 2008 WL 2811358, at *4. Although Rule 23 requires satisfaction of four criteria for class certification, for purposes of appointing the lead plaintiff "only two - typicality and adequacy - directly address the personal characteristics of the class representative." *Pirelli,* 229 F.R.D. at 412. As long as the plaintiff with the largest financial stake "satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced

---

[2] Even accepting the Iron Workers Funds contention that 8.8 million dollars worth of the Certificates purchased by MPERS are not implicated in this litigation, *see* Iron Workers Funds Reply Mem. at 9, MPERS still purchased over 18 million dollars worth of Certificates, a financial interest that is over 7 million dollars greater than that claimed by the Iron Workers Funds.

5

that some other plaintiff would do a better job." *Sofran v. Labranche & Co*., 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (quoting *In re Cavenaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). The moving plaintiff must make a preliminary showing that the "adequacy and typicality requirements under Rule 23 have been met." *Pirelli* 229 F.R.D. 395 at 412. Indeed, at this initial stage of the litigation, "a wide ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification." *Weinberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 252 (S.D.N.Y. 2003)(citation omitted).

  The typicality requirement is satisfied when the claims of each class member arise from the same events and when each has a similar legal argument to prove a defendant's liability. *Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147, 155 (2d Cir. 2001). Typicality does not require the claims of the class and the lead plaintiff to be identical, and similar legal theories alone may satisfy the requirement. *In re Orion,* 2008 WL 2811358, at *5. In this case, MPERS' claims arise from the same events and alleged misconduct as the claims of the other class members. Both MPERS and the other class members assert legal arguments on the basis of the purchase of Certificates issued between January 2006 and March 2007 pursuant to the Registration Statements that allegedly contained material misstatements and omitted information. Accordingly, the court finds that MPERS' claims are typical of the class and satisfy the typicality requirement of Rule 23.

  The adequacy requirement is satisfied when the lead plaintiff is able to "fairly and adequately protect the interests of the class." F.R.C.P. § 23(a). Adequacy is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the

6

litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005) (citations omitted).

    MPERS is the retirement system for almost all non-federal public employees in the state of Mississippi, and has been the lead plaintiff in multiple securities class action suits. MPERS has provided the declaration of George W. Neville, Esq., Special Assistant Attorney General for the State of Mississippi, in support of its position that MPERS is qualified, experienced and capable of acting as lead plaintiff in this litigation. *See* Neville Decl., Exh. D to Harrod Decl., DE [20]. Additionally, there is no evidence of any antagonism between MPERS' interests and those of the other class members, and MPERS' claims raise common questions of law and fact shared by the class as a whole. Furthermore, MPERS' large financial interest coupled with its desire to retain two experienced firms to act as co-counsel on the class' behalf seems to ensure that it will vigorously advocate this matter. Thus for purposes of this motion, MPERS has satisfied the adequacy requirement of Rule 23.

    Since MPERS has both the largest financial interest and has otherwise satisfied the requirements of Rule 23 for purposes of this motion, the undersigned finds that it is the presumptive most adequate lead plaintiff.

    C.  Rebuttal of the Presumption

    The presumption under the PSLRA is significant, and "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interest of the class; or is subject to

7

unique defenses that render such plaintiff incapable of adequately representing the class.'" *Levitt,* 257 Fed. Appx. at 452 (quoting PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)). The Iron Workers Funds attempt to rebut the presumption by attacking MPERS' ability to adequately protest the interests of the class. First, they argue that MPERS is legally barred from acting as lead plaintiff. They further argue that MPERS' participation in other class action litigations will affect its ability to adequately protect the interests of this class.

The alleged legal bar to MPERS' appointment is the PLSRA restriction on so-called "professional plaintiffs." The PLSRA provides that a person may be a lead plaintiff "in no more than 5 securities class actions…during any 3-year period" except where the court otherwise permits when consistent with the purposes of the PSLRA. 15 U.S.C. § 77z-1(a)(3)(A)(vi). The Iron Workers Funds argue that MPERS is such a "professional plaintiff" and cannot be lead plaintiff in this matter. This argument, however, is contrary to the overwhelming authority in this Circuit that compels a different conclusion.

The PSLRA's purpose "was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent classmembers." *In re Cendant Corp. Litig.,* 264 F.3d 201, 273 (3d Cir. 2001)(citing H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733). Indeed, "[m]any courts have interpreted the PSLRA to favor institutional investors serving as lead plaintiff." *Olsen*, 233 F.R.D. at 107.

The restriction on "professional plaintiffs" that the Iron Workers Funds seek to invoke to MPERS' detriment is principally directed at private individuals, and courts

8

have "routinely waived the restriction in the case of qualified institutional investors." *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. Sec.*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) (citing *Kuriakose v. Fed. Home Loan Mortgage Co.*, 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008); *Police & Fire Ret. Sys. v. SafeNet. Inc.*, 2007 U.S. Dist. LEXIS 97959, at *11 (S.D.N.Y. Feb. 21, 2007)). Courts have cited Congress' recognition that "[i]nstitutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict." *Iron Workers,* 616 F. Supp. 2d at n.2 (quoting H.R. Conf. Rep. No. 104-369 at *35); *see also Police & Fire Ret. Sys. v. SafeNet, Inc.,* 2007 U.S. Dist. LEXIS 97959, at *11 ("Congress did not intend to target institutional investors with this limitation"); *In re Pfizer Inc. Sec. Litig.,* 233 F.R.D. 334, 338 n.4 (S.D.N.Y. 2005) (noting that the PSLRA provision against professional plaintiffs "was not intended to target institutional investors").

The issue of whether MPERS is a professional plaintiff under the meaning of the PSLRA was raised by the Iron Workers Local No. 25 Pension Fund in a recent case in the Southern District of New York. *See Iron Workers,* 616 F. Supp. 2d at 466. In that case, the court rejected the argument that the professional plaintiff restriction should bar MPERS' appointment as lead plaintiff. *Id.* The court further noted that "where the alternative lead plaintiff, the Iron Workers Fund, seems to have little real experience in handling such cases, the accumulated experience of [MPERS] in pursuing multiple securities fraud actions seems a benefit more than a detriment." *Iron Workers,* 616 F. Supp. 2d at 467.

MPERS is clearly an institutional investor and the court finds that the professional plaintiff restriction need not bar it from acting as lead plaintiff in this case. In their second argument in rebuttal of the presumption, the Iron Workers Funds urge the court to find that MPERS "is not simply a 'professional' plaintiff, but rather a 'serial plaintiff.'"[3] Iron Workers Funds Reply at 3. The thrust of the argument is that MPERS is overextended by its involvement in other securities litigations, both as lead plaintiff or as a named plaintiff. According to the Iron Workers Funds, "MPERS' resources are undeniably being spread too thin," Iron Workers Funds Mem. in Further Support at 8, and "[i]t is clear that MPERS and its fiduciary . . . are too overburdened to adequately take on the responsibilities and obligations" in this case. Iron Workers Funds Reply Mem. at 3.

The Iron Workers Funds' arguments, however, are speculative and conclusory and they have not provided any objective evidence to challenge MPERS' adequacy to represent this class. Although they list cases involving MPERS and detail its responsibilities in those cases, the Iron Workers Funds have not provided any evidence that MPERS has failed to meet its responsibilities in any of those cases. These speculative arguments are simply insufficient to rebut the presumption that MPERS is the most adequate lead plaintiff. *See Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (noting that "conclusory assertions of inadequacy are, however,

---

[3]The term "serial plaintiff" is not found in the PSLRA, and the court has found it mentioned in only two other cases, both involving Iron Workers Funds' counsel, Coughlin Stoia Geller Rudman & Robbins, LLP. *See Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *4 (D. Ariz, July 17, 2009); *In re Chiron Corp. Sec. Litig.*, 2007 WL 4249902, at *12 (N.D.Cal., Nov. 30, 2007).

insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence"). On the current record, MPERS has established that it can adequately protect the interests of this class.

Consistent with the Congressional intent and purpose of the PSLRA, MPERS is an institutional investor with large financial losses at stake such that it will vigorously advocate on behalf of the class. Furthermore, MPERS' structure and record of success in previous securities class action suits supports the proposition that it will not be impeded by the ongoing litigation. The court finds that the statutory purpose of the PSLRA is best served by allowing MPERS to represent this class regardless of its involvement in other matters.

The Iron Workers Funds have presented no other arguments to rebut the presumption that MPERS is the most adequate lead plaintiff. Accordingly, the undersigned finds that the presumption that MPERS be appointed lead plaintiff has not been rebutted and recommends that MPERS' motion to be appointed lead plaintiff be granted.

II. Lead Plaintiffs' Choice of Counsel

The most adequate plaintiff shall "select and retain counsel to represent the class," subject to approval by the court. 15 U.S.C. § 77z-1(a)(3)(B)(v). The court's approval of lead plaintiff's choice of counsel depends upon factors such as that counsel's: 1) qualification and competence, 2) ability to fairly represent diverse interests, and 3) reputation and communication skills. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2006 U.S. Dist. LEXIS 45727, at *30 (E.D.N.Y. 2006). MPERS has selected the firms of Wolf Popper LLP ("Wolf Popper") and

11

Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), to serve as co-lead counsel. As demonstrated in MPERS' supporting papers, both firms Wolf Popper and Bernstein Litowitz have experience in prosecuting multiple securities class action suits and appear to be qualified, reputable, and able to fairly represent the diverse interests of the class at hand. *See* Firm resumes, Exs. E & F to Harrod Decl., DE [20].

While the Iron Workers Funds do not challenge the qualifications of either firm, they argue that there is no legitimate reason why two firms are necessary to litigate the case. Iron Workers Funds Mem. in Further Support at 9, DE [24].[4] The Iron Workers Funds have not provided any support for the suggestion that the most adequate lead plaintiff is limited to selecting one firm as counsel. To the contrary, it is not unusual for courts to approve two or more firms as co-lead counsel. *See, e.g., In re Olsten Corp.,* 3 F. Supp. 2d at 297 (approving selection of two firms as co-lead counsel without discussion).

The court has reviewed the materials provided regarding the qualifications of the firms and finds that both firms have the requisite experience. *Contra Iron Workers*, 616 F. Supp. 2d at 467 (finding that only one of two proposed firms was experienced in securities class actions). The undersigned recommends that MPERS be permitted to select Wolf Popper and Bernstein Litowitz as co-lead counsel "'provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses.'" *Sofran,* 220 F.R.D. at 404 (quoting *In re Donnkenny Inc. Sec. Litig,,* 171 F.R.D. 156, 158 (S.D.N.Y. 1997)).

---

[4]It is curious, but not altogether surprising, that this argument is absent from the Iron Workers Funds' request that they should be appointed co-lead plaintiffs, and that their counsel added as co-counsel, bringing the total number of law firms to three.

12

III.  Motion to Appoint Co-Lead Plaintiffs

In the event that the court decides that MPERS is the most adequate lead plaintiff, the Iron Workers Funds alternatively seek an order appointing them as co-lead plaintiffs with MPERS.  Courts will permit unrelated investors to join together on a case by case basis and appoint both as lead plaintiffs if "such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F.Supp. 2d 388, 392 (S.D.N.Y. 2008).  Some factors courts consider when evaluating whether unrelated members of a group will be able to function cohesively include: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; [and] (3) plans for cooperation." *Id.*  The group of lead plaintiffs must "evince an ability (and a desire) to work collectively to manage the litigation." *Id.* (quoting *Reimer v. Ambac Fin. Group, Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008)).

The court is not persuaded that appointing the Iron Workers Funds as co-lead plaintiffs would provide any additional benefit to the class.  Although the Iron Workers Funds have evinced an ability and desire to manage the litigation with MPERS, MPERS has indicated that it has no desire to work alongside Iron Workers.  Appointing the Iron Workers Funds with their selection of counsel, Coughlin Stoia Geller Rudman & Robbins, LLP, to act as an additional co-counsel would create a lead-plaintiff group of six members – three co-lead plaintiffs and three co-lead counsel firms.  Rather than conferring any benefit to the class, the size of the proposed group, coupled with MPERS' lack of desire to manage the litigation with the Iron Workers Funds, would more likely have adverse effects on communication and cooperation.  In this case, given the risk that

13

appointing these two unrelated sets of lead plaintiffs would prejudice the class' overall interests, the court recommends that the Iron Workers Funds' motion to be appointed co-lead plaintiffs be denied.

## CONCLUSION

The undersigned recommends that the motion to appoint MPERS as lead plaintiff, and its request to approve lead plaintiff's choice of Wolf Popper and Bernstein Litowitz as co-counsel be granted. The undersigned further recommends that the Iron Workers Funds' motion for appointment as lead plaintiffs, their request for approval of Coughlin Stoia as co-counsel, and their request for appointment as co-lead plaintiffs be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      November 5, 2009

                                        /s/ William D. Wall
                                        WILLIAM D. WALL
                                        United States Magistrate Judge