# Exhibit 36

Pages 1 - 192

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
                              )
In Re:  Facebook, Inc.,       )
        Consumer Privacy User )      No:  18-md-2843  VC
        Profile Litigation    )
                              )
_____)
```

San Francisco, California
Friday, February 1, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:          Keller Rohrback, LLP
                         1201 3rd Avenue, Suite 3200
                         Seattle, WA  98101
                   BY:   **DEREK W. LOESER, ESQ.**
                         **CARI LAUFENBERG, ESQ.**

                         Bleichmar Fonti & Auld, LLP
                         555 12th Street, Suite 1600
                         Oakland, CA  94607
                   BY:   **LESLEY E. WEAVER, ESQ.**
                         **JOSH SAMRA, ESQ.**

For Facebook:            Gibson Dunn and Crutcher
                         200 Park Avenue
                         New York, NY   10166
                   BY:   **ORIN SNYDER, ESQ.**

                         Gibson Dunn and Crutcher
                         555 Mission Street, Suite 3000
                         San Francisco, CA  94105
                   BY:   **JOSHUA LIPSHUTZ, ESQ.**
                         **KRISTIN LINSLEY, ESQ.**
                         **CHRISTOPHER LEACH, ESQ.**

Reported By:  Vicki Eastvold, RMR, CRR
              Official Reporter

1          **MR. LOESER:**  Because we've alleged that the

2    information is not prominently displayed.  It's hard to ferret

3    out.  It's misleading.  And the FTC gave us a nice guide for

4    how to do that, because it's exactly what it said.

5          But let's get to the -- so you mentioned the data policy,

6    which is supposed to be -- and as counsel throughout their

7    briefs they're constantly citing to the data policy as the Holy

8    Grail of disclosure.  It told everybody everything they needed

9    to know.

10         So let's look at the data policy, slide 20 which -- quotes

11   from the complaint at paragraphs 274 through 275.  The data

12   policy in effect from April 2010 through September 2011 says:

13   If your friend grants specific permission to the application or

14   website, it will generally --

15         **THE COURT:**  Wait.  Sorry.  I want to make sure I'm on

16   the right language.  So which slide is this?

17         **MR. LOESER:**  This is slide 20.

18         **THE COURT:**  Okay.  April 2010 to 2011.

19         **MR. LOESER:**  Yeah.  They change these things without

20   giving notice to users.

21         **THE COURT:**  I understand.  I'm looking at the entire

22   language.  I prefer to look at the entire language rather than

23   --

24         **MR. LOESER:**  Unfortunately for me --

25         **THE COURT:**  -- language that's been pulled out by

1    lawyers.

2         So when your friends use the platform?  Is that where you

3    are?

4              **MR. LOESER:**  Yeah.

5              **THE COURT:**  Okay.  "If your friend connects with an

6    application or website"?  Is that the language you're wanting

7    me to look at?

8              **MR. LOESER:**  The language I'm reading is:  If your

9    friend grants specific permission to the application or

10   website, it will generally only be to access content and

11   information about you that your friend can access.  In

12   addition, it will --

13             **THE COURT:**  Wait.  Hold on.  I want to see where -- I

14   want to see where that language is.

15        So this is for the April 2010 to September 2011?

16             **MR. LOESER:**  Right.

17             **THE COURT:**  Okay.  Hold on.  Let me just find it.

18        Okay.  So that starts:  When your friends use platform.

19   If your friend connects with an application or website, it will

20   be able to access your name, profile picture, gender, user ID,

21   and information you have shared with everyone.  It will also be

22   able to access your connections, except it will not be able to

23   access your friend list.

24             **MR. LOESER:**  Yeah.  And if you keep going down the

25   paragraph, there's the statement:  If your friend grants

specific permission to the application or website --

  **THE COURT:**  Wait.  Hold on.  Let me just make sure I'm
on the -- okay.

  If your friend grants specific permission to the
application or website --

  **MR. LOESER:**  -- it will generally only be able to
access content and information about you that your friend can
access.

  **THE COURT:**  Okay.

  **MR. LOESER:**  In addition, it will only be allowed to
use that content and information in connection with that
friend.

  That is just, in addition to being extremely confusing,
utterly misleading.  And Cambridge Analytica is, again, the
best example of why.  Cambridge Analytica, 300,000 people
downloaded this app.  And, remember, this app and the way apps
work on Facebook is it's the back door through which you get
all the friend's data.

  So they went from 300,000 to 87 million.  It cannot
possibly be the case that the information that they obtained
only pertained to that person who gave that permission.  You
would have 300,000 people then.  And that is a -- again, that
is a huge issue and a huge reason why these disclosures --

  **THE COURT:**  So that sentence is definitely vague.  No
doubt about it.  So let's look at the next sentence and see if

1  that helps explain it.

2      For example, if a friend gives an application access to a

3  photo you only shared with your friends, that application could

4  allow your friend to view or print the photo but it cannot show

5  that photo to anyone else.

6      Sort of nonsensical.

7          MR. LOESER:  Does it mean anything to you?

8          THE COURT:  We provide you with a number of tools to

9  control how your information is shared when your friend

10 connects with an application or website.  For example, you can

11 use your application and website's privacy setting to limit

12 some of the information your friends can make available to

13 applications and websites.  You can block all platform

14 applications and websites completely, or block particular

15 applications or websites from accessing your information.

16         MR. LOESER:  Yeah.  So you've just told people that

17 when they go through these app things, Hey, don't really worry

18 about it because if your friend gives access to information we

19 can only use it with regard to your friend.

20         THE COURT:  Okay.  Then what do you say in the

21 complaint about that?  Take me back to the part of your

22 complaint that explains why that's misleading.

23         MR. LOESER:  What the complaint says about this, and

24 I'll struggle to find the actual cites unless somebody can hand

25 them up to me.

1          **THE COURT:**  271?  Hold on.  Let me go to it.

2          **MR. LOESER:**  And, you know, just for the record, Your

3     Honor, preparing for these hearings takes a tremendous amount

4     of work.  And this team of people back here do an amazing job

5     equipping us with the information we need to answer these

6     questions.

7          **THE COURT:**  Appreciate that.

8          Okay.  Paragraph 271.  Go ahead.

9          **MR. LOESER:**  Facebook made it difficult for its users

10    to understand that third parties were constantly vacuuming up

11    their content and information and that Facebook was not

12    monitoring what they did with it.

13         You know, Your Honor, there are actually dozens of

14    paragraph references to the way app settings were unclear and

15    sort of lull people into believing that they had nothing to

16    worry about because the information wouldn't be widely shared.

17    And we could -- we could assemble all these things.

18         Actually, a point I was going to make at the beginning.

19    As to all of these questions, and I fear we're actually going

20    to run out of time before we've really directly answered the

21    questions posed, and it might be helpful for us to submit some

22    briefing on those questions in which we really could answer

23    them.  We'll leave that up to Your Honor to decide at the end

24    of the day if it's necessary.

25         But there are many, many references in the complaint.  And

1    as I continue to talk, I'm sure more numbers will be assembled.

2    But that is a fundamental failure of these disclosures and it's

3    repeated in a variety of ways.

4         THE COURT:  But as to that particular sentence, I kind

5    of understand what you're saying, but other than reciting that

6    sentence in the complaint I'm wondering if there's anything in

7    the complaint about explaining how people were misled by that.

8    I mean, maybe your answer is, Well, it's self-evident, so we --

9         MR. LOESER:  But there are allegations in the

10   complaint.  And, unfortunately, I can't cite them off the top

11   of my head but we can provide them to you.

12        But the tenor of the allegations is that because of the

13   way this information was presented, people did not know that

14   all of their information was being revealed this widely with

15   these apps.  And had they known that, they could have

16   considered it.  It's recited in the claims, as well.  I mean,

17   it's something we kind of keep coming back to over and over

18   again.

19        THE COURT:  Okay.

20        MR. LOESER:  So, you know, about the particular --

21        THE COURT:  So the issue is not that -- at least based

22   on the way you've described it now -- the issue is not with the

23   failure to disclose that apps would have access to this

24   information through your friends.  The issue is with the

25   failure to disclose that apps would be able to use it in ways

1    beyond using it only in connection with that friend.

2          **MR. LOESER:**  There's a couple different ways this

3    disclosure, and specifically the disclosure that you've put

4    your thumb on in your questions, about the app settings and the

5    discussions specifically in the data policy about the app

6    settings, doesn't provide users with sufficient information

7    about the sharing of their data that will occur.  Because of

8    the lack of full disclosure, it made it appear as if less

9    information of theirs would be shared.  That's one.

10         Two, because of the structure -- and this is what the FTC

11   --

12         **THE COURT:**  Well, how is that?  It appears that less

13   of their information would be shared with third-party apps than

14   was disclosed?  So it's not --

15         **MR. LOESER:**  What they flat out said was they would

16   only use the information with regard to the person who shared

17   it.  So I hear what you're saying.  I should be a little more

18   precise.  It wouldn't be disseminated as widely.

19         **THE COURT:**  Okay.  So it's not the disclosure of the

20   information that you're taking issue with.  It's the use of the

21   information and the wider dissemination of the information than

22   what was represented in the disclosures.

23         **MS. WEAVER:**  Your Honor, I think it's both.  And if I

24   could just -- and we had divided things and you're getting a

25   little bit into standing.  And so let me just express why --

1    where we see the harm here.

2         If you go next to paragraph 276 in the complaint --

3              THE COURT:  I don't know if this is only about

4    standing.  I mean --

5              MS. WEAVER:  Right.  No.  It's about everything.  But

6    it's with the conduct and what happened and how it's perceived.

7    How it was described to users, and what actually happened to

8    them.  And there's a delta there.

9         So paragraph 276, the disclosure says:  When you share and

10   communicate using our services you choose the audience who can

11   see what you share.  For example, when you post on Facebook,

12   you select the audience for the post, such as a customized

13   group of individuals, all of your friends, or members of a

14   group.  Likewise, when you use Messenger you choose the people

15   you send photos to or message.

16        That, we would argue, is false and this is why.

17        If you conceive of Facebook as a two-tiered platform.  And

18   there's one platform where users interact with each other.  And

19   it's on those -- that -- we'll call it the user platform,

20   that's where the privacy controls operate.

21        And so when Facebook is saying:  Oh, you control your

22   audience, all the user is thinking about is the other people on

23   the platform.  But there's a second layer that was going on

24   that people did not understand and was not clearly explained.

25   That -- all of this Graph API, the platforms that were built

1    for app developers, was operating underneath.

2         And what it meant, really -- and not to make a television

3    reference -- but this is kind of like Westworld.  There are two

4    realities going on at the same time.  So I think I'm having a

5    private interaction with my friend, and instead there's an army

6    of companies who are reviewing that interaction, analyzing it

7    to figure out how to target me.  They are getting realtime

8    responses.  They're going to Facebook and saying, Hey, we want

9    to ping them.  And Facebook is letting them know how you

10   respond.

11        So what's so offensive about it, and what's so troubling

12   about it -- and really it's a public policy problem for all of

13   us -- is that it's a one-way mirror.  So I'm standing in this

14   room and I'm getting these messages --

15        **THE COURT:**  But rhetorically, that all sounds great,

16   but the reality is that notwithstanding the statement that you

17   just identified from the complaint, you choose the audience who

18   can see what you share.  I mean, that is qualified by other

19   statements that Facebook makes along the lines of, you know,

20   these third-party apps can get information from your friends

21   about you.  And your friends can choose to allow third-party

22   apps to access all this information about you.  And whatever

23   your friends can see about you, these third-party apps are

24   going to be able to see about you unless change your settings.

25        **MS. WEAVER:**  No.  Even if you change your settings.

1        **THE COURT:**  Well, no.  You can change your settings.

2    But it also discloses.  The point is that it discloses that you

3    can change your settings to significantly limit the amount of

4    information that friends can share about you.  But there is

5    some information that your friends will always be able to share

6    about you unless you completely turn off this app setting.

7        **MS. WEAVER:**  That's for apps.

8        **THE COURT:**  But the point is that it's disclosed.

9        **MS. WEAVER:**  And for business partners, there's

10   nothing you can do to prevent business partners from getting

11   it.  And if you think that the disclosure about service

12   partners --

13       **THE COURT:**  Right, but we're talking about apps now.

14   We're talking about the apps.  So I do understand.  And I will

15   tell you that I hadn't adequately focused on this one sentence

16   can only use that contact and information with your friend,

17   right?  That is an issue.  I understand.

18       But putting that aside, I just -- with respect to the apps

19   -- and maybe that one sentence is enough for you.  But with

20   respect to the apps, if you're merely talking about what

21   Facebook said and you're not talking about how prominently

22   Facebook made the disclosure, but just the words that it used,

23   it seems like the words contain everything.

24       You read those words and -- you know, you know, look,

25   let's face it, nobody takes the time to read those words.  But

```
1    the law sort of presumes that people reads the words, generally

2    speaking, which is why I asked about whether the prominence of

3    it matters.  But if you read the words, you come away knowing

4    that even if you limit your settings so that you're sharing

5    only with friends, these third-party apps can communicate with

6    your friends and get all of the information that your friends

7    have access to unless you further change your settings.  And

8    then even then, you can further change your settings, but if

9    you want to have a meaningful Facebook experience, apps are

10   still going to get some subset of information about you.  All

11   of that seems to be disclosed.

12        MR. LOESER:  Your Honor, now you're getting tag

13   teamed.  Hope that's okay.

14        But I would suggest to you that when the FTC -- and we're

15   not litigating the FTC's case.  But when we're evaluating

16   whether these disclosures, whether they're content, which is

17   what we've been talking about, is sufficient and whether their

18   placement which -- their prominence is sufficient, the FTC

19   looked at the same things we're talking about and said it's not

20   sufficient.  The content is not sufficient and the placement is

21   not sufficient.  And it told them you have to fix it.

22        THE COURT:  When did the consent decree get entered

23   into?

24        MR. LOESER:  2012.

25        MS. WEAVER:  It was started in 2011.
```

1   in mind to add additional claims.  So I take it that counsel

2   isn't objecting to the addition of new factual material.

3          THE COURT:  I'm sure they'll object to everything, but

4   we can worry about that later.

5          MR. LOESER:  Okay.  Thank you, Your Honor.

6          THE COURT:  All right.  Thank you.

7                          ---oOo---

8

9

10

11                 <u>CERTIFICATE OF REPORTER</u>

12         I certify that the foregoing is a correct transcript

13   from the record of proceedings in the above-entitled matter.

14

15   DATE:   Monday, February 4, 2019

16

17

18   _____

19               Vicki Eastvold, RMR, CRR
                  U.S. Court Reporter
20

21

22

23

24

25