Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8217
Fax: 202.530.9614

Paul J. Collins (SBN 187709)
  pcollins@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

*Attorneys for Defendants Facebook, Inc.,
Mark E. Zuckerberg, Sheryl K. Sandberg, and
David M. Wehner*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FACEBOOK, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | CASE NO. 5:18-CV-01725-EJD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE**<br><br>Date First Action Filed: March 20, 2018 |

## I.  PRELIMINARY STATEMENT

Plaintiffs "do not object to the vast majority of the relief sought in Defendants' Request for Judicial Notice," only challenging the Request for Judicial Notice (Dkt. 94, the "RJN") with respect to Exhibits 1, 6-10, 24, and 30-34.  Opposition to Defendants' Request for Judicial Notice (Dkt. 98, the "Opp. to RJN") at 1.  Plaintiffs make no attempt to explain why these exhibits are not judicially noticeable or incorporated by reference.  Instead, Plaintiffs argue about the propriety of the *conclusions to be drawn* from these exhibits.  *See, e.g.*, *id.* at 9 (challenging the arguments Defendants make *based on* Exhibits 30-34, not whether the exhibits are judicially noticeable).  That is not the relevant issue on this motion—which merely asks this Court to consider these exhibits in connection with Defendants' Motion to Dismiss.  Plaintiffs do not and cannot dispute that the weight of authority makes clear that (1) the Court may take judicial notice of the existence of Rule 10b5-1 plans based on SEC filings (Exhibits 1 & 6-10); (2) Facebook's 2013 Data Policy (Exhibit 24) is incorporated by reference because Plaintiffs rely upon it for their claims and, in any event, *the language* of the Data Policy is judicially noticeable; and (3) a company's stock price (Exhibits 30-34) is judicially noticeable.

## II.  ARGUMENT

**A.  The Existence Of The Individual Defendants' 10b5-1 Plans Is Subject To Judicial Notice.**

Defendants requested judicial notice of the SEC filings (including Forms 4) reflected in Exhibits 1 and 6-10, which show that the stock sales Plaintiffs challenge were made pursuant to Rule 10b5-1 plans.  *See* RJN at 2; Motion to Dismiss (Dkt. 93) at 24.  As Defendants explained in their RJN (at 2), "courts may take judicial notice of SEC Forms 4, even when not referenced in the pleading, to prove that stock sales were made pursuant to a Rule 10b5–1 trading plan."  *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012).  Plaintiffs do not address this case or principle in their Opposition.  Their silence is unsurprising because "[c]ourts in this circuit have routinely taken judicial notice of Forms 4 to determine whether insider stock sales raise an inference of scienter to support a § 10(b) action."  *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *4 (N.D. Cal. Nov. 27, 2018); *see also Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 n.2 (9th Cir. 2017) (on motion to dismiss considering "Form 4s … [that] indicate that the vast majority of Individual Defendants' stock sales were made pursuant to a Rule 10b5-1 plan"); *Park v. GoPro, Inc.*, 2019 WL 1231175, at *7 (N.D. Cal.

Mar. 15, 2019) (taking judicial notice of fact that defendants "sold their shares pursuant to a 10b5-1 plan"). The law is clear that the Court may take judicial notice of Exhibits 1 and 6-10.[1]

In their opposition, Plaintiffs avoid addressing the request that Defendants actually made—to take judicial notice of the *existence* of the Individual Defendants' 10b5-1 plans—and instead manufacture a dispute about the *contents* of those plans. Opp. to RJN at 5-7. Plaintiffs argue that the Court should not take judicial notice of Exhibits 1 and 6-10 because (1) Defendants did not provide the Court with "the Rule 10b5-1 plans themselves," (2) "the Rule 10b5-1 plans are not publicly available," and (3) Plaintiffs' allegations about Mr. Zuckerberg's trading pattern are "inconsistent with the existence of a Rule 10b5-1 plan *that meaningfully restricts trading activities*." *Id.* at 5 (emphasis added). These arguments ignore the only relevant question: whether the Court may take judicial notice of the SEC filings at issue. Notably, Plaintiffs do not challenge the existence of the Individual Defendants' Rule 10b5-1 plans, only questioning whether the terms of the plans "meaningfully restrict[] trading activity" or are "[]compatible with the purpose of a Rule 10b5-1 trading plan." *Id.* At best, these arguments go to the weight the Court should give to the fact that the Individual Defendants traded pursuant to Rule 10b5-1 plans, not whether their existence is judicially noticeable.

Plaintiffs' baseless challenges to Defendants' request to take judicial notice of Exhibits 1 and 6-10 must be rejected.

**B.     The 2013 Data Policy Is Incorporated By Reference And Subject To Judicial Notice.**

Plaintiffs do not deny that Exhibit 24 accurately reflects Facebook's Data Policy as of November 15, 2013; that Facebook users agreed to be bound by the terms of the Policy; that this Policy was in effect when Kogan's app requested the user data at issue and then impermissibly sold that data to Cambridge Analytica; or, crucially, that the Complaint asserts that this version of the Policy was

---

[1] Plaintiffs' three cases regarding judicial notice of Forms 4—*UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964 (N.D. Cal. 2009), *Patel v. Parnes*, 253 F.R.D. 531 (C.D. Cal. 2008), and *In re Foundry Networks, Inc.*, 2003 WL 23211577 (N.D. Cal. Feb. 14, 2003)—are outlier opinions that lack persuasive authority, especially given that *subsequent to these opinions* the Ninth Circuit itself has considered "Form 4s … [that] indicate that the vast majority of Individual Defendants' stock sales were made pursuant to a Rule 10b5-1 plan" on a motion to dismiss. *Curry*, 875 F.3d at 1227 n.2; *see also Azar*, 2018 WL 6182756, at *4 (*UTStarcom* "is out of step with the weight of authority in the Ninth Circuit"). Likewise, the cases cited in the Opp. to RJN at 6 n.2 are unpersuasive because they did not consider requests for judicial notice of SEC filings regarding 10b5-1 plans.

misleading. Nonetheless, Plaintiffs assert that this Court cannot consider the contents of Policy. Plaintiffs are wrong.

### 1. The Complaint Incorporates By Reference The 2013 Data Policy.

Plaintiffs make the conclusory argument that they "neither relied on the 2013 Data Policy nor incorporated it by reference into their Complaint." Opp. to RJN at 8. But Plaintiffs have no answer for—and make no attempt to explain—the paragraphs in the Complaint that repeatedly reference the consent terms of that Policy, and blame the Cambridge Analytica incident on its alleged shortcomings. *See* RJN at 4 (citing, *e.g.*, ¶ 46 (before 2015, "a user could consent to app developers gaining access to the personal data of his or her *friends* … it was because of this feature that Cambridge Analytica was able to harvest data from over 87 million users") (emphasis in original)); *see Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (courts "may consider extrinsic evidence not attached to the complaint if … plaintiff's complaint necessarily relies on it.").[2] Indeed, a central theme in the Complaint is that in 2014, Facebook eliminated from its 2013 Data Policy the provision that allowed Kogan to collect the data of users' friends. *See, e.g.*, ¶¶ 79, 176, 183, 203, 238, 251, 258, 264, 266, 268, 280, 288, 301, 302 & ns.310-311, 316-317, 319. Because the terms of the 2013 Data Policy are "integral to the [] Complaint," the Court may consider Exhibit 24 under the incorporation by reference doctrine. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Likewise, Plaintiffs do not dispute that they contend in the Complaint that the 2013 Data Policy—and statements regarding the subsequent changes to that Policy—were misleading. *See* RJN at 5; *see, e.g.*, ¶ 302(f) (claiming "Facebook's privacy policies and settings were deliberately confusing to users, especially with respect to how a user's Facebook 'friends' could override the user's privacy settings and share the user's data with third parties without their consent"—a clear reference to the

---

[2] Plaintiffs' Opposition to Facebook's Motion to Dismiss ("Opp. to MTD") makes this point even more clear. Plaintiffs claim that Facebook's statements that users had consented to share their data with Kogan's app pursuant to the 2013 Data Policy were false or misleading. *See* Opp. to MTD at 14. The question of whether these statements were true or false is inextricably tied to the language of the Policy itself. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (because plaintiff's claims rested on the "terms of the plan, documents governing" that plan "are essential to his complaint"); *see also Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (contractual documents that "as a matter of law … either support or erode Plaintiffs' claims" are "integral" to evaluating a complaint and may be considered).

2013 Data Policy). Plaintiffs may not "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *see Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). For all of these reasons, the Complaint incorporates the 2013 Data Policy by reference.[3]

### 2. The 2013 Data Policy Should Be Judicially Noticed.

The 2013 Data Policy also is subject to judicial notice. Plaintiffs do not deny that Exhibit 24, which was obtained from the Internet Archive's Wayback Machine, is authentic and "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Ev. 201. Nor could they, as Plaintiffs themselves rely on a 2015 version of Facebook's Data Policy as it appears on the Wayback Machine. RJN at 5 (citing ¶ 60 n.49). Plaintiffs also make no attempt to address or distinguish the cases cited by Defendants holding that courts may take judicial notice over historical and archived privacy policies, RJN at 5, and they ignore that Judge Hamilton previously took judicial notice of Exhibit 24 in *Campbell v. Facebook Inc.*, No. 4:13-cv-05996-PJH (N.D. Cal. Oct. 9, 2014) (Dkt. 43 n.2).[4]

Instead, Plaintiffs argue the 2013 Data Policy should not be judicially noticed because "the truth of its contents is reasonably in dispute." Opp. to RJN at 8. Not so. Defendants only ask the Court to take judicial notice of the Policy's plain text. Because there can be no dispute that the Policy "says what it says," judicial notice is proper. *See Sarmiento v. Sealy, Inc.*, 2019 WL 634643, at *5 (N.D. Cal. Feb. 14, 2019); *Estrada v. Caliber Home Loans, Inc.*, 2015 WL 12661910, at *3 (C.D. Cal. Oct.

---

[3] Plaintiffs cite *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1007 (9th Cir. 2018) (petition for certiorari docketed), but that case is inapposite. The language from *Khoja* that Plaintiffs quote concerned a press release that was connected to "[n]othing in the Complaint"—the press release merely happened to allege facts that the Complaint also alleged. *Id.* This is not the situation here. For the same reason, Plaintiffs' reliance on *Duguid v. Facebook, Inc.*, 2016 WL 1169365, at *2 (N.D. Cal. Mar. 24, 2016) is misplaced. *Duguid* held that a complaint concerning Facebook's text messaging practices did not incorporate by reference certain unrelated Facebook webpages describing, for example, Facebook's procedure for "account verification." *See id.*

[4] *Duguid* is again distinguishable because in that case "the *sole* justification for judicial notice is that the information or documents appear[ed] on websites that [were] created and maintained by a party to the litigation," 2016 WL 1169365, at *2, not a website maintained by a third party like the Wayback Machine, from which "district courts in this circuit [] routinely take[] judicial notice." *United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016), *aff'd sub nom. United States ex rel. Juan Hong v. Newport Sensors, Inc*, 713 F. App'x 724 (9th Cir. 2018).

14, 2015). What Plaintiffs really dispute is the *legal effect* of the Policy. *See* Opp. to MTD at 14 (contending that "users had [not] consented to sharing their data with Aleksandr Kogan" because the 2013 Data Policy relied on a "passive theory of consent"). But it is standard for courts to take judicial notice of a document and its text, and then determine the legal effect of that language in ruling on a motion to dismiss. *See Sarmiento*, 2019 WL 634643, at *5; *Heredia v. Intuitive Surgical, Inc.*, 2015 WL 7720915, at *5 & n.3 (N.D. Cal. Nov. 30, 2015) (Davila, J.) (taking judicial notice of terms of contract in granting motion to dismiss); *Daniels v. United States*, 2017 WL 3478765, at *4 (S.D. Cal. Aug. 11, 2017) (courts may "take judicial notice of the 'existence and legal effect' of [the] contracts between the parties" that are foundational to plaintiff's claims). Because there are no "reasonably disputed facts contained within" the 2013 Data Policy, Opp. to RJN at 8, the Court may take judicial notice of the Policy and its contents.

**C.     Stock Prices Are Judicially Noticeable.**

Although Plaintiffs purport to challenge the Request for Judicial Notice of the stock prices contained in Exhibits 30-34, "their objection is really one of relevance and not that the documents may not be judicially noticed." *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 929 n.6 (N.D. Cal. 2012). Plaintiffs' opposition focus on whether the *arguments* Defendants make based on these exhibits are proper, not whether the Court may take judicial notice of these exhibits. Opp. to RJN at 9. Plaintiffs simply avoid the question before the Court. As the multiple cases Defendants cited in their Request for Judicial Notice make clear, the Court unquestionably may take judicial notice of a company's' stock prices. RJN at 6. Plaintiffs do not address a single one of these cases, and instead cite to cases that are inapposite. *In Re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *6 (N.D. Cal. Oct. 31, 2014) dealt with judicial notice of "what information the market reasonably knew," not stock prices, and denied the request there because it was "redundant of other information of which the Court has taken judicial notice." Similarly, *In re Washington Mutual, Inc. Securities, Derivative, & ERISA Litigation*, 259 F.R.D. 490 (W.D. Wash. 2009) was not considering judicial notice of stock prices. While Plaintiffs may disagree with the inferences to be drawn from the stock prices reflected in Exhibits 30-34, that says nothing about whether stock prices are judicially noticeable. They clearly are, and Defendants' request for judicial notice should be granted.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the relief sought in the Request for Judicial Notice.

DATED: March 25, 2019          GIBSON, DUNN & CRUTCHER LLP

By:    /s/ *Orin Snyder*
Orin Snyder
200 Park Avenue
New York, N.Y. 10166-0193
Tel: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley
Brian M. Lutz
555 Mission Street
Suite 3000
San Francisco, CA 94105-0921
Tel: 415.393.8200
Fax: 415.374.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

Paul J. Collins
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: 650.849.5300
Fax: 650.849.5333
pcollins@gibsondunn.com

*Attorneys for Defendants Facebook, Inc., Mark E. Zuckerberg, Sheryl K. Sandberg, and David M. Wehner*