Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel:  202.955.8217
Fax:  202.530.9614

Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Paul J. Collins (SBN 187709)
  pcollins@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants Facebook, Inc.,*
*Mark E. Zuckerberg, Sheryl K. Sandberg, and*
*David M. Wehner*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FACEBOOK, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | CASE NO. 5:18-CV-01725-EJD<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Date:  July 16, 2020<br>Time:  9:00 A.M.<br>Location:  Courtroom 4, 5th Floor<br>Judge:  Hon. Edward J. Davila<br><br>Date First Action Filed:  March 20, 2018 |

**TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT ........................................................................................................... 3

    A.  Plaintiffs Fail to Plead Falsity or Scienter for Any Challenged Statement ................. 3

        1.  User "Control" Statements Were Not False or Misleading,
            or Made with Scienter ................................................................... 4

            a.  Plaintiffs Fail to Plead Facts Demonstrating That Defendants
                Made a False or Misleading Statement ................................. 4

            b.  Plaintiffs Fail to Plead Particularized Facts Demonstrating a
                Strong Inference of Scienter .................................................. 5

            c.  Plaintiffs Fail to Plead Loss Causation Regarding User Control
                Statements ............................................................................. 8

        2.  Risk Factor Statements Were Not False or Misleading, or
            Made with Scienter ........................................................................ 8

            a.  Plaintiffs Fail to Plead Facts Demonstrating That Defendants
                Made a False or Misleading Statement ................................. 8

            b.  Plaintiffs Fail to Plead Particularized Facts Demonstrating a
                Strong Inference of Scienter ................................................ 11

        3.  A Statement About Facebook's Investigation of Cambridge
            Analytica Was Not False or Misleading, or Made with
            Scienter ....................................................................................... 13

            a.  Plaintiffs Fail to Plead Facts Demonstrating That Defendants
                Made a False or Misleading Statement ............................... 13

            b.  Plaintiffs Fail to Plead Particularized Facts Demonstrating a
                Strong Inference of Scienter ................................................ 13

        4.  Statements About the FTC Consent Decree Were Not False
            or Misleading, or Made with Scienter ......................................... 15

            a.  Plaintiffs Fail to Plead Facts Demonstrating That Defendants
                Made a False or Misleading Statement ............................... 15

            b.  Plaintiffs Fail to Plead Particularized Facts Demonstrating a
                Strong Inference of Scienter ................................................ 16

    B.  Plaintiffs' Remaining Challenged Statements Are Not Adequately Alleged to
        Be False or Misleading ................................................................................. 17

    C.  Plaintiffs' Stock Sale Allegations Do Not Create an Inference of Scienter ............... 18

Gibson, Dunn &
Crutcher LLP

D.  Plaintiffs Fail to Plead Loss Causation ................................................................. 18

    1.  Plaintiffs Fail to Plead Loss Causation with Respect to the March Declines ................................................................. 19

    2.  Plaintiffs Fail to Plead Loss Causation with Respect to the July Decline ................................................................. 21

E.  Plaintiffs Fail to Plead Reliance ................................................................. 24

F.  Plaintiffs Fail to Plead Claims Under Sections 20(a) or 20A ................................................................. 24

III.  CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ...........................................................................................................24

*In re Apple Comput., Inc., Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002) .............................................................................14

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017)..............................................................................................12

*Axonic Capital LLC v. Gateway One Lending & Fin.*,
2019 WL 4138024 (C.D. Cal. May 22, 2019) ...................................................................15

*Baker v. Seaworld Entm't, Inc.*,
2016 WL 2993481 (S.D. Cal. Mar. 31, 2016) .....................................................................9

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)..............................................................................................10

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999)............................................................................................24

*In re BofI Holding, Inc. Sec. Litig.*,
302 F. Supp. 3d 1128 (S.D. Cal. 2018) ..............................................................................20

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) ..............................................................22, 23

*Brown v. Ambow Educ. Holding Ltd.*,
2014 WL 523166 (C.D. Cal. Feb. 6, 2014).........................................................................23

*Cheung v. Keyuan Petrochemicals, Inc.*,
2012 WL 5834894 (C.D. Cal. Nov. 1, 2012)......................................................................15

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
691 F. App'x 393 (9th Cir. 2017) .........................................................................................7

*Doyun Kim v. Advanced Micro Devices, Inc.*,
2019 WL 2232545 (N.D. Cal. May 23, 2019) .....................................................................9

*Eng v. Edison Int'l*,
2018 WL 1367419 (S.D. Cal. Mar. 16, 2018) ....................................................................19

*Fleming v. Impax Labs. Inc.*,
2018 WL 4616291 (N.D. Cal. Sept. 7, 2018) .......................................................................7

Gibson, Dunn & Crutcher LLP

*Glazer Capital Mgmt., LP v. Magistri,*
    549 F.3d 736 (9th Cir. 2008)....................................................................................................11, 14

*Hefler v. Wells Fargo & Co.,*
    2018 WL 1070116 (N.D. Cal. Feb. 27, 2018)..................................................................................16

*Inchen Huang v. Higgins,*
    2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)..................................................................................19

*In re Kalobios Pharm., Inc. Sec. Litig.,*
    258 F. Supp. 3d 999 (N.D. Cal. 2017) .............................................................................................24

*In re LeapFrog Enters., Inc. Sec. Litig.,*
    527 F. Supp. 2d 1033 (N.D. Cal. 2007) .............................................................................................5

*Lentell v. Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005)....................................................................................................19, 22, 23

*In re LifeLock, Inc. Sec. Litig.,*
    690 F. App'x 947 (9th Cir. 2017) .........................................................................................15, 16, 17

*Lloyd v. CVB Fin. Corp.,*
    811 F.3d 1200 (9th Cir. 2016).........................................................................................................20, 21

*Lomingkit v. Apollo Educ. Grp. Inc.,*
    2017 WL 633148 (D. Ariz. Feb. 16, 2017) ....................................................................................16

*Loos v. Immersion Corp.,*
    762 F.3d 880 (9th Cir. 2014)...................................................................................................20, 21, 23

*Magro v. Freeport-McMoran Inc.,*
    2018 WL 3725781 (D. Ariz. Aug. 3, 2018) ....................................................................................23

*In re Maxwell Techs., Inc. Sec. Litig.,*
    18 F. Supp. 3d 1023 (S.D. Cal. 2014) .............................................................................................14

*Metzler Inv. GmbH v. Corinthian Colls., Inc.,*
    540 F.3d 1049 (9th Cir. 2008).........................................................................................................12, 23

*Mineworkers' Pension Scheme v. First Solar, Inc.,*
    881 F.3d 750 (9th Cir. 2018)...................................................................................................19, 22, 23

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.,*
    2010 WL 11469576 (D. Minn. Feb. 3, 2010) ................................................................................17

*Nordstrom, Inc. v. Chubb & Son, Inc.,*
    54 F.3d 1424 (9th Cir. 1995)...........................................................................................................14

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.,*
    184 F. Supp. 2d 991 (N.D. Cal. 2001) .............................................................................................5

Gibson, Dunn &
Crutcher LLP

*Nursing Home v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004)..................................................................................14, 18

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013)..........................................................................20, 21, 23

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014).............................................................................19, 20, 22

*Paskowitz v. Arnall*,
  2019 WL 3841999 (W.D.N.C. Aug. 15, 2019) ...........................................................10

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
  2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ...............................................................16

*Prodanova v. H.C. Wainwright & Co., LLC*,
  2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ............................................................14

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)......................................................................................14

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ...............................................................18

*In re Restoration Robotics, Inc. Sec. Litig.*,
  417 F. Supp. 3d 1242 (N.D. Cal. Oct. 18, 2019) ..........................................................5

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017)........................................................................................5

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ...................................................................21

*Rok v. Identiv, Inc.*,
  2018 WL 807147 (N.D. Cal. Feb. 9, 2018)..................................................................19

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001).............................................................................................6

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003)........................................................................14

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) .........................................................................17

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012).........................................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ....................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2017 WL 6041723 (N.D. Cal. Dec. 6, 2017) ................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2018 WL 1142884 (N.D. Cal. Mar. 2, 2018) ...............................................................24

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    282 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................7, 13

*Westley v. Oclaro, Inc.*,
    897 F. Supp. 2d 902 (N.D. Cal. 2012), *on reconsideration in part* (Jan. 10, 2013) .........................6

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) ....................................................................................9

*In re Wireless Facilities, Inc. Sec. Litig.*,
    2007 WL 9667131 (S.D. Cal. May 7, 2007) ...........................................................6, 12

*Zelman v. JDS Uniphase Corp.*,
    376 F. Supp. 2d 956 (N.D. Cal. 2005) ......................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 5:18-CV-01725-EJD

# I.      PRELIMINARY STATEMENT

Plaintiffs' Opposition Brief abandons most of the deficient allegations in their Second Amended Complaint.  This tactic only highlights that the few remaining challenged statements, the largely recycled scienter allegations, and the incoherent theory of loss causation still fail to state a claim under the heightened standard for pleading securities fraud.  Plaintiffs' strategy for trying to avoid dismissal is obvious:  By combining their falsity and scienter arguments, Plaintiffs hope this Court will ignore the clear differences between these essential elements of a securities fraud claim under the PSLRA.  But as this Court recognized in its detailed ruling granting Defendants' motion to dismiss the prior complaint, Plaintiffs are required—with respect to each and every challenged statement—not only to plead specific facts demonstrating that the statement was false or materially misleading at the time it was made, but also particularized facts supporting a strong inference that the speaker intentionally or with deliberate recklessness lied when making the challenged statement.  Separately, Plaintiffs are required to demonstrate that their alleged loss resulted from the revelation of a "truth" that corrected a prior misstatement.  When each of Plaintiffs' core allegations—the challenged statements, scienter allegations, and loss causation theories—is analyzed distinctly and with the rigor required under the PSLRA, it is clear that Plaintiffs have once again failed to state a claim for securities fraud.

Each of the four categories of alleged misstatements Plaintiffs now challenge suffers from multiple, independent defects.  Statements about users' "control" over their data on Facebook's platform were not misleading because they simply described how the platform operated.  Just like the last complaint, Plaintiffs point to no facts demonstrating that any of these statements were made with scienter.  Even the "new" scienter allegations Plaintiffs rely on in their Opposition Brief relate to information supposedly made available to the Individual Defendants years before the putative class period and have nothing to do with the alleged sharing of user data, years later, with a small number of developers on Facebook's vast platform.

Plaintiffs again fail to point to any facts demonstrating that the risk factor statements that the Court previously dismissed were false or misleading, let alone that Defendants were aware of the alleged facts that Plaintiffs claim were not disclosed.  Plaintiffs' reliance on allegations in an untested SEC complaint does not change this Court's prior conclusion that the same risk factors Plaintiffs point

1   to again cannot give rise to a securities fraud claim.  And again, Plaintiffs fail to identify any

2   particularized facts in their pleading showing that any Defendant consciously and intentionally

3   intended to deceive investors by warning them of risks in Facebook's public filings.

4        Plaintiffs' new focus on a statement by a Facebook spokesperson concerning the company's

5   investigation of Cambridge Analytica fares no better.  Plaintiffs point to no contemporaneous facts

6   showing that this isolated statement—that the Company had not found any wrongdoing by Cambridge

7   Analytica in connection with the Brexit or Trump campaigns—was false at the time it was made.  Nor

8   do Plaintiffs identify a single fact concerning the speaker's knowledge—which is critical for pleading

9   scienter—let alone specific facts demonstrating that the speaker intentionally, or through deliberate

10  recklessness, misled investors.

11       Statements about Facebook's compliance with a 2012 FTC consent decree also are not

12  actionable.  These are precisely the kinds of vague expressions of corporate optimism that courts

13  routinely dismiss as insufficient to plead securities fraud, as this Court previously concluded.

14  Facebook's settlement with the FTC does not make these inactionable statements actionable.  Plaintiffs

15  still fail to point to any particularized factual allegations demonstrating that any Individual Defendant

16  consciously sought to deceive investors when making general statements about the Company's

17  compliance with the 2012 consent decree.

18       Plaintiffs also fail even to address, much less refute, their failure to plead loss causation with

19  respect to the challenged statements.  To be clear, Plaintiffs must plead that for each alleged loss, the

20  disclosure in question revealed the "truth" of a prior misstatement by Defendants.  Plaintiffs' inability

21  to meet this critical pleading burden is most glaring as it relates to the "control" statements.  Plaintiffs

22  claim that the "truth" behind these statements became known in June 2018.  The problem for Plaintiffs

23  is that they do not allege any loss tied to this disclosure—rather, the only stock price declines they point

24  to in this case occurred in March and July 2018.  Obviously Plaintiffs cannot allege loss causation

25  without a stock price decline.  Plaintiffs' allegations arising from the March and July 2018 stock price

26  declines also fail.  Plaintiffs make no effort in their Opposition Brief or their SAC to connect any prior

27  alleged misstatement to any fact revealed before the decline in March 2018.  They rely instead on

28  unspecified "revelations" that did not correct—and bear no relation to—any of the preceding alleged

1  misstatements.  And the allegations concerning the July 2018 decline make no sense.  Plaintiffs' loss

2  causation theory apparently is that merely referencing "privacy" on the July earnings call was an

3  "admission" that the Cambridge Analytica events negatively impacted Facebook's financial results.

4  But if that were the law in this Circuit, the burden of pleading loss causation as an element of a securities

5  fraud claim would be nonexistent.

6      No amount of repleading can cure these fatal defects.  The SAC should be dismissed again, this

7  time with prejudice.

## II.      ARGUMENT

### A.      Plaintiffs Fail to Plead Falsity or Scienter for Any Challenged Statement

10      As Defendants pointed out in their Opening Brief, the SAC contains dozens of allegedly false

11  and misleading statements on disparate subjects ranging from alleged Russian interference in U.S.

12  elections to Facebook's compliance with a new European Union data privacy regime to the Company's

13  user metrics.  *See* ¶¶ 324-482; Defs.' Opening Brief ("OB") at 10-20.  Recognizing their failure to

14  plead a coherent theory of securities fraud, Plaintiffs' Opposition abandons virtually all of the

15  statements challenged in the SAC, and instead focuses on just four categories:  (i) statements about

16  user control over data they choose to share on Facebook, (ii) risk factor statements in the Company's

17  SEC filings, (iii) statements about Facebook's investigation of Cambridge Analytica, and

18  (iv) statements about the Company's compliance with a 2012 FTC consent decree.  As set forth in

19  Defendants' Motion and below, however, Plaintiffs fail to plead particularized facts demonstrating that

20  any of these statements were false or misleading when made.

21      Plaintiffs also fail to plead that the Defendants made any of the challenged statements with

22  scienter.  In an attempt to mask their inability to plead scienter, as detailed in Defendants' Opening

23  Brief, Plaintiffs lump their falsity and scienter arguments together in their Opposition.  But as this Court

24  recognized in its order dismissing the prior complaint (*see* MTD Order at 45), scienter is an entirely

25  separate element from falsity in a securities fraud claim, and requires the pleading of different facts.

26  OB at 20-21.  To plead an actionable misstatement, Plaintiffs must plead specific facts demonstrating

27  that a statement was false or materially misleading at the time it was made.  To plead scienter, however,

28  Plaintiffs must plead particularized facts creating a strong inference that the Defendants *knew* the

challenged statements were false, or were *deliberately* reckless in blinding themselves to the truth.  *Id.*  These are separate analyses.  As set forth below, for each category of challenged statements, Plaintiffs have failed to meet their burden of pleading specific facts establishing that the statements in question were false or misleading when made, or that any Defendant made the challenged statements with scienter.

**1.      User "Control" Statements Were Not False or Misleading, or Made with Scienter**

**a.      Plaintiffs Fail to Plead Facts Demonstrating That Defendants Made a False or Misleading Statement**

As detailed in Defendants' Motion (OB at 10-12), Plaintiffs try to capitalize on the single statement that the Court previously found to be adequately pleaded—but nonetheless inactionable for failure to plead scienter—by piling into the SAC every Class Period statement in which Facebook or the Individual Defendants used the word "control."  *See* ¶¶ 325-343.  Unlike the single "control" statement at issue in the Court's last motion to dismiss order, however, most of the "control" statements Plaintiffs challenge in the SAC did not assure users that "'no one is going to get your data that shouldn't have it.'"  MTD Order at 40.  Rather, the statements describe how Facebook's platform functions— *i.e.*, that users control the content and information that they put on the platform by making an affirmative decision to share that content.  *See, e.g.*, ¶ 333 ("[Y]ou have control over everything you put on the service."); ¶ 337(b) ("[Y]ou can share whatever content matters to you, whether that's photos, links or posts, and you get control over it."); ¶ 337(e) ("[O]n Facebook, everything that you share there[,] you have control over.").  These are categorically different statements than the "control" statement the Court focused on previously, and they are not adequately alleged with specific facts to have been false or misleading when made.

Even if, as Plaintiffs conclude, Defendants "promised that users had control over their data after it was posted on Facebook," those "promise[s]" were true.  Opp. at 5.  Plaintiffs acknowledge—and do not dispute—that Facebook gave users the ability to control data they shared on the platform through privacy settings.  *See, e.g.*, ¶ 326 ("[Y]ou can control how [content and information] is shared through your privacy and application settings."); ¶ 334 ("[Y]ou are in control of your Facebook, what you see, what you share, and what people see about you."); ¶ 335 ("We already show people what apps their accounts are connected to and allow them to control what data they've permitted those apps to use.");

Gibson, Dunn &
Crutcher LLP

¶ 336 ("People can control the audience for their posts and the apps that can receive their data."). And even if, as Plaintiffs contend (contrary to fact), privacy settings were "overridden," that does not mean the settings did not exist and did not enable users to control the audience for the content they chose to share on Facebook. *See, e.g.*, *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1258 (N.D. Cal. Oct. 18, 2019) (Davila, J.) ("Plaintiff's argument essentially crumbles into an efficacy, but not a falsity, argument…. This is not the standard—it is Plaintiff's burden to show falsity, not inadequacy.").

Finally, statements that Facebook "built [its] services around transparency and control" (¶ 328) and "applies the … principles" of "transparency and control" (¶ 330) simply are too vague and nonspecific to give rise to actionable securities fraud claims. *See also* ¶¶ 329, 331; *see, e.g.*, *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) ("To be misleading, a statement must be 'capable of objective verification.'") (citation omitted); *see also* MTD Order at 26-28 (dismissing claims based on general statements of corporate optimism). Plaintiffs offer no explanation for how the principles on which Facebook was "built" and that Facebook "applies" can be objectively false, because there is none. There are no factual allegations demonstrating that Facebook's platform was not "built" or "focused" on "transparency and control." ¶¶ 328-329; *see In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (statement that "we are 'a financially disciplined company'" was too vague to be actionable).

### b.    Plaintiffs Fail to Plead Particularized Facts Demonstrating a Strong Inference of Scienter

Plaintiffs also have not pleaded that the Individual Defendants acted with scienter when they made the challenged "control" statements—*i.e.*, facts demonstrating that they knew these statements were false or deliberately blinded themselves to their falsity by ignoring information to which they had access. MTD Order at 45. As this Court recognized, Plaintiffs must plead "particularized facts" giving rise to a "strong inference" of scienter, and this Court must consider "*all* reasonable inferences" flowing from Plaintiffs' allegations, "including inferences unfavorable to the [P]laintiffs." *Id.* (emphasis in original and citation omitted). Plaintiffs cannot meet this burden by alleging theories and innuendo, which is all they offer. *See In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991,

1005 (N.D. Cal. 2001) ("an extended chain of inferences" does not satisfy the PSLRA, which "clearly establishes a preference for facts over such inferential leaps").  They instead must plead "specific facts explaining the basis for the claim that Defendants had such knowledge."  *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 928 (N.D. Cal. 2012), *on reconsideration in part* (Jan. 10, 2013).  Plaintiffs' claim must be dismissed because they do not plead specific, concrete facts creating a strong inference that the Defendants acted with scienter when making the allegedly false user control statements.

Plaintiffs rely almost entirely on the Six4Three documents, but those documents do not support a finding of scienter.  Opp. at 5-6; ¶ 70.  As explained in Defendants' Motion, these documents are from *three to five years before* the Class Period (OB at 22) and therefore cannot establish what was happening at Facebook *during* the Class Period, let alone what the Individual Defendants knew about any such Class Period activities.  *See* MTD Order at 46 (alleged warning about "privacy vulnerabilities" five years before class period began did not support an inference of scienter).[1]  Nor do Plaintiffs allege that the "reciprocity" and "whitelisting" practices that Mr. Zuckerberg and Ms. Sandberg allegedly were aware of in 2012 (¶¶ 73-75) are the same practices that supposedly rendered the challenged statements false—*i.e.*, permitting approximately two dozen developers for a limited period of time after April 2015 to access certain friends' data.  *See* Davis Decl. Ex. B (FTC Complaint) ¶¶ 106-108; SAC ¶¶ 340(a), 341 (alleging FTC allegations establish falsity).  And, critically, even if Plaintiffs had adequately alleged with particularized facts that the Individual Defendants knew about whitelisting access to friends' data in the past (they have not), Plaintiffs still have alleged *no* facts that the Individual Defendants knew that a few dozen developers still had limited access to that data after Facebook announced it was discontinuing access for *millions* of developers in 2014-15.  Davis Decl. Ex. B ¶ 81

---

[1] Plaintiffs argue this Court was wrong in holding that alleged knowledge from years before the Class Period cannot establish scienter (Opp. at 6-7), but the cases on which they rely are distinguishable. Opp. at 7 n.4; *see In re Wireless Facilities, Inc. Sec. Litig.*, 2007 WL 9667131, at *8 (S.D. Cal. May 7, 2007) (because pre-class period financial statements rendered class-period financial statements false, pre-class period knowledge of alleged accounting fraud was relevant); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (in pleading *falsity* (not scienter) of "trends" under Item 303 of Regulation S-K, poor book sales in pre-class period quarter provided "a basis for knowing" that poor book sales would continue in *the very next* quarter); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 966, 970 (N.D. Cal. 2005) (pre-class period allegations only allowed because this was not a "traditional securities fraud action").

Gibson, Dunn &
Crutcher LLP

(alleging "millions of third-party developers" had access to data before Facebook removed access); *id.* ¶¶ 96-97, 106-108.

Plaintiffs again insist that "widespread abuses cited by the FTC" are sufficient to plead scienter (Opp. at 6), but Plaintiffs already tried that argument and failed.  MTD Order at 46-47 (rejecting argument that "widespread privacy misconduct at Facebook confirms scienter").  Plaintiffs have to do more than point to alleged misconduct by Facebook; they must plead particularized facts demonstrating that the Individual Defendants *knew* about it, and decided to make misleading statements anyhow.  *See, e.g.*, *Fleming v. Impax Labs. Inc.*, 2018 WL 4616291, at *4 (N.D. Cal. Sept. 7, 2018) (dismissing action even though price fixing adequately alleged because "the factual allegations do not suggest that Defendants actually orchestrated or knew of the alleged collusive activity"); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 691 F. App'x 393, 396 (9th Cir. 2017) (rejecting as "entirely speculative" inference that "executives must have known about the unsafe and unsound banking practices").[2]  The FTC's allegation that Facebook "knew or should have known" that it was violating the FTC consent decree (Opp. at 7) does not relieve Plaintiffs of this burden and cannot carry it for them because the allegation is entirely conclusory and only alleges negligence, not scienter.  OB at 22.  And that the FTC did *not* allege that the Individual Defendants acted with scienter even "after reviewing internal Facebook documents" cuts *against*, not in favor of, a strong inference of scienter.  Opp. at 7.[3]

---

[2]  None of Plaintiffs' cases (Opp. at 6 n.3) stand for the proposition that the Court can infer that the Individual Defendants must have known that a few dozen out of millions of developers had access to friends' data for a limited, extended period of time.  Scienter was adequately pleaded in *In re Wells Fargo & Co. S'holder Derivative Litig.* based on alleged red flags that were directly related to a massive fake account scandal.  *See* 282 F. Supp. 3d 1074, 1100-01 (N.D. Cal. 2017).  The language quoted from *Volkswagen* is dictum because the plaintiffs sufficiently alleged the scienter of the CEO who had been *directly responsible* for VW's diesel emissions devices at the time of the alleged wrongdoing—and, in any event, that case involved a scandal involving *11 million* cars that were "integral" to VW's growth strategy.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 66281, at *14 (N.D. Cal. Jan. 4, 2017).  And in *VeriFone*, the Individual Defendants were deliberately reckless in asking for accounting figures to be adjusted without any justification.  *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708-09 (9th Cir. 2012).

[3]  Plaintiffs' argument that Ashkan Soltani "confirmed Sandberg's scienter" (Opp. at 7 n.5) simply ignores Defendants' point that Mr. Soltani could do no such thing because he has no personal knowledge of Ms. Sandberg's state of mind, let alone about whitelisting.  OB at 23.

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 5:18-CV-01725-EJD

Gibson, Dunn &
Crutcher LLP

The fact remains that Plaintiffs have not, and cannot, meet their heavy burden of pleading specific, detailed facts raising a strong inference that the Individual Defendants consciously and deliberately lied when making the challenged "control" statements.   These statements must be dismissed, with prejudice, based on this failure to plead scienter.

### c.   Plaintiffs Fail to Plead Loss Causation Regarding User Control Statements

While Plaintiffs' loss causation allegations fail for a variety of reasons (*infra* at 18-24), there can be little doubt that Plaintiffs have failed to meet their burden of pleading loss causation with respect to the user control statements.  As Defendants established in their opening brief, Plaintiffs do not even try to allege a connection between the alleged losses in this case, which occurred in March and July 2018, and the challenged user control statements.  OB at 28, 31.  To the contrary, the "whitelisting" practices that supposedly rendered the user control statements false were, according to Plaintiffs' own pleading, disclosed to the market in early *June 2018*.  ¶¶ 116, 125-26.  Clearly, these alleged corrective disclosures could not have caused the stock price declines months earlier in March.  And Plaintiffs do not even try to argue—because it is nonsensical—that these revelations in early June somehow caused a stock price decline over a month later, with the July stock price decline.  This is a separate, independent reason that Plaintiffs have failed to meet their burden of pleading a securities fraud claim based on the user control statements.

### 2.   Risk Factor Statements Were Not False or Misleading, or Made with Scienter

### a.   Plaintiffs Fail to Plead Facts Demonstrating That Defendants Made a False or Misleading Statement

Plaintiffs contend that risk factor statements in Facebook's SEC filings were misleading because "they presented the risk of improper access, disclosure and use of user data as merely hypothetical, when, in reality, Defendants knew that Kogan … had already improperly disclosed the data of tens of millions of Facebook users to Cambridge Analytica."  Opp. at 9.  This baseless argument relies on the omission of critical portions of the challenged risk disclosures and contemporaneous facts, which demonstrate that the risk factor statements were truthful and not misleading.

Plaintiffs first allege that it was misleading for Facebook to state that, "[a]ny failure to prevent or mitigate security breaches and improper access to or disclosure of our data or user data could result in the loss or misuse of such data, *which could harm our business and reputation and diminish our*

Gibson, Dunn &
Crutcher LLP

*competitive position*." Lutz Decl. Ex. 31 at 12 (emphasis added).  This statement is not misleading, however, because Plaintiffs fail to allege any facts demonstrating that Facebook's business and reputation were being harmed, or its competitive position diminished *at the time the risk disclosure was made*.

Williams v. Globus Medical, Inc.*, 869 F.3d 235, 241-43 (3d Cir. 2017), on which the Court relied in granting Defendants' earlier motion to dismiss (MTD Order at 35), and which Plaintiffs do not even try to distinguish, is squarely on point.  There, the plaintiffs alleged that it was misleading for the company to warn that "if any of our independent distributors were to cease to do business with us, our sales could be adversely affected." *Id.* at 242.  According to the plaintiffs in that case, this statement was misleading because it "warned that the loss of an independent distributor could have a negative impact on sales—but it omitted to warn investors … that [the company] had *in fact* lost an independent distributor." *Id.* at 241.  The court rejected the plaintiffs' argument, holding that "[t]he risk actually warned of is the risk of adverse effects on sales—not simply the loss of independent distributors generally.  Accordingly, the risk at issue only materialized—triggering [the company's] duty to disclose—if sales were adversely affected at the time the risk disclosures were made." *Id.* at 242.  Because the plaintiffs failed to allege that the company's sales were adversely affected by the decision to terminate the distributor at the time the risk disclosure was made, the risk disclosure was not misleading.  *Id.* at 243; *see also Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *7-8 (N.D. Cal. May 23, 2019) (Davila, J.) (risk factor statements not misleading because "the potential risks disclosed in the SEC filings had not come to fruition when Defendants filed the challenged risk disclosures") (citing *Williams*); *Baker v. Seaworld Entm't, Inc.*, 2016 WL 2993481, at *11-12 (S.D. Cal. Mar. 31, 2016) (risk factor statements not misleading because plaintiffs failed to allege that disclosed risks "had an actual effect on Seaworld Entertainment parks" at the time statements were made).

The same analysis applies here.  Contrary to Plaintiffs' assertion (*see* Opp. at 9), the risk that Facebook warned about was harm to the Company's business and reputation, and diminishment of its competitive position—not improper access to or disclosure of user data.  *See* Lutz Decl. Ex. 31 at 12.  Plaintiffs do not allege that, at the time the risk disclosure was made, the Cambridge Analytica events

1  were harming Facebook's business and reputation, or diminishing the Company's competitive position.

2  Nor can they, given that Kogan's and Cambridge Analytica's misuse of user data had been matters of

3  public knowledge since December 2015, with no negative impact on Facebook's business, reputation,

4  or competitive position.  *See* MTD Order at 35-36 ("This chronology undercuts Plaintiffs' theory of

5  events ….").

6         The other risk disclosure Plaintiffs challenge also is not actionable.  Plaintiffs allege that it was

7  misleading for Facebook to warn that, "if … third parties or developers fail to adopt or adhere to

8  adequate data security practices, or in the event of a breach of their networks, *our data or our users'*

9  *data may be improperly accessed, used, or disclosed.*"  Lutz Decl. Ex. 31 at 13 (emphasis added).

10  According to Plaintiffs, this risk had materialized when the statement was made because Kogan "had

11  already improperly disclosed the data of tens of millions of Facebook users to Cambridge Analytica …

12  who had already 'improperly access[ed]' and 'used' the data."  Opp. at 9.  But Plaintiffs omit the

13  context in which the challenged statement was made, which again shows that Facebook was warning

14  of the risk on its business and reputation (Lutz Decl. Ex. 31 at 12-13), and thus fails for the same

15  reasons as the first risk factor.  An additional problem with this theory is that Kogan's and Cambridge

16  Analytica's misuse of Facebook user data was public knowledge by December 2015—more than a year

17  before the challenged risk disclosure was made.  *See, e.g.*, ¶¶ 5, 86; Lutz Decl. Ex. 17.  Investors

18  therefore had all of the information they needed to evaluate Facebook's risk disclosure and could not

19  have been misled about whether the risk of improper access, use, or disclosure of data in the hands of

20  third parties had materialized.[4]  *See, e.g., Paskowitz v. Arnall*, 2019 WL 3841999, at *9 (W.D.N.C.

21  Aug. 15, 2019) ("At the same time the Company disclosed the 'risks' of attracting and retaining key

22  personnel the Company also disclosed the identities of the key personnel and the numbers of investment

23  professionals working in the business.  Therefore, investors would not have been misled concerning

24  the degree to which the 'risk' of employee departures had been realized ….").  In other words, the risk

25

26  _____

    [4]  That the investing public fully was aware of Kogan's and Cambridge Analytica's misuse of

27  Facebook user data distinguishes this case from *Berson v. Applied Signal Technology, Inc.*, 527
    F.3d 982, 985-87 (9th Cir. 2008).  There, the company did not disclose the "stop-work" orders that
    allegedly rendered its risk disclosures misleading.  *See id.* at 987.  Here, by contrast, the events that

28  Plaintiffs claim render Facebook's risk factor statement misleading fully were disclosed in a
    December 2015 article in *The Guardian*.  *See, e.g.*, ¶¶ 5, 86; Lutz Decl. Ex. 17.

disclosure did not portray "a materially different 'state of affairs'" from the one that investors knew existed.  MTD Order at 36.

#### b. Plaintiffs Fail to Plead Particularized Facts Demonstrating a Strong Inference of Scienter

Plaintiffs' claims based on the risk factor statements also should be dismissed for the independent reason that Plaintiffs have failed to plead scienter.  Plaintiffs fail to point the Court to a single allegation in the SAC that the Individual Defendants knew (or were reckless in not knowing) that Cambridge Analytica's misappropriation of user data was "harm[ing] [Facebook's] reputation and adversely affect[ing] [Facebook's] business" at the time the risk factor statements were made.  ¶ 350. Nor could they, because Plaintiffs have not alleged that Facebook was suffering any harm at the time the risk disclosure was made.  *Supra* at 9.

The same is true even under Plaintiffs' incorrect theory of falsity—*i.e.*, the mere fact that Cambridge Analytica misappropriated user data renders the risk factors false—because Plaintiffs have not pleaded that the Individual Defendants knew about Cambridge Analytica's misappropriation when the challenged statements were made.  Of note, even the SEC's allegations—which Plaintiffs do not dispute they incorporated by reference—strongly *undercut* any inference of scienter by the Individual Defendants.  OB at 21-22 (SEC alleged that those with "primary responsibility for drafting and approving" the SEC filings were not aware of Kogan's sale of data to Cambridge Analytica).  Thus, Plaintiffs' conclusory assertion that "Defendants knew that Kogan … had already improperly disclosed the data" is belied by their own pleading.[5]  Opp. at 9.

Plaintiffs make three unavailing arguments in response.  First, Plaintiffs argue that "Zuckerberg and Sandberg have publicly admitted to knowing about the Cambridge Analytica data breach in 2015." Opp. at 10.  But Mr. Zuckerberg and Ms. Sandberg never stated that they *personally* knew about the Cambridge Analytica events.  The statements Plaintiffs point to merely use the collective "we" to acknowledge that certain people in Facebook knew.  ¶¶ 98-99.  The Court should reject Plaintiffs'

---

[5] Plaintiffs are wrong that the SEC "confirmed Defendants' scienter" (Opp. at 11).  To the contrary, the SEC did not even bring claims that required scienter.  OB at 21 & n.6.  And the SEC's allegation that Facebook "knew, or should have known" that its risk factors were misleading (Opp. at 11) merely alleges negligence, not scienter.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (an "inference that [defendant] *should* have known of the violations … is not sufficient to meet the stringent scienter pleading requirements of the PSLRA").

Gibson, Dunn &
Crutcher LLP

strained inference of scienter, especially in light of the SEC's allegations that only lower-level employees, not Facebook's top executives, knew about the Cambridge Analytica events in 2015. *See Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) ("[T]he court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.") (citation omitted).

Second, Plaintiffs argue that Roger McNamee, an early investor in Facebook, "confirmed Defendants' knowledge" of Cambridge Analytica (Opp. at 11) because he supposedly warned Defendants about it (*id.* at 14-15). But the interview transcript Plaintiffs rely on for this argument does not say that. To the contrary, McNamee admits that he learned about Cambridge Analytica from the news in March 2018—meaning he could not have warned Defendants during the Class Period, as Plaintiffs claim. *See* Davis Decl. Ex. C at 26:12-25 (noting *New York Times* and *The Guardian* articles), 29:4-7; *cf.* ¶ 20 (news articles came out in March 2018). This warning also supposedly occurred in 2016, so it cannot establish what the Individual Defendants knew during the Class Period. MTD Order at 46.[6] McNamee simply did not have any inside knowledge about who knew what and when at Facebook during the relevant period because he was not actively involved with Facebook after 2009. Davis Decl. Ex. C at 13:21-14:13. Thus, Plaintiffs' argument that McNamee had "personal knowledge" of what Mr. Zuckerberg and Ms. Sandberg knew during the Class Period (Opp. at 13) is baseless.[7]

Finally, Plaintiffs make the perplexing argument that the 2019 FTC fine, Facebook's alleged "reciprocity" practices, and its alleged selective enforcement against "policy violations" together sufficiently plead that the Individual Defendants deliberately lied when making the risk factor statements. Opp. at 16-17. This mishmash of allegations bears no connection to Kogan's sale of data

---

[6] Plaintiffs rely on inapposite cases to argue that this Court's holding about pre-Class Period knowledge was wrong. Opp. at 14 n.12. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 801 (9th Cir. 2017), is about whether a statement was forward-looking, not scienter, and *Wireless Facilities*, 2007 WL 9667131, at *8, is distinguishable for the reasons discussed above, *supra* at 6 n.1.

[7] Plaintiffs also misleadingly suggest that the Individuals Defendants told McNamee that they knew that three Facebook employees worked with Cambridge Analytica on the Trump campaign as part of "Project Alamo." Opp. at 15. Again, the transcript Plaintiffs cite does not say that. Davis Decl. Ex. C at 20-21. Project Alamo is not even referenced in the SAC. Even if it were, it would get Plaintiffs nowhere because there is no rational connection between Project Alamo and the risk factor statements challenged by Plaintiffs. *See* MTD Order at 39 (rejecting allegation that "does not bear on the Cambridge Analytica-type privacy issues").

Gibson, Dunn &
Crutcher LLP

to Cambridge Analytica, nor do they show that the Individual Defendants knew what these third parties were doing behind Facebook's back.  There simply were no "red flags" that would have put the Individual Defendants on notice about what Cambridge Analytica did, which distinguishes this case from *Wells Fargo*.  Opp. at 17; *see supra* at 7 n.2 (distinguishing *Wells Fargo*).  For all these reasons, Plaintiffs fail to plead scienter as to the risk factor statements.

### 3.   A Statement About Facebook's Investigation of Cambridge Analytica Was Not False or Misleading, or Made with Scienter

#### a.   Plaintiffs Fail to Plead Facts Demonstrating That Defendants Made a False or Misleading Statement

Plaintiffs also fail to plead that it was false or misleading for a Facebook spokesperson to report, on two occasions in March 2017, that the Company's "investigation to date has not uncovered anything that suggests wrongdoing ***with respect to Cambridge Analytica's work on the [Brexit] and Trump campaigns***."  ¶ 362 (emphasis added); *accord* ¶ 363; *see* Opp. at 11.  Although Plaintiffs allege that Facebook had determined by the time this statement was made that Cambridge Analytica had violated the company's policies (*see, e.g.*, ¶¶ 162-164), Plaintiffs do not cite a single allegation in the SAC linking Cambridge Analytica's policy violation to "the [Brexit] [or] Trump campaigns."  *See* Opp. at 11 (citing ¶¶ 97-100, 136-138, 141-149, 152); *see also* Opp. at 18 n.17 (citing other paragraphs that do not relate to Brexit or Trump campaigns).  Accordingly, there are no facts demonstrating, and no basis to conclude, that the single challenged statement regarding Facebook's investigation of Cambridge Analytica was false at the time it was made.[8]

#### b.   Plaintiffs Fail to Plead Particularized Facts Demonstrating a Strong Inference of Scienter

Plaintiffs also fail to plead scienter as to the investigation statement because they do not plead *any facts whatsoever* about the Facebook spokesperson who made the challenged statement, let alone specific facts demonstrating that the spokesperson knew or was reckless in not knowing that the challenged statement was false at the time it was made.  "A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the

---

[8]  Plaintiffs' sole apparent basis for challenging this statement is the SEC's settled charge that the statement was misleading.  *See* Opp. at 11-12.  But, like the SAC, the SEC's complaint contains no allegations linking the Cambridge Analytica's policy violation to the Brexit or Trump campaigns— in fact, it omits that portion of the challenged statement altogether.  *See* Lutz Decl. Ex. 15 ¶ 49.

requisite level of scienter." *In re Apple Comput., Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 6041723, at *8 (N.D. Cal. Dec. 6, 2017) ("[L]iability for fraud cannot be imputed to a corporation without evidence that an agent of the corporation who participated in making the challenged statements did so with scienter."). Thus, Plaintiffs' argument that an agent's actions can be imputed to its principal (Opp. at 12) is beside the point because Plaintiffs plead no facts demonstrating that the Facebook spokesperson had scienter to begin with. Even leaving aside the fatal flaw that Plaintiffs fail to allege *any* facts demonstrating that Facebook's investigation uncovered wrongdoing by Cambridge Analytica in connection with the Brexit or Trump campaigns (*see supra* at 13), there are no facts pleaded demonstrating what the spokesperson knew or was told about the investigation, or what information the spokesperson had access to, before making the challenged statement.[9] This pleading failure dooms their agency theory and their claim.

While Plaintiffs argue about what the "investigations team" allegedly knew (Opp. at 19-21), this cannot establish Facebook's scienter—let alone the scienter of the Individual Defendants who are not alleged to have even made the "investigations" statement. The Ninth Circuit has "not … adopted a theory of collective scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008); *see also Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("[T]here is no case law supporting an independent 'collective scienter' theory."). Accordingly, "corporate scienter may not be established by imputing the false statements of one agent [] with the alleged scienter of another agent []." *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at *14 (C.D. Cal. Dec. 11, 2018); *see also In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1033 (S.D. Cal. 2014) ("[C]orporate scienter is not sufficiently alleged under these circumstances where one executive had the knowledge and other, perhaps-innocent executives made the statements."). Plaintiffs cannot

---

[9] The cases on which Plaintiffs rely (Opp. at 19 nn.18, 22) only prove the deficiency of their allegations here. *See Nursing Home v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004) (specific allegations that officers monitored database that showed slowing sales); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (multiple confidential witnesses with personal knowledge that officers reviewed reports showing slowing sales); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (pleading scienter through access to information requires "detailed and specific allegations about management's exposure to factual information within the company"); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1156-59, 1169 (C.D. Cal. 2003) (alleged scienter based on multiple confidential witness statements).

use the alleged knowledge of the investigations team to plead scienter as to the spokesperson's statement.

Finally, even if there were specific facts alleged supporting a strong inference of scienter as to the Facebook spokesperson—and there are not—Plaintiffs still point to no facts demonstrating that the knowledge of the spokesperson, who is not an Individual Defendant, can be imputed to Facebook. Because "corporations act through their directors and officers" they "can only be held liable for fraud if one or more of these individuals are liable for fraud." *See Axonic Capital LLC v. Gateway One Lending & Fin.*, 2019 WL 4138024, at *8 (C.D. Cal. May 22, 2019) (rejecting argument "that the scienter of '[a]ny individual agent' … can be imputed to the corporation"); *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *3 (C.D. Cal. Nov. 1, 2012) ("Plaintiffs must allege the requisite level of scienter with respect to at least one of the Individual Defendants."). Plaintiffs' failure to allege that the spokesperson is an officer or director whose scienter can be imputed to Facebook is another independent reason for dismissal of their claim based on the investigation statement.

### 4.   Statements About the FTC Consent Decree Were Not False or Misleading, or Made with Scienter

#### a.   Plaintiffs Fail to Plead Facts Demonstrating That Defendants Made a False or Misleading Statement

Statements about Facebook's efforts to comply with a 2012 FTC consent decree also are not adequately alleged to have been false or misleading, as this Court previously held. *See* MTD Order at 27 (statement that "[w]e've worked hard to make sure that we comply" with the FTC consent decree was "too vague to be actionable"). Plaintiffs claim that the compliance statements alleged in the SAC somehow are "far more specific," but they do not explain how (because they are not). For example, Plaintiffs challenge a statement that, "[t]he FTC consent decree was important … [a]nd we've taken every step we know how to make sure we're in accordance with it" (¶ 182 (quoted in Opp. at 25)), but Plaintiffs fail to identify any "steps" that Facebook did not take to take to comply with the consent decree that would render this statement false. *See, e.g.*, *In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947, 950-52 (9th Cir. 2017) (statement that "[w]e … believe we are in compliance with the requirements of the FTC [Consent] [O]rder" was "neither a statement of fact nor an actionable

opinion");[10] *Lomingkit v. Apollo Educ. Grp. Inc.*, 2017 WL 633148, at *23 & n.22 (D. Ariz. Feb. 16, 2017) (dismissing as inactionable puffery statement that company "'does more than any postsecondary educational institution to demonstrate transparency and a commitment to military students'").

Plaintiffs also cannot overcome this Court's prior holding that Defendants were not required to accuse themselves of violating the FTC consent decree.  MTD Order at 27 ("[C]ompanies are not required to engage in 'self-flagellation' by disclosing unproven allegations."); *see also In re Paypal Holdings, Inc. S'holder Derivative Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do not impose upon companies a 'duty to disclose uncharged, unadjudicated wrongdoing.'") (citation omitted).  As the Court previously held, at the time the challenged statements were made, "the FTC only stated an intent to investigate Facebook, but had not made any formal finding that Facebook violated the decree order.  Thus, Defendants had no requirement to elaborate on any potential privacy breaches."[11]  MTD Order at 27-28 (citation omitted).

### b.     Plaintiffs Fail to Plead Particularized Facts Demonstrating a Strong Inference of Scienter

Plaintiffs also have pleaded no facts demonstrating that the Individual Defendants believed Facebook was violating the FTC consent decree.  OB at 17.  Plaintiffs contend that "Defendants made a deliberate decision to violate the 2012 consent decree," but the paragraphs in the SAC they cite do not support that conclusion.  Opp. at 26 (citing ¶¶ 62-80).  Nor does the SAC plead facts supporting Plaintiffs' bald conclusion that "Zuckerberg and Sandberg were personally involved in the decision to override user privacy settings."  *Id.* (citing ¶ 118).  Again, Plaintiffs cannot simply point to the alleged "widespread nature of the misconduct that the FTC punished" (Opp. at 28) to establish scienter.  *Supra*

---

[10]  That the allegedly false statement in *LifeLock* supposedly "was non-specific and expressly couched as an opinion" does not, as Plaintiffs claim, "demonstrate[] why [Defendants'] statements are actionable in the context of this case."  Opp. at 27 n.29.  To the contrary, Plaintiffs challenge similarly vague statements like "'[w]e respect local laws and regulations'" and "'[w]e reject any suggestion of violation of the consent decree.'"  ¶¶ 389-95.

[11]  This case is unlike *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *8 (N.D. Cal. Feb. 27, 2018), where the speaker allegedly touted a "terrific reaction from [the company's] regulators," but in reality, the company's regulator had commenced an investigation and directed the company to address weaknesses in compliance risk before the statement was made.  *But see id.* (finding that plaintiffs had not alleged that this was a false or misleading statement under the PSLRA).  Here, investors were aware that the FTC had commenced a public investigation of Facebook for violating the 2012 consent decree, but that the FTC had not made any finding as to the Company's liability at the time of the challenged statement.  *See* MTD Order at 27-28.

Gibson, Dunn &
Crutcher LLP

at 7.  Even assuming this were "sufficient to establish knowledge" as to *somebody* within Facebook, that does not establish scienter because "the allegations lack connection to any of the Individual Defendants and are not particular enough to satisfy [the] PSLRA."  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 816 (N.D. Cal. 2019) (allegations in FTC complaint do not establish scienter); *see also In re LifeLock*, 690 F. App'x at 951-52 (affirming dismissal because "conclusory allegations that 'Defendants flagrantly violated the terms of the [FTC] Order' are insufficient to demonstrate that Defendants knew or reasonably should have known that [the company's] practice violated the FTC Order").[12]

## B.  Plaintiffs' Remaining Challenged Statements Are Not Adequately Alleged to Be False or Misleading

Plaintiffs devote less than two pages of their Opposition to a half-hearted defense of the dozens of other statements challenged in the SAC.  The Court should summarily dismiss these arguments.  Indeed, Plaintiffs admit that—contrary to the allegations in the SAC (¶¶ 444-460)—Facebook was not "technically 'selling' users' data in cash-for-data transactions," rendering statements that Facebook does not "sell" user data inactionable.  Opp. at 27; *see* OB at 20.  Plaintiffs also acknowledge implicitly that the SAC makes no allegation that user accounts were compromised by state actors, as they must to render false or misleading a statement in a white paper about notifying affected users.  *See* Opp. at 27 ("Defendants knew, or should have known that state actors *could* access user data for improper purposes ….") (emphasis added); OB at 17-18; MTD Order at 38-39 (statement about user notification "limited to people targeted by 'sophisticated attackers' … defined as an 'attacker suspected of working on behalf of a nation state'").  Plaintiffs' only defense of the remaining statements is that "Defendants raise fact disputes that cannot be resolved at the present stage."  Opp. at 28.  But as the Court previously held when it dismissed Plaintiffs' prior deficient complaint, Plaintiffs' claims can—and should—be

---

[12]  While Plaintiffs acknowledge that the FTC consent decree by itself cannot establish scienter, they argue this case is like *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.* because there was "an agreement that required senior management to monitor" for illegal activity.  Opp. at 15 n.15.  But there were particularized allegations of scienter in that case, including that it was absurd to think that senior management did not know *85%* of medical device sales, contributing 6% of the company's revenues, were based on off-label use (not on-label use as investors were told).  *See* 2010 WL 11469576, at *1, 7-8 (D. Minn. Feb. 3, 2010).  Nothing like that is pleaded here.

Gibson, Dunn & Crutcher LLP

adjudicated on the pleadings.  For the reasons set forth in Defendants' Motion and in this Court's order dismissing the prior complaint, none of the dozens of other challenged statements are actionable.

## C.    Plaintiffs' Stock Sale Allegations Do Not Create an Inference of Scienter

Plaintiffs' stock sale allegations also do not give rise to a strong inference of scienter.  Opp. at 29.  Plaintiffs do not even attempt to defend their allegations about Mr. Wehner's stock sales, and thus concede that his stock sales do not support a finding of scienter.  OB at 23-25.  As to Mr. Zuckerberg and Ms. Sandberg, Plaintiffs merely argue that the proceeds from their sales "are 'truly astronomical figure[s]' that independently support scienter."  Opp. at 29.  But large sales by themselves are insufficient to plead scienter; Plaintiffs must—but fail to—plead that the sales are *suspicious* in light of the Defendants' trading history.  OB at 24-25.  The *Nursing Home* decision on which Plaintiffs rely confirms the deficiency of their allegations.  Unlike Plaintiffs here, the plaintiffs there alleged the percentage of shares sold, and that the sales by the officer were the first in *five years*.  *See* 380 F.3d at 1232.  Plaintiffs' failure to provide this Court with the context to evaluate whether Defendants' stock sales are suspicious requires dismissal of their claim.[13]

## D.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs cannot cure in their Opposition brief their failure to plead loss causation for each of the four categories of statements they now challenge.  Just like the last round of briefing on Defendants' motion to dismiss, Plaintiffs' Opposition identifies several ways that they might seek to plead loss causation, "including by identifying price declines that accompany the materialization of concealed risks or the disclosure of information previously concealed."  Opp. at 29.  The fundamental problem for Plaintiffs, however, is that they still fail to satisfy their burden to plead with specificity how any alleged false or misleading statement caused the losses they now seek to recover.

Plaintiffs' loss causation theory ultimately boils down to the idea—routinely rejected by courts in this Circuit—that because Facebook's stock price dropped following news articles and earnings

---

[13]  Plaintiffs' argument that the "the fact of the 10b5-1 trading plan, without more, is insufficient to negate the effect of *otherwise suspicious* sales" is beside the point because they have not alleged that the Individual Defendants' stock sales were suspicious in the first place.  Opp. at 29 (quoting *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *16 (C.D. Cal. Oct. 1, 2013)).  And their argument that Defendants' 10b5-1 plans are actually *suggestive* of scienter, *id.*, flips the analysis on its head and conflicts with the clear law in the Ninth Circuit that the existence of a 10b5-1 plan *cuts against* an inference of scienter.  OB at 24.

reports, those drops *must* have been caused by fraud, which *must* have been effected *by Facebook*, and *must* have been new to the market. *See* Opp. at 29-30; OB at 26-33. That is not the law. *See, e.g.*, *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (price declines upon publication of press releases and reports do not establish loss causation; plaintiffs must "specify which of the Defendants' statements were made untrue" by such documents). Although the Ninth Circuit noted in *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018), that "loss causation is a 'context-dependent' inquiry," the court in *First Solar*, like many others, held that plaintiffs must plead with particularity facts that, if true, would demonstrate that it was a "misstatement, as opposed to some other fact, [that] foreseeably caused the plaintiff's loss." Contrary to Plaintiffs' argument (Opp. at 30 n.34), the court in *First Solar* left intact the "restrictive" pleading requirements for "causation theor[ies] based on market revelation of the fraud"—*i.e.*, corrective disclosures—of the type Plaintiffs rely on here. *First Solar*, 881 F.3d at 753-54; *Rok v. Identiv, Inc.*, 2018 WL 807147, at *8 (N.D. Cal. Feb. 9, 2018).[14]

### 1. Plaintiffs Fail to Plead Loss Causation with Respect to the March Declines

In their Opening Brief, Defendants demonstrated that, as with the last complaint, Plaintiffs fail to plead a credible loss causation theory based on the allegedly "corrective" disclosures in March 2018 because Plaintiffs do not establish that any of those disclosures revealed the "truth," or even related back to any particular alleged misstatement made by Facebook. OB at 28-29. Plaintiffs rely on the

---

[14] Plaintiffs recognize that they are proceeding under a "corrective disclosure" theory (Opp. at 30-32; ¶¶ 509-528), but now claim that they are also asserting a "materialization of risk" theory as well. Opp. at 29 n.33 (citing ¶ 511). The loss causation section of the SAC, however, merely appends conclusory language, with no factual support, that unspecified alleged "*disclosures* ... revealed some of the falsity of defendants' statements regarding user control over data, the Cambridge Analytica matter, and other elements of defendants' fraud alleged herein, *including the concealed materialization of risks to its operations.*" ¶ 511 (emphasis added). Contrary to Plaintiffs' argument, however, neither the SAC nor the Opposition returns to the "materialization of risk" theory they purport to plead. In any event, although the "'materialization of the risk' approach has not been [explicitly] adopted by the Ninth Circuit," *Eng v. Edison Int'l*, 2018 WL 1367419, at *3 (S.D. Cal. Mar. 16, 2018), courts that have recognized the theory have held that a plaintiff may not employ conclusory allegations to plead adequately a "materialization of risk." OB at 27 n.8; *see, e.g.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 176 (2d Cir. 2005) (similar materialization of risks allegation was "a legal conclusion; missing are the necessary allegations of fact to support the conclusion"). Neither Plaintiffs' single passing reference to their purported "materialization of risk" theory in the SAC (¶ 511) nor the two references in their Opposition (Opp. at 29, 29 & n.33) demonstrate the type of particularized factual pleading required under Rule 9(b). *See Inchen Huang v. Higgins*, 2019 WL 1245136, at *4, 16 (N.D. Cal. Mar. 18, 2019).

Gibson, Dunn &
Crutcher LLP

1    same flawed approach again in their Opposition.  Opp. at 30-32 (citing, for example, ¶ 116 for the

2    proposition that "Facebook's privacy protections were not as robust as represented").

3         Plaintiffs do not even attempt to trace their claimed loss back to "the very facts about which the

4    defendant lied."  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111,

5    1120 (9th Cir. 2013).  Instead, Plaintiffs wrongly argue that it is *Defendants'* obligation to identify

6    "other information that purportedly caused the decline in Facebook's stock price" and, again wrongly,

7    that Defendants' arguments "at best raise factual issues for expert analysis and discovery."  Opp. at 31.

8    Plaintiffs' argument is precisely backward.  It is Plaintiffs' burden at the pleadings phase to

9    "demonstrate that an economic loss was caused by the defendants' [alleged] misrepresentations, rather

10   than some other intervening event" or "other fact[s]."  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209-

11   10 (9th Cir. 2016).

12        Plaintiffs' failure to tie the "statistically significant decline in Facebook['s] stock price" to the

13   fraudulent statements alleged in the SAC is understandable because nothing in the articles cited blame

14   the March 2018 stock movements on any previous statement by Facebook.  Opp. at 31.  The news

15   articles following the stock drop do not articulate that theory—they at most express frustration that

16   Facebook's controls did not stop Cambridge Analytica from misusing user data.  *See Loos v. Immersion*

17   *Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).

18        Plaintiffs still do not explain how any of these "revelations," taken alone or collectively, show

19   any particular Facebook statement to be fraudulent.  *See Apollo*, 774 F.3d at 608 (rejecting loss

20   causation theory because it was "unclear what claims" made by defendants were invalidated by alleged

21   disclosures).  Again, Plaintiffs do not make this connection, because they cannot.  None of the news

22   articles Plaintiffs rely upon suggest that Facebook committed a fraud.  And none describe a particular

23   Facebook statement or omission as false or misleading.  *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*,

24   302 F. Supp. 3d 1128, 1135 (S.D. Cal. 2018) (holding that corrective disclosures must "relate back to

25   the misrepresentation and not to some other negative information about the company").  Because this

26   "critical link is missing," Plaintiffs "invite[] the court to assume that the misrepresentations account"

27

28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 5:18-CV-01725-EJD

1    for the losses, and not other plausible explanations such as, for example, Cambridge Analytica's false

2    representation that the user data it obtained had been destroyed.  *See Nuveen*, 730 F.3d at 1121.[15]

3    Plaintiffs nevertheless contend, again, that the disclosures revealed *new* information, but none

4    withstand even cursory scrutiny.  Plaintiffs assert that the articles revealed "the Cambridge Analytica

5    data breach," and also revealed a supposedly "related lack of user control over data posted to Facebook

6    [that] presented continuing risks to Facebook's business."  Opp. at 31.  But Plaintiffs do not dispute

7    that Kogan's and Cambridge Analytica's actions were public knowledge in 2015 (and were discussed

8    again by the media in 2016 and 2017).  *See* OB at 28-29; *e.g.*, Ex. 17.[16]  Plaintiffs similarly point to an

9    assertion in one news article that Facebook had not before "acknowledged" the "data leak."  *See* Opp.

10   at 31.  Plaintiffs are wrong again.  Facebook told *The Guardian* in December 2015 that it was

11   investigating the allegations, and that if it found violations of Facebook policies, it would require

12   destruction of "all improperly collected data."  Ex. 17.  That is exactly what Facebook did; Cambridge

13   Analytica just allegedly lied about deleting the data.  Plaintiffs next contend that in 2017 Facebook

14   falsely "den[ied] that [its] investigation had uncovered … wrongdoing in relation to Cambridge

15   Analytica."  Opp. at 31.  As discussed above, however, Plaintiffs' argument is itself misleading and

16   misrepresents Facebook's 2017 statements regarding its investigation.  Finally, Plaintiffs again cite a

17   number of "analysts, journalists, Facebook insiders, and others" for the proposition that "[t]hese

18   knowledgeable market participants viewed the March disclosures as new, material and troubling."  *See*

19   Opp. at 32.  But even if true, these allegations say nothing about any allegedly false or misleading

20   statement *by Facebook*, as Plaintiffs are required to plead under the PSLRA.

21   ## 2.    Plaintiffs Fail to Plead Loss Causation with Respect to the July Decline

22   In their opening brief, Defendants demonstrated that Plaintiffs' loss causation allegations with

---

15   Facebook does not "contend that 'the announcement of an investigation is insufficient to plead loss causation'" in all circumstances.  *Contra* Opp. at 31 n.35.  The Ninth Circuit has made clear that "the announcement of an investigation, 'standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure.'"  *Lloyd*, 811 F.3d at 1209-10 (quoting *Loos*, 762 F.3d at 890 n.3).  Thus, the FTC investigation, standing alone, does not show loss causation.

16   Plaintiffs mischaracterize Defendants' loss causation argument as merely a 'truth-on-the-market' defense."  Opp. at 32.  To plead loss causation under a corrective disclosure theory, it is Plaintiffs' burden to establish that the alleged "corrective disclosures … present facts to the market that are new, that is, publicly revealed for the first time."  *Rok v. Identiv, Inc.*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017).

respect to the July 26, 2018 stock price drop are, if anything, even more deficient because (1) Facebook's earnings announcement, which did not even mention Cambridge Analytica or any other privacy issue, did not correct any alleged prior misstatement or omission of material fact (OB at 31-32); (2) Plaintiffs did not demonstrate a proximate causal connection between the price drop following the earnings announcement and any alleged fraud, as opposed to disappointing news about Facebook's finances (*id.* at 32-33), and (3) Facebook's stock price movements in the months immediately preceding the July 26, 2018 stock price drop affirmatively *undermine* Plaintiffs' loss causation theory (*id.* at 33). In short, Defendants demonstrated that the absence of some "plausible explanation why it was [the alleged fraud] that substantially caused stock prices to fall" requires dismissal. *See Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 4585753, at *6 (N.D. Cal. Sept. 2, 2016); OB at 27, 29-31, 33.

In response, Plaintiffs make two meritless arguments. *First,* Plaintiffs contend that because Facebook reported "reduced user engagement and increased expenses," the earnings announcement *must* have disclosed new information relating to Cambridge Analytica and Facebook's purported "fraud." *See* Opp. at 33-34.[17] Plaintiffs, however, do not dispute that several months before, Facebook had accurately warned investors that implementation of the GDPR could have a negative impact on Facebook's revenue growth and user engagement and that "investors [should] expect full-year 2018 expenses to grow 50%-60%." *See* OB at 32. Nor do Plaintiffs contend that anything was disclosed on the earnings call relating to Cambridge Analytica or any other privacy incident alleged in the SAC. *Id.* Instead, Plaintiffs make an absurd argument that, because Mr. Zuckerberg and Ms. Sandberg mentioned the word "privacy" and made reference to "election integrity" during Facebook's earnings call, it necessarily follows that Facebook "admi[tted]" that Cambridge Analytica was the "condition[] that contributed to the unexpectedly poor quarterly results," and therefore the stock drop revealed relevant new information. *See* Opp. at 33 (headlining Mr. Zuckerberg's statement, "'I also want to talk about privacy.'"). This is obviously wrong; talking about a new privacy law that impacted the entire industry (GDPR) and saying that the company continues to invest in privacy (Ex. 10 at 2) is not an implied

---

[17] Facebook *does not* contend that "loss causation cannot be established by a price decline following an earnings announcement." Opp. at 33. A plaintiff may show "that the stock price fell upon the revelation of an earnings miss," *First Solar*, 881 F.3d at 754, but that plaintiff must still allege facts that show that *fraud* by the defendant caused that loss. *See Apollo*, 774 F.3d at 608; *Lentell*, 396 F.3d at 177.

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 5:18-CV-01725-EJD

Gibson, Dunn &
Crutcher LLP

admission that Cambridge Analytica—or some specific matter related to it—was the proximate cause of an alleged earnings miss.[18]

*Second*, Plaintiffs claim that the Ninth Circuit's decision in *First Solar* renders inapposite the bevy of cases, such as *Metzler*, in which courts have rejected remarkably similar loss causation theories—when the "far more plausible reason" for a stock drop was a company's failure to "hit prior earnings estimates," and not fraud.  540 F.3d at 1065; *see* Opp. at 33-34, 34 n.41.  Plaintiffs are wrong.  Even when a plaintiff advances a "materialization of the risk" loss causation theory, and even when some risk ultimately materializes, a plaintiff still must show that a "statement Defendants made was indeed a misstatement or an omission concealing" that risk.  *Magro v. Freeport-McMoran Inc.*, 2018 WL 3725781, at *9 (D. Ariz. Aug. 3, 2018); *see Lentell*, 396 F.3d at 176-77.  In other words, Plaintiffs still must show fraud, and a causal connection between the loss and that fraud.  *See Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *5 (C.D. Cal. Feb. 6, 2014) (the market must not simply react to "reports of the defendant's poor financial health generally").  Plaintiffs here utterly fail to do so.[19]

Plaintiffs contend that the cases Facebook cited in its opening brief (OB at 32-33) are inapposite because here the July stock drop is "plausibly alleged to have resulted from conditions concealed by fraud."  Opp. at 34.  Plaintiffs then fall back on their refrain that some journalists connected the Cambridge Analytica controversy to the July 2018 stock drop.  *Id.* at 34 (citing ¶¶ 522-528).  But, again, none of these articles suggest that any Facebook statement or omission was fraudulent, nor that any such fraud caused the stock drop.  *See Nuveen*, 730 F.3d at 1123; *Metzler*, 540 F.3d at 1063 (loss

---

[18]  Plaintiffs also reference news articles claiming that the stock drop was novel because it was "among the first signs" that "issues had pierced the company's image."  Opp. at 33.  But these reporters were merely reacting to the fact that Facebook's *stock price* had significantly dropped—not the underlying causes themselves.  *See, e.g., id.* at 33 & n.39 ("Facebook Takes Historic Plunge as Scandals Finally Take a Toll").  In any event, the articles do not suggest that Facebook committed any fraud.  Analyst opinions "cannot reveal to the market the falsity of … misrepresentations," *Bonanno*, 2016 WL 2937483, at *5, and "market speculation about whether fraud has occurred … cannot form the basis of a viable loss causation theory," *see Loos*, 762 F.3d at 890.

[19]  Plaintiffs further mistate the holding in *First Solar* by asserting that it stands for the proposition that the disclosure need not "reveal a fraud."  Opp. at 33-34 & n.41.  The court in *First Solar* made clear that loss causation may be proven upon an earnings miss, "even if the market was unaware *at the time* that fraud had concealed the miss … [and] [f]raud simply causes a delay in the revelation of those facts."  881 F.3d at 754.  The court therefore did not jettison the requirement that fraud, at some juncture, must be disclosed.  Here, Plaintiffs allege no later disclosure showing that any materialized risk was concealed by fraud.

Gibson, Dunn &
Crutcher LLP

causation theory rejected where announcements had not "disclosed—or even suggested—[fraudulent activities] to the market"). And Plaintiffs do not deny that these same articles connected the earnings drop to a confluence of factors *other than* Cambridge Analytica. *See* OB at 32-33; Opp. at 33 n.39.

Plaintiffs also ignore entirely the material and judicially noticeable fact that the market price of Facebook's stock rebounded between March 2018, when Plaintiffs contend the market first learned of the alleged fraud, and July 2018. That Facebook's stock price not only rebounded, but reached record highs, before the July 2018 earnings announcement undermines Plaintiffs' loss causation theory. OB at 33. Plaintiffs instead restate their nonsensical argument that Facebook's positive first quarter metrics—in which revenues, earnings, and user engagement metrics met or exceeded expectations— were somehow fraudulent without actually being false. *See* Opp. at 32 (the "1Q18 earnings report … appeared to validate Defendants' assertions that the scandal had not impacted user trust or engagement"). Plaintiffs have failed to plead loss causation with respect to the July decline.

## E.    Plaintiffs Fail to Plead Reliance

Plaintiffs' argument that they are entitled to a presumption of reliance (Opp. at 34) ignores that the market became aware of Cambridge Analytica's misappropriation of Facebook user data in 2015. And Plaintiffs are wrong that it is "premature" to consider whether they are entitled to the presumption of reliance. *Id.* Courts routinely consider this issue on a motion to dismiss. *See, e.g.*, *In re Kalobios Pharm., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1007-11 (N.D. Cal. 2017) (Davila, J.) (rejecting fraud-on-the-market presumption at motion to dismiss stage). Plaintiffs also are not entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) (*see* Opp. at 34 n.42), which applies only in cases where, unlike here, Plaintiffs "primarily allege[] omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). To the extent Plaintiffs allege omissions at all, *Affiliated Ute* is inapplicable because "the only alleged omission[s] [are] of the truth that [the] affirmative misstatement[s] [allegedly] misrepresent[]." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2018 WL 1142884, at *5 (N.D. Cal. Mar. 2, 2018).

## F.    Plaintiffs Fail to Plead Claims Under Sections 20(a) or 20A

Plaintiffs' inability to state a Section 10(b) or Rule 10b-5 claim requires dismissal of their Section 20(a) and 20A claims. *See* OB at 35. Plaintiffs' assertion that the Court may presume that

Mr. Zuckerberg possessed material, nonpublic, adverse information (Opp. at 34-35) is undercut by their failure to plead scienter, as described at length above.

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC with prejudice.

DATED:  May 6, 2020                    GIBSON, DUNN & CRUTCHER LLP

By:    _____/s/ *Orin Snyder*_____
Orin Snyder
200 Park Avenue
New York, N.Y. 10166-0193
Tel: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Brian M. Lutz
555 Mission Street
Suite 3000
San Francisco, CA 94105-0921
Tel: 415.393.8200
Fax: 415.374.8306
blutz@gibsondunn.com

Paul J. Collins
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel:  650.849.5300
Fax:  650.849.5333
pcollins@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel:  202.955.8500
Fax:  202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendants Facebook, Inc.,*
*Mark E. Zuckerberg, Sheryl K. Sandberg,*
*and David M. Wehner*

Gibson, Dunn &
Crutcher LLP

**CERTIFICATE OF SERVICE**

I, Orin Snyder, declare as follows:

I am employed in the County of New York, State of New York, I am over the age of eighteen years and am not a party to this action; my business address is 200 Park Avenue, New York, NY 10166-0193, in said County and State.

I hereby certify that on May 6, 2020, the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** was filed with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing systems.


DATED:  May 6, 2020                    By:   _/s/ Orin Snyder_
                                                    Orin Snyder