UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE<br><br>FACEBOOK, INC. SECURITIES LITIGATION | Case No.  5:18-cv-01725-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 145 |

Before the Court is Defendants' motion to dismiss Plaintiffs' third amended complaint. Plaintiffs are person who purchased shares of Facebook common stock between February 3, 2017 and July 25, 2018 ("the Class Period"), who believe that Defendant Facebook, Inc. and Executive Defendants Mark Zuckerberg, Sheryl K. Sandberg, and David W. Wehner made materially false and misleading statements and omissions in connection with the purchase and sale of Facebook stock. *See* Third Amended Complaint ("TAC") ¶ 1, Dkt. No. 142.  Plaintiffs allege that Defendants violated Section 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b5 promulgated thereunder because Defendants made guarantees that users had control over the sharing of their user data, while knowing that to not be true because of the Cambridge Analytica data breach and the practice of "whitelisting" certain applications. TAC ¶ 1 (focusing on Defendants' statements and omissions concerning Facebook's "privacy and data protection practices").

Defendants have filed a motion to dismiss, arguing that Plaintiffs have failed for a third time to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements for

securities fraud.  The Court agrees.  Plaintiffs have failed to remedy the problems identified by the Court in its prior dismissal order.  *See* Order Granting Defendants' Motion to Dismiss with Leave to Amend ("August 2020 Order"), Dkt. No. 137.  The Court therefore **GRANTS** Defendants' motion to dismiss **without leave to amend.**

## I.     BACKGROUND

Rather than repeat the background of this case for a third time, the Court refers the Parties to its prior orders.  To the extent the Parties ask the Court to alter its previous rulings, the Court declines and **AFFIRMS** those rulings herein.

On October 15, 2018, Plaintiffs filed their Consolidated Class Action Complaint.  *See* Dkt. No. 86.  On September 25, 2019, this Court granted Defendants' motion to dismiss the consolidated complaint after finding that Plaintiffs had failed to carry their burden to plead falsity and scienter.  The Court did not address reliance or loss causation in that order.  Order Granting Defendants' Motion to Dismiss, Dkt. No. 118.

Plaintiffs filed their second amended complaint on November 15, 2019.  *See* Dkt. No. 123 ("SAC").  On August 7, 2020, this Court again granted Defendants' motion to dismiss the complaint after finding that Plaintiffs failed to carry their burden to plead falsity, scienter, and loss causation.  August 2020 Order.  This Court gave Plaintiffs one last opportunity to cure the deficiencies identified by the Court.

On October 16, 2020, Plaintiffs filed their third amended complaint.  Defendants moved to dismiss the third amended complaint on December 18, 2020.  Motion to Dismiss Third Amended Class Action Complaint ("Mot."), Dkt. No. 145.  Plaintiffs filed an opposition.  Lead Plaintiffs' Memorandum of Points and Authorities in Opposition ("Opp."), Dkt. No. 153.  Defendants then filed a reply.  Reply in Support of Defendants' Motion to Dismiss ("Reply"), Dkt. No. 158.  On September 30, 2021, this Court granted Defendants' motion to strike portions of Plaintiffs' third amended complaint.  *See* Dkt. No. 166.  Pursuant to that order, this Court will not consider Dr. Cain's opinions set forth in paragraphs 722 through 724 of the TAC and any other portions of the

TAC that rely on those opinions.

## II.  DISCUSSION

### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. Pro. 8(a).  Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice.  *Ashcroft*, 556 U.S. at 678.

To show securities fraud under Section 10(b) and Rule 10b-5, plaintiffs must allege facts sufficient to establish (1) a material misrepresentation or omission, (2) made with scienter, *i.e.*, a wrongful state of mind, (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), *amended* (Sept. 11, 2014).  "To determine whether a private securities fraud complaint can survive a motion to dismiss for failure to state a claim, the court must determine whether particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or with deliberate recklessness made false or misleading statements to investors." *In re LeapFrog Enter., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1039–40 (N.D. Cal. 2007).

The pleading standard in securities fraud cases is heightened.  Complaints alleging securities fraud must meet the plausibility standard, the Private Securities Litigation Reform Act ("PSLRA"), and Federal Rule of Civil Procedure 9(b)'s higher pleading standard.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–22 (2007); *Zucco Partners, LLC v. Digimarc, Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  The PSLRA mandates that securities fraud complaints (1) specify each misleading statement, (2) set forth the facts "'on which [a] belief'" that a statement was misleading was "'formed,'" (3) and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter]." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1)–(2)).

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND
3

Plaintiffs bear the burden of proving that the defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." *Id.* In determining whether a "strong inference" of scienter has been sufficiently alleged, this Court must not only draw "inferences urged by the plaintiff," but must also engage in a "comparative evaluation," and examine and consider "competing inferences [in defendants' favor] drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. Hence, scienter must not only be "plausible or reasonable," it must also be "cogent or at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 324. Federal Rule of Civil Procedure 9(b) further requires a plaintiff pleading securities fraud to state, with particularity, the circumstances constituting fraud or mistake.

### B. Defendants' Motion to Dismiss

In their motion to dismiss, Defendants argue that Plaintiffs have not remedied the problems identified by the Court in its earlier orders.

In its August 2020 order, this Court identified two theories of securities fraud in Plaintiffs' SAC. First, Plaintiffs alleged that Executive Defendants knowingly made misleading statements regarding the Cambridge Analytica data breach. Plaintiffs argued that Executive Defendants knowingly made false statements regarding the Cambridge Analytica breach because Facebook knew Cambridge Analytica was still misusing the misappropriated data. This Court held that Plaintiffs had failed to allege falsity because the complaint indicated that Cambridge Analytica and Mr. Kogan certified to Facebook that they had deleted the misappropriated data and Plaintiffs had not shown a reason why Executive Defendants would know that the deletion certifications were false. Second, Plaintiffs alleged that Executive Defendants knowingly made misleading statements that users had complete control over their data. Plaintiffs maintained that these statements were false because of Facebook's whitelisting practice, a data-sharing reciprocity practice for certain "whitelisted applications" that was organized by Executive Defendants. The Court agreed that Plaintiffs had demonstrated falsity, scienter, and reliance as to this theory of fraud, but held that Plaintiffs had failed to plead loss causation.

The Court must again dismiss Plaintiffs' two theories of securities fraud. While the amended complaint alleges that Facebook "embedded" employees in the Trump campaign, there are no allegations that demonstrate the employees knew that misappropriated data was being used or that the employees reported the misuse to Executive Defendants. Additionally, the amended complaint does not demonstrate loss causation as to the whitelisting theory of fraud. Because Plaintiffs have not cured the problems identified in this Court's August 2020 Order, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' third amended complaint **without leave to amend.**

### C. Discussion

#### 1. The Cambridge Analytica Data Breach

As discussed in the August 2020 Order, Plaintiffs argue that Executive Defendants made false or misleading statements about (1) the risks facing Facebook after the Cambridge Analytica data breach and (2) the results of Facebook's investigation into Cambridge Analytica's work on the Brexit and Trump campaigns. TAC ¶¶ 298–309. This Court previously determined that this theory of security fraud fails because at the time these statements were made, Facebook had reason to believe that Cambridge Analytica and Alexander Kogan had deleted the misappropriated data and that the misappropriated data was no longer being misused. *See* August 2020 Order at 33–35, 43. The Court determined that for Plaintiffs to cure this theory, they must demonstrate that Executive Defendants knew or should have known these certifications were false by "alleging, among other things, that Facebook "embedded" employees in the 2016 Trump campaign and thus knew that the deletion certifications were false." August 2020 Order at 66.

Like the SAC, Plaintiffs allege that Facebook made materially false and misleading statements about the risks facing the company by stating that business and reputation harm *could* occur if a third party were to improperly access and use sensitive user data. Plaintiffs allege that these "risk factor" statements were false when made because Cambridge Analytica was already using misappropriated user data. TAC ¶¶ 335–40. Plaintiffs also allege that Facebook

misleadingly stated in March 2017 that its "investigation to date ha[d] not uncovered anything that suggests wrongdoing with respect to Cambridge Analytica's work on the [Brexit] and Trump campaigns." TAC ¶ 299. Plaintiffs maintain that these statements were false when made because Facebook had "embedded" employees in the two respective campaigns and thus Executive Defendants knew or should have known that the misappropriated data was still being misused and that Facebook was presently facing risks due to the continued use of misappropriated data. TAC ¶¶ 238–44.

### a. Legal Standard

As discussed above, to state a claim under Section 10(b) and Rule 10b-5, a complaint must plausibly allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (citations omitted). A complaint must "satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA" to state a securities fraud claim. *Zucco Partners*, 552 F.3d at 990. Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," and the PSLRA extends this particularity requirement to allegations of scienter. *See* 15 U.S.C. § 78u–4(b)(2)(A) ("[T]he complaint shall, with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged." (citations and quotation marks omitted)).

To support a "strong inference" of scienter under the PSLRA, a complaint must allege that the defendant made false or misleading statements with an "intent to deceive, manipulate, or defraud" or with deliberate recklessness. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (citation omitted). Deliberate

recklessness is an "*extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). The "strong inference" standard "present[s] no small hurdle for the securities fraud plaintiff." *Id.* (citation omitted). When determining whether Plaintiff has alleged a "strong inference" of scienter, this court must "engage in a comparative evaluation [and] . . . consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

### b. Analysis

In its August 2020 Order, this Court directed Plaintiffs to plead "specific facts" showing that Defendants knew that GSR and Cambridge Analytica did not delete the relevant data *or* that Defendants should have known that the misappropriated data was not deleted. August 2020 Order at 35, 43–44. Plaintiffs attempt to meet this burden by alleging that because three Facebook employees worked with Cambridge Analytica on the Trump campaign, Executive Defendants knew or should have known that Cambridge Analytica continued to use the misappropriated data.

To accept Plaintiffs' theory of knowledge, this Court would have to find:

- The three employees "embedded" in the Trump campaign knew the contents of Cambridge Analytica's deletion certifications, even though those certifications were provided to other employees in another department more than six months earlier. TAC ¶ 32 (alleging in December 2017, Facebook had 25,105 employees).
- These three employees saw the "psychographic stuff" that was allegedly derived from the misappropriated data because they were "seated next to" Cambridge Analytica employees. TAC ¶ 235.
- After seeing the "psychographic stuff," the employees would have known that Cambridge

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND

7

Analytica was still using the misappropriated data, despite its certifications to the contrary. TAC ¶ 237 ("Thus, when they saw and heard discussions about 'psychographics,' they would have known Cambridge Analytica was still using the misappropriated data that violated Facebook's policies.").

- Once the employees figured out that Cambridge Analytica was still misusing the data, they would have reported Cambridge Analytica's wrongdoing up the chain to the Executive Defendants. TAC ¶¶ 273, 281 (alleging that top management knew about the "embedded" employees).

Problematically, the TAC pleads no facts (1) that the "embedded" employees knew that Cambridge Analytica had certified it was no longer using the misappropriated data and thus would have been alerted to the problematic nature of its use, (2) that the employees alerted Executive Defendants about any use of misappropriated data by the Trump campaign, or (3) that at the time the employees were "embedded" in the campaign, the Executive Defendants knew that Cambridge Analytica was working on a "gigantic dataset" such that they should have known that the deletion certifications were false. Plaintiffs' general allegations that the "embedded" employees "would have" known about the violations, that they "would have" reported the violations, or that Executive Defendants "would have" known about Cambridge Analytica's data use are too speculative and fail to demonstrate actual knowledge. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegations of specific information conveyed to management and related to the fraud."); *see also In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1005 (N.D. Cal. 2001) ("The PSLRA clearly establishes a preference for facts over such inferential leaps.").

Plaintiffs attempt to show knowledge by alleging facts about an "investigation team" employed by Facebook. *See* Opp. at 9–12 (alleging that Facebook's investigation team was aware

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND

8

of Cambridge Analytica's misuse of data and that the team collected "additional facts" that Cambridge Analytica was continuing to misuse the user data). First, Plaintiffs claim that Executive Defendants were "involved in discussions" regarding the "Cambridge Analytica investigation," Opp. at 8, but the paragraphs of the TAC identified only speculate about Executive Defendants role in the investigation and do not demonstrate that it was unreasonable for Executive Defendants to rely on the deletion certifications. *See* ¶¶ 35 (Defendant Sandberg is the Chief Operating Officer), 161–63 (detailing public relations response to the 2015 *The Guardian* article broke to demonstrate that Defendant Sandberg was included in this response and would have known about any investigation into Cambridge Analytica), 203–04 (testimony by Defendant Zuckerberg that Cambridge Analytica told Facebook that they had deleted the misappropriated data), 249 n.262 (testimony from Defendant Zuckerberg that Cambridge Analytica certified deletion in both an email and in a full legal contract), 268 (alleging that the investigation team reviewed and circulated an article in *The Washington Post* about Kogan's use of social media on campaigns).[1]

Second, Plaintiffs contend that the temporal proximity between a meeting involving the Executive Defendants and certain conservative political operatives on May 18, 2016 and the employee "embedding" demonstrates that the Executive Defendants knew about Cambridge Analytica's continued use of the misappropriated data. Opp. at 7–8. Yet, there are no allegations that demonstrate that Executive Defendants discussed Cambridge Analytica, its use of the

---

[1] The Court does not reach Plaintiffs' "red flag" theories of scienter. *See* Opp. at 11–16. Because Plaintiffs have not pled sufficient facts that connect Executive Defendants to the "embedded" employees, it is irrelevant whether the "embedded" employees should have known that Cambridge Analytica's use of Facebook User IDs, though publicly available, and filenames demonstrated that Cambridge Analytica had not deleted the misappropriated data. Opp. at 13. Further, the 2016 Cambridge Analytica presentation and the 2016 *The Washington Post* article cited by Plaintiff do not focus on Facebook's role in Cambridge Analytica's data use. On the contrary, the article does not even mention Facebook and Facebook's logo appears on just one slide in the presentation, alongside 11 other technology companies. *See* TAC ¶¶ 265, 269. Thus, that Facebook discussed the article is not enough to demonstrate that Executive Defendants extrapolated from the article that Cambridge Analytica was still misusing the data (and it seems unlikely that Mr. Kogan would publicly admit to such misuse). TAC ¶ 268.

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND
9

misappropriated data, or any plot to "embed" employees to aid Cambridge Analytica with using the misappropriated data. Indeed, there are no allegations connecting Cambridge Analytica to this meeting. Instead, the complaint alleges that Executive Defendants engaged with the Trump campaign as to *advertisements* and considered the campaign to be important for advertisement revenue. *See* TAC ¶¶ 188–92, 223 (Defendant Sandberg stated that "the 2016 election is a big deal in terms of ad spend."). Moreover, the temporal proximity between the meeting and the embedding, without more, does not establish scienter. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) ("We have allowed the temporal proximity of an allegedly fraudulent statement or omission and a later disclosure to *bolster* a complaint, but we have never allowed the temporal proximity between the two, *without more*, does not create an inference that the earlier statements were fraudulent." (cleaned up)); *see also Fecht v. Price Co.*, 70 F.3d 1078, 1083–84 (9th Cir. 1995).

Third, Plaintiffs argue that the Executive Defendants must have known that Cambridge Analytica continued to use the misappropriated data because the Trump campaign was a "big deal" to Facebook. Opp. at 8; TAC ¶¶ 180–81, 223. But general allegations about the Trump campaign being a big deal for advertisement revenue fails to show that Executive Defendants knew that Cambridge Analytica was continuing to use the misappropriated data to aid the Trump campaign. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1109 (9th Cir. 2021) ("[G]eneralized allegations fail to show that that [the defendant] had direct involvement in the [alleged falsity]."); *Metzler*, 540 F.3d at 1068. Further, to the extent Plaintiffs are pursuing a "core operations" theory to argue that the Trump campaign was of "such prominence that it would be absurd to suggest that management was without knowledge of the matter," *S. Ferry LP, No. 2. v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008), Plaintiffs still must allege facts that demonstrate that Executive Defendants knew about Cambridge Analytica's involvement in the Trump campaign (and its use of the misappropriated data). *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) ("Proof under [the core operations] theory is not easy.

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND
10

1    A plaintiff must produce either specific admissions by one or more corporate executives of

2    detailed involvement in the minutia of a company's operations, such as data monitoring; or

3    witness accounts demonstrating that executives had actual involvement in creating false reports."

4    (citations omitted)); *cf. In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017)

5    (holding that scienter adequately pled where complaint included multiple statements from

6    confidential witnesses that established that members of executive-level management, including the

7    defendants, had access to and used reports documenting sales declines).

8          Finally, Plaintiffs allege that in January 2016, Facebook learned "more facts showing

9    serious, continuing policy violations and wrongdoing," regarding Cambridge Analytica's work on

10   the Trump campaign. TAC ¶¶ 300–09; Opp. at 5–6. Plaintiffs argue that this demonstrates that

11   Facebook knowingly made false statements that it had not uncovered any evidence of wrongdoing

12   on the Trump campaign. TAC ¶¶ 301–02. Problematically, the speaker of this statement is not an

13   individual defendant. *See Galzer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008)

14   (declining to adopt the theory of collective scienter and holding that the PSLRA requires a

15   plaintiff to "plead scienter with respect to those individuals who actually made the false

16   statements"). However, to the extent the speaker of this statement can be connected to the

17   Executive Defendants, Plaintiffs have failed to connect Executive Defendants to the investigation

18   into Cambridge Analytica or show that Executive Defendants knew that Cambridge Analytica

19   continued to use the misappropriated data. TAC ¶¶ 161–79 (outlining investigation but failing to

20   allege that Executive Defendants learned that Cambridge Analytica had not deleted the

21   misappropriated data). Without such allegations, Plaintiffs have not shown that Executive

22   Defendants acted with knowledge or deliberate recklessness in certifying that Facebook had not

23   uncovered any wrongdoing. *Prodanova*, 993 F.3d at 1108 ("The SAC pleads no facts alleging

24   that [Defendant] knew about the Offering when he authored the Report. There is thus *no factual*

25   *basis for the allegation that he acted with knowledge or deliberate recklessness*." (emphasis

26   added)); *see also* Declaration of Brian M. Lutz, Dkt. No. 146 at Exhibit 7 ¶¶ 42–43 ("Facebook

27   Case No.: 5:18-cv-01725-EJD
28   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND

11

had no specific mechanism to summarize or report violations of its Platform Policy . . . . As a result, Facebook senior management and relevant legal staff *did not assess the scope, business impact, or legal implications of the researcher's improper transfer of data to Cambridge*[.]" (emphasis added)).[2]

Accordingly, Plaintiffs have failed to establish that Defendants knew that Cambridge Analytica was using the misappropriated data *after* Facebook obtained deletion certifications. Plaintiffs therefore have not established scienter as to statements made by Defendants about the Cambridge Analytica data breach.

**2. Whitelisting**

The Court previously determined that Plaintiffs had pled falsity, scienter, materiality, and reliance as to their whitelisting theory of liability. *See* August 2020 Order at 65. However, the court dismissed Plaintiffs' whitelisting claims because the SAC failed to allege loss causation. The Court instructed Plaintiffs to demonstrate that the stock price fell in June 2018, following the revelation that Facebook secretly allowed certain "whitelisted" app developers to continue to access user data. TAC ¶ 319.

In the loss causation analysis, "the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). A plaintiff must show that the defendant's misrepresentation was a "substantial cause" of his or her financial loss. *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014). To survive a motion to dismiss, a plaintiff "need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." *Id.*

"Typically, to establish loss causation, a plaintiff must show that the defendants' alleged

---

[2] The Court **GRANTS** Defendants' request for judicial notice as to Exhibit 7. *See* Fed. R. Evid. 201(b).

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND
12

misstatements artificially inflated the price of stock and that, once the market learned of the deception, the value of the stock declined." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (collecting cases). Courts refer to this theory as "fraud-on-the-market." *Id.* (citation omitted). In this scenario, "the plaintiff must show that after purchasing her shares and before selling, . . . (1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *Id.* (citation and quotation marks omitted). The second element requires a showing that the revelation of the truth "caused the company's stock price to decline and the inflation attributable to the misstatements to dissipate." *In re Bofl Holding, Inc. Secs. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020). This analysis "involves a temporal component." *Irving Firemen's Relief*, 988 F.3d at 407; *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343–44 (2005). "[A] disclosure followed by an immediate drop in stock price is more likely to have caused the decline—but timing is not dispositive." *In re Bofl Holding*, 977 F.3d at 790; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057–58 (9th Cir. 2008) (noting that there is not a "bright-line rule requiring an immediate market reaction").

In its August 2020 Order, this Court held that the user control statements were adequately alleged to have been misleading because of Facebook's "whitelisting practices." August 2020 Order at 38. As the Court noted, the relevant time period is *after* the revelation of Facebook's whitelisting practices, which would be after June 3, 2018. TAC ¶ 703. Plaintiffs do not plead a loss until July 26, 2018, which is over a month after the whitelisting practice was revealed. *Cf. In re Gilead*, 536 F.3d at 1051–58 (allowing a delayed market reaction where the falsity of the alleged misstatements was revealed months later). Plaintiffs have not established a connection between the revelation of Facebook's whitelisting practice and a stock-drop, and thus have not plead loss causation.[3]

---

[3] The Court declines to revisit its earlier ruling as to the drop of the stock prices following the 2Q18 Earnings Release. *See* August 2020 Order at 65–66. Additionally, because the Court has determined that Plaintiffs have not established scienter as to its Cambridge Analytica theory, it also declines to address loss causation as to this theory.

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND
13

### 3. Section 20(a) and 20(A) Claims

Plaintiffs also bring claims for violations of Sections 20(a) and (A) of the Exchange Act. Both these claims, however, depend on a primary violation of Section 10(b) or Rule 10b-5. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b 5."). Because the Court determines Plaintiffs' claim under Section 10(b) and Rule 10b-5 fail, Defendants' motion to dismiss these claims is also **GRANTED**.

### 4. Leave to Amend

When dismissing a complaint for failure to state a claim, a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). This Court has previously dismissed two other complaints, has provided Plaintiffs ample opportunity to cure the deficiencies identified in those Orders, and has warned Plaintiffs that failure to cure the identified deficiencies would result in dismissal with prejudice. Because Plaintiffs have not remedied those deficiencies, the Court finds that amendment would be futile, and Plaintiffs' claims are dismissed without leave to amend.

## III. CONCLUSION

Defendants' motion to dismiss Plaintiffs' TAC in its entirety is **GRANTED.**

**IT IS SO ORDERED.**

Dated: December 20, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-01725-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND
14