ROBBINS GELLER RUDMAN
   & DOWD LLP
JASON C. DAVIS (253370)
KENNETH J. BLACK (291871)
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kennyb@rgrdlaw.com

BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com

Co-Lead Counsel for the Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FACEBOOK, INC. SECURITIES LITIGATION | ) ) ) ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) ) ) |

Master File No. 5:18-cv-01725-EJD

CLASS ACTION

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

DATE:      January 15, 2026
TIME:      9:00 a.m.
DEPT.:     Courtroom 4, 5th Floor
JUDGE:     Honorable Edward. J. Davila

4918-5075-3910.v1

1    Plaintiffs Amalgamated Bank, as Trustee for the LV LargeCap 1000 Growth Index Fund,

2    LongView Quantitative LargeCap Fund, and LongView Quant LargeCap Equity VEBA Fund

3    ("Amalgamated"), and the Public Employees' Retirement System of Mississippi ("Mississippi," and

4    together with Amalgamated, "Lead Plaintiffs") oppose defendants Facebook Inc., Mark E.

5    Zuckerberg, Sheryl K. Sandberg, and David M. Wehner's ("Defendants") request ("RJN") (ECF

6    238-20) that the Court take judicial notice of Exhibits 1–18 to the Declaration of Brian M. Lutz (the

7    "Lutz Decl.") (ECF 238-1), and Defendants' improper "chart" (Motion to Dismiss Fourth Amended

8    Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 238) at 32-

9    40).

10   **I.     INTRODUCTION**

11   The Court should deny Defendants' RJN.  Defendants fail to meet the governing standards

12   and improperly seek judicial notice to dispute the Complaint's well-pleaded allegations.[1]  The Court

13   should decline to consider any documents offered to contradict the Ninth Circuit's findings or the

14   allegations in the Complaint.  To the extent the Court takes notice of any document, it may do so

15   only for the fact of its existence—not for the truth of the matters asserted within it or to resolve

16   disputed facts in Defendants' favor.  As to Defendants' improperly submitted nine-page "statements

17   chart" (ECF 238 at 32–40), there is no basis to notice the document and Defendants have not even

18   offered one. Moreover, Defendants' chart is incomplete and inaccurately conveys both Plaintiffs'

19   Complaint, the facts, and the Ninth Circuit's holding. If the Court will find such a chart helpful, it

20   should consider Exhibit A (attached hereto), in which Plaintiffs ***accurately*** summarize the

21

22   _____

[1]    "Complaint" refers to the Fourth Amended Consolidated Class Action Complaint for Violations

23   of the Federal Securities Laws (ECF 228), and citations to "¶_" or "¶¶__" refer to paragraphs in the

24   Complaint.  Unless otherwise specified, all "Ex. _" or "Exs. _" citations are to the Lutz Decl.

25   Citations to Defendants' chart are to the PDF page numbers, ECF 238 at 32-40.  Capitalized terms

26   shall have the meaning as defined in the Complaint, and emphasis is added and citations are omitted

27   throughout unless otherwise indicated.

28

statements at issue, the law of this case, and key aspects of their basis for contending that the alleged

misstatements are adequately pled.

**II.     STANDARDS**

"Generally, district courts may not consider material outside the pleadings when assessing

the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja*

*v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  There are two narrow, distinct

exceptions to this rule: (1) the incorporation-by-reference doctrine; and (2) judicial notice.  *See id.*

However, the Ninth Circuit has made clear that "undermining of the usual pleading burdens" is not

the purpose of these doctrines.  *Id.* at 999.  Nor are Defendants allowed to use extrinsic materials to

present an alternate version of the facts.

> If defendants are permitted to present their own version of the facts at the pleading
> stage – and district courts accept those facts as uncontroverted and true – it becomes
> near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently
> 'plausible' claim for relief.

*Id.*; *see also Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016)

(describing the "practical reality" of "inappropriate efforts by defendants" in securities matters to

"expand courts' consideration of extrinsic evidence at the motion to dismiss stage," which is

"particularly troubling in the common situation of asymmetry, where a defendant starts off with sole

possession of the information about the alleged wrongdoing").  *Khoja* also warned that:

> Submitting documents not mentioned in the complaint to create a defense is nothing
> more than another way of disputing the factual allegations in the complaint, but with
> a perverse added benefit: unless the district court converts the defendant's motion to
> dismiss into a motion for summary judgment, the plaintiff receives no opportunity to
> respond to the defendant's new version of the facts.

899 F.3d at 1003.  Thus, if a court does not exclude matters outside the pleadings and the scope of

these doctrines, "the motion must be treated as one for summary judgment," and "[a]ll parties must

be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R.

Civ. P. 12(d); *see Khoja*, 899 F.3d at 1012.

# III.    ARGUMENT

## A.    The Court Should Reject Defendants' Improper and Incorrect "Statements Chart"

Defendants submitted a nine-page "statements chart" in excess of the 25-page limit without seeking or obtaining Court approval. *See* ECF 238 at 32–40. Defendants' chart is inaccurate, misleading, mischaracterizes the Complaint, misrepresents the Ninth Circuit's opinion, and improperly injects Defendants' self-serving arguments in excess of the applicable page limits. There is no basis to consider Defendants' chart under the judicial notice or incorporation-by-reference doctrines. In reality, the chart simply extends Defendants' motion to 34 pages and attempts to re-write Plaintiffs' Complaint to suit Defendants. Defendants' effort to re-write Plaintiffs' Complaint should be rejected. To correct the record, Plaintiffs have also provided "statements charts" that accurately summarize Plaintiffs' claims, allegations, and theories as set forth in the Complaint. *See* Exhibit A (attached hereto).

The Civil Local Rules for the Northern District of California make clear that Defendants' motion is strictly limited to "25 pages in length." L.R. 7-2(b). Defendants cannot use their extraneous "statements chart" "to make an end-run around the page limitations" because it clearly contains nothing more than "legal arguments on the[ir] motion to dismiss." *King Cnty. v. Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002) (affirming "the district court acted properly in granting [party's] motion[] to strike" the extraneous materials). But that is exactly what Defendants do in this case. They have added nine pages to their legal arguments by attaching a "statements chart" that includes Defendants' self-serving mischaracterizations about some incorrect "Theory of Fraud" and purported "Reason for Dismissal." ECF 238 at 32–40. The chart is improper, inaccurate, and misleading about Plaintiffs' Complaint, allegations, and claims. For example, Defendants' chart misstates the purported "Theory of Fraud" for Plaintiffs' statements by mischaracterizing Plaintiffs' claims into isolated and artificially separate buckets of "Cambridge Analytica: Initial Misuse," "Cambridge Analytica: Continued Misuse," and "Whitelisting." Defendants' self-serving "Theory of Fraud" column is incorrect and mischaracterizes Plaintiffs' Complaint as well as the Ninth Circuit's opinion on appeal in this case. Defendants' chart also

1   improperly provides an argument column labeled "Reason for Dismissal," which sets forth

2   Defendants' self-serving arguments that are incorrect for the reasons set forth in Plaintiffs'

3   Opposition to Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Class

4   Action Complaint for Violations of the Federal Securities Laws.

5          The Court should not consider Defendants' chart for any reason.  Courts routinely strike such

6   extraneous materials.  *See, e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *4, n.3 (N.D.

7   Cal. Sept. 30, 2016) (striking "a chart consisting of three columns: quotations from [d]efendants'

8   response brief, citations to relevant deposition testimony, and [p]laintiffs' own argumentative

9   responses" and noting "[i]t is difficult to view this appendix as anything other than an ***unsubtle***

10  ***vehicle for deliberately circumventing the page limits*** imposed on the parties' briefing"); *Think*

11  *Vill.-Kiwi, LLC v. Adobe Sys. Inc.*, 2009 WL 3837270, at *7 (N.D. Cal. Nov. 16, 2009) (striking

12  chart filed with brief and holding "defense counsel was ***required to include all argument within the***

13  ***text***" of the brief); *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *2, *4 (C.D. Cal. Nov. 20,

14  2017) (striking chart of "allegedly false and misleading statements and highlights what [d]efendants

15  contend are defects in [p]laintiff's pleadings" and holding "[w]hatever its purpose, the Court would

16  find that the chart allows Defendants to make ***further arguments in violation of Local Rule 11-6***");

17  *In re Dexcom, Inc. Class Action Sec. Litig.*, 2025 WL 2606620, at *5 (S.D. Cal. Sep. 9, 2025)

18  ("[d]efendants request that the Court consider two appendices that purportedly outline [p]laintiff's

19  falsity allegations and [d]efendants' responses. . . . ***[t]he Court finds it unnecessary to consider***

20  ***Defendants' appendices and therefore declines to do so***); *Bissoon-Dath v. Sony Comput. Ent. Am.,*

21  *Inc.*, 694 F. Supp. 2d 1071, 1081 (N.D. Cal. 2010) (declining to consider charts that were produced

22  "'for the purposes of argument'" as they were "'briefing, not evidence'"), *aff'd sub nom.*, *Dath v.*

23  *Sony Comput. Ent. Am., Inc.*, 653 F.3d 898 (9th Cir. 2011); *In re Acadia Pharms. Inc. Sec. Litig.*,

24  2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020) (striking falsity chart on the grounds that it was

25  "***simply an extension of Defendants' argument and thus, Defendants' have exceeded the 25-page***

26  ***limit for their briefs***").

27         Here, Defendants use their unpermitted nine-page chart simply as an extension of their

28  arguments, well in excess of the 25-page limit.  The Court should not consider it.

Alternatively, to the extent that the Court would find a "statements chart" helpful in its analysis, the Court should consider Plaintiffs' statements charts filed herewith. Unlike Defendants' chart, Plaintiffs' charts are accurate, not misleading, and do not mischaracterize the Ninth Circuit's opinion or Plaintiffs' Complaint, claims, and allegations.

**B.     The Ninth Circuit Has Already Rejected Defendants' "News" (Exs. 4-17)**

Defendants' other extraneous materials fare no better than their improper "statements chart." To start, Defendants have not satisfied their burden under *Khoja* as to any news articles (Exs. 4-17). Defendants contend that the Court should take notice of news articles "to show that the information contained in articles was publicly available," which they present for "the same reasons" offered in prior motions to dismiss. RJN at 4; *see also* ECF 238 at 4 (citing all the news articles, Exs. 5-17, to argue Cambridge Analytica's harvesting was public). But Defendants' "unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims." *Khoja,* 899 F.3d at 998.

In fact, Defendants' unscrupulous use of news articles did result in premature dismissal in ***this*** case. On the basis of the same news in their RJN, Defendants previously led the Court to rule that "[b]ased on the content of these articles, and the credibility and wide circulation of the respective sources, the Court agrees that the market was aware of Cambridge Analytica's data misuse." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1033 (N.D. Cal. 2020) (holding the market was aware of Cambridge Analytica's initial data misuse). The Ninth Circuit reversed, holding "the extent of Cambridge Analytica's misconduct ***was not yet public*** when Facebook filed its 2016 10-K." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023). The Ninth Circuit held that none of Cambridge Analytica's misconduct became public until March 2018, when news broke that Cambridge Analytica "had improperly accessed Facebook users' data such that users did not have control over their personal information on the platform." *Id.* at 950, 954.

Even though the Ninth Circuit considered and rejected the same arguments based on the same news that Defendants continue to advance for the same reasons that led to reversal, Defendants argue "[t]here is no reason for the Court to revisit its prior rulings." RJN at 1–2. Most of the news

articles cover the period from December 11, 2015 through March 30, 2017.  Exs. 5-13.  As to the

December 11, 2015 article appearing in *The Guardian* (Ex. 5) the Ninth Circuit held that the article

did "not reveal that Cambridge Analytica had misused" any data, and that "Facebook's public

response to the *Guardian* article in 2015 was that it was 'carefully investigating' Cambridge

Analytica." *Facebook*, 87 F.4th at 954.  As to the March 30, 2017 article appearing in *The Intercept*

(Ex. 14), the Ninth Circuit held: "Indeed, Facebook's first public statement about the results of its

investigation—which came in March 2017, a month after the 2016 10-K was filed—***represented that***

***no misconduct had been discovered***." *Id.* at 950.[2]

Defendants' internal documents corroborate the Ninth Circuit's findings as to "public news

articles reporting on Cambridge Analytica." RJN at 2.  Defendants attach none of ***those*** documents

to their RJN.  *See* Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Fourth

Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws at

§§V.C.1-3, V.D.1-3.  Clearly, Defendants seek "premature dismissal[] of plausible claims," which is

plainly improper under controlling Ninth Circuit law.  *Khoja*, 899 F.3d at 998.

Finally, the record contradicts any suggestion that "Plaintiffs did not appeal" the Court's

interpretation of the news.  RJN at 2.  As noted above, the Ninth Circuit addressed the disputed news

and resolved the factual disputes in Plaintiffs' favor.  Defendants' citations (RJN at 2) are inapposite

for that reason.

## C. Defendants' "Letter" About Cambridge Analytica's Continuing Misuse of Misappropriated Data

Next, Defendants offer a letter (Ex. 18) dated October 2, 2020 that notes that a UK regulator

imposed a £500,000 penalty on Facebook for its privacy violations relating to Cambridge Analytica.

Ex. 18 at 4.  Defendants fail to identify "the specific fact or facts" they ask the Court to notice.

*Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1179 (N.D. Cal. 2024); *Khoja*, 899 F.3d at

999 ("Just because [a] document itself is susceptible to judicial notice does not mean that *every*

---

[2]    None of the other articles that Defendants cite after March 30, 2017 (Exs. 15-17) change

Facebook's representation that no conduct had been discovered.

1   *assertion of fact* within that document is judicially noticeable for its truth."). Accordingly, the Court

2   cannot notice the letter.

3        If the Court does notice the letter, the law forbids noticing the truth of any disputed facts

4   supporting Defendants' arguments. *Khoja*, 899 F.3d at 999 ("a court cannot take judicial notice of

5   disputed facts contained in such public records"). Defendants apparently offer it to dispute whether

6   Cambridge Analytica continued misusing Facebook user data in 2016. The letter shows the

7   opposite. The letter explains how Cambridge Analytica and its affiliate, Strategic Communications

8   Laboratories ("SCL"), used "Facebook likes" consisting of "570 data points for 30M individuals," as

9   well as a "Facebook social network" and "Psychographic inventories" for the same numbers of

10   individuals, and how Cambridge Analytica and its affiliates improperly misappropriated that

11   Facebook user data. Ex. 18 at 13–14. The letter states that at "least some of the ***shared data*** (or

12   ***modelled data***) is understood ***to have subsequently been used*** in connection with political

13   campaigning, ***including (it is suspected) the 2016 US presidential election***." *Id.* at 14. "SCL

14   (through contracts with firms ***including AIQ***) deployed advertising on the Facebook Platform which

15   was targeted to specific voter demographics ***informed by*** the profiling that had been undertaken by

16   SCL/CA and GSR." *Id.* Cambridge Analytica kept using the data.



1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3          In short, the letter Defendants proffer (Ex. 18), ████████████████, show

4  Cambridge Analytica continued misusing Facebook data in 2016. The Court cannot notice the letter

5  for the truth of Defendants' incorrect, contrary "assertion of fact." *Khoja*, 899 F.3d at 999.

6          **D.    Defendants' Remaining Public Documents "Forms 4" (Exs. 1-3) and a
                   Transcript (Ex. 4)**

7

8          Defendants also ask the Court to notice "Forms 4" (Exs. 1–3) and a transcript (Ex. 4), but

9  they fail to particularize any facts in those documents that they contend are not subject to dispute:

10 "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion

11 of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. To the

12 extent the Court notices the documents at all, the Court cannot notice the truth of any "fact" in any of

13 the documents. *See, e.g.*, *Eastman v. Apple, Inc.*, 2019 WL 3934805, at *5 (N.D. Cal. Aug. 20,

14 2019) (denying request for judicial notice of patents and patent application because "[defendant]

15 does not simply ask the Court to take judicial notice of the fact that the documents were in the public

16 realm. Rather, [defendant] asks the Court to judicially notice the documents' contents as disclosing

17 . . . claimed inventions").

18 **IV.    CONCLUSION**

19         The Court should consider neither Defendants' nine-page "chart," nor Exhibits 1–18, for any

20 of the reasons Defendants offer them. To the extent the Court notices any document, the Court

21 should notice the document exists but should not take judicial notice of the truth of the facts

22 contained in it to resolve any disputed fact in Defendants' favor. Finally, to the extent that the Court

23 finds a "statements chart" helpful, it should consider Plaintiffs' charts (Ex. A hereto), which, unlike

24

25

26

27

28

1    Defendants' chart, are accurate, not misleading, and do not mischaracterize the Ninth Circuit's

2    opinion or Plaintiffs' Complaint, claims, and allegations.

3    DATED:  November 3, 2025                    Respectfully submitted,

4                                               ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
5                                               JASON C. DAVIS
                                                KENNETH J. BLACK
6

7
                                                          s/ Jason C. Davis
8                                                        JASON C. DAVIS

9                                               One Montgomery Street, Suite 1800
                                                San Francisco, CA  94104
10                                              Telephone:  415/288-4545
                                                415/288-4534 (fax)
11                                              jdavis@rgrdlaw.com
                                                kennyb@rgrdlaw.com
12
                                                ROBBINS GELLER RUDMAN
13                                                & DOWD LLP
                                                LUKE O. BROOKS (212802)
14                                              DARRYL J. ALVARADO (253213)
                                                HILLARY B. STAKEM (286152)
15                                              J. MARCO JANOSKI GRAY (306547)
                                                JESSICA E. ROBERTSON (352207)
16                                              655 West Broadway, Suite 1900
                                                San Diego, CA  92101
17                                              Telephone:  619/231-1058
                                                619/231-7423 (fax)
18                                              lukeb@rgrdlaw.com
                                                dalvarado@rgrdlaw.com
19                                              hstakem@rgrdlaw.com
                                                mjanoski@rgrdlaw.com
20                                              jrobertson@rgrdlaw.com

21                                              Counsel for Amalgamated and Co-Lead Counsel
                                                for the Class
22
                                                BERNSTEIN LITOWITZ BERGER &
23                                                GROSSMANN LLP
                                                SALVATORE J. GRAZIANO
24                                              JEREMY P. ROBINSON
                                                TIMOTHY G. FLEMING
25                                              THOMAS Z. SPERBER
                                                MATTHEW S. GOLDSTEIN
26

27
                                                          s/ Jeremy P. Robinson
28                                                       JEREMY P. ROBINSON

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com
timothy.fleming@blbglaw.com
thomas.sperber@blbglaw.com
matthew.goldstein@blbglaw.com

Counsel for Mississippi and Co-Lead Counsel
for the Class

# EXHIBIT A

**Plaintiffs' Statement Charts**

**CHART 1: Alleged Misrepresentations and Omissions Defendants Incorrectly Seek to Dismiss**

| #.[1] | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Dismissal Arguments to Failure |
|---|---|---|---|---|
| 22-24 | ¶¶628-629 | "On February 3, 2017, Facebook filed its annual report on Form 10-K for the fiscal year ended December 31, 2016 with the SEC (the "2016 Form 10- K"), which was signed by Zuckerberg, Sandberg and Wehner, among others, and made available on Facebook's investor relations website. Facebook's 2016 Form 10-K included the following statements concerning risks facing the Company:<br><br>(a) 'Security breaches and improper access to or disclosure of our data or user data, or other hacking and phishing attacks on our systems, could harm our reputation and adversely affect our business';<br><br>(b) 'Any failure to prevent or mitigate security breaches and improper access to or disclosure of | Contrary to Defendants' statements, which presented improper access to user data as a mere hypothetical possibility, Facebook had in fact experienced, and was continuing to experience, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru.<br><br>Further, Defendants' statements were misleading half-truths that omitted that Facebook had in fact experienced, and was continuing to experience, improper access to, disclosure of, and/or misuse of user data | **Falsity**: The Ninth Circuit ruled that these statements were materially false and misleading. *E.g.*, *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 951-52 (9th Cir. 2023) (holding that Plaintiffs "adequately pleaded falsity as to the statements warning that misuse of Facebook users' data could harm Facebook's business, reputation, and competitive position").<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- that Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed" (*id.* at 957).<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after Cambridge Analytica certified that it had deleted the . . . data." *Id.* |

[1]    Numbers refer to the statement numbers listed in Defendants "Statements Challenged in Fourth Amended Complaint" chart. Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 238) at pdf pages 32-40.

4934-4232-7415.v1

| #.[1] | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Dismissal Arguments to Failure |
|---|---|---|---|---|
| | | our data or user data could result in the loss or misuse of such data, which could harm our business and reputation and diminish our competitive position'; <br><br> (c) 'We provide limited information to . . . third parties based on the scope of services provided to us. However, if these third parties or developers fail to adopt or adhere to adequate data security practices . . . our data or our users' data may be improperly accessed, used, or disclosed.'" <br><br> "The statements quoted in ¶628, supra, were repeated or incorporated by reference into Facebook's other reports on Forms 10-K and 10-Q that the Company filed with the SEC during the Class Period, including its quarterly reports filed on May 4, 2017 (the "1Q17 10-Q"), July 27, 2017 (the "2Q17 10-Q"), November 2, 2017 (the "3Q17 10-Q"), and its annual report filed on February 1, 2018 (the "2017 Form 10-K"), each of which was signed by Zuckerberg, | by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | - Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices" *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1031 (N.D. Cal. 2020). <br> - "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.* <br><br> In addition, the Complaint alleges additional facts showing that Defendants knew or recklessly disregarded improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including because they received briefings on Cambridge Analytica's continued misuse of user data. *E.g.,* Plaintiffs' Opp. at 11-13. <br><br> **Loss Causation**: The Ninth Circuit held that Plaintiffs: <br> - "adequately alleged that the March 2018 revelation was a corrective disclosure as to Facebook's statements that users control |

| #.[1] | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Dismissal Arguments to Failure |
|---|---|---|---|---|
| | | Sandberg and Wehner, among others, and made available on Facebook's investor relations website." | | their data on the platform" *Facebook*, 87 F.4th at 955.<br>- "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956.<br><br>The Complaint also specifically alleges that the March 2018 corrective disclosures "revealed that, *inter alia*, Defendants' risk statements were misleading because, in reality and contrary to these statements, improper access, disclosure and misuse of user data were not merely hypothetical investment risks." 4AC, ¶674; *see also id.*, ¶¶669-681.  Further, the Complaint explains that the June/July 2018 corrective disclosure further revealed the truth regarding Defendants' materially misleading risk disclosures. *Id.*, ¶¶683-700. |
| 28-29 | ¶635 | "On March 30, 2017, Facebook made the following statement through an authorized spokesperson to a reporter from *The Intercept* with the knowledge and expectation that it would be communicated to the public, as it was on that date in an article titled: 'Facebook Failed | Contrary to this statement, Facebook's investigation had uncovered evidence of wrongdoing with respect to Cambridge Analytica at the time the statement was made. | **Falsity**: The Ninth Circuit found *inter alia* that Plaintiffs "pleaded with particularity that Facebook employees flagged Cambridge Analytica in September 2015 for potentially violating Facebook's terms, that Kogan taught Facebook in November 2015 about the dataset Cambridge Analytica had compiled, and that a Facebook executive told Cambridge Analytica |

| #.[1] | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Dismissal Arguments to Failure |
|---|---|---|---|---|
| | | To Protect 30 Million Users From Having Their Data Harvested By A Trump Campaign Affiliate,' '[o]ur investigation to date has not uncovered anything that suggests wrongdoing' with respect to Cambridge Analytica." | | in December 2015 that the firm had violated Facebook's user data policies. [Plaintiffs] also alleged that after Facebook learned in June 2016 that Cambridge Analytica lied in December 2015 about deleting the data derived from Facebook "likes," Cambridge Analytica's chief executive refused to certify that the data had actually been deleted." *Facebook*, 87 F.4th at 949.<br><br>**Scienter**: The Ninth Circuit held that the above allegations "more than support the claim that Facebook was aware of Cambridge Analytica's misconduct before February 2017." *Id.*<br><br>In addition, the Complaint alleges additional facts showing that Defendants knew or recklessly disregarded Cambridge Analytica's misconduct. *E.g.,* Plaintiffs' Opp. at 11-13.<br><br>**Loss Causation**: The Ninth Circuit ruled that Plaintiffs "adequately pleaded loss causation as to the stock price drops that occurred after the Cambridge Analytica revelation in March and July 2018." *Facebook*, 87 F.4th at 957. |

**CHART 2: Alleged Misrepresentations and Omissions that Indisputably Remain in the Case but Defendants Improperly Seek to Limit to Whitelisting Facts, Contrary to the Ninth Circuit's Rulings and the Facts in the 4AC**

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| 1 | ¶608 | "From the start of the Class Period through May 25, 2018, inclusive, under the heading 'SHARING YOUR CONTENT AND INFORMATION, in its *Statement of Rights and Responsibilities* published on the Company's corporate website, Facebook stated:<br><br>'You own all of the content and information you post on Facebook, and **you can control how it is shared** through your privacy and application settings.'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:<br><br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br>- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs:<br>- "adequately alleged that the March 2018 revelation was a corrective disclosure as to Facebook's statements that users control their data on the platform." *Id.* at 955.<br>- "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |

4934-4232-7415.v1

| 2 | ¶609 | "On October 12, 2017, during a public interview with Axios, Sandberg stated:<br><br>'[W]hen you share on Facebook you need to know . . . . *No one is going to get your data that shouldn't have it.* That we're not going to make money in ways that you would feel uncomfortable with off your data. And that *you're controlling who you share with*. . . .'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:<br><br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.<br>- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not |

7

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs:<br>- "adequately alleged that the March 2018 revelation was a corrective disclosure as to Facebook's statements that users control their data on the platform." *Id.* at 955.<br>- "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 7 | ¶610 | "On March 16, 2018, in a post on its corporate website titled Suspending Cambridge Analytica and SCL Group From Facebook, Facebook stated: 'In 2014, after hearing feedback from the Facebook community, we made an update to ensure that each person decides what information they want to share about themselves, including their | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:<br><br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.<br>- Defendants' control statements represented that "users could control who accessed their data, |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | friend list. This is just one of the many ways **we give people the tools to control their experience**. Before you decide to use an app, you can review the permissions the developer is requesting and **choose which information to share**. You can **manage or revoke those permissions at any time**.'" | Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031.<br>- "Plaintiffs have pled sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | **Loss Causation**: The Ninth Circuit held that Plaintiffs:<br>- "adequately alleged that the March 2018 revelation was a corrective disclosure as to Facebook's statements that users control their data on the platform." *Id.* at 955.<br>- "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 8 | ¶611 | "On April 4, 2018, during a telephonic press conference with journalists and members of the press, Zuckerberg stated: '[T]he main principles are, ***you have control over everything you put on the service***, and most of the content Facebook knows about you it [sic] because you chose to share that content with your friends and put it on your profile.'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:<br><br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.<br>- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example: |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|----|-------------|----------------------|-----------------|----------------------------------------------------------------------------------------------------------------|
|    |             |                      |                 | - Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus … knew of Facebook's illicit whitelisting practices." *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| 9 | ¶612 | "On April 24, 2018, in a public post on Facebook.com, Facebook stated: 'You've been hearing a lot about Facebook lately and how your data is being used. While this information can sometimes be confusing and technical, it's important to know that *you are in control of your Facebook*, *what you see, what you share*, and *what people see about you*.'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:<br><br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.<br>- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices" *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.* |

4934-4232-7415.v1

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | - Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 10 | ¶613 | "On June 29, 2018, in its Responses to the *U.S. House of Representatives Energy and Commerce Committee's Questions for the Record*, Facebook stated: 'We already show people what apps their accounts are connected to and ***allow them to control what data they've permitted those apps to use***.'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:<br><br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.<br>- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016. |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | **Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices" *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | … caused the July 2018 stock price drop." *Id.* at 956. |
| 11 | ¶614 | "In the same document discussed immediately above, Facebook further stated:

'Privacy is at the core of everything we do, and our approach to privacy starts with our commitment to transparency and control. [. . .] Our approach to control is based on the belief that people should be able to choose who can see what they share and how their data shapes their experience on Facebook. ***People can control the audience for their posts and the apps that can receive their data.***'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding:

- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.
- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.

**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:

- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031.
- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated |

15

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.* <br><br> - Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957. <br><br> - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* <br><br> **Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 12-16 | ¶615 | "On April 10, 2018, during his live oral testimony before the Joint Commerce and Judiciary Committees of the U.S. Senate, Zuckerberg made the following statements: <br><br> (a) 'This is the most important principle for Facebook: Every piece of content that you share on Facebook, you own and you have | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding: <br><br> - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957. <br><br> - Defendants' control statements represented that "users could control who accessed their data, |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | *complete control* over who sees it and – and how you share it, and you can remove it at any time. That's why every day, about 100 billion times a day, people come to one of our services and either post a photo or send a message to someone, because *they know that they have that control and that who they say it's going to go to is going to be who sees the content*. And I think that control is something that's important that I think should apply to – to every service.' <br><br> (b) 'That's what the [Facebook] service is, right? It's that you can connect with the people that you want, and you can share whatever content matters to you, whether that's photos or links or posts, and *you get control over it*.' <br><br> (c) 'The two broad categories that I think about are content that a person is[sic] chosen to share and that they have complete control over, they get to control | Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016. <br><br> **Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example: <br><br> - Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031. <br> - "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.* <br> - Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957. <br> - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | when they put into the service, when they take it down, who sees it. And then the other category are data that are connected to making the ads relevant. ***You have complete control over both***.' <br><br> (d) 'Every person gets to ***control who gets to see their content***.' <br><br> (e) 'But, Senator, the – your point about surveillance, I think that there's a very important distinction to draw here, which is that when – when organizations do surveillance[,] people don't have control over that. ***But on Facebook, everything that you share there[,] you have control over***.'" | | **Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 17-19 | ¶616 | "On April 11, 2018, during his live testimony before the U.S. House of Representatives' Energy and Commerce Committee, Zuckerberg stated: | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding: <br><br> - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | (a) '[. . .] on Facebook, *you have control over your information*." <br><br> (b) '[. . .] every single time that you share something on Facebook or one of our services, right there is a control in line, *where you control who – who you want to share with*.' <br><br> (c) 'Congresswoman, giving people control of their information and how they want to set their privacy is foundational to the whole service [on Facebook]. It's not just a – kind of an add-on feature, something we have to . . . comply with . . . all the data that you put in, *all the content that you share on Facebook is yours. You control how it's used*.'" | allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957. <br> - Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016. <br><br> **Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example: <br><br> - Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031. <br> - "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.* <br> - Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957. <br> - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | . . . nonetheless falsely represented to users that they had control over their data." *Id.* |
| | | | | **Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 20 | ¶617 | "On June 8, 201[8], in its Responses to Additional Question from the Senate Commerce Committee, Facebook stated: 'Privacy is at the core of everything we do, and our approach to privacy starts with our commitment to transparency and control. [. . .] *Our approach to control is based on the belief that people should be able to choose who can see what they share and how their data shapes their experience on Facebook. People can control the audience for their posts and the apps that can receive their data.*'" | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding: <br><br> - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957. <br> - Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016. <br><br> **Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example: <br><br> - Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957.<br>- "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |
| 21 | ¶622 | "On March 17, 2018, Facebook made the following statement and provided the following information to a reporter for the *The Washington Post*, with the | Contrary to Defendants' control statements, Facebook users did not control their information or data, including because | **Falsity**: The Ninth Circuit and this Court found these statements to be materially false and misleading, including for example in holding: |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | knowledge and expectation that it would be communicated to the public, as it was on that date, '***We respected the privacy settings that people had in place***. Privacy and data protections are fundamental to every decision we make.'" | Defendants had allowed, and/or were continuing to allow, improper access to, disclosure of, and/or misuse of user data by unauthorized third parties, including Cambridge Analytica and other whitelisted third parties like Huawei and Mail.Ru. | - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.* at 957.<br>- Defendants' control statements represented that "users could control who accessed their data, when whitelisted . . . companies could still access user information." *Facebook*, 477 F. Supp. 3d at 1016.<br><br>**Scienter**: The Ninth Circuit and this Court made factual findings that establish Defendants' scienter for these statements, including for example:<br><br>- Plaintiffs adequately alleged that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and thus . . . knew of Facebook's illicit whitelisting practices." *Id.* at 1031.<br>- "Plaintiffs have plead sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." *Id.*<br>- Plaintiffs "pleaded with particularity that Facebook knew Cambridge Analytica did not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 957. |

| #. | Para in 4AC | Alleged Misstatement | Theory of Fraud | Examples of Court Rulings and/or Facts Alleged in the 4AC that Doom Defendants' Limitation Arguments to Failure |
|---|---|---|---|---|
| | | | | - "Facebook knew Cambridge Analytica retained access to improperly collected user data after [certifying] that it had deleted the . . . data, and . . . nonetheless falsely represented to users that they had control over their data." *Id.*<br><br>**Loss Causation**: The Ninth Circuit held that Plaintiffs *inter alia* "adequately pleaded that the Cambridge Analytica and whitelisting revelations . . . caused the July 2018 stock price drop." *Id.* at 956. |

23