# EXHIBIT 1

1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  JASON C. DAVIS (253370)
   KENNETH J. BLACK (291871)
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  jdavis@rgrdlaw.com
   kennyb@rgrdlaw.com
6
   BERNSTEIN LITOWITZ BERGER &
7    GROSSMANN LLP
   SALVATORE J. GRAZIANO
8  JEREMY P. ROBINSON
   1251 Avenue of the Americas
9  New York, NY  10020
   Telephone:  212/554-1400
10 212/554-1444 (fax)
   salvatore@blbglaw.com
11 jeremy@blbglaw.com

12 Co-Lead Counsel for the Class

13 [Additional counsel appear on signature page.]

14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16
                          SAN JOSE DIVISION
17
   In re FACEBOOK, INC. SECURITIES      )   Master File No. 5:18-cv-01725-EJD
18 LITIGATION                           )
   _____  )   CLASS ACTION
19                                       )
   This Document Relates To:            )   LEAD PLAINTIFFS' OPPOSITION TO
20                                       )   DEFENDANTS' MOTION TO DISMISS
          ALL ACTIONS.                   )   PLAINTIFFS' FOURTH AMENDED
21 _____  )   CONSOLIDATED CLASS ACTION
                                         )   COMPLAINT FOR VIOLATIONS OF THE
22                                           FEDERAL SECURITIES LAWS

23                                           DATE:      January 15, 2026
                                             TIME:      9:00 a.m.
24                                           DEPT.:     Courtroom 4, 5th Floor
                                             JUDGE:     Honorable Edward. J. Davila
25
                            **FILED UNDER SEAL**
26

27

28

4927-3301-7715.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     FACTUAL BACKGROUND ...........................................................................................3

III.    PROCEDURAL HISTORY INCLUDING NINTH CIRCUIT REVIEW .........................4

IV.     LEGAL STANDARDS ......................................................................................................6

V.      ARGUMENT .....................................................................................................................7

    A.      Threshold Issues: Defendants' Motion Suffers from Fatal Flaws ...........................7

    B.      The User Control Statements Will Proceed .............................................................7

    C.      The Risk Statements Were Knowingly False ..........................................................8

        1.      Defendants' Knowledge of the Cambridge Analytica Breach....................8

        2.      Defendants' Scienter Attacks as to the Initial Breach Fail ........................9

        3.      Defendants' Knowledge of Cambridge Analytica's Retained
                Access and Continued Misuse of User Data.............................................11

        4.      Defendants' Lone Substantive Challenge to Continued Misuse
                Scienter Fails............................................................................................12

        5.      Scienter for the Risk Statements Is Also Established by This
                Court's Rulings on Defendants' Knowledge of Data Misuse...................14

        6.      Defendants' "Waiver" and "Mandate" Attacks Fail.................................14

            a.      There Was No Waiver and, Regardless, the Amended
                    Complaint Governs the Relevant Facts at Issue Here...................14

            b.      The Ninth Circuit's Rulings Foreclose Defendants'
                    Mandate Argument ........................................................................17

    D.      The Investigation Statement Was Knowingly False ..............................................19

        1.      The Ninth Circuit's Broad Interpretation of the Investigation
                Statement...................................................................................................19

        2.      The Complaint Pleads New Facts Identifying the Speaker and
                Detailing His Scienter ..............................................................................21

        3.      Retained Access, Misuse Are Unnecessary – but Pled Anyway ..............22

        4.      The Waiver and "Mandate" Rules Do Not Apply to the
                Investigation Statement.............................................................................23

1

2                                                                                       **Page**

3

E.     The Complaint Adequately Pleads Loss Causation ...............................................24

VI.     CONCLUSION ...........................................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*,
    139 F.4th 773 (9th Cir. 2025) ...................................................................23

*Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*,
    101 F.4th 641 (9th Cir. 2024) .............................................................17, 23, 24

*Bondi v. VanDerStok*,
    604 U.S. 458 (2025)............................................................................18

*Bus. Integration Tech. v. MuleSoft Inc.*,
    2012 WL 13041534 (N.D. Cal. Mar. 23, 2012)........................................16

*Comm. Concerning Cmty. Imp. v. City of Modesto*,
    2011 WL 9635 (E.D. Cal. Jan. 3, 2011) ...............................................16

*Doe One v. CVS Pharmacy, Inc.*,
    2023 WL 4849429 (N.D. Cal. July 28, 2023)........................................17

*Does v. Wasden*,
    982 F.3d 784 (9th Cir. 2020) .............................................................15

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...........................................................13

*Espy v. J2 Glob., Inc.*,
    99 F.4th 527 (9th Cir. 2024) .............................................................10

*Facebook, Inc. v. Amalgamated Bank*,
    604 U.S. 4 (2024).............................................................................4

*Facebook, Inc. v. Power Ventures, Inc.*,
    252 F. Supp. 3d 765 (N.D. Cal. 2017),
    *aff'd*, 749 F. App'x 557 (9th Cir. 2019)...............................................16

*Firth v. U.S.*,
    554 F.2d 990 (9th Cir. 1977) .............................................................23

*Fong v. U.S. Bancorp*,
    2024 WL 3439584 (9th Cir. July 17, 2024)..........................................15

*Google, Inc. v. Affinity Engines, Inc.*,
    2005 WL 2007888 (N.D. Cal. Aug. 12, 2005) ......................................16

**Page**

*Hall v. City of L.A.*,
    697 F.3d 1059 (9th Cir. 2012) ................................................................17

*HayDay Farms, Inc. v. FeeDx Holdings, Inc.*,
    2024 WL 4814557 (9th Cir. Nov. 18, 2024).............................................17

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ............................................................. *passim*

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015) ...........................................................21, 22

*In re Facebook, Inc. Sec. Litig.*,
    2021 WL 6000058 (N.D. Cal. Dec. 20, 2021) .......................................4, 6

*In re Facebook, Inc. Sec. Litig.*,
    405 F. Supp. 3d 809 (N.D. Cal. 2019) ......................................................4

*In re Facebook, Inc. Sec. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) .............................................. *passim*

*In re Facebook, Inc. Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023) ............................................................ *passim*

*In re Facebook, Inc. Sec. Litig.*,
    No. 22-15077 (9th Cir. May 23, 2022) ............................................. *passim*

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) .................................................................6

*Kearns v. Field*,
    453 F.2d 349 (9th Cir. 1971) .................................................................18

*Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995)................................................................................16

*Matter of Beverly Hills Bancorp*,
    752 F.2d 1334 (9th Cir. 1984) ...............................................................23

*Pack v. McCausland*,
    300 F. App'x 541 (9th Cir. 2008) ...........................................................16

*Sec. Inv. Prot. Corp. v. Vigman*,
    74 F.3d 932 (9th Cir. 1996) ..............................................................18, 19

**Page**

*Singh v. Garland*,
  118 F.4th 1150 (9th Cir. 2024) ...................................................................15

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025) ...................................................................10

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ........................................................................9

*SVF II Aggregator (DE) LLC v. Shafi*,
  2025 WL 2490447 (N.D. Cal. Feb. 27, 2025) ............................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).............................................................................7, 9, 13

*U.S. v. Cote*,
  51 F.3d 178 (9th Cir. 1995) ........................................................................23

*U.S. v. Johnson*,
  256 F.3d 895 (9th Cir. 2001) ......................................................................11

*U.S. v. Pallares-Galan*,
  359 F.3d 1088 (9th Cir. 2004) ....................................................................16

*U.S. v. Thrasher*,
  483 F.3d 977 (9th Cir. 2007) ......................................................................23

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b).............................................................................................................1
  §78t(a).............................................................................................................1

17 C.F.R. §240.10b-5........................................................................................1

**STATEMENT OF ISSUES TO BE DECIDED**

Does the 4AC state a claim under Exchange Act §§10(b) and 20(a) and Rule 10b-5?[1]

## I.    INTRODUCTION

As this Court recognized on remand, "[t]he Ninth Circuit has spoken; Plaintiffs have stated a claim." ECF 194 at 2. Defendants have also paid billions of dollars to resolve regulator, derivative, and consumer claims arising from improper third-party access to Facebook users' data, including Cambridge Analytica's misappropriation and misuse of that data. In their motion, Defendants ignore this history and seek to relitigate issues that they have already lost. Defendants' misguided effort should be denied, and the Complaint should be sustained in full.

This case arises from Defendants' misleading statements about Facebook's core asset – users' private data. During the Class Period, Defendants sought to build public trust in the Facebook platform by representing that users controlled their personal data shared on Facebook, that misappropriation or misuse of user data was merely a hypothetical risk, and that Facebook's investigation into possible misappropriation and misuse found no wrongdoing. Contrary to their misrepresentations, Facebook users did not control their data, the risk of misappropriation and misuse had already materialized, and Facebook's investigation had found wrongdoing. Defendants also knew or recklessly disregarded that misappropriation and misuse of Facebook user data by Cambridge Analytica and other "whitelisted" companies had both occurred in the past and was ongoing.

The Ninth Circuit reversed the dismissal of key aspects of Plaintiffs' claims and made findings that bear directly on Defendants' scienter. For example, the Ninth Circuit found that Plaintiffs' allegations "more than support the claim that ***Facebook was aware of Cambridge***

---

[1]    "4AC" and "Complaint" refer to the Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 228), and citations to "¶__" or "¶¶__" refer to paragraphs in the Complaint. Unless otherwise specified, capitalized terms shall have the meaning as defined in the Complaint, emphasis is added and citations are omitted throughout.

1   *Analytica's misconduct before February 2017*, so Facebook's statements about risk management

2   '*directly contradict[ed]' what the company knew* when it filed its 2016 10-K with the SEC." *In*

3   *re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949 (9th Cir. 2023). Likewise, the Ninth Circuit held

4   that Plaintiffs "adequately pleaded that the risk statements in Facebook's 2016 10-K directly

5   contradicted what Facebook knew at the time such that . . . *Facebook 'knew a risk had come to*

6   *fruition' and 'chose to bury it.*'" *Id.* at 950. Moreover, the Ninth Circuit ruled that Plaintiffs

7   "pleaded with particularity that *Facebook knew* Cambridge Analytica did not delete all the data it

8   had improperly accessed." *Id.* at 957; *see also id.* ("*Facebook knew* Cambridge Analytica *retained*

9   *access* to improperly collected user data *after* Cambridge Analytica certified that it had deleted the

10  personality score data, and Facebook nonetheless falsely represented to users that they had control

11  over their data on the platform").

12      Since then, Plaintiffs filed the 4AC with no opposition from Defendants. The 4AC adds

13  newly revealed facts that further confirm Defendants' scienter. ███████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████

24      The Ninth Circuit's rulings and the newly alleged facts show that the Complaint

25  sufficiently pleads securities violations. None of Defendants' arguments to the contrary has merit.

26      *First*, Defendants' heavy reliance on the Ninth Circuit *dissent* exposes a fatal flaw at the

27  heart of their motion. The dissenting opinion was rejected by the Ninth Circuit majority – and the

28  Supreme Court declined to disturb that ruling. Defendants also seek to relitigate issues that the

1  Ninth Circuit already decided.  For example, Defendants again argue that (1) they had to know

2  that harm had materialized for risk statements to be misleading; and (2) the truth was fully revealed

3  in 2015. The Ninth Circuit expressly rejected both arguments.

4       *Second*, Defendants disregard or dispute the Ninth Circuit's findings and the new facts

5  alleged in the Complaint that show scienter. Defendants are wrong and their strategy cannot

6  suffice, as the Complaint's allegations are assumed to be true and inferences must favor Plaintiffs.

7  Relatedly, Defendants argue that waiver and the mandate rule bar consideration of the Ninth

8  Circuit's findings and other new facts establishing Defendants' scienter for the risk statements or

9  for Facebook's false statements about its Cambridge Analytica investigation. Defendants are

10  incorrect. Plaintiffs did not waive these arguments and the Ninth Circuit specifically found, for

11  example, that Plaintiffs "***pleaded with particularity*** that ***Facebook knew*** Cambridge Analytica did

12  not delete all the data it had improperly accessed." *Facebook*, 87 F.4th at 950, 957.

13       *Third*, Defendants argue that the March 2018 corrective disclosure should be dismissed

14  entirely, and that the July 2018 disclosure limited to whitelisting. Defendants ignore that the same

15  position was taken by the Ninth Circuit dissent – and was expressly rejected by the Ninth Circuit

16  majority opinion, which the Supreme Court left intact after full briefing and argument. *Id.* at 956-

17  57 (rejecting the dissent's argument "that only the July 2018 stock price drop was actionable, and

18  only as to the whitelisting revelation"). The same result is warranted here.

19  **II.    FACTUAL BACKGROUND**

20       To build public trust during the Class Period, Defendants claimed that users "have

21  complete control over who sees [their content]," were "controlling who [they] share with," and

22  "have control over everything." ¶¶419-420. In risk "disclosures" in SEC filings, Defendants

23  presented the prospect of misappropriation and misuse of Facebook user data as merely

24  hypothetical. ¶¶628-630. When asked about a possible instance of data misappropriation in 2017,

25  Facebook falsely stated that its investigation found no suggestion of any wrongdoing. ¶¶409-410.

26       Defendants knew or recklessly disregarded that their statements were misleading and/or

27  omitted material information. For example, Defendants knew that "whitelisted" third parties,

28  including Cambridge Analytica, had misappropriated and misused user data and were continuing

1   to do so. ¶¶80-90. The truth surfaced through corrective disclosures in March 2018 and June/July

2   2018 (¶¶660-700), which collectively wiped out over $200 billion in shareholder value. *Facebook*,

3   87 F.4th at 941.

4         In their motion, Defendants try to mischaracterize this case as involving a "Cambridge

5   Analytica theory" that is strictly separate and distinct from a "whitelisting theory." *E.g.*,

6   Defendants' motion to dismiss (ECF 238) ("Motion" or "Mot.") at 2. Defendants are wrong. These

7   facts are related. Cambridge Analytica was itself a "whitelisted" party (¶¶106-111; 137-139) that

8   engaged in misappropriation and misuse of user data (¶¶183-185, 198), as did other whitelisted

9   parties. ¶¶418-440. The March 2018 corrective disclosure revealed that Facebook users did not

10  control their data in the hands of app developers like Cambridge Analytica and that Defendants

11  were aware of a major incident where millions of users' personal data ***had*** been misappropriated

12  and misused. ¶¶660-700. The related June 3, 2018 disclosure that led to an additional price reaction

13  in July 2018 revealed that other third parties, including major corporations like Amazon, Huawei,

14  and Spotify, were also misappropriating and misusing user data by harvesting it without user

15  consent and even overriding users' privacy settings. *Id.* Defendants' improper effort to rewrite the

16  Complaint should be rejected.

17  **III.    PROCEDURAL HISTORY INCLUDING NINTH CIRCUIT REVIEW**

18        Following dismissal,[2] Plaintiffs successfully appealed to the Ninth Circuit, which was

19  followed by a grant of certiorari by the Supreme Court that was later dismissed as improvidently

20  granted. *Facebook, Inc. v. Amalgamated Bank*, 604 U.S. 4 (2024). At the Ninth Circuit, Plaintiffs

21  specified that the issues presented included "[w]hether the district court properly dismissed

22  Plaintiffs' claims regarding Defendants' risk statements for failure ***to adequately plead falsity***."

23  Brief of Plaintiffs-Appellants, *In re Facebook, Inc. Sec. Litig.*, No. 22-15077 (9th Cir. May 23,

24

25  _____

    [2]   *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809 (N.D. Cal. 2019) ("2019 Order"); *In re*

26  *Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980 (N.D. Cal. 2020) ("2020 Order"); *In re Facebook,*

27  *Inc. Sec. Litig.*, 2021 WL 6000058 (N.D. Cal. Dec. 20, 2021) ("2021 Order").

28

2022), ECF 14 ("Opening Br.") at 1. Because those statements were so obviously misleading due to the initial breach by Cambridge Analytica, Plaintiffs argued that it was sufficient to plead that Defendants knew of the initial data misuse by Cambridge Analytica to secure reversal on falsity. Defendants' awareness of Cambridge Analytica's continued misuse of data was still in the case – as even Defendants admit. Mot. at 18. The then-operative complaint alleged in detail facts showing Defendants' awareness of continued misuse, and Plaintiffs expressly argued that Facebook's "investigation had turned up ample evidence that Cambridge Analytica was still using private Facebook data." Opening Br. at 67. Put simply, Plaintiffs did not waive any allegations, arguments, or "theories" regarding their claims.

    *The Ninth Circuit's Findings Establish Defendants' Scienter*. Importantly, the Ninth Circuit credited Plaintiffs' factual allegations establishing Defendants' knowledge of Cambridge Analytica's initial ***and*** continued misuse of Facebook user data in connection with the 2016 general election. For example, the Ninth Circuit found that multiple facts regarding Cambridge Analytica's initial and continued misuse alleged in the prior complaint (which are all in the 4AC) "***more than support*** the claim that ***Facebook was aware of Cambridge Analytica's misconduct before February 2017***, so Facebook's statements about risk management '***directly contradict[ed]' what the company knew*** when it filed its 2016 10-K with the SEC." *Facebook*, 87 F.4th at 949. Likewise, the Ninth Circuit found that Plaintiffs had "***adequately pleaded***" that the risk statements "directly contradicted what ***Facebook knew at the time*** such that . . . ***Facebook 'knew a risk had come to fruition' and 'chose to bury it.'*** " *Id.* at 950. The Ninth Circuit specifically rejected Defendants' argument that they thought the data was deleted, holding that "Facebook ***knew*** Cambridge Analytica ***did not delete*** all the data it had improperly accessed." *Id.* at 957. "***Facebook knew Cambridge Analytica retained access to improperly collected user data*** after Cambridge Analytica certified that it had deleted the personality score data, and Facebook nonetheless falsely represented to users that they had control over their data on the platform." *Id.* Moreover, the Ninth Circuit found that Facebook "***continued sharing*** the data of users . . . with dozens of whitelisted third parties like Apple, Microsoft, and Samsung without . . . consent." *Id.* at 942, 946. These

1    findings standing alone suffice to defeat Defendants' scienter arguments, and the newly alleged

2    facts obtained in discovery reinforce those findings.

3    _The Ninth Circuit Rejected Defendants' "Truth-On-The-Market" Defense_. The Ninth

4    Circuit also rejected Defendants' argument that the truth about their misstatements was known in

5    2015. For example, the Ninth Circuit held that "the extent of Cambridge Analytica's misconduct

6    was not yet public when Facebook filed its 2016 10-K." _Id._ at 950. Further, it specifically held that

7    the truth was not public until it was revealed through the March and July 2018 corrective

8    disclosures. _Id._ at 950, 954.

9    _The Ninth Circuit Rejected Defendants' "Harm Materialization" Defense_. The Ninth

10   Circuit further rejected Defendants' argument that their risk statements could only be misleading

11   if the "harm" flowing from the risks was already "affecting" Facebook at the time of the

12   statements. Instead, the Circuit held that "falsity allegations [are] sufficient to survive a motion to

13   dismiss when the complaint plausibly alleges that a company's SEC filings warned that risks

14   'could' occur when, in fact, those risks **_had_** already materialized." _Id._ at 934, 949 (citing _In re_

15   _Alphabet, Inc. Sec. Litig._, 1 F.4th 687, 702-05 (9th Cir. 2021)). As such, the "breach itself" was

16   enough. _Id._ at 950.

17   _The Ninth Circuit Rejected Defendants' Misleading Attempt to Isolate Allegations About_

18   _Cambridge Analytica and Whitelisting_. Defendants previously led the Court to dismiss the user-

19   control statements on loss causation grounds by isolating unauthorized "whitelisted" data access

20   from unauthorized Cambridge Analytica data access. 2020 Order at 1034; 2021 Order at *3. The

21   Ninth Circuit found that distinction made no difference to the "proximate causation" standard and

22   so held the March–June 2018 "Cambridge Analytica and whitelisting revelations" both satisfied

23   loss causation as to both the March and July 2018 drops. _Facebook_, 87 F.4th at 956.

24   **IV.    LEGAL STANDARDS**

25   The Court must "'take all allegations of material fact as true and construe them in the light

26   most favorable to the nonmoving party.'" _In re Quality Sys., Inc. Sec. Litig._, 865 F.3d 1130, 1140

27   (9th Cir. 2017). Plaintiffs need only raise a "strong inference" of scienter, which "need not be

28

1    irrefutable . . . or even the 'most plausible.'" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S.

2    308, 322-24 (2007). A tie between equally compelling inferences goes to Plaintiffs. *Id.*

3    **V.    ARGUMENT**

4        **A.    Threshold Issues: Defendants' Motion Suffers from Fatal Flaws**

5        *First*, Defendants' Motion relies heavily on Judge Bumatay's dissent. *E.g.*, Mot. at 11. But

6    the Ninth Circuit panel's majority rejected that dissent, and the Supreme Court left the majority

7    opinion intact after full briefing and argument. Defendants' reliance on the dissent is a fatal flaw

8    at the center of their motion.

9        *Second*, Defendants advance arguments they have already litigated and lost before the

10   Ninth Circuit. For example, the Ninth Circuit rejected Defendants' argument (recycled here) that

11   they had to know that harm had materialized from the Cambridge Analytica scandal in order to

12   mislead investors. *Facebook*, 87 F.4th at 949-50 (citing *Alphabet*, 1 F.4th at 702-05) (holding that

13   allegations "that a company's SEC filings warned that risks 'could' occur when, in fact, those risks

14   ***had*** already materialized" sufficed to plead falsity). Further, the Ninth Circuit rejected Defendants'

15   argument (also repeated here) that investors knew the truth about Cambridge Analytica's

16   misappropriation and misuse of the data in 2015. *Id.* at 950, 954 (holding that "the extent of

17   Cambridge Analytica's misconduct was not yet public when Facebook filed its 2016 10-K").

18       *Third*, Defendants' waiver and mandate arguments similarly attempt to "gaslight" the

19   Court as to the Ninth Circuit's findings. Defendants contend that Cambridge Analytica's

20   continuing misuse of data is beyond the mandate, yet the Ninth Circuit's holdings (§III) credit

21   Plaintiffs' core allegations supporting "continuing misuse." The mandate ***is*** to continue discovery

22   and proceedings as to those "continuing misuse" facts, as well as the "initial misuse" and

23   "whitelisting" facts.

24       **B.    The User Control Statements Will Proceed**

25       Defendants' efforts to excise Cambridge Analytica from the case and cabin the "user

26   control" misrepresentations to whitelisting are foreclosed by prior rulings. There is no dispute that

27   Plaintiffs have adequately alleged claims as to Defendants' knowingly false and misleading "user

28   control" statements, given this Court's and the Ninth Circuit's prior rulings. The inquiry should

1  end there. Whether the deception manifested through Cambridge Analytica, whitelisting, or both

2  is a merits question.  At this stage, Plaintiffs' broader, well-pled theory controls.

3      In any event, the Ninth Circuit's rulings reject Defendants' scattershot arguments. Mot. at

4  2, 7-8, 24-25. The Ninth Circuit held that the facts showing that Cambridge Analytica gained

5  improper access to Facebook users' data suffice to establish that the user-control statements were

6  false – even though those statements "d[id] not even mention Cambridge Analytica," as

7  Defendants concede. *Id.* at 2. The user-control statements also were false because Facebook

8  "continued sharing the data of users" with dozens of other corporate outsiders who lacked users'

9  consent – including Google, Apple, Microsoft, Samsung, Mail.Ru Group, and other foreign entities

10  posing "'national security risks.'" *Facebook*, 87 F.4th at 946. The Ninth Circuit likewise rejected

11  Defendants' contention that they had "no basis to believe third parties like Cambridge Analytica"

12  could "obtain [users' friends'] data" during the 2015–2018 period because Zuckerberg had

13  supposedly changed Facebook's policies to prevent such sharing. Appellees' Answering Brief, *In*

14  *re Facebook, Inc. Sec. Litig.*, No. 22-15077 (9th Cir. Aug. 22, 2022), ECF 26 at 1-15. In reality,

15  as early as 2014, "Zuckerberg and Sandberg" themselves had engineered a system that

16  affirmatively enabled "third-party data access and collection" of users' friends' data without

17  consent – and that system remained in place through at least 2018. *Facebook*, 87 F.4th at 942.

18  Finally, Defendants' claim that the facts do not show they knew about Cambridge Analytica's

19  2015 data harvesting (Mot. at 15) is both contrary to the Ninth Circuit's findings (§III) and the

20  newly pleaded facts discussed below.

21      **C.    The Risk Statements Were Knowingly False**

22          **1.    Defendants' Knowledge of the Cambridge Analytica Breach**

23      The Complaint details that Defendants knew or recklessly disregarded that Cambridge

24  Analytica breached Facebook's policies by misappropriating Facebook user data in 2015. ███

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ██████████████████████████████████████████████ Thus,

9 Defendants had "actual access" to – and were expressly informed of – the facts regarding

10 Cambridge Analytica's data breach. This gives rise to a compelling inference of scienter. *South*

11 *Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008) (scienter inference from "actual

12 access to the disputed information"); *Alphabet*, 1 F.4th at 706. These allegations, combined with

13 the Ninth Circuit's findings (§III) "***more than support the claim*** that [Defendants were] aware of

14 Cambridge Analytica's misconduct before February 2017," such that "***Facebook's statements***

15 ***about risk management 'directly contradict[ed]' what the company knew***" at the time. *Facebook*,

16 87 F.4th at 949.

### 2.    Defendants' Scienter Attacks as to the Initial Breach Fail

18      In response, Defendants ignore these facts. Instead, they advance a series of recycled and

19 previously rejected arguments that do not withstand basic scrutiny.

20      <u>*First*</u>, Defendants insist that Plaintiffs must show they knew that Cambridge Analytica's

21 data misuse "harmed or would harm Facebook" to allege scienter. Mot. at 11. This is wrong. The

22 Ninth Circuit rejected this exact argument, holding that "[o]ur case law does not require harm to

23 have materialized for a statement to be materially misleading" and, instead, "***it is the fact of the***

24 ***breach itself***, rather than the anticipation of . . . harm, that [rendered Defendants'] anticipatory

25 statements to be materially misleading." *Facebook*, 87 F.4th at 949-50.

26      <u>*Second*</u>, Defendants claim that the Ninth Circuit ***dissent*** "was correct" to dispute whether

27 they had "motive" to mislead investors. Mot. at 11. This fails for multiple reasons. To start, motive

28 is unnecessary as a matter of law. *Tellabs*, 551 U.S. at 325. Also, Defendants had strong motives

1    to conceal Cambridge Analytica's data misappropriation and misuse, including to avoid further

2    FTC scrutiny in the wake of the 2012 consent order, maintain public trust in the Facebook platform,

3    protect the company's reputation, and dodge questions about whether and how any other third

4    parties had unauthorized access to data. *Alphabet*, 1 F.4th at 706-07.

5        *Third*, Defendants try to relitigate their truth-on-the-market defense, arguing that they

6    cannot have scienter given that "Cambridge Analytica's alleged initial misuse of the Facebook

7    user data was publicly reported . . . in 2015." Mot. at 11. The Ninth Circuit repeatedly rejected this

8    exact argument, finding for example that "the extent of Cambridge Analytica's misconduct was

9    ***not*** yet public when Facebook filed its 2016 10-K" and "[b]efore the March 2018 news broke,

10   reasonable investors would not have known that Cambridge Analytica had improperly accessed

11   Facebook users' data." *Facebook*, 87 F.4th at 950, 954. None of Defendants' inapposite truth-on-

12   the-market authorities (Mot. at 12-13) can displace the Ninth Circuit's express rejection of that

13   exact defense in ***this very case***.

14       *Fourth*, contrary to Defendants' argument (Mot. at 13), the Ninth Circuit also rejected the

15   notion that Defendants' risk statements were too "buried" or "generic" to mislead investors. The

16   Ninth Circuit considered the exact risk statements at issue here and found them materially false

17   and misleading. *Facebook*, 87 F.4th at 948-52. Defendants also miss the mark in relying on *Espy*

18   *v. J2 Glob., Inc.*, 99 F.4th 527 (9th Cir. 2024). In *Espy*, the concealed information was "already

19   publicly available" and involved trivial details about "far-flung businesses" outside management's

20   core focus. *Id.* at 540, 542. Here, by contrast, "the extent of Cambridge Analytica's misconduct

21   was not yet public" when Defendants made their misstatements. *Facebook*, 87 F.4th at 950. The

22   harvesting of 30 million Facebook users' data for non-consensual political purposes went to the

23   heart of Facebook's business – user trust and user data – which is why Zuckerberg and Sandberg

24   oversaw the efforts to "'bury it.'" *Id.* Nor does *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1133 (9th

25   Cir. 2025), save Defendants. That case involved a "'Tongue and Done'" advertising slogan that

26   the defendants surrounded with truthful, "copious clarifying information." *Id.* Here, Defendants

27   "***chose*** to bury" the truth. *Facebook*, 87 F.4th at 960.

28

### 3.    Defendants' Knowledge of Cambridge Analytica's Retained Access and Continued Misuse of User Data

As discussed above, the Ninth Circuit's findings, including that Plaintiffs "pleaded with particularity" that Facebook knew Cambridge Analytica retained improperly accessed user data even after it certified deletion (§III), establish Defendants' scienter for Cambridge Analytica's continued misuse of the Facebook user data. Those findings control here. *E.g., U.S. v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001). This Court recognized this reality on remand. ECF 194 at 2 ("This Court cannot revisit issues that the Ninth Circuit has already decided.").

The Complaint's new allegations further confirm the already strong inference of scienter.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████. And the two discussed how those employees helped to "microtarget" users through Cambridge Analytica's ***database, named Project Alamo, with profiles of over 220 million people in America*." ¶¶359-360. Zuckerberg and Schrage also discussed how "[t]he campaign used Facebook's 'Custom Audiences from Custom Lists' to match people in that database with their Facebook profiles." ¶360. Sandberg received the same information shortly after the 2016 election during her "business operations meeting." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20  Sandberg also selectively deleted emails that she wrote about Cambridge

21 Analytica after her preservation duty arose. ¶16. This supports scienter. *SVF II Aggregator (DE)*

22 *LLC v. Shafi*, 2025 WL 2490447, at *16 (N.D. Cal. Feb. 27, 2025) ("spoliation" supports scienter).

23 It strengthens the inference that Sandberg wanted to "bury" the issue. *Facebook*, 87 F.4th at 950.

24  The new facts and the Ninth Circuit's findings establish a strong inference of scienter.

**4.  Defendants' Lone Substantive Challenge to Continued Misuse Scienter Fails**

26  Defendants do not dispute that Zuckerberg and Sandberg received extensive briefing about

27 Cambridge Analytica's role in the 2016 general election or its improper access to Facebook user

28

1    data. Instead, Defendants mount only one substantive attack on the continuing misuse allegations.

2    They argue that the inference that they believed that Cambridge Analytica was using some data

3    other than the misappropriated Facebook data was "*equally* likely" as the inference that

4    Defendants were using the misappropriated data, even though Defendants *knew* Cambridge

5    Analytica had that data and was refusing to delete it. This argument fails to secure dismissal.

6         To start, even if the two inferences are "equally likely" (and they are not), the Ninth Circuit

7    has held that "if two possible inferences – one fraudulent and the other nonfraudulent – are *equally*

8    *compelling*, a plaintiff has demonstrated a strong inference of scienter." *ESG Cap. Partners, LP*

9    *v. Stratos,* 828 F.3d 1023, 1033 (9th Cir. 2016); *see also Tellabs*, 551 U.S. at 324 (same). Thus,

10   the law requires a tie between equally compelling inferences to be resolved in Plaintiffs' favor.

11        Next, Defendants ignore facts that render the inference of Defendants' scienter stronger

12   than their purportedly innocent explanation. ███████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ██████████████████████████

19        Defendants acknowledge the allegations that Zuckerberg received briefing about

20   embedded employees' work, but they ignore allegations that the embedded Facebook employees

21   working on the 2016 general election witnessed that Cambridge Analytica was using

22   "psychographic data" that was *not* public and could only have been obtained through Kogan's

23   actions. ¶¶297-299. ██████████████████████████████

24   ████████████████████████████████████████████

25   ███████████████████ Defendants also disregard Plaintiffs' allegation that the 2016 general

26   election campaign would not have had enough *time* to rebuild the data set from scratch without

27   access to the misappropriated data. ¶300.

28

**5.      Scienter for the Risk Statements Is Also Established by This Court's Rulings on Defendants' Knowledge of Data Misuse**

This Court's prior ruling on Defendants' knowledge of improper data access, disclosure of, and/or misuse of Facebook user data in connection with whitelisting practices equally applies to the risk statements. To be sure, the risk statements misleadingly presented "improper access to," "disclosure of," or "misuse of" user data as a mere hypothetical possibility (¶¶628-629) – when Defendants knew that whitelisted parties like Huawei and Mail.Ru were gaining improper access to and misusing Facebook user data. This Court previously held that "Defendants Zuckerberg and Sandberg were actively involved in the whitelisting process and . . . knew of Facebook's illicit whitelisting practices" and that "Plaintiffs have pled sufficient facts showing that Defendants knew that Facebook had little control over the deletion of misappropriated data and that the risk of a Cambridge Analytica type scandal could again occur due to its whitelisting practices." 2020 Order at 1031. Those findings also establish Defendants' scienter for the risk statements. Defendants did not appeal those findings, and they have offered no new facts to challenge the 4AC; thus, the mandate requires further discovery and proceedings here.

**6.      Defendants' "Waiver" and "Mandate" Attacks Fail**

**a.      There Was No Waiver and, Regardless, the Amended Complaint Governs the Relevant Facts at Issue Here**

Defendants argue that the Court should ignore the Ninth Circuit's findings and the newly alleged facts about Cambridge Analytica's continued misuse because Plaintiffs purportedly "waived" their rights to plead those facts. Mot. at 21. Defendants are wrong.

*First*, there was no waiver here. On appeal, Plaintiffs argued to the Ninth Circuit that they did not need to rely on the additional continued-misuse facts to reverse on falsity regarding the "risk statements" because they were so obviously misleading due to the initial breach by Cambridge Analytica. But Plaintiffs did not waive continuing misuse facts.

On the contrary, Plaintiffs pressed continuing misuse facts both in the then-operative complaint as well as in connection with other arguments in the Ninth Circuit briefing. For example, Plaintiffs asserted continued misuse facts in several arguments, including "Facebook's Evidence That Cambridge Analytica Retained and Continued To Use Private Facebook User Data." Opening

1  Br. at 15-19; *see also* Reply Brief of Plaintiffs-Appellants, *In re Facebook, Inc. Sec. Litig.*, No.

2  22-15077 (9th Cir. Oct. 12, 2022), ECF 38 at 20 (arguing, "Cambridge Analytica was using its old

3  database containing misappropriated Facebook data" in the 2016 general election); *Does v.*

4  *Wasden*, 982 F.3d 784, 792-93 (9th Cir. 2020) (finding no waiver where briefing did "not directly

5  discuss" theory where appellant "clearly challenged the district court's ruling dismissing the ex

6  post facto claim" and holding court "'is not limited to the particular legal theories advanced by the

7  parties, but rather retains the independent power to identify and apply the proper construction of

8  governing law'").[3]

9      More fundamentally, the Ninth Circuit expressly credited and relied on facts regarding

10  Defendants' knowledge of continued misuse as central and important to its holdings. Indeed, the

11  Ninth Circuit found that Plaintiffs "pleaded with particularity that Facebook knew Cambridge

12  Analytica *did not delete* all the data it had improperly accessed" and "Facebook *knew Cambridge*

13  *Analytica retained access* to improperly collected user data *after Cambridge Analytica certified*

14  *that it had deleted the personality score data*." *Facebook*, 87 F.4th at 956-57. Plus, the Ninth

15  Circuit majority's rejection of the dissent's incorrect opinion was in part based on these exact

16  findings. *Id.* Of course, the Ninth Circuit was entitled to credit the factual allegations it found

17  convincing in sustaining Plaintiffs' claims and reversing dismissal – and it did so by expressly

18  endorsing the factual allegations showing Defendants' knowledge of continued misuse. *Fong v.*

19  *U.S. Bancorp*, 2024 WL 3439584, at *2 n.2 (9th Cir. July 17, 2024) (addressing argument plaintiffs

20  "did not raise" in their briefing where plaintiffs had briefed supporting facts); *Singh v. Garland*,

21  118 F.4th 1150, 1165 (9th Cir. 2024) (argument supporting challenge to agency fact finding not

22  waived on appeal even where briefing did not directly raise argument).

23      *Second*, Plaintiffs' argument regarding Cambridge Analytica's continuing misuse was one

24  of multiple arguments supporting Plaintiffs' claims, and Defendants do not contest that the claims

25  themselves were properly before the Ninth Circuit and are properly before this Court. The

26

27  _____

[3]  Defendants' incorrect and misguided waiver argument can apply only to the risk statements.

28

1   "Supreme Court has made clear, it is **claims** that are deemed waived or forfeited, **not arguments**."

2   *U.S. v. Pallares-Galan,* 359 F.3d 1088, 1095 (9th Cir. 2004). Thus, litigants may pursue arguments

3   they "expressly disavowed before the lower courts" provided they continue to pursue their **claims**.

4   *Id.* (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)). Here, the various facts

5   concerning Cambridge Analytica's continued misuse and related whitelisting issue are "alternative

6   argument[s] to support what has been [Plaintiffs'] consistent **claim** from the beginning." *Id.* The

7   "claim" is that Defendants violated the federal securities laws when making the challenged

8   misstatements. The claim has not been waived, and Defendants do not argue otherwise.

9       *Third*, even assuming *arguendo* that Plaintiffs did voluntarily waive their "claim" (they did

10  not), any such waiver was fully cured by amending with newly-revealed facts, which Defendants

11  did not oppose. It is well-established in the Ninth Circuit that "courts may allow a plaintiff to

12  reallege a voluntarily withdrawn claim." *Google, Inc. v. Affinity Engines, Inc.*, 2005 WL 2007888,

13  at *7 (N.D. Cal. Aug. 12, 2005); *Bus. Integration Tech. v. MuleSoft Inc.*, 2012 WL 13041534, at

14  *6 (N.D. Cal. Mar. 23, 2012) (permitting plaintiff to reallege claim it "abandoned" in a prior

15  pleading). The Ninth Circuit has clarified that it has "never held" that "a plaintiff who omits

16  previously dismissed claims from an amended complaint waives his right to re-allege these claims

17  in **further amendments**." *Pack v. McCausland*, 300 F. App'x 541, 543 (9th Cir. 2008) (emphasis

18  in original). *Comm. Concerning Cmty. Imp. v. City of Modesto*, 2011 WL 9635 (E.D. Cal. Jan. 3,

19  2011), applied this principle in holding that a plaintiff who failed to name a dismissed defendant

20  on appeal could still reassert the claim after remand once the claim was reinstated – showing that,

21  unlike here, even far greater procedural gaps did not bar repleading to add new facts and even a

22  new defendant where the plaintiff continued to pursue the same underlying claim.

23      *Fourth*, Defendants' cases are inapposite. Unlike here, Defendants' cases (Mot. at 21)

24  concern instances where the district court found that the Ninth Circuit proceedings explicitly

25  foreclosed arguments one of the parties tried to make on remand. For example, in *Facebook, Inc.*

26  *v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 775 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th

27  Cir. 2019), the court found that the defendant could not re-raise prior arguments when the Ninth

28  Circuit remanded for the limited purpose of calculating damages. Defendants' cases have no

bearing on the issue here: whether plaintiffs who successfully appeal a decision can rely on scienter facts they did not emphasize on appeal – but were alleged in their pleading, advanced in their briefing, endorsed by the appellate court, and reinforced with newly-revealed facts on amendment.

      **b.    The Ninth Circuit's Rulings Foreclose Defendants'<br>           Mandate Argument**

Defendants claim the "mandate rule" bars newly discovered facts showing their knowledge that Cambridge Analytica continued to misuse Facebook data. Mot. at 18-21. This is incorrect.

*First*, Defendants argue that "unpreserved arguments are not within the scope of a mandate unless the Ninth Circuit expressly includes them." Mot. at 20. Here, the Ninth Circuit **did** expressly include findings regarding continuing misuse, including finding that "after Facebook learned **in June 2016** that Cambridge Analytica lied in December 2015 about deleting the data . . . Cambridge Analytica's chief executive **refused to certify** that the data had actually been deleted," which "more than support[s] the claim that Facebook was aware of Cambridge Analytica's misconduct before February 2017," and that Plaintiffs had "pleaded with **particularity** that Facebook **knew** Cambridge Analytica **did not delete** all the data it had improperly accessed." *Facebook*, 87 F.4th at 943, 949, 957. Given that the Ninth Circuit expressly credited the core facts regarding continuing misuse, "the mandate rule does not bar" Plaintiffs from "clarify[ing] their allegations." *Doe One v. CVS Pharmacy, Inc.*, 2023 WL 4849429, at *5 (N.D. Cal. July 28, 2023).

*Second*, Ninth Circuit law provides that Plaintiffs may plead newly discovered facts supporting a dismissed theory unless the Ninth Circuit "expressly ordered" that they had been forfeited and did not reach their "merits." *Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*, 101 F.4th 641, 649 n.4 (9th Cir. 2024). Here, the Ninth Circuit did not expressly hold that anything had been forfeited. On the contrary, the Ninth Circuit **did** reach the merits of continuing misuse (*e.g., Facebook*, 87 F.4th at 949, 957) and Plaintiffs have complied with the scope of the mandate in alleging newly discovered facts that further buttress Defendants' knowledge of continuing misuse. Defendants are forced to cite dicta from other jurisdictions as a last resort. In **this** jurisdiction, the mandate rule "requires respect for what the higher court decided, **not for what it did not decide**." *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012); *see also HayDay*

1  *Farms, Inc. v. FeeDx Holdings, Inc.*, 2024 WL 4814557, at *1 (9th Cir. Nov. 18, 2024) (where a

2  court's prior decision was "not a subject of the first appeal," the district court had "jurisdiction to

3  revisit and decide the issue on remand").

4          The Supreme Court's decision in *Bondi v. VanDerStok*, 604 U.S. 458 (2025), does not help

5  Defendants. In that case, the dissents "raise[d] a number of questions about what test courts should

6  apply when a party contends that an agency has acted in excess of its statutory authority in a pre-

7  enforcement challenge under the [Administrative Procedures Act]." *Id.* at 467-68 n.2. Finding that

8  the parties did not raise this issue ***either below or before the Court***, the Court chose to leave the

9  analysis the dissents raised "for another day" and instead use the framework chosen by the parties.

10  *Id.* The Court explained that the parties could not "inject arguments about the proper test" into the

11  case because that issue had never been part of the litigation, and the Court decided the issues before

12  it on the assumption that the proper test did not matter. *Id.* Here, the facts regarding continuing

13  misuse have always been part of this case and, even more dispositive, the Ninth Circuit expressly

14  credited those alleged facts in reversing dismissal.

15          Defendants' other cases are similarly unavailing. In *Kearns v. Field*, 453 F.2d 349 (9th Cir.

16  1971), unlike here, the Ninth Circuit premised its decision on the fact that the mandate in that case

17  explicitly directed the district court to make one specific finding: whether prosecutors made a

18  probation recommendation. *Id.* at 350-51. The question the *Kearns* court refused to reopen –

19  whether there was a plea deal involving the probation recommendation in the first place – was thus

20  squarely "within [the mandate's] compass" and had been "impliedly disposed of on the appeal."

21  *Id.* at 351. In contrast to Defendants' assertion that "arguments are not within the scope of a

22  mandate unless the Ninth Circuit expressly includes them," Mot. at 20, the *Kearns* court held that

23  "any issue not expressly or impliedly disposed of on appeal may be considered by the trial court

24  on remand." *Kearns*, 453 F.2d at 350. That holding applies here, where the Ninth Circuit did ***not***

25  dispose of the continuing-misuse theory and, on the contrary, explicitly credited the theory. *Sec.*

26  *Inv. Prot. Corp. v. Vigman*, 74 F.3d 932 (9th Cir. 1996), does not help Defendants because that

27  case considered the scope of the Supreme Court's mandate in light of a "footnote" that said

28  disputed facts about "stock parking" were not pursued. *Id.* at 935-36. Here, the Ninth Circuit made

1  extensive findings crediting – and its core holdings rely on – the continued-misuse theory, which

2  makes sense because Plaintiffs pressed this theory, as discussed above. This record is a far cry

3  from the "footnote" at issue in *Vigman*, 74 F.3d at 935-36. In truth, Defendants ask the Court *not*

4  to follow the mandate, as continuing misuse is well within the mandate given the Ninth Circuit's

5  opinion.

6          **D.**    **The Investigation Statement Was Knowingly False**

7              **1.**    **The Ninth Circuit's Broad Interpretation of the Investigation Statement**

9        Defendants erroneously contend that the Ninth Circuit reached "the same conclusion" as

10  this Court in dismissing Facebook's March 30, 2017 statement to *The Intercept* that its Cambridge

11  Analytica "investigation to date has not uncovered anything that suggests wrongdoing." Mot. at

12  16. Defendants had previously led this Court to accept that the statement was "confined to

13  Facebook's investigation of data misuse by Cambridge Analytica during the Trump and Brexit

   campaigns." 2020 Order at 1020 n.8.

15        But the Ninth Circuit did not accept Defendants' narrow reading of this statement. For

16  example, it concluded that Facebook's March 30, 2017 statement "represented that no misconduct

17  had been discovered." *Facebook*, 87 F.4th at 950. Although the Ninth Circuit noted that ***different,***

18  ***earlier*** March 2017 statements that do not appear in the 4AC were specifically tied to the Trump

19  and Brexit campaigns (*id.* at 944 n.7) it characterized *The Intercept*'s report as making only

20  "similar comments" – not the same ones. *Id.* at 944 n.8. This makes sense because, unlike the

21  earlier statements, the March 30, 2017 statement was not facially confined to these two campaigns.

22  Further, *The Intercept* article in which the statement was made focused heavily on Cambridge

23  Analytica's initial data breach – *i.e.*, GSR's 2014 harvesting through a survey, ties to SCL, *The*

24  *Guardian*'s December 2015 reporting, and the alleged exposure of 30 million unsuspecting users'

25  data. ECF 238-15 at 1-7. Within that context, Facebook's March 30, 2017 statement that "to date"

26  its investigation had found "no wrongdoing" was broader than simply the two campaigns – and

27  meant that it had discovered no wrongdoing with respect to Cambridge Analytica "to date." Again,

28  that is how the statement is worded on its face and how the Ninth Circuit understood it, as it found

1    that this statement "represented that **no misconduct** had been discovered" by "March 2017."

2    *Facebook*, 87 F.4th at 950. The Ninth Circuit made that finding immediately after discussing the

3    fact that Facebook said it was "carefully investigating" the original breach and data misuse. *Id.*

4    The Ninth Circuit was correct in finding the statement implicated Cambridge Analytica's

5    original data harvesting – and Facebook's own emails from discovery now prove it. On March 15,

6    2017, *The Intercept* journalist, Mattathias Schwartz, privately e-mailed Facebook. He said that

7    going beyond the two campaigns, he was "working on a story now for the Intercept on Cambridge

8    Analytica and their work with a group called GSR." ¶396. Schwartz's "main questions" went

9    straight to *The Guardian*'s December 2015 reporting[4] – what data GSR had "harvested," whether

10   Facebook had demanded its deletion, and whether that collection violated Facebook's "platform

11   policy" at the time. *Id.* ████████████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████

16   Schwartz privately confronted Stone about a contradiction: "FB's statement (the

17   investigation hasn't uncovered any wrongdoing) seems to be at odds with its actions (demanding

18   that GSR delete the data). Why ask them to delete the data if they didn't do anything wrong?"

19   ¶399. But even after Schwartz warned on March 29, 2017 that *The Intercept* would report "the

20   pool of data that Facebook asked GSR to delete" including users' personal information such as

21   "likes," ¶403, Stone refused to revise the official pronouncement. ¶398. ████████████████

22   ████████████████████████████████████████████████

23

24   _____

     [4]    *See* 2020 Order at 992 ("In December 2015, *The Guardian* reported that Kogan, through his

25   company Global Science Research ("*GSR*"), sold some of the information collected through the

26   'This Is Your Digital Life' app to Cambridge Analytica, in violation of Facebook's policies."); *but*

27   *see Facebook*, 87 F.4th at 950 (discussing Cruz and Facebook's contrary statements).

28



### 2. The Complaint Pleads New Facts Identifying the Speaker and Detailing His Scienter

Facebook's response to the "no wrongdoing" statement fails. Mot. at 22. ▮▮▮

which the Ninth Circuit identified as probative of scienter. *Facebook*, 87 F.4th at 953. The same facts demonstrate falsity: Cambridge Analytica's misconduct made Facebook's "no wrongdoing" assurance false or misleading.

Instead of facing the new evidence, Facebook tries to hide behind the argument that only a statement by an "Executive Defendant" is attributable to a corporation. Mot. at 22. Not so. A "corporation is responsible for a corporate officer's fraud committed 'within the scope of his employment' or 'for a misleading statement made by an employee or other agent who has actual or apparent authority.'" *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015); *see also Alphabet*, 1 F.4th at 705 (same). Stone acted as Facebook's official spokesperson issuing a statement on behalf of Facebook – and was indisputably an "'employee . . . who ha[d] actual *or* apparent authority'" to speak for Facebook. *ChinaCast*, 809 F.3d at 476.

1 ██████████████████████████████████████████████████

2 ██████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ██████████████████████████████████████████████████

7 ██████████████████████████████████████████████████

8 ██████████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ████████████████████████████ Either is sufficient. *ChinaCast*, 809 F.3d at 476.

13         **3.**      **Retained Access, Misuse Are Unnecessary – but Pled Anyway**

14 Defendants concede ████████████████████████████████

15 ██████████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ███████████████████████████████ That argument fails: the Ninth

18 Circuit has already held that Cambridge Analytica's initial breach was not publicly disclosed and

19 rendered Facebook's related statements materially misleading. *Facebook*, 87 F.4th at 950

20 (presenting "the prospect of ***a breach*** as purely hypothetical when ***it*** had already occurred" is

21 misleading). The Complaint is not required to plead ***another*** or ***continuing*** breaches.

22       Even if the Ninth Circuit had required allegations of "continuing" misconduct – which it

23 did not – the Complaint provides them. ████████████████████████

24 ██████████████████████████████████████████████████

25 ██████████████████████████████████████████████████

26 ██████████████████ These additional facts "suggest[]" more "wrongdoing" (¶398), but "the fact of

27 the breach itself" suffices to allege the falsity of this statement as it does for the risk and user

28 control statements. *Facebook*, 87 F.4th at 950.

1

2

**4.      The Waiver and "Mandate" Rules Do Not Apply to the Investigation Statement**

3

Defendants erroneously contend that the "mandate" rule limits the investigation statement.

4

Mot. at 16-17. In truth, the Ninth Circuit dismissed that statement ***solely*** for failure to plead facts

5

sufficient to allege scienter. *Facebook*, 87 F.4th at 953. The Circuit court never held that this defect

6

was "impossible to cure" with amendment, which is fatal to Defendants' mandate argument. *See*

7

*Bafford*, 101 F.4th at 649 (rejecting mandate limitation). In *Bafford*, where dismissal rested on the

8

absence of particular facts about "annual notice," the plaintiffs cured the pleading deficiency by

9

later alleging they never received notice "at least once each year." *Id.* at 650. So too here: the Ninth

10

Circuit found only that the facts in the prior complaint did not identify Facebook's spokesperson

11

or allege scienter. The amended Complaint cures these defects. §V.D.1.-3. Facebook's heavy

12

reliance on *Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 778 (9th Cir.

13

2025), underscores why *Bafford* governs here. The *Alaska* court had already "expressly held" a

14

claim had been forfeited and "declined to reach the merits" in its prior opinion. *Id.* at 789. Here,

15

conversely, the Ninth Circuit ***did*** reach the merits of the investigation claim and – just as in *Bafford*

16

– spelled out how to cure the defect. Plaintiffs have done so on amendment. §V.D.1.-3.

17

Defendants' other authorities do not change this analysis. Mot. at 16-17. Unlike the remand

18

limited solely to "'a critical disputed fact'" in *U.S. v. Thrasher*, 483 F.3d 977, 983 (9th Cir. 2007),

19

the Ninth Circuit here held that "the mere reference by an unidentified spokesperson to Facebook's

20

investigation is insufficient to show" scienter, and remanded "for further proceedings." *Facebook*,

21

87 F.4th at 953. In *Matter of Beverly Hills Bancorp*, 752 F.2d 1334 (9th Cir. 1984), the plaintiff

22

was "fully aware of all the facts" but made "no effort to assert" them. *Id.* at 1338. And the first

23

appeal in *Firth v. U.S.*, 554 F.2d 990 (9th Cir. 1977) "was based on a thorough review of all of the

24

evidence and consideration of the same arguments pressed" in the second appeal. *Id.* at 994. Here,

25

the newly alleged facts rest on discovery obtained after remand. In *U.S. v. Cote*, 51 F.3d 178 (9th

26

Cir. 1995), the court considered the mandate rule in the context of double jeopardy, holding that

27

"because the mandates did not contain an order dismissing the cases," a "second trial" was not

28

prohibited. *Id.* at 181-82. Here, the Ninth Circuit's mandate did not prohibit amendment but

1    remanded for further proceedings, with no double-jeopardy limitation. *Bafford* controls: unless a

2    defect is "impossible to cure" and the mandate "'explicitly directs'" otherwise, Plaintiffs may

3    amend to cure it (*Bafford*, 101 F.4th at 649) and have done so here. §V.D.1.-3.

4    **E.     The Complaint Adequately Pleads Loss Causation**

5        Defendants ask the Court to dismiss the March 2018 corrective disclosures and to limit the

6    July 2018 stock price decline to whitelisting. Mot. at 24-25. Defendants are wrong.

7        *The Ninth Circuit Rejected The Same Effort*. Defendants' loss causation attack recycles the

8    similar effort by the Ninth Circuit **dissent** to "hold that only the July 2018 stock price drop was

9    actionable, and only as to the whitelisting revelation, not the Cambridge Analytica revelation."

10   *Facebook*, 87 F.4th at 956. The Ninth Circuit majority rejected that argument, holding that

11   Plaintiffs "adequately pleaded loss causation as to the stock price drops that occurred after the

12   Cambridge Analytica revelation in March and July 2018." *Id.* at 957. In other words, the Ninth

13   Circuit expressly sustained both corrective disclosures and that ruling is the law of the case.

14       *Defendants' Loss Causation Arguments Fail*. *First*, Defendants claim that "Plaintiffs'

15   challenge to the risk factor statements depends entirely on Plaintiffs' Cambridge Analytica

16   theory." Mot. at 24. This is flatly incorrect. The Complaint specifically alleges that the risk

17   statements were misleading because, in addition to Cambridge Analytica's misappropriation and

18   misuse, Defendants "continued to improperly provide access to [user] data to numerous third

19   parties, including . . . 'whitelisted' third parties, mobile device makers and others, throughout the

20   Class Period" and were "overriding user privacy settings." ¶630(f) and (g); *see also* ¶633(d) and

21   (e). Thus, the risk statements are in the case due to **both** whitelisting of other companies as well as

22   Cambridge Analytica's specific misappropriation and misuse of user data. §§V.B, V.C.5.

23       *Second*, Defendants also contend that the March 2018 corrective disclosure "is based

24   entirely on Cambridge Analytica." Mot. at 25. But the Ninth Circuit foreclosed this argument by

25   holding that the March 2018 disclosure also corrected aspects of Facebook's user control

26   statements, which were misleading due to the facts showing both general whitelisted party

27   misappropriation and misuse of user data as well as Cambridge Analytica's (itself a whitelisted

28   party) specific misappropriation and misuse. The Ninth Circuit held that the March 2018

1    disclosures "alerted [investors] that Facebook users did not have complete control over their own

2    data," thereby establishing loss causation for the "control" statements. *Facebook*, 87 F.4th at 954.

3    Thus, in addition to correcting the risk and investigation statements (which Defendants concede),

4    the March 2018 disclosures partially corrected the control statements, which remain in the case.

5         *Third*, regarding the July 2018 drop, the Ninth Circuit expressly held that the "Cambridge

6    Analytica and whitelisting revelations, not any other factor, caused the July 2018 stock price drop."

7    *Id.* at 956. Defendants concede that "the revelation of whitelisting" in June 2018 alleges loss

8    causation as to the July 2018 drop. Mot. at 25. They also concede that the Cambridge Analytica

9    misstatements are causally related to the July 2018 stock drop. *Id.* But Defendants are wrong to

10   suggest that the Cambridge Analytica "theory" is unrelated to whitelisting. *Id.* Even if Defendants

11   lacked scienter as to Cambridge Analytica – whether as to its initial data harvesting or its continued

12   misuse – the July 2018 disclosure of Cambridge Analytica's unauthorized data access still

13   demonstrated that users lacked control over their data. As discussed above, the Ninth Circuit

14   agreed with Plaintiffs that both the user-control and risk-factor statements were misleading

15   because third parties other than Cambridge Analytica also improperly accessed user data through

16   the so-called "whitelisting" program. Zuckerberg and Sandberg were the architects of that

17   program, and it was foreseeable (*Facebook*, 87 F.4th at 955) that the March 2018 disclosures about

18   major privacy violations by Cambridge Analytica would – ***and did*** – expose the broader

19   "whitelisting" practices in June 2018, leading to declining user engagement, reduced revenue, and

20   lowered growth expectations in July 2018. *Id.* at 956. The facts driving stock price declines need

21   not exactly mirror falsity; "proximate cause" is the governing standard. *Id.*

22        *Fourth*, the Ninth Circuit's mandate is clear "that discovery and further proceedings are

23   necessary to illuminate the issues surrounding loss causation." *Id.* The Motion should be denied.

24   **VI.    CONCLUSION**

25        For all of these reasons, Defendants' Motion should be denied in its entirety.

26

27

28

DATED:  November 3, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON C. DAVIS
KENNETH J. BLACK

                    s/ Jason C. Davis
                  JASON C. DAVIS

One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS (212802)
DARRYL J. ALVARADO (253213)
HILLARY B. STAKEM (286152)
J. MARCO JANOSKI GRAY (306547)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jrobertson@rgrdlaw.com

Counsel for Amalgamated and Co-Lead Counsel
for the Class

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
TIMOTHY G. FLEMING
THOMAS Z. SPERBER
MATTHEW S. GOLDSTEIN

                    s/ Jeremy P. Robinson
                  JEREMY P. ROBINSON

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com
timothy.fleming@blbglaw.com
thomas.sperber@blbglaw.com
matthew.goldstein@blbglaw.com

Counsel for Mississippi and Co-Lead Counsel
for the Class