# EXHIBIT 2

1 | ROBBINS GELLER RUDMAN
    & DOWD LLP
2 | JASON C. DAVIS (253370)
    KENNETH J. BLACK (291871)
3 | One Montgomery Street, Suite 1800
    San Francisco, CA 94104
4 | Telephone: 415/288-4545
    415/288-4534 (fax)
5 | jdavis@rgrdlaw.com
    kennyb@rgrdlaw.com
6
7 | BERNSTEIN LITOWITZ BERGER &
      GROSSMANN LLP
    SALVATORE J. GRAZIANO
8 | JEREMY P. ROBINSON
    1251 Avenue of the Americas
9 | New York, NY 10020
    Telephone: 212/554-1400
10 | 212/554-1444 (fax)
    salvatore@blbglaw.com
11 | jeremy@blbglaw.com

12 | Co-Lead Counsel for the Class

13 | [Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FACEBOOK, INC. SECURITIES LITIGATION | Master File No. 5:18-cv-01725-EJD |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| | DATE: January 15, 2026<br>TIME: 9:00 a.m.<br>DEPT.: Courtroom 4, 5th Floor<br>JUDGE: Honorable Edward. J. Davila |

**FILED UNDER SEAL**

4918-5075-3910.v1

Plaintiffs Amalgamated Bank, as Trustee for the LV LargeCap 1000 Growth Index Fund, LongView Quantitative LargeCap Fund, and LongView Quant LargeCap Equity VEBA Fund ("Amalgamated"), and the Public Employees' Retirement System of Mississippi ("Mississippi," and together with Amalgamated, "Lead Plaintiffs") oppose defendants Facebook Inc., Mark E. Zuckerberg, Sheryl K. Sandberg, and David M. Wehner's ("Defendants") request ("RJN") (ECF 238-20) that the Court take judicial notice of Exhibits 1–18 to the Declaration of Brian M. Lutz (the "Lutz Decl.") (ECF 238-1), and Defendants' improper "chart" (Motion to Dismiss Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 238) at 32-40).

## I.  INTRODUCTION

The Court should deny Defendants' RJN. Defendants fail to meet the governing standards and improperly seek judicial notice to dispute the Complaint's well-pleaded allegations.[1] The Court should decline to consider any documents offered to contradict the Ninth Circuit's findings or the allegations in the Complaint. To the extent the Court takes notice of any document, it may do so only for the fact of its existence—not for the truth of the matters asserted within it or to resolve disputed facts in Defendants' favor. As to Defendants' improperly submitted nine-page "statements chart" (ECF 238 at 32–40), there is no basis to notice the document and Defendants have not even offered one. Moreover, Defendants' chart is incomplete and inaccurately conveys both Plaintiffs' Complaint, the facts, and the Ninth Circuit's holding. If the Court will find such a chart helpful, it should consider Exhibit A (attached hereto), in which Plaintiffs *accurately* summarize the

---

[1]  "Complaint" refers to the Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 228), and citations to "¶_" or "¶¶__" refer to paragraphs in the Complaint. Unless otherwise specified, all "Ex. _" or "Exs. _" citations are to the Lutz Decl. Citations to Defendants' chart are to the PDF page numbers, ECF 238 at 32-40. Capitalized terms shall have the meaning as defined in the Complaint, and emphasis is added and citations are omitted throughout unless otherwise indicated.

statements at issue, the law of this case, and key aspects of their basis for contending that the alleged misstatements are adequately pled.

## II. STANDARDS

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). There are two narrow, distinct exceptions to this rule: (1) the incorporation-by-reference doctrine; and (2) judicial notice. *See id.* However, the Ninth Circuit has made clear that "undermining of the usual pleading burdens" is not the purpose of these doctrines. *Id.* at 999. Nor are Defendants allowed to use extrinsic materials to present an alternate version of the facts.

> If defendants are permitted to present their own version of the facts at the pleading stage – and district courts accept those facts as uncontroverted and true – it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.

*Id.*; *see also Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016) (describing the "practical reality" of "inappropriate efforts by defendants" in securities matters to "expand courts' consideration of extrinsic evidence at the motion to dismiss stage," which is "particularly troubling in the common situation of asymmetry, where a defendant starts off with sole possession of the information about the alleged wrongdoing"). *Khoja* also warned that:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.

899 F.3d at 1003. Thus, if a court does not exclude matters outside the pleadings and the scope of these doctrines, "the motion must be treated as one for summary judgment," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Khoja*, 899 F.3d at 1012.

LEAD PLTFS' OPP TO DEFS' REQ FOR JUDICIAL NOTICE IN SUPPORT OF DEFS' MOTION TO DISMISS 4TH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - 5:18-cv-01725-EJD     - 2 -
4918-5075-3910.v1

## III. ARGUMENT

### A. The Court Should Reject Defendants' Improper and Incorrect "Statements Chart"

Defendants submitted a nine-page "statements chart" in excess of the 25-page limit without seeking or obtaining Court approval.  *See* ECF 238 at 32–40.  Defendants' chart is inaccurate, misleading, mischaracterizes the Complaint, misrepresents the Ninth Circuit's opinion, and improperly injects Defendants' self-serving arguments in excess of the applicable page limits.  There is no basis to consider Defendants' chart under the judicial notice or incorporation-by-reference doctrines.  In reality, the chart simply extends Defendants' motion to 34 pages and attempts to re-write Plaintiffs' Complaint to suit Defendants.  Defendants' effort to re-write Plaintiffs' Complaint should be rejected.  To correct the record, Plaintiffs have also provided "statements charts" that accurately summarize Plaintiffs' claims, allegations, and theories as set forth in the Complaint.  *See* Exhibit A (attached hereto).

The Civil Local Rules for the Northern District of California make clear that Defendants' motion is strictly limited to "25 pages in length."  L.R. 7-2(b).  Defendants cannot use their extraneous "statements chart" "to make an end-run around the page limitations" because it clearly contains nothing more than "legal arguments on the[ir] motion to dismiss."  *King Cnty. v. Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002) (affirming "the district court acted properly in granting [party's] motion[] to strike" the extraneous materials).  But that is exactly what Defendants do in this case.  They have added nine pages to their legal arguments by attaching a "statements chart" that includes Defendants' self-serving mischaracterizations about some incorrect "Theory of Fraud" and purported "Reason for Dismissal."  ECF 238 at 32–40.  The chart is improper, inaccurate, and misleading about Plaintiffs' Complaint, allegations, and claims.  For example, Defendants' chart misstates the purported "Theory of Fraud" for Plaintiffs' statements by mischaracterizing Plaintiffs' claims into isolated and artificially separate buckets of "Cambridge Analytica: Initial Misuse," "Cambridge Analytica: Continued Misuse," and "Whitelisting."  Defendants' self-serving "Theory of Fraud" column is incorrect and mischaracterizes Plaintiffs' Complaint as well as the Ninth Circuit's opinion on appeal in this case.  Defendants' chart also

improperly provides an argument column labeled "Reason for Dismissal," which sets forth Defendants' self-serving arguments that are incorrect for the reasons set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws.

The Court should not consider Defendants' chart for any reason. Courts routinely strike such extraneous materials. *See, e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *4, n.3 (N.D. Cal. Sept. 30, 2016) (striking "a chart consisting of three columns: quotations from [d]efendants' response brief, citations to relevant deposition testimony, and [p]laintiffs' own argumentative responses" and noting "[i]t is difficult to view this appendix as anything other than an ***unsubtle vehicle for deliberately circumventing the page limits*** imposed on the parties' briefing"); *Think Vill.-Kiwi, LLC v. Adobe Sys. Inc.*, 2009 WL 3837270, at *7 (N.D. Cal. Nov. 16, 2009) (striking chart filed with brief and holding "defense counsel was ***required to include all argument within the text***" of the brief); *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *2, *4 (C.D. Cal. Nov. 20, 2017) (striking chart of "allegedly false and misleading statements and highlights what [d]efendants contend are defects in [p]laintiff's pleadings" and holding "[w]hatever its purpose, the Court would find that the chart allows Defendants to make ***further arguments in violation of Local Rule 11-6***"); *In re Dexcom, Inc. Class Action Sec. Litig.*, 2025 WL 2606620, at *5 (S.D. Cal. Sep. 9, 2025) ("[d]efendants request that the Court consider two appendices that purportedly outline [p]laintiff's falsity allegations and [d]efendants' responses. . . . ***[t]he Court finds it unnecessary to consider Defendants' appendices and therefore declines to do so***); *Bissoon-Dath v. Sony Comput. Ent. Am., Inc.*, 694 F. Supp. 2d 1071, 1081 (N.D. Cal. 2010) (declining to consider charts that were produced "'for the purposes of argument'" as they were "'briefing, not evidence'"), *aff'd sub nom.*, *Dath v. Sony Comput. Ent. Am., Inc.*, 653 F.3d 898 (9th Cir. 2011); *In re Acadia Pharms. Inc. Sec. Litig.*, 2020 WL 2838686, at *3 (S.D. Cal. June 1, 2020) (striking falsity chart on the grounds that it was "***simply an extension of Defendants' argument and thus, Defendants' have exceeded the 25-page limit for their briefs***").

Here, Defendants use their unpermitted nine-page chart simply as an extension of their arguments, well in excess of the 25-page limit. The Court should not consider it.

Alternatively, to the extent that the Court would find a "statements chart" helpful in its analysis, the Court should consider Plaintiffs' statements charts filed herewith. Unlike Defendants' chart, Plaintiffs' charts are accurate, not misleading, and do not mischaracterize the Ninth Circuit's opinion or Plaintiffs' Complaint, claims, and allegations.

### B. The Ninth Circuit Has Already Rejected Defendants' "News" (Exs. 4-17)

Defendants' other extraneous materials fare no better than their improper "statements chart." To start, Defendants have not satisfied their burden under *Khoja* as to any news articles (Exs. 4-17). Defendants contend that the Court should take notice of news articles "to show that the information contained in articles was publicly available," which they present for "the same reasons" offered in prior motions to dismiss. RJN at 4; *see also* ECF 238 at 4 (citing all the news articles, Exs. 5-17, to argue Cambridge Analytica's harvesting was public). But Defendants' "unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims." *Khoja,* 899 F.3d at 998.

In fact, Defendants' unscrupulous use of news articles did result in premature dismissal in ***this*** case. On the basis of the same news in their RJN, Defendants previously led the Court to rule that "[b]ased on the content of these articles, and the credibility and wide circulation of the respective sources, the Court agrees that the market was aware of Cambridge Analytica's data misuse." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1033 (N.D. Cal. 2020) (holding the market was aware of Cambridge Analytica's initial data misuse). The Ninth Circuit reversed, holding "the extent of Cambridge Analytica's misconduct ***was not yet public*** when Facebook filed its 2016 10-K." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023). The Ninth Circuit held that none of Cambridge Analytica's misconduct became public until March 2018, when news broke that Cambridge Analytica "had improperly accessed Facebook users' data such that users did not have control over their personal information on the platform." *Id.* at 950, 954.

Even though the Ninth Circuit considered and rejected the same arguments based on the same news that Defendants continue to advance for the same reasons that led to reversal, Defendants argue "[t]here is no reason for the Court to revisit its prior rulings." RJN at 1–2. Most of the news

articles cover the period from December 11, 2015 through March 30, 2017. Exs. 5-13. As to the December 11, 2015 article appearing in *The Guardian* (Ex. 5) the Ninth Circuit held that the article did "not reveal that Cambridge Analytica had misused" any data, and that "Facebook's public response to the *Guardian* article in 2015 was that it was 'carefully investigating' Cambridge Analytica." *Facebook*, 87 F.4th at 954. As to the March 30, 2017 article appearing in *The Intercept* (Ex. 14), the Ninth Circuit held: "Indeed, Facebook's first public statement about the results of its investigation—which came in March 2017, a month after the 2016 10-K was filed—**represented that no misconduct had been discovered**." *Id.* at 950.[2]

Defendants' internal documents corroborate the Ninth Circuit's findings as to "public news articles reporting on Cambridge Analytica." RJN at 2. Defendants attach none of **those** documents to their RJN. *See* Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws at §§V.C.1-3, V.D.1-3. Clearly, Defendants seek "premature dismissal[] of plausible claims," which is plainly improper under controlling Ninth Circuit law. *Khoja*, 899 F.3d at 998.

Finally, the record contradicts any suggestion that "Plaintiffs did not appeal" the Court's interpretation of the news. RJN at 2. As noted above, the Ninth Circuit addressed the disputed news and resolved the factual disputes in Plaintiffs' favor. Defendants' citations (RJN at 2) are inapposite for that reason.

C. **Defendants' "Letter" About Cambridge Analytica's Continuing Misuse of Misappropriated Data**

Next, Defendants offer a letter (Ex. 18) dated October 2, 2020 that notes that a UK regulator imposed a £500,000 penalty on Facebook for its privacy violations relating to Cambridge Analytica. Ex. 18 at 4. Defendants fail to identify "the specific fact or facts" they ask the Court to notice. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1179 (N.D. Cal. 2024); *Khoja*, 899 F.3d at 999 ("Just because [a] document itself is susceptible to judicial notice does not mean that *every*

---

[2] None of the other articles that Defendants cite after March 30, 2017 (Exs. 15-17) change Facebook's representation that no conduct had been discovered.

1  *assertion of fact* within that document is judicially noticeable for its truth."). Accordingly, the Court
2  cannot notice the letter.
3        If the Court does notice the letter, the law forbids noticing the truth of any disputed facts
4  supporting Defendants' arguments. *Khoja*, 899 F.3d at 999 ("a court cannot take judicial notice of
5  disputed facts contained in such public records"). Defendants apparently offer it to dispute whether
6  Cambridge Analytica continued misusing Facebook user data in 2016. The letter shows the
7  opposite. The letter explains how Cambridge Analytica and its affiliate, Strategic Communications
8  Laboratories ("SCL"), used "Facebook likes" consisting of "570 data points for 30M individuals," as
9  well as a "Facebook social network" and "Psychographic inventories" for the same numbers of
10 individuals, and how Cambridge Analytica and its affiliates improperly misappropriated that
11 Facebook user data. Ex. 18 at 13–14. The letter states that at "least some of the ***shared data*** (or
12 ***modelled data***) is understood ***to have subsequently been used*** in connection with political
13 campaigning, ***including (it is suspected) the 2016 US presidential election***." *Id.* at 14. "SCL
14 (through contracts with firms ***including AIQ***) deployed advertising on the Facebook Platform which
15 was targeted to specific voter demographics ***informed by*** the profiling that had been undertaken by
16 SCL/CA and GSR." *Id.* Cambridge Analytica kept using the data.

17 ██████████████████████████████████████████████████████████████
18 ██████████████████████████████████████████████████████████████
19 ██████████████████████████████████████████████████████████████
20 ██████████████████████████████████████████████████████████████
21 ████████████████████████  ██████  ████████████████████████████
22 ██████████████████████████████████████████████████████████████
23 ██████████████████████████████████████████████████████████████
24 ██████████████████████████████████████████████████████████████
25 ██████████████████████████████████████████████████████████████
26 ██████████████████████████████████████████████████████████████
27 ██████████████████████████████████████████████████████████████
28

Schrage was responsible for informing Zuckerberg about the continuing misuse. ¶¶359–360.

In short, the letter Defendants proffer (Ex. 18), and related internal documents, show Cambridge Analytica continued misusing Facebook data in 2016. The Court cannot notice the letter for the truth of Defendants' incorrect, contrary "assertion of fact." *Khoja*, 899 F.3d at 999.

### D. Defendants' Remaining Public Documents "Forms 4" (Exs. 1-3) and a Transcript (Ex. 4)

Defendants also ask the Court to notice "Forms 4" (Exs. 1–3) and a transcript (Ex. 4), but they fail to particularize any facts in those documents that they contend are not subject to dispute: "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. To the extent the Court notices the documents at all, the Court cannot notice the truth of any "fact" in any of the documents. *See, e.g.*, *Eastman v. Apple, Inc.*, 2019 WL 3934805, at *5 (N.D. Cal. Aug. 20, 2019) (denying request for judicial notice of patents and patent application because "[defendant] does not simply ask the Court to take judicial notice of the fact that the documents were in the public realm. Rather, [defendant] asks the Court to judicially notice the documents' contents as disclosing . . . claimed inventions").

## IV. CONCLUSION

The Court should consider neither Defendants' nine-page "chart," nor Exhibits 1–18, for any of the reasons Defendants offer them. To the extent the Court notices any document, the Court should notice the document exists but should not take judicial notice of the truth of the facts contained in it to resolve any disputed fact in Defendants' favor. Finally, to the extent that the Court finds a "statements chart" helpful, it should consider Plaintiffs' charts (Ex. A hereto), which, unlike

Defendants' chart, are accurate, not misleading, and do not mischaracterize the Ninth Circuit's opinion or Plaintiffs' Complaint, claims, and allegations.

DATED: November 3, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON C. DAVIS
KENNETH J. BLACK

        s/ Jason C. Davis
JASON C. DAVIS

One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS (212802)
DARRYL J. ALVARADO (253213)
HILLARY B. STAKEM (286152)
J. MARCO JANOSKI GRAY (306547)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jrobertson@rgrdlaw.com

Counsel for Amalgamated and Co-Lead Counsel for the Class

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
TIMOTHY G. FLEMING
THOMAS Z. SPERBER
MATTHEW S. GOLDSTEIN

        s/ Jeremy P. Robinson
JEREMY P. ROBINSON

| | |
|---|---|
| 1 | |
| 2 | 1251 Avenue of the Americas<br>New York, NY  10020 |
| 3 | Telephone:  212/554-1400<br>212/554-1444 (fax) |
| 4 | salvatore@blbglaw.com<br>jeremy@blbglaw.com |
| 5 | timothy.fleming@blbglaw.com<br>thomas.sperber@blbglaw.com<br>matthew.goldstein@blbglaw.com |
| 6 | |
| 7 | Counsel for Mississippi and Co-Lead Counsel for the Class |
| 8 | |

LEAD PLTFS' OPP TO DEFS' REQ FOR JUDICIAL NOTICE IN SUPPORT OF DEFS' MOTION TO DISMISS 4TH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - 5:18-cv-01725-EJD  - 10 -
4918-5075-3910.v1