GIBSON, DUNN & CRUTCHER LLP
Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
Michael J. Kahn (SBN 303289)
  mjkahn@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1700 M Street, N.W.
Washington, DC  20036-4504
Telephone:    202.955.8217
Facsimile:    202.530.9614

*Attorneys for Defendants Facebook, Inc.,*
*Mark E. Zuckerberg, Sheryl K. Sandberg,*
*and David M. Wehner*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | CASE NO. 5:18-CV-01725-EJD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Date:       January 15, 2026<br>Time:       9:00 a.m.<br>Location:  Courtroom 4, 5th Floor<br>Judge:      Hon. Edward J. Davila<br><br>Date First Action Filed:  March 20, 2018 |

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT...................................................................................... 1

II.     ARGUMENT ................................................................................................................. 2

    A.   Plaintiffs Fail to Plead Scienter for the Cambridge Analytica Initial Misuse
        Theory. ................................................................................................................ 2

        1.    Plaintiffs conflate falsity and scienter. ............................................... 2

        2.    Plaintiffs fail to raise a strong inference of scienter........................... 3

    B.   Plaintiffs Cannot Revive Their Investigation Statement Claim or Their
        Continued Misuse Theory. ................................................................................. 6

        1.    The investigation statement claim is barred by the mandate
              rule....................................................................................................... 6

        2.    The Cambridge Analytica continued misuse theory is
              barred by waiver and the mandate rule. .............................................. 7

        3.    The investigation statement and continued misuse claims
              also fail on the merits. ...................................................................... 11

    C.   Plaintiffs' Sole Remaining Claim Is That the User Control Statements Were
        False Due to Whitelisting and Caused the July 2018 Stock Drop. ............................ 13

III.    CONCLUSION ............................................................................................................ 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adamo v. Nextdoor Holdings, Inc.,*
    2025 WL 3238205 (N.D. Cal. Nov. 20, 2025).................................................................15

*Ala. Dep't of Fish & Game v. Fed. Subsistence Bd.,*
    139 F.4th 773 (9th Cir. 2025)...........................................................................................10

*In re Alphabet, Inc. Sec. Litig.*
    1 F.4th 687 (9th Cir. 2021)..................................................................................................4

*Bafford v. Admin. Comm. of Northrop Grumman Pension Plan,*
    101 F.4th 641 (9th Cir. 2024).......................................................................................6, 11

*Bafford v. Northrop Grumman Corp.,*
    2020 WL 70834 (C.D. Cal. Jan. 7, 2020) ...........................................................................6

*Bafford v. Northrop Grumman Corp.,*
    994 F.3d 1020 (9th Cir. 2021).............................................................................................6

*Bondi v. VanDerStok,*
    604 U.S. 458 (2025)..........................................................................................................11

*Bus. Integration Tech. v. MuleSoft Inc.,*
    2012 WL 13041534 (N.D. Cal. Mar. 23, 2012).................................................................10

*In re ChinaCast Educ. Corp. Sec. Litig.,*
    809 F.3d 471 (9th Cir. 2015)...........................................................................................8, 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
    856 F.3d 605 (9th Cir. 2017)...............................................................................................3

*Clark v. Sweeney,*
    607 U.S. __, 2025 WL 3260170 (2025)..............................................................................9

*Comm. Concerning Cmty. Imp. v. City of Modesto,*
    2011 WL 9635 (E.D. Cal. Jan. 3, 2011)............................................................................10

*Doe One v. CVS Pharm., Inc.,*
    2023 WL 4849429 (N.D. Cal. July 28, 2023)...................................................................11

*ESG Cap. Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016)...........................................................................................12

*Espy v. J2 Global, Inc.,*
    99 F.4th 527 (9th Cir. 2024)................................................................................................5

*In re Facebook Inc. Derivative Litig.,*
    2025 WL 262194 (Del. Ch. Jan. 21, 2025) ......................................................................13

*In re Facebook, Inc. Sec. Litig.,*
    87 F.4th 934 (9th Cir. 2023)....................................................1, 2, 3, 4, 5, 6, 7, 12, 13, 14, 15

*Forrett v. Gourmet Nut, Inc.*,
    634 F. Supp. 3d 761 (N.D. Cal. 2022) ........................................................................3

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
    97 F.4th 1171 (9th Cir. 2024)...................................................................................14

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023)..................................................................................9, 10

*Glazer Cap. Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008)........................................................................................8

*Google, Inc. v. Affinity Engines, Inc.*,
    2005 WL 2007888 (N.D. Cal. Aug. 12, 2005) ..........................................................10

*Hall v. City of L.A.*,
    697 F.3d 1059 (9th Cir. 2012)................................................................................6, 11

*HayDay Farms, Inc. v. FeeDx Holdings, Inc.*,
    2024 WL 4814557 (9th Cir. Nov. 18, 2024)..............................................................11

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016).............................................................................14, 15

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014)...............................................................................3, 9

*Pack v. McCausland*,
    300 F. App'x 541 (9th Cir. 2008) ..............................................................................10

*Prodanova v. H.C. Wainwright & Co.*,
    2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ............................................................9

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021).................................................................................4, 9

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)..................................................................................2, 3

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008)........................................................................................4

*Schneider v. Cal. Dep't of Corrections*,
    151 F.3d 1194 (9th Cir. 1998)......................................................................................4

*Sibbald v. United States*,
    37 U.S. (12 Pet.) 488 (1838) .......................................................................................7

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025)................................................................................3, 5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)....................................................................................................5

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020)....................................................................................................9

REPLY IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 5:18-CV-01725-EJD

Gibson, Dunn &
Crutcher LLP

*Wood v. Milyard*,
    566 U.S. 463 (2012) ..............................................................................................................9

*In re Xunlei Ltd. Sec. Litig.*,
    2019 WL 4276607 (S.D.N.Y. Sept. 10, 2019) .....................................................................5

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B) .................................................................................................9, 15

15 U.S.C. § 78u-4(b)(2)(A) .......................................................................................................10

15 U.S.C. § 78u-4(b)(4) .............................................................................................................15

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................................9

## I.    PRELIMINARY STATEMENT

Plaintiffs' opposition rests on arguments that conflate falsity and scienter.  The Ninth Circuit held that the complaint adequately alleges falsity—*i.e.*, that the risk factor and user control statements could have misled investors into thinking Cambridge Analytica never misused Facebook user data for the Cruz campaign in 2015.  But, to survive dismissal, plaintiffs must also allege scienter—*i.e.*, that Defendants *intentionally deceived* investors.  The Ninth Circuit did not address that separate issue of scienter.  Critically, scienter requires more than knowledge of the underlying facts (*i.e.*, Cambridge Analytica's initial misuse of Facebook user data).  It requires Plaintiffs to allege with particularity that Defendants *intended* for their statements to trick investors into thinking the initial misuse never happened.  Plaintiffs' opposition repeatedly conflates those distinct requirements, seeking to parlay a ruling on falsity into one on scienter.  But the complaint pleads no facts raising any inference of scienter (let alone a strong one) for Plaintiffs' Cambridge Analytica initial misuse theory of fraud, and the Ninth Circuit did not hold otherwise.  That requires dismissal of all claims relying on the initial misuse theory.

Nor can Plaintiffs salvage their seven-year-old case by reprising claims that they already lost on or waived.  This Court dismissed Plaintiffs' investigation statement and continued misuse claims with prejudice.  The Ninth Circuit affirmed dismissal of the investigation statement claim with prejudice.  And Plaintiffs explicitly waived their continued misuse claims because, as they admit in their opposition brief, they thought it would be easier to show falsity if they relied on the initial misuse theory.  While Plaintiffs prevailed on falsity, as Judge Bumatay predicted, the theory they chose on appeal makes it "difficult" for them to "satisfy the scienter requirement."  *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 960 n.2 (9th Cir. 2023) (Bumatay, J., concurring in part and dissenting in part).  Plaintiffs cannot cite a single case blessing a party's attempt to revive a claim that was dismissed with prejudice and rejected or waived on appeal.  And regardless, even if Plaintiffs could relitigate the investigation statement or continued misuse claims, the complaint *still* fails to allege scienter for them.

Plaintiffs' sole surviving claim, which Defendants are not challenging in their motion to dismiss, is that the user control statements are actionable under their separate whitelisting theory and caused the July 2018 stock drop.  Properly limiting the case to that claim will have important practical implications and preserve party and judicial resources by narrowing discovery and other proceedings

1    as the case moves forward.  The motion should be granted.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Plead Scienter for the Cambridge Analytica Initial Misuse Theory.

Plaintiffs' initial misuse theory rests on the idea that, years after public reporting about Cambridge Analytica's use of data for the Cruz campaign, Mr. Zuckerberg, Ms. Sandberg, and Mr. Wehner (the "Executive Defendants") tried to mislead investors about that public information. Plaintiffs say the Executive Defendants did this by including generic corporate disclosures deep in an SEC filing about the risk of third-party data misuse and making generic statements affirming that users control the data they put on Facebook.  *See* Mot., Appendix A (collecting statements).  To plead scienter for that theory, Plaintiffs must raise a strong inference that the Executive Defendants *intended* for investors to construe these generic statements—none of which mentioned Cambridge Analytica—as denials that Cambridge Analytica ever misused data in 2015.  But Plaintiffs never even attempt to address that central issue; instead, they focus only on whether Defendants knew about this initial misuse.  In trying to evade the obvious flaws in their theory—like the lack of any motive to lie about this years-old issue—Plaintiffs disregard that the Ninth Circuit holds that pleading scienter requires more than alleging "defendants had knowledge of the [allegedly omitted information] at the time the allegedly false statements were made"; instead, plaintiffs must allege facts showing "defendants *believed* that they made false or misleading statements."  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883–84 (9th Cir. 2012).

#### 1.    Plaintiffs conflate falsity and scienter.

The Ninth Circuit held that Plaintiffs "adequately pleaded falsity" for the risk factor statements, and "le[ft] to the district court on remand whether [Plaintiffs] can satisfy the other elements of the claims," including scienter.  *Facebook*, 87 F.4th at 951–52.  The Ninth Circuit likewise held for the user control statements that "because the 2015 and 2016 articles about Cambridge Analytica did not provide investors the necessary information to learn that Facebook users did not control their data, [Plaintiffs] adequately alleged that the March 2018 revelation was a corrective disclosure."  *Id.* at 955. Again, the Court did not address scienter.

Even though the Ninth Circuit explicitly declined to address scienter, Plaintiffs repeatedly quote

Gibson, Dunn &
Crutcher LLP

statements in the Ninth Circuit's opinion about what "Facebook knew" and suggest that amounts to a scienter holding. *E.g.*, Opp. 1–3, 5, 9, 11, 15, 17–18. But what "Facebook knew" does not answer the scienter question. For one thing, Plaintiffs have to show scienter for the Executive Defendants who made the risk factor and user control statements, not just any Facebook employee. *See* Mot. 9–10 (citing cases). More fundamentally, it is not enough to show that any Defendant "knew" about Cambridge Analytica's initial misuse. Scienter requires more—that in making the challenged statements years later, Defendants "intentional[ly] or conscious[ly]" misled the market. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014); *see also, e.g.*, *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1134–35 (9th Cir. 2025) (no strong inference of scienter because defendants "likely did not intend to defraud investors"); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620–21 (9th Cir. 2017) (mere "knowledge of [underlying] facts" not enough for scienter); *Rigel Pharms.*, 697 F.3d at 884 (scienter requires that "defendants believed that they were making false or misleading statements"). In other words, Plaintiffs must raise a strong inference that Defendants *intended* investors to understand the risk factor and user control statements as denials that Cambridge Analytica's initial misuse ever happened.

### 2. Plaintiffs fail to raise a strong inference of scienter.

As Judge Bumatay recognized (and common sense dictates), Plaintiffs' falsity theory—that Defendants misled the market years after public reporting about the initial misuse, and no known harm from it, through generic statements about risk factors and user control—dooms them on scienter. *See Facebook*, 87 F.4th at 960 n.2 (Bumatay, J., concurring in part and dissenting in part). Even after receiving more than a million documents in discovery, Plaintiffs fail to raise any inference—much less a strong one—that Defendants intended for their statements to trick investors into thinking the initial misuse never happened. Mot. 10–15. Plaintiffs do not defend their allegations about purported admissions, witness allegations, or stock sales, *see* Mot. 13–15, and have thus forfeited any reliance on those theories of scienter. *See, e.g.*, *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 766 (N.D. Cal. 2022) (failure to address arguments in opposition to motion waives those arguments). And their main argument (at 8–9) misses the point entirely: Plaintiffs argue that Defendants knew about the initial misuse, but they do not even attempt to show that Defendants intended the generic risk factor or user

control statements to mislead investors about that misuse. The same flaw runs through each of Plaintiffs' responses to the arguments in the motion.

Plaintiffs' first two responses (at 9–10) are that "motive is unnecessary" and that they need not show Defendants anticipated any ongoing harm from Cambridge Analytica's initial misuse. But both issues are relevant because "if [a] complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1103 (9th Cir. 2021). So if Defendants anticipated no ongoing harm to Facebook from the initial misuse—and Plaintiffs do not allege they did—then (as Judge Bumatay predicted) it is hard to support a strong inference that Defendants intentionally lied to investors about it: they would have had no motive to commit securities fraud over an issue they thought was unlikely to present ongoing harm. The Ninth Circuit's decision does not say otherwise: it held that statements could be "materially misleading" even if Defendants did not foresee any harm (*i.e.*, falsity), *Facebook*, 87 F.4th at 949–50, but that does *not* mean Defendants *intended* to mislead (*i.e.*, scienter), *Prodanova*, 993 F.3d at 1103. Nor do any of the other cases Plaintiffs cite say that motive is irrelevant to scienter. In *In re Alphabet, Inc. Securities Litigation*, the Court inferred scienter where "senior executive leadership" were expressly "warned of the consequences of disclosure" and "intentionally did not disclose the cybersecurity information . . . to avoid or delay the impacts [of] disclosure." 1 F.4th 687, 705–07 (9th Cir. 2021). And *South Ferry LP, No. 2 v. Killinger* held only that "actual access to the disputed information" supports a conclusion that a defendant was aware of the information under a "core operations" theory, 542 F.3d 776, 786 (9th Cir. 2008); it does not relieve Plaintiffs of the need to also plead an intent to deceive to raise a strong inference of scienter, *see id.* (remanding for the district court to consider scienter in the first instance).

As for Plaintiffs' single-sentence alternative argument (at 9–10) that Defendants *did* have motive to lie about Cambridge Analytica's initial misuse, Plaintiffs tellingly do not cite any allegations in their complaint because those purported motives were never alleged. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)). In any event,

they make no sense because Cambridge Analytica's initial misuse had been publicly reported years earlier. Mot. 11–13. That the Ninth Circuit concluded "the extent" of that misuse "was not yet public," *Facebook*, 87 F.4th at 950, does not suggest a motive to falsely imply that *no* misuse had ever happened.

Plaintiffs also are wrong to suggest (at 10) that pointing to the public reporting about Cambridge Analytica's initial misuse is a "truth-on-the-market defense." Again, the issue here is not falsity (whether the market could have been deceived); it is scienter (whether Defendants intended to deceive the market). As case after case has recognized, the fact that information has been publicly disclosed undercuts any inference that a defendant intentionally lied about it. *See, e.g.*, *Sneed*, 147 F.4th at 1134–35 (defendants "likely did not intend to defraud investors by concealing [information] while simultaneously disclosing that information in myriad contexts"); *In re Xunlei Ltd. Sec. Litig.*, 2019 WL 4276607, at *12 (S.D.N.Y. Sept. 10, 2019) (plaintiffs "cannot rely on information generally known or available to the public to support . . . circumstantial scienter allegations" (quotation marks omitted)). These cases and the numerous others cited in the motion (at 12–13) are not, contrary to Plaintiffs' mischaracterization, truth-on-the-market cases; they are about scienter.

Finally, Plaintiffs are wrong to disregard (at 10) the "buried" or "generic" nature of the statements here. Once again, the question is not whether obscure or generalized statements can mislead; it is whether it is plausible to infer that Defendants *intended* to convey a false message about years-old events by including generic risk factor statements deep in an SEC filing or making generic statements about user control (neither of which mentioned Cambridge Analytica). That context is relevant: "Showing scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false because in those cases an innocent explanation becomes more likely." *Sneed*, 147 F.4th at 1134; *see also, e.g.*, *Espy v. J2 Global, Inc.*, 99 F.4th 527, 540 (9th Cir. 2024) ("[T]he omitted information and the context of the disclosure does not compel a strong inference of scienter."). The far more likely explanation is that Defendants were not *trying* to convey anything through generic risk-factor statements about the already publicly-reported Cambridge Analytica initial misuse.

Ultimately, Plaintiffs have failed to satisfy their burden of pleading a "strong inference" of scienter as to their initial misuse theory that is not just "reasonable" or "permissible," but "cogent and compelling" in light of other "plausible, nonculpable explanations." *Tellabs, Inc. v. Makor Issues &*

*Rts., Ltd.*, 551 U.S. 308, 324 (2007). The Court should dismiss the claims relying on the Cambridge Analytica initial misuse theory.

**B.    Plaintiffs Cannot Revive Their Investigation Statement Claim or Their Continued Misuse Theory.**

Given the problems with their initial misuse theory, Plaintiffs try to pivot to their investigation statement claim and continued misuse theory. *See* Mot. 5–6 (describing the investigation claim and continued misuse theory). But neither of those issues remain in the case, and the Court should reject Plaintiffs' attempts to evade basic mandate-rule and waiver principles.

**1.    The investigation statement claim is barred by the mandate rule.**

This Court dismissed the investigation statement claim with prejudice. 2021 Order at 7–12, 14. The Ninth Circuit affirmed, "agree[ing]" with this Court that Plaintiffs "failed to plead scienter as to the Cambridge Analytica investigation statements." *Facebook*, 87 F.4th at 952–53. That claim is thus out of the case. It is hard to imagine a more clear-cut operation of the mandate rule, which is a jurisdictional requirement that Plaintiffs cannot skirt. *See Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012) ("Violation of the rule of mandate is a jurisdictional error.").

Plaintiffs cite no case allowing a party to revive its claim under these circumstances, and their arguments for doing so lack merit. They rely (at 23–24) exclusively on *Bafford v. Administrative Committee of Northrop Grumman Pension Plan*, 101 F.4th 641 (9th Cir. 2024), but that case does not help them. In *Bafford*, the district court dismissed an ERISA claim *without prejudice*. 2020 WL 70834, at *6, 9 (C.D. Cal. Jan. 7, 2020). On appeal, the Ninth Circuit affirmed dismissal but expressly "direct[ed] the district court to permit Plaintiffs to file an amended complaint." 994 F.3d 1020, 1029, 1032 (9th Cir. 2021). The district court did so on remand, and on a later appeal, the Ninth Circuit confirmed doing so was proper because its prior opinion "did not express clear intent to deny amendment," and instead "direct[ed] the district court to permit" amendment. 101 F.4th at 649 (quotation marks omitted). That is not what happened here: this Court dismissed the investigation statement claim with prejudice, and the Ninth Circuit affirmed without any suggestion that Plaintiffs should get a chance to replead it yet again.

Plaintiffs' assertion (at 23) that the Ninth Circuit "spelled out how to cure the defect" with the

Gibson, Dunn &
Crutcher LLP

investigation statement claim is simply wrong.  The Ninth Circuit affirmed dismissal without identifying any path to cure, and in fact declined to even consider whether Plaintiffs pleaded falsity. *See Facebook*, 87 F.4th at 952–53.  Plaintiffs also miscite (at 23) the Ninth Circuit's "for further proceedings" instruction, suggesting that language was in the section affirming dismissal of the investigation statement.  Not so: the "further proceedings" language appears at the end of the opinion, where the Court reversed and remanded on the risk factor and user control statements.  *Id.* at 957.

Indeed, the Ninth Circuit's different treatment of the risk factor and user control claims underscores why the investigation statement claim is out.  For the risk factor statements, the Ninth Circuit expressly instructed this Court to further consider "the other elements of the claims" beyond falsity.  *Facebook*, 87 F.4th at 952.  Similarly, for the user control statements, the Ninth Circuit "emphasize[d]" that "discovery and further proceedings are necessary to illuminate the issues surrounding loss causation."  *Id.* at 956.  And, in its concluding paragraph, the Ninth Circuit identified by paragraph number the precise statements subject to dismissal (which included the investigation statement) and the statements subject to reversal and remand.  *Id.* at 957.  Because the investigation statement claim was dismissed with prejudice and affirmed, the matter "is disposed of" and "considered as finally settled."  *Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492 (1838).  The mandate rule forbids Plaintiffs from relitigating this claim for the fourth time.

**2.    The Cambridge Analytica continued misuse theory is barred by waiver and the mandate rule.**

Plaintiffs deliberately and expressly waived their argument that any Executive Defendant knew about Cambridge Analytica's continued misuse of Facebook user data for the Trump campaign.  And Plaintiffs' attempt to revive this theory years later is barred by both elementary waiver principles and the mandate rule.  *See* Mot. 18–21.[1]

**a.    The Cambridge Analytica continued misuse theory is expressly waived.**

This Court previously held that Plaintiffs failed to raise a strong inference that the Executive

---

[1] The continued misuse theory is the same with respect to the risk factor statements, the user control statements, and the investigation statement, so Plaintiffs' waiver of that theory affects the viability of each category of statements.

Gibson, Dunn &
Crutcher LLP

Defendants knew about Cambridge Analytica's continued misuse of user data for the Trump campaign. 2021 Order at 7–12. On appeal, Plaintiffs never challenged that holding and instead assured the Ninth Circuit that it "need not review that determination." Op. Br. at 64 n.7, *In re Facebook, Inc. Sec. Litig.*, No. 22-15077 (9th Cir. May 23, 2022), ECF No. 14. Defendants pointed out, in an entire standalone section of their Ninth Circuit brief, that "Plaintiffs have abandoned their scienter arguments for the continued-misuse theory" and "therefore waived the point." Resp. Br. at 23 (capitalization omitted), *id.*, ECF No. 26. In reply, Plaintiffs confirmed that "Facebook is correct that Plaintiffs do not press any 'continued-misuse' theory regarding the risk statements on appeal." Reply Br. at 3 n.1, *id.*, ECF No. 38 (citation omitted). Defendants also pointed this out again (repeatedly) in their Supreme Court certiorari and merits briefing, and Plaintiffs never contested it. *See, e.g.*, Pet. for Writ of Cert., *Facebook, Inc. v. Amalgamated Bank*, 2024 WL 1009159, at *11 n.2, 13, 25–26 (U.S. Mar. 4, 2024); Br. for Facebook, *Facebook, Inc. v. Amalgamated Bank*, 2024 WL 3815071, at *12, 17–18, 40–41 (U.S. Aug. 9, 2024).

Plaintiffs' attempts to escape the consequences of their deliberate waiver are unavailing. They first assert (at 14–15) "there was no waiver here," but the appellate briefing flatly contradicts that assertion. *See supra* at 8. And while Plaintiffs say (at 14) that their appellate briefing "pressed continuing misuse facts," they argued (in an attempt to plead scienter for Facebook) only that Facebook's *spokesperson*—not any of the Executive Defendants—knew about the continued misuse, as part of their investigation statement claim that the Ninth Circuit rejected. *See* Mot. 18.

Plaintiffs next point (at 15) to statements in the Ninth Circuit's opinion saying "Facebook knew" Cambridge Analytica had not deleted the data. There are several problems with this argument. Most fundamentally, those statements about what some employees at "Facebook" allegedly knew do not show that *the Executive Defendants* knew Cambridge Analytica had not deleted the misappropriated user data, particularly in the face of findings by the UK Information Commissioner's Office to the contrary. *See* Ex. 18 at 15, 17. That is the key issue (and the one Plaintiffs waived), because Plaintiffs must plead "scienter of the senior controlling officers" to show scienter for Facebook, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015), and must also "plead scienter with respect to those individuals who actually made the false statements," *Glazer Cap.*

*Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008); *see also, e.g.*, *Prodanova v. H.C. Wainwright & Co.*, 2018 WL 8017791, at \*14 (C.D. Cal. Dec. 11, 2018) ("[C]orporate scienter may not be established by imputing the false statements of one agent . . . with the alleged scienter of another agent."), *aff'd*, 993 F.3d 1097 (9th Cir. 2021). And Plaintiffs again conflate falsity and scienter; the Ninth Circuit certainly never held that any of the Executive Defendants "intentional[ly] or conscious[ly]" deceived the market about Cambridge Analytica's continued misuse. *NVIDIA*, 768 F.3d at 1053. Plaintiffs' theory that the Ninth Circuit implicitly revived a claim they expressly waived attributes to the court a cavalier approach to "the principle of party presentation" that the Supreme Court has cautioned against. *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *see also, e.g.*, *Clark v. Sweeney*, 607 U.S. \_\_, \_\_, 2025 WL 3260170, at \*1 (2025) (per curiam) (reversing where court of appeals "rel[ied] on a claim that [a party] never asserted" and "departed dramatically from the principle of party presentation"); *cf. Wood v. Milyard*, 566 U.S. 463, 466 (2012) ("A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate waiver of a limitations defense."). The Ninth Circuit did no such thing.

Retreating, Plaintiffs argue (at 15–16) that they can waive only "claims," not "arguments." But asserting securities fraud based on a particular statement and allegations about a particular individual's scienter *is* a distinct claim. That is why, for example, this Court previously analyzed (and dismissed) Plaintiffs' claims based on particular theories of fraud. *See, e.g.*, 2020 Order at 33–34; 2021 Order at 4–5. Here, to state claims based on the continued misuse theory, Plaintiffs had to plead scienter as to each of the Executive Defendants to state claims against them and similarly had to plead "scienter of the senior controlling officers" to state a claim against Facebook. *ChinaCast*, 809 F.3d at 476. It is especially important to hold Plaintiffs to these rules in the securities fraud context, which requires particularized allegations about "the circumstances constituting fraud or mistake." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (quoting Fed. R. Civ. P. 9(b)).

Plaintiffs' argument (at 16) that "[t]he 'claim' is that Defendants violated the federal securities laws when making the challenged misstatements" disregards these requirements by casting securities fraud claims at a sky-high level of generality that the law forbids. The PSLRA requires pleading securities fraud claims on a statement-by-statement basis. 15 U.S.C. § 78u-4(b)(1)(B) (securities fraud

complaint must "specify *each* statement . . . [and] the reason or reasons why *the* statement is misleading" (emphases added)); *id.* § 78u-4(b)(2)(A) (scienter must be pleaded "with respect to *each* act or omission alleged to violate this chapter" (emphasis added)).  Further, "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Glazer*, 63 F.4th at 765 (quotation marks omitted).  Plaintiffs expressly waived their securities fraud claims based on the Executive Defendants' knowledge of Cambridge Analytica's continued misuse, and they cannot now smuggle them back in.

Retreating even further, Plaintiffs suggest (at 16) that their waiver was "cured by amending with newly-revealed facts."  But the cases Plaintiffs cite stand only for the unremarkable proposition that a plaintiff may amend a complaint to add a previously omitted claim or defendant where the circumstances warrant.[2]  None of them says a party may revive a claim on remand where, as here, it was dismissed with prejudice and expressly waived on appeal.

### b. The Cambridge Analytica continued misuse theory is also barred by the mandate rule.

Nor, for similar reasons, can Plaintiffs get out from under the mandate rule.  As the Ninth Circuit recently acknowledged, "[o]ther circuits have consistently held that the scope of remand is limited when an issue on appeal is waived or forfeited." *Ala. Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 788 (9th Cir. 2025) (collecting cases) (citation modified).  That rule sensibly forbids litigants from holding back at one stage of the case only to sandbag their adversary with (in Plaintiffs'

---

[2] *See Pack v. McCausland*, 300 F. App'x 541, 543 (9th Cir. 2008) (a "plaintiff who omits previously dismissed claims from an amended complaint" may "re-allege these claims in further amendments"); *Bus. Integration Tech. v. MuleSoft Inc.*, 2012 WL 13041534, at *6 (N.D. Cal. Mar. 23, 2012) (allowing plaintiff to reallege claim that had been voluntarily withdrawn in prior amended complaint, but never dismissed); *Comm. Concerning Cmty. Imp. v. City of Modesto*, 2011 WL 9635, at *3 (E.D. Cal. Jan. 3, 2011) (defendant named in original complaint, but omitted from subsequent complaints before appeal, could be added to amended complaint following remand); *Google, Inc. v. Affinity Engines, Inc.*, 2005 WL 2007888, at *7 (N.D. Cal. Aug. 12, 2005) (same as *MuleSoft*).

Gibson, Dunn &
Crutcher LLP

words) "facts they did not emphasize on appeal." Opp. 17; *see also Bondi v. VanDerStok*, 604 U.S. 458, 467 n.2 (2025) (parties may not "inject" issues "on remand" "they did not pursue" on appeal).

Plaintiffs' response simply reprises their other deficient arguments. They first repeat (at 17) their argument that the Ninth Circuit revived their waived claim, but that is incorrect for the reasons above. *See supra* at 8–9. They next pivot back to *Bafford*, but again, that case did not deal with a claim dismissed with prejudice in the district court and expressly waived on appeal. *See supra* at 6.[3] Nor did any of the other cases Plaintiffs cite. *See Hall*, 697 F.3d at 1067 (district court could consider issue never decided or waived on appeal); *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 2024 WL 4814557, at *1 (9th Cir. Nov. 18, 2024) (similar); *Doe One v. CVS Pharm., Inc.*, 2023 WL 4849429, at *5 (N.D. Cal. July 28, 2023) (similar). The mandate rule thus bars Plaintiffs from reviving their waived claim that any of the Executive Defendants knew of Cambridge Analytica's continued misuse.

### 3. The investigation statement and continued misuse claims also fail on the merits.

Because the mandate rule is jurisdictional, *see Hall*, 697 F.3d at 1067, this Court need not and should not reach the merits of Plaintiffs' investigation statement or continued misuse claims. But if it does, Plaintiffs' claims fail anyway because even with the benefit of more than a million documents received in discovery, their new allegations still do not raise any strong inference of scienter.

*Investigation statement*. As this Court already concluded, the investigation statements "are all confined to Facebook's investigation of data misuse by Cambridge Analytica *during the Trump and Brexit campaigns*." 2020 Order at 44 n.8 (emphasis added); *see also* 2021 Order at 11. In fact, when Plaintiffs previously suggested one of the statements "was not limited to the Trump/Brexit campaign," the Court "caution[ed] Plaintiffs about misrepresenting the context of an alleged misrepresentation." 2020 Order at 44 n.8. But Plaintiffs reprise that argument in their opposition brief, suggesting (at 19–

---

[3] Plaintiffs say that *Bafford* held a party "may plead newly discovered facts supporting a dismissed theory unless the Ninth Circuit 'expressly ordered' that they had been forfeited." Opp. 17 (citing *Bafford*, 101 F.4th at 649 n.4). That is a misquote. The phrase "expressly ordered" does not appear in the footnote Plaintiffs cite, and the court used that phrase only in another context entirely. *See Bafford*, 101 F.4th at 647 ("[T]he court expressly ordered Plaintiffs to file an amended complaint removing those previously rejected allegations.").

Gibson, Dunn &
Crutcher LLP

21) that the Ninth Circuit's order affirming dismissal of these statements somehow endorsed their mischaracterization.  Not so.  Like this Court, the Ninth Circuit described the investigation statements as "related to Cambridge Analytica's work on the Brexit and Trump campaigns."  *Facebook*, 87 F.4th at 952.  And like this Court, the Ninth Circuit held Plaintiffs failed to allege scienter for them.  *See id.* at 952–53.  Plaintiffs' argument (at 21–22) that Facebook's spokesperson knew about the *initial* misuse for Cruz (not the *continued* misuse for Trump/Brexit) thus does not move the ball.  Nor do any of the paragraphs Plaintiffs cite (at 22) allege with particularity that Facebook's spokesperson (or any other Facebook employee) knew that the data Cambridge Analytica was using in 2016 was the "policy-violating data" from 2015.

*Continued misuse theory*.  Plaintiffs remain unable to plead an essential component of scienter regarding the continued-misuse theory: that any of the Executive Defendants knew Cambridge Analytica was continuing to misuse the Facebook user data it misappropriated in 2015.  Instead, Plaintiffs plead a series of facts suggesting at most that the Executive Defendants or other Facebook employees generally knew Cambridge Analytica was using Facebook data, without any details as to the source of that data.  *See* Opp. at 11–13.  For example, Plaintiffs say Facebook employees were "embedded" in the Trump campaign, and that those employees "had ready access to the Facebook user data Cambridge Analytica had misappropriated."  Opp. 11 (citing 4AC ¶¶ 215, 288–89, 375–77).  But those allegations were already in the TAC (¶¶ 229, 233), this Court rejected that they established the "Executive Defendants [knew] about any use of misappropriated data by the Trump campaign," 2021 Order at 8, and the Ninth Circuit did not revive them, *see supra* at 8–9.  Plaintiffs plead no new facts suggesting the Executive Defendants knew the Facebook data at issue was specifically misappropriated by Kogan, and thus fail to displace this Court's prior ruling.  *See* 2020 Order at 34.

Plaintiffs' invocation (at 13) of cases stating that "equally compelling" inferences can satisfy scienter also misses the mark.  Those cases hold that if the "fraudulent inference" and "nonfraudulent alternatives" are in equipoise, then a plaintiff has carried its burden.  *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1033 (9th Cir. 2016).  Here, the fact that the user data at issue may just as easily have been obtained by Cambridge Analytica from other sources shows that Plaintiffs have failed to plead with particularity that the Executive Defendants *knew* the data was misappropriated data, which

Gibson, Dunn &
Crutcher LLP

1    is just one link in the chain Plaintiffs must assemble to show a fraudulent intent to deceive.[4]

2    **C.    Plaintiffs' Sole Remaining Claim Is That the User Control Statements Were False Due to Whitelisting and Caused the July 2018 Stock Drop.**

3

4    Because they have failed to adequately allege any claims based on the Cambridge Analytica

5    theory, Plaintiffs' sole remaining claim is that the user control statements are actionable under their

6    whitelisting theory and caused the July 2018 stock drop. Plaintiffs attempt to avoid that conclusion,

7    but their responses again miss the mark.

8    First, Plaintiffs point (at 24) to the Ninth Circuit's holding as to the user control statements that

9    Plaintiffs "adequately pleaded loss causation" for "the stock price drops that occurred after the

10   Cambridge Analytica revelation in March and July 2018." *Facebook*, 87 F.4th at 957. But that

11   statement addressed only loss causation and assumed Plaintiffs' Cambridge Analytica initial misuse

12   theory of fraud remained in the case—an issue the Ninth Circuit left open for this Court to assess on

13   remand. *See supra* at 2. Because Plaintiffs cannot plead scienter for their Cambridge Analytica theory,

14   the only actionable corrective disclosure is the June 2018 disclosure about whitelisting, which could

15   not have retroactively caused the March 2018 stock drop. And Plaintiffs' argument (at 7, 24) that Judge

16   Bumatay's dissent would have similarly concluded that "only the July 2018 stock price drop was

17   actionable," *Facebook*, 87 F.4th at 956 (Bumatay, J., concurring in part and dissenting in part), is not

18   the gotcha they seem to think it is. Judge Bumatay would have rejected the Cambridge Analytica

19   theory of fraud based on falsity. *Id.* at 961. The Ninth Circuit disagreed on falsity but left scienter for

20   this Court to decide. If this Court rejects the Cambridge Analytica theory based on scienter (as it

21   should), then it is no surprise that the bottom-line result aligns with Judge Bumatay's.

22   _____

     [4] Plaintiffs wrongly assert that a court found Ms. Sandberg "selectively deleted emails that she wrote

23   about Cambridge Analytica." Opp. 12. Rather, the court inferred that, because she did not use an

24   "autodelete" feature on her personal email account and certain many-years old emails from her personal

25   email account had not been preserved, Ms. Sandberg may have "deleted emails selectively." *In re*

26   *Facebook Inc. Derivative Litig.*, 2025 WL 262194, at *9 (Del. Ch. Jan. 21, 2025). The court

27   accordingly raised her burden of proof on affirmative defenses, which—importantly for this motion—

28   did not require the court to find "a culpable mental state." *Id.* at *12.

Plaintiffs similarly mischaracterize the Ninth Circuit's decision in asserting (at 24–25) that the March 2018 stock drop can survive without the Cambridge Analytica theory. Plaintiffs say (at 24) the Ninth Circuit held "that the March 2018 disclosure also corrected aspects of Facebook's user control statements." But again, the Ninth Circuit's discussion of loss causation for the March 2018 stock drop was based on "[t]he Cambridge Analytica revelation." *Facebook*, 87 F.4th at 954–55. Unsurprisingly, the Ninth Circuit's discussion makes no mention of whitelisting, which Plaintiffs allege was revealed in June 2018. *See id.*; 2021 Order at 13; 4AC ¶ 683. If only the whitelisting theory remains in the case, there is no purported fraud that was corrected in March 2018. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (corrective disclosure must "reveal[] the truth").

Plaintiffs also argue (at 14, 24) that the risk factor statements are actionable not only based on the Cambridge Analytica theory but also based on whitelisting. But the parties have litigated this case all the way to the Supreme Court on Plaintiffs' theory that the risk factor statements were knowingly false because of Cambridge Analytica's initial misuse, not whitelisting—which is why the Ninth Circuit distilled the "essence" of "the challenged risk statements" to a claim that "Facebook knew Cambridge Analytica had improperly accessed and used Facebook users' data" while describing the risk of data misuse as "hypothetical." *Facebook*, 87 F.3d at 948. It is far too late to put a new face on that claim. In any event, even if this Court accepted Plaintiffs' new framing, the March 2018 stock drop still would not be actionable under a whitelisting theory for the reasons explained above, *see supra* at 13, so the practical implications are largely the same.

Plaintiffs next conflate (at 25) the Cambridge Analytica disclosures in March 2018 with the whitelisting disclosures in June 2018, suggesting that they should be able to invoke their Cambridge Analytica theory for purposes of loss causation related to the July 2018 stock drop while alleging scienter only for their whitelisting theory. But Plaintiffs cannot plead a securities fraud claim by cobbling together different elements from different theories of fraud. Courts analyzing securities fraud claims consider factually distinct allegations separately and assess the elements as to each claim; they do not consider a single, undifferentiated "claim." *See, e.g.*, *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1181 (9th Cir. 2024) (separately analyzing falsity and loss causation as to each "claim" in the complaint). Indeed, this Court just recently rejected a theory of scienter that was not "tied to the

current theory of the case"; a plaintiff cannot allege a statement is false for one reason and then allege scienter for some other issue. *Adamo v. Nextdoor Holdings, Inc.*, 2025 WL 3238205, at *4 (N.D. Cal. Nov. 20, 2025) (Davila, J.). And contrary to Plaintiffs' assertion (at 8) that they need not say at this stage "[w]hether the deception manifested through Cambridge Analytica, whitelisting, or both"—a tacit admission that Plaintiffs are still searching for a claim after receiving more than a million documents in discovery—a securities fraud complaint must "specify . . . the reason or reasons why *the* statement is misleading" and "that *the* act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §§ 78u-4(b)(1)(B), 78u-4(b)(4) (emphases added). Consistent with that approach, both this Court and the Ninth Circuit have analyzed the elements of Plaintiffs' claims based on Cambridge Analytica and their claims based on whitelisting separately. If Plaintiffs cannot allege scienter for their Cambridge Analytica theory (and they cannot), then they cannot recover losses attributable to the Cambridge Analytica disclosures because those losses would not be "caused by a revelation of fraudulent activity." *Adamo*, 2025 WL 3238205, at *5 (quotation marks omitted); *see also Lloyd*, 811 F.3d at 1209.

Finally, Plaintiffs quote the Ninth Circuit's statement that "discovery and further proceedings are necessary to illuminate the issues surrounding loss causation." Opp. 25 (quoting *Facebook*, 87 F.4th at 956). That is true as to the whitelisting theory. But that is only true as to the Cambridge Analytica initial misuse theory *if* it is actionable—something the Ninth Circuit left this Court to decide for elements other than falsity and loss causation. *See Facebook*, 87 F.4th at 941, 952, 957. Because Plaintiffs have failed to allege scienter for their Cambridge Analytica theory, it fails regardless of whether the Cambridge Analytica disclosures caused any losses.

## III.    CONCLUSION

Dismissing claims that are not well-pleaded or are foreclosed by the mandate rule and waiver principles would streamline this case significantly (including any discovery, discovery motion practice, class certification, summary judgment, and trial). The Court should dismiss all claims based on Cambridge Analytica (both the initial misuse and the continued misuse) with prejudice, leaving only the claim that the user control statements were false in light of whitelisting and caused the July 2018 stock drop.

1    DATED:  December 18, 2025          By:  _____ /s/ Brian M. Lutz _____

2                                         GIBSON, DUNN & CRUTCHER LLP

3                                         Brian M. Lutz (SBN 255976)
                                          Martie Kutscher (SBN 302650)
4                                         Michael J. Kahn (SBN 303289)
                                          One Embarcadero Center, Suite 2600
5                                         San Francisco, CA  94111-3715
                                          Telephone:  415.393.8200
6                                         Facsimile:  415.393.8306
                                          blutz@gibsondunn.com
7                                         mkutscherclark@gibsondunn.com
                                          mjkahn@gibsondunn.com
8
                                          Joshua S. Lipshutz (SBN 242557)
9                                         1700 M Street, N.W.
                                          Washington, DC  20036-4504
10                                        Telephone:  202.955.8217
                                          Facsimile:  202.530.9614
11                                        jlipshutz@gibsondunn.com

12                                        *Attorneys for Defendants Facebook, Inc.,*
                                          *Mark E. Zuckerberg, Sheryl K. Sandberg,*
13                                        *and David M. Wehner*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP