GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ (SBN 255976)
  blutz@gibsondunn.com
MICHAEL J. KAHN (SBN 303289)
  mjkahn@gibsondunn.com
MARTIE KUTSCHER (SBN 302650)
  mkutscherclark@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ (SBN 242557)
  jlipshutz@gibsondunn.com
1700 M Street, N.W.
Washington, DC  20036-4504
Telephone: 202.955.8217
Facsimile:  202.530.9614

*Attorneys for Defendants Facebook, Inc., Mark E.
Zuckerberg, Sheryl K. Sandberg, and David M.
Wehner*

*(additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK, INC. SECURITIES LITIGATION | Master File No. 5:18-cv-01725-EJD |
| | CLASS ACTION |
| This Document Relates To: | **JOINT STATEMENT REGARDING DEFENDANTS' MOTION TO COMPEL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |
| ALL ACTIONS. | |

**Defendants' Position**:  Plaintiffs refuse to answer three interrogatories aimed at clarifying their pleadings regarding the "corrective disclosures" on which their surviving securities fraud theories rest.  The Complaint alleges that securities fraud caused Facebook's stock price to drop following a "corrective disclosure" in March 2018.  Order Granting in Part & Denying in Part Dfs.' Mot. to Dismiss Fourth Am. Compl., Dkt. 258 at 19-20 (Feb. 27, 2026) ("2026 Order").  Yet Plaintiffs will not identify the disclosures on which they rely.  The Complaint itself concedes it pleads "just some of the disclosures" Plaintiffs claim "caused Facebook's stock price to decline."  Fourth Am. Compl., Dkt. 227-3 at ¶ 676.  And because the Court has since dismissed multiple theories of fraud, *see* 2026 Order at 19, 29, it is no longer clear which of the Complaint's alleged disclosures Plaintiffs contend support the two surviving theories.  Plaintiffs knew when they filed the Complaint which disclosures support those theories, and there is no reason they cannot identify them now.

Defendants' interrogatories seek to resolve this uncertainty.  The interrogatories ask Plaintiffs to identify each corrective disclosure they contend revealed new facts relating to the two theories of fraud that remain in this case:  the Cambridge Analytica Initial Misuse theory and the Whitelisting theory.  2026 Order at 33.  Additionally, for the Initial Misuse theory, they ask Plaintiffs to identify what new facts about that alleged fraud were revealed in each corrective disclosure.  That parsing is necessary because many of the facts about the Initial Misuse were reported years before the alleged corrective disclosures, *id.* at 2-3, and other facts about the full "extent of Cambridge Analytica's misconduct" were revealed later, *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023).

With Plaintiffs' class certification motion due August 21, 2026, Defendants need this information sufficiently in advance to analyze Plaintiffs' asserted disclosures and prepare their response.  Class certification in securities fraud cases typically turns on whether defendants can rebut the fraud-on-the-market presumption of reliance by proving that the alleged fraud did not impact the stock price.  *See Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113 (2021).  District courts in this Circuit routinely "analyz[e] corrective disclosures" in conducting this "price impact" inquiry, *In re Enovix Corp. Sec. Litig.*, 2026 WL 1078569, at *8 (N.D. Cal. Apr. 21, 2026), including assessing whether the information purportedly revealed in the alleged corrective disclosures "was (i) corrective of one or more prior false statements or omissions, (ii) new (unknown to the market prior to [the corrective disclosure date]), and (iii) 'value relevant' (*i.e.*, caused at least some of the stock price decline)," *In re FibroGen Sec. Litig.*, 2024 WL 1064665, at *12 (N.D. Cal. Mar. 11, 2024); *accord Enovix*, 2026 WL 1078569, at *8 (applying the *FibroGen* factors); *Pardi v. Tricida, Inc.*, 2024 WL 4336627, at *7 (N.D. Cal. Sept. 27, 2024) (same).

Defendants cannot meaningfully address price impact without knowing which disclosures Plaintiffs rely on and what they contend was newly-disclosed in each.  Lead Plaintiffs have nonetheless objected that these straightforward interrogatories are (1) premature and (2) based on "improperly defined terms" and an "improper premise."  These objections lack merit.

*First*, the interrogatories are not premature.  Plaintiffs' objection rests on labeling the interrogatories "contention interrogatories."  But that label does not make them premature.  These interrogatories ask Plaintiffs to identify disclosures that have (or should have) already been pleaded, so no further discovery is needed to answer them.  In any event, Plaintiffs have already received over one-million documents in discovery, and Courts routinely permit contention interrogatories aimed at clarifying issues relevant to class certification proceedings.  *See, e.g.*, *Hall v. Fiat Chrysler Am. US LLC*, 2023 WL 11518071, at *4 (C.D. Cal. May 15, 2023); *Orozco v. Ill. Tool Works Inc.*, 2016 WL

JOINT STATEMENT REGARDING DEFENDANTS' MOTION TO COMPEL
RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES – Master File No. 5:18-cv-01725-EJD

2605208, at *5 (E.D. Cal. Apr. 11, 2016); *Hernandez v. Best Buy Co.*, 2014 WL 5454505, at *6 (S.D. Cal. Oct. 27, 2014); *Yingling v. eBay, Inc.*, 2010 WL 373868, at *3 (N.D. Cal. Jan. 29, 2010).  A party may move to compel responses to contention interrogatories "at an early stage in litigation" where the "responses would 'contribute meaningfully'" to resolving the case, including by "clarifying the issues in the case" or "narrowing the scope of the dispute." *Monolithic Power Sys., Inc. v. Dong*, 2023 WL 350400, at *2 (N.D. Cal. Jan. 20, 2023).  That is precisely what Defendants' interrogatories seek to do in connection with the fast-approaching class certification proceedings.

Nor are these the type of interrogatories that require discovery to answer.  Identifying corrective disclosures that reveal new information to the market is something a plaintiff must plead to survive dismissal, before discovery even opens.  As the Ninth Circuit held in *In re BofI Holding, Inc. Securities Litigation*, "[a]t the pleading stage, the plaintiff's task is to allege with particularity facts" showing that "(1) a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatements; and (2) disclosure of the truth caused the company's stock price to decline and the inflation attributable to the misstatements to dissipate."  977 F.3d 781, 791 (9th Cir. 2020) (emphasis added).  The Ninth Circuit further explained, as relevant here, that a corrective disclosure must reveal "the true facts concealed by the defendant's misstatements" and that "the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading."  *Id.* at 790.  Plaintiffs do not need discovery to provide information they were required to plead in their Complaint.

*Second*, there is nothing "improper" about the premise of the interrogatories.  Plaintiffs take issue with the definition of "Corrective Disclosure," but Defendants *quoted the Ninth Circuit* in *BofI* for that definition, which itself restates black letter law.  *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1205 (9th Cir. 2020) ("[A] disclosure is not 'corrective' if it contains information derived entirely from public filings and other publicly available sources of which the stock market was presumed to be aware."); *Rok v. Identiv, Inc.*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) ("[C]orrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time.").  Plaintiffs claim this definition of a corrective disclosure was overturned by the Ninth Circuit decision in *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018).  That makes no sense because *BofI* was decided <u>after</u> *First Solar*.  In any event, *First Solar* did not disturb the Ninth Circuit jurisprudence on corrective disclosures; it only held that loss causation could be established in other ways as well.  *See id.* at 754 ("Revelation of fraud in the marketplace is simply one of the 'infinite variety' of causation theories a plaintiff might allege to satisfy proximate cause.").  But where, as here, "plaintiffs plead a causation theory based on market revelation of the fraud"—*i.e.*, a corrective disclosure—the "court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory."  *Id.*

Plaintiffs also take issue with how Defendants defined their two theories of fraud, but those definitions *directly quote* this Court's February 2026 order on Defendants' motion to dismiss.  2026 Order at 2-3, 19 (Initial Misuse theory); *id.* at 4 (Whitelisting theory).  Plaintiffs cannot seriously object to using *this Court's definitions* of the theories of fraud that remain in this case.

Defendants respectfully ask the Court to compel Plaintiffs to respond to Defendants' straightforward interrogatories by identifying each corrective disclosure they contend revealed new facts about the alleged frauds and, for the Initial Misuse theory, identify the new facts about that alleged fraud revealed in each purported corrective disclosure.

2

**Plaintiffs' Position**: Defendants are well aware of the corrective disclosures at issue. Plaintiffs' Complaint pleaded those disclosures, the parties litigated them over the course of three motions to dismiss, and the Ninth Circuit sustained them. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 953-57 (9th Cir. 2023). Moreover, Plaintiffs offered to serve responses confirming the disclosures if Defendants narrowed the Interrogatories. Defendants declined. Tellingly, Defendants do not quote their Interrogatories, which go far beyond seeking identification of the disclosures. Incorporating an incorrect causation standard, they demand that Plaintiffs provide – before Defendants' production of *any* of the documents Plaintiffs requested on this issue and before the class-certification expert process – final and exhaustive contentions identifying every allegedly "new" fact separately revealing each falsity theory, quoting the precise language revealing each such fact, and determining whether that information had appeared anywhere in the prior public record. Neither the class-certification deadline nor Defendants' authorities justify compelling such responses.

***Background of Dispute***. This case concerns Defendants' 2017 and 2018 false and misleading statements regarding the risk that third parties may misappropriate or misuse Facebook user data and users' ability to control their own data. *See Facebook*, 87 F.4th at 941; 2026 Order at 3-5. As set forth in the Complaint, Facebook's stock price plummeted when the relevant truth emerged in 2018 regarding data misuse by one such third party (Cambridge Analytica), Facebook's "whitelisting" of other third parties allowing them to use Facebook users' data without users' consent, and the financial impact of Facebook's data-privacy practices on its business. ECF 227-3, ¶¶665-700. The Ninth Circuit has held that Plaintiffs' disclosures were adequately pleaded. *Facebook*, 87 F.4th at 953-57.

Defendants served the Interrogatories on May 11, 2026. In their statement above, Defendants fail to set forth the text of their Interrogatories in violation of Local Rule 37-2. In doing so, they obscure that the Interrogatories demand Plaintiffs identify, for their theories of fraud (as defined by Defendants), "each Corrective Disclosure that you contend revealed facts . . . that had not been previously disclosed publicly," and, for one theory, the "language" of the facts. Plaintiffs timely objected on June 10, 2026. The parties met and conferred on June 18, 2026 and exchanged further correspondence on the issue on June 25 and July 7, 2026 – with Plaintiffs offering, on both June 18 and July 7, to provide substantive responses if Defendants amended their interrogatories to solely seek identification of the disclosures at issue. Before the parties completed their ongoing meet-and-confer discussions, Defendants initiated motion practice by sending Plaintiffs their statement on July 21, 2026.

***Plaintiffs' Response***: ***First***, Defendants' Interrogatories on their face are premature contention interrogatories. Defendants described them as "contention interrogatories" in their June 25 letter and do not challenge that designation in their statement above. Indeed, the Interrogatories demand not only that Plaintiffs identify the disclosures at issue (pursuant to Defendants' incorrect definition) but also every fact underlying those disclosures that Plaintiffs "***contend*** revealed facts . . . that had not been disclosed previously." Courts in this District and around the country "generally disfavor contention interrogatories asked before discovery is undertaken" and "tend to deny contention interrogatories filed before substantial discovery has taken place," granting them when discovery is "almost complete." *24/7 Customer, Inc. v. Liveperson, Inc.*, 2016 WL 4054884, at *2-3 (N.D. Cal. July 29, 2016). That is the appropriate result here because Defendants seek final contentions concerning the content, "newness," and materiality of multiple disclosures before expert discovery and while they continue to withhold production of documents specifically relevant to those issues. Defendants have not "present[ed] specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure," and thus have not

met the "burden of justification" placed "on a party seeking answers to contention interrogatories before substantial documentary or testimonial discovery has been completed." *Id.* If the Court concludes that some response is appropriate now, it should require only identification of the disclosures, *after* Defendants produce the documents that they are withholding on these exact issues.

*Second*, Defendants' claim that they lack sufficient information about the disclosures is disingenuous and incorrect. As Defendants admit, these disclosures have "already been pleaded." *See supra* at 1. Specifically, the Complaint identifies the disclosures in March 2018 when Facebook and various publications confirmed that Defendants knew Cambridge Analytica had misused the data of tens of millions of Facebook users, and in June and July 2018 when *The New York Times* revealed Facebook's improper whitelisting practices and the business impact of these data practices became apparent in connection with Facebook's second-quarter earnings call. ECF 227-3, ¶¶660-700. Defendants targeted these specific disclosures in three motions to dismiss. *See* ECF 93, 126, 145 §III.D. And the Ninth Circuit confirmed that Plaintiffs sufficiently pleaded loss causation for these corrective disclosures. *See, e.g., Facebook*, 87 F.4th at 955 ("the shareholders adequately alleged that the March 2018 revelation was a corrective disclosure as to Facebook's statements that users control their data on the platform"); *id.* at 956 ("the shareholders adequately pleaded that the Cambridge Analytica and whitelisting revelations, not any other factor, caused the July 2018 stock price drop").

The Ninth Circuit also identified the facts revealed by the disclosures, finding that, for example, Plaintiffs sufficiently pleaded that "[b]efore the March 2018 news broke, reasonable investors would not have known that Cambridge Analytica had improperly accessed Facebook users' data such that users did not have control over their personal information on the platform." *Id.* at 954-55. It also explained that "Facebook's Q2 earnings call in July 2018 allowed the public to appreciate the significance of the Cambridge Analytica and whitelisting scandals," and that Plaintiffs properly alleged that the "dramatically lowered user engagement, substantially decreased advertising revenue and earnings, and reduced growth expectations going forward" announced on the Q2 earnings call was "on account of the Cambridge Analytica and whitelisting scandals." *Id.* at 956-57.

*Third*, Defendants' claim that they need answers now to "meaningfully address price impact" for class certification purposes has no merit. At class certification, "[t]he relevant inquiry" is "whether ***Defendants*** have proven a complete lack of price impact during the Class Period," and "***not*** whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at *4 (N.D. Cal. Mar. 6, 2024). Defendants' present effort is wrong on both counts. First, Defendants foist their burden to "prove[] a complete lack of price impact" onto Plaintiffs by seeking to compel Plaintiffs to identify all "new" facts related to the misstatements revealed by those disclosures (without the benefit of fact or expert discovery). Second, they seek to force Plaintiffs to identify "new facts" that caused the stock price impact, which is the exact kind of loss causation analysis that is "not appropriate" at the class certification stage. In any event, Defendants will have two months to "meaningfully address price impact" after receiving Plaintiffs' class certification motion and expert report. ECF 266.

*Fourth*, the Interrogatories' definition of "Corrective Disclosure" is inconsistent with Ninth Circuit precedent. It relies on a snippet from *BofI* and improperly converts what the Ninth Circuit identifies as ***sufficient*** to establish a corrective disclosure ("[*i]t is enough* if the disclosure reveals new facts") into a ***prerequisite***. *See* 977 F.3d at 790. In seeking to defend this incorrect formulation,

JOINT STATEMENT REGARDING DEFENDANTS' MOTION TO COMPEL
RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES – Master File No. 5:18-cv-01725-EJD

Defendants misconstrue *First Solar*, *BofI*, and the law of the case. *First Solar* holds that loss causation only requires a "'causal connection' between the facts misrepresented and the plaintiff's loss," which can be done in an "infinite variety" of ways. 881 F.3d at 752-54. *First Solar* did not, as Defendants claim, define corrective disclosures as requiring a revelation of fraud, and *BofI* did not purport to overrule *First Solar* or impose Defendants' fact-by-fact matching requirement. Moreover, in its post-*BofI* opinion in **this case**, the Ninth Circuit held that Facebook's July 2018 earnings announcement supported loss causation because it "allowed the public to appreciate the significance of the Cambridge Analytica and whitelisting scandals." *Facebook,* 87 F.4th at 956. Defendants' demand that Plaintiffs quote and assign each discrete "new fact" to one of the falsity theories imposes a granularity requirement found nowhere in Ninth Circuit precedent, including the law of this case. "Initial misuse" and "whitelisting" are shorthand falsity theories; the alleged misstatements remain the risk-factor and user-control statements. The inquiry is whether the loss can be traced to the facts concealed by those statements – not whether each disclosure expressly detailed "initial misuse" or "whitelisting."

**Fifth**, Defendants' assertion that "Plaintiffs have already received over one-million documents in discovery," omits that they have **not** produced **any** documents in response to loss-causation-related requests Plaintiffs served **over a year ago** in July 2025. Moreover, "[s]orting out which declines were caused by such extraneous factors and which were caused by [fraud] is generally the province of an expert," *In re Vivendi Universal, S.A. Securities Litigation,* 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009), and expert discovery is not scheduled until spring 2027. ECF 266. The Ninth Circuit itself held that "***discovery and further proceedings are necessary to illuminate the issues surrounding loss causation***." *Facebook*, 87 F.4th at 956. Final loss causation contentions should await that discovery.

Although Defendants already have this information, Plaintiffs remain willing to supplement their responses to identify the disclosures at issue. Defendants' request should otherwise be denied.

**<u>Defendants' Reply</u>**: Plaintiffs must answer now. The interrogatories ask Plaintiffs to identify what corrective disclosures allegedly revealed new facts about the "fraud" and what those facts were. The answer to these questions necessarily is based on public information about what facts supposedly were revealed publicly on a particular date, so no discovery is necessary to answer them.

Plaintiffs say the Complaint and the Ninth Circuit order identify the disclosures, but the Court subsequently narrowed their claims, 2026 Order at 19, 29, and the Complaint identifies "just *some* of the disclosures," Dkt. 227-3 at ¶ 676. Plaintiffs' offer to identify only the "disclosures" is an empty one because it excludes the key information: what supposedly made them "corrective" (i.e., the new facts allegedly revealed).

The Supreme Court requires at class certification an analysis of any "mismatch" between the alleged misstatements and facts revealed by the "corrective disclosures." *Supra* at 1. That is why Plaintiffs must provide this information *now*—before Defendants address this mismatch in their class certification opposition. Without clarity now, there is a substantial risk of a class certification "gotcha" with Plaintiffs shifting corrective disclosure theories that would impair Defendants' (and the Court's) Supreme Court-mandated analysis.

Finally, Local Rule 37-2 governs noticed motions under Rule 7, which the Court's standing order replaces with this five-page joint statement. Defendants accurately summarized the requests and, because attachments are not permitted, will file them at the Court's request.

5

---

DATED:  July 29, 2026

GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ


*/s/ Brian M. Lutz*


One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
Telephone:  415/393-8200
415/393-8306 (fax)
blutz@gibsondunn.com

*Counsel for Defendants Facebook, Inc., Mark E. Zuckerberg, Sheryl K. Sandberg, and David M. Wehner*

DATED:  July 29, 2026

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON C. DAVIS
KENNETH J. BLACK


*/s/ J. Marco Janoski Gray*


One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kblack@rgrdlaw.com

JOINT STATEMENT REGARDING DEFENDANTS' MOTION TO COMPEL
RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES – Master File No. 5:18-cv-01725-EJD

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS (212802)
DARRYL J. ALVARADO (253213)
HILLARY B. STAKEM (286152)
J. MARCO JANOSKI GRAY (306547)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jrobertson@rgrdlaw.com

*Counsel for Amalgamated and Co-Lead Counsel
for the Class*

DATED:  July 29, 2026

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
TIMOTHY G. FLEMING
THOMAS Z. SPERBER

                /s/ Jeremy P. Robinson

1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com
timothy.fleming@blbglaw.com
thomas.sperber@blbglaw.com

*Counsel for MSPERS and Co-Lead Counsel for
the Class*

7

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.


Dated:  July 29, 2026                                    **GIBSON, DUNN & CRUTCHER LLP**

                                                         */s/ Brian M. Lutz*

                                                         BRIAN M. LUTZ

8