GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ (SBN 255976)
blutz@gibsondunn.com
MICHAEL J. KAHN (SBN 303289)
mjkahn@gibsondunn.com
MARTIE KUTSCHER (SBN 302650)
mkutscherclark@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ (SBN 242557)
jlipshutz@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8217
Facsimile: 202.530.9614

*Attorneys for Defendants Facebook, Inc., Mark E. Zuckerberg, Sheryl K. Sandberg, and David M. Wehner*

*(additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK, INC. SECURITIES LITIGATION | Master File No. 5:18-cv-01725-EJD |
| | <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>ALL ACTIONS. | **JOINT STATEMENT REGARDING DEFENDANTS' SECOND MOTION TO COMPEL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |

**Defendants' Position**: Plaintiffs violated this Court's order requiring them to "serve supplemental responses" to Defendants' interrogatories "applying the Definitions and Instructions and answering fully." Dkt. No. 275. Plaintiffs loaded their amended response ("Response") with non-responsive information that failed to answer the direct questions asked: identify the corrective disclosures and what new information was revealed relating to the two theories of fraud that remain in the case—"initial misuse" and "whitelisting."[1] Plaintiffs' refusal to answer these basic questions, in defiance of this Court's order and when they know this information is highly relevant to imminent class certification briefing and depositions, is an abuse of process and highly prejudicial to Defendants. The Court should once again compel Plaintiffs to answer the interrogatories *as drafted* and should award Defendants their fees in connection with bringing this second motion.

Defendants served the interrogatories at issue in this motion for two principal reasons: (i) the specific contents of the alleged corrective disclosures (*i.e.*, why a disclosure is "*corrective*" of an alleged misstatement, and what *new facts* about the "fraud" were revealed) are essential to the price impact analysis at class certification, Dkt. No. 269 at 1 (discussing cases); and (ii) it is unclear what Plaintiffs contend are corrective disclosures given the extensive disclosure of facts about the "initial misuse" well before the corrective disclosures alleged in the complaint, *see, e.g.*, Dkt. No. 137 at 64; *see also* Dkt. No. 275 ("contention interrogatories clarify the theories of the parties and streamline litigation").

Rather than answering the interrogatories in full and as drafted, as this Court's order specifically required, Plaintiffs offered contentions about information not asked for in the interrogatories. They did this by declining to apply the Definitions and Instructions in the interrogatories as ordered by the Court, and instead inventing their own definitions.

For example, Interrogatory No. 1 asks Plaintiffs to identify the corrective disclosures they "contend revealed facts regarding the Initial Misuse Alleged Fraud that had not been previously disclosed publicly." Dkt. No. 271 at 11. The focus in this interrogatory on initial misuse (*i.e.*, Cambridge Analytica's alleged use of Facebook user data in support of the Ted Cruz presidential campaign (Dkt. No. 258 at 3)), as distinct from the "continued misuse" by Cambridge Analytica, is key because Judge Davila dismissed the "continued misuse" theory of fraud with prejudice, so the revelation of facts about continued misuse cannot be a corrective disclosure of initial misuse, *id.* at 29.

Plaintiffs avoided answering this interrogatory by rewriting it. Plaintiffs' Response states: "Lead Plaintiffs understand information had 'not been previously disclosed publicly' where it was first disclosed to the market; where previously fragmentary, disputed, denied, unconfirmed, or nominally public information was newly confirmed with sufficient specificity and credibility; or where its significance or foreseeable consequences were first conveyed to the market." Response at 7. Based on this self-revised definition, Plaintiffs' Response recounts facts about the continued misuse based on Plaintiffs' "understanding" that the interrogatories asked Plaintiffs to identify the "foreseeable

---

[1] Defendants served three interrogatories: (1) "Identify each Corrective Disclosure that You contend revealed facts regarding the Initial Misuse Alleged Fraud that had not been previously disclosed publicly"; (2) "For each Corrective Disclosure identified in response to Interrogatory No. 1, quote the language that You contend is a fact regarding the Initial Misuse Alleged Fraud that was not previously disclosed publicly, Including, without limitation, by the Pre-March 2018 Articles"; and (3) "Identify each Corrective Disclosure that You contend revealed facts regarding the Whitelisting Alleged Fraud that had not been previously disclosed publicly." Dkt. No. 271 at 11.

consequence of the initial misuse." *Id.* at 7-8. That is absurd. Neither the interrogatories nor the Definitions and Instructions used the words "foreseeable consequence of the initial misuse"—that is Plaintiffs' definition not permitted by this Court's order. Based on Plaintiffs' refusal to answer Interrogatory No. 1 as drafted, applying the Definitions and Instructions in the Interrogatories, Defendants still do not know what corrective disclosures, if any, Plaintiffs contend revealed new facts about the "initial misuse" theory of fraud.[2]

Plaintiffs' response to Interrogatory No. 2 is also deficient. That interrogatory asks Plaintiffs to "quote the language that You contend is a fact regarding the Initial Misuse Alleged Fraud that was not previously disclosed publicly" in each corrective disclosure identified in response to Interrogatory No. 1. Dkt. No. 271 at 11. Plaintiffs do not even attempt to do so. Rather than answer this interrogatory as drafted and based on the Definitions and Instructions in the Interrogatories, Plaintiffs copy and paste 17 pages of block quotes from public disclosures. Response at 14-30. This includes information that (i) on its face was previously revealed to the market, *e.g.*, *id.* at 16, 18 (articles referencing previous disclosure of "initial misuse"); (ii) relates to the dismissed "continued misuse" theory, *e.g.*, *id.* at 18 (referring to Cambridge Analytica's work with President Trump's campaign); or (iii) does not relate to Cambridge Analytica at all, *e.g.*, *id.* at 15 (discussing the "indictments of 13 Russians by the special counsel Robert Mueller"). This is not what Interrogatory No. 2 asked for nor what the Court ordered. Defendants still have no idea what Plaintiffs contend are the new facts revealed about "initial misuse" in the identified corrective disclosures. This is crucial because the information Plaintiffs allege rendered Defendants' statements fraudulent—"that Kogan had violated the Company's policies by improperly transferring data relating to tens of millions of Facebook users to Cambridge Analytica" (Dkt. No. 228 ¶ 630(a))—was already discussed in *dozens* of articles that predate the corrective disclosures identified by Plaintiffs. Dkt. No. 271 at 7-9 (defining "Pre-March 2018 Articles"). Plaintiffs need to identify the specific facts about the initial misuse they contend were publicly disclosed for the first time in the alleged corrective disclosures instead of in the Pre-March 2018 Articles.

Plaintiffs must promptly identify the "Corrective Disclosures" they contend disclosed new facts establishing that the alleged misstatements were false or misleading—and *only* those disclosures (and not, *e.g.*, disclosures they contend revealed additional information about the so-called foreseeable consequence of the alleged frauds). And for their initial misuse theory of fraud, they must quote the specific facts about the initial misuse they contend were publicly disclosed for the first time. These are the contentions that the interrogatories asked for and the Court ordered Plaintiffs to provide.

The bottom line is that Defendants are no closer to understanding what Plaintiffs contend are the corrective disclosures—and the new facts they revealed—than they were before the Court's order. This is highly prejudicial. Defendants' opposition to class certification is due October 9, and Plaintiffs' class certification expert must be deposed by September 18. The Court should again compel Plaintiffs to respond to the interrogatories *as drafted*, and to do so by September 11. The Court should also award Defendants their fees.

---

[2] Plaintiffs' response to Interrogatory No. 3 (regarding Plaintiffs' "whitelisting" theory) suffers from the same problem because it also identifies disclosures Plaintiffs contend revealed the "foreseeable consequences" and "significance" of the alleged fraud. Response at 31-32. Again, that is not what the interrogatory asks for.

**Plaintiffs' Position**: Plaintiffs' Responses provide complete, good-faith answers to Defendants' contention Interrogatories and fully comply with this Court's August 10, 2026 Order. Defendants do not identify any missing information and do not specify any definition or instruction that Plaintiffs disregarded. Notwithstanding Defendants' bluster, Plaintiffs have nothing to add or change and stand by their Responses. They outline exactly what Plaintiffs plan to show at trial. There is nothing Plaintiffs are holding back or hiding from Defendants, who merely disagree with the substance of Plaintiffs' contentions and seek to use a joint discovery statement as a shortcut to obtain a premature, record-free merits ruling foreclosing those contentions and excluding facts from the record. Defendants effectively ask the Court to rule that no fact that Defendants contend had been previously disclosed in some marginal way or that relates to their contentions about "continued misuse" may appear in Plaintiffs' Responses—regardless of whether, as Plaintiffs contend and the Ninth Circuit held, those facts revealed the scope, persistence, significance, or consequences of the "initial misuse" and are causally connected to the price impact of Defendants' fraud and Plaintiffs' losses. At bottom, Defendants present competing merits arguments, not a discovery deficiency.

Plaintiffs did what the Court ordered. Their detailed 33-page Responses apply Defendants' definitions and instructions, identify the corrective disclosures, quote the relevant language, and explain Plaintiffs' contentions in detail. Defendants' disagreement with the merits of Plaintiffs' contentions does not mean that Plaintiffs violated the Court's Order. And it is frivolous for Defendants to suggest that the Responses meet the bad-faith standard required to impose a fee sanction, a standard with which they are well-familiar given that Judge Chhabria recently sanctioned both Facebook and Gibson Dunn for bad-faith discovery conduct in the Cambridge Analytica consumer action. The Motion should be denied.

**<u>First</u>**, Defendants do not identify any specific "Definition" or "Instruction" that Plaintiffs failed to apply. Instead, Defendants complain that Plaintiffs purportedly responded to the Interrogatories "based on [a] self-revised definition" of the phrase "***not been previously disclosed publicly***." *See supra*, at 1-2 (emphasis added). But that phrase ***was <u>not</u> defined*** in the Interrogatories. Thus, Plaintiffs followed in good faith Defendants' Instruction No. 2, which expressly instructed that, for such undefined terms, Plaintiffs should: (i) "assume a reasonable meaning"; (ii) "Identify Your assumed meaning in Writing in Your response"; and (iii) "respond to the Interrogatories on the basis of Your assumed meaning." Dkt. No. 272-1 at 6. In accordance with that Instruction, Plaintiffs explained that:

> Lead Plaintiffs understand information had 'not been previously disclosed publicly' where it was first disclosed to the market; where previously fragmentary, disputed, denied, unconfirmed, or nominally public information was newly confirmed with sufficient specificity and credibility; or where its significance or foreseeable consequences were first conveyed to the market.

This meaning is reasonable and clearly identified in the Responses, consistent with Defendants' Instruction. It is also consistent with controlling precedent as well as the law of the case. Here, the Ninth Circuit ruled that the July 2018 earnings announcement was an actionable corrective disclosure because it "***allowed the public to 'appreciate the significance' of the Cambridge Analytica and whitelisting scandals***," even though those scandals had been previously disclosed. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 956 (9th Cir. 2023) (emphasis added). Similarly, in the case that Defendants quote for their Definition of "Corrective Disclosure," the Ninth Circuit held that "[a] disclosure based on publicly available information can . . . constitute a corrective disclosure," because "***some information, although nominally available to the public, can still be 'new' if the market has not***

***previously understood its significance***." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794-95 (9th Cir. 2020) (emphasis added); *see also In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1186-87 (9th Cir. 2024) (holding that "the truth became known through" a corrective disclosure, even though it "reflected information that was already public"); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) ("[T]he ultimate issue is whether the defendant's misstatement . . . ***foreseeably caused*** the plaintiff's loss.") (emphasis added). The Responses reflect and comply with these principles.

**<u>Second</u>**, it is undisputed that Defendants' Interrogatories are ***contention*** interrogatories that ask Plaintiffs to explain what they ***contend*** about the corrective disclosures. That is precisely what the Responses provide—Plaintiffs' current contentions regarding the identity and details of each alleged corrective disclosure. Issues such as whether facts are new to the market or newly appreciated (per the Ninth Circuit's controlling opinion, *supra*), whether prior reports transmitted facts with sufficient intensity and credibility, whether later disclosures confirmed or contextualized facts, and whether the facts impacted the price of Facebook stock are heavily fact-intensive questions for expert discovery and the appropriate merits proceedings. Federal Rule of Civil Procedure 37 is not a vehicle for an advisory ruling barring Plaintiffs' contentions or excluding facts before discovery is even complete.

Tellingly, Defendants do not argue that any information is missing from Plaintiffs' Responses. This alone disproves the assertion that Plaintiffs somehow violated this Court's Order. What Defendants really want is for Plaintiffs to admit that Defendants are correct on the law and facts—when Plaintiffs could not disagree more (especially in light of controlling Ninth Circuit law and the law of this case). The fact that Defendants ***disagree*** with Plaintiffs' contentions regarding the corrective disclosures does not change the reality that Defendants have the information they need about the nature and details of Plaintiffs' contentions. The Federal Rules do not "provide relief to a party who merely disagrees with the substance of another party's discovery responses . . . ." *Pellerin v. Wagner*, 2016 WL 950792, at *2 (D. Ariz. Mar. 14, 2016). The Court ordered Plaintiffs to disclose their contentions, not adopt Defendants' competing contentions.

Thus, Defendants face no prejudice here. They know what Plaintiffs contend regarding the corrective disclosures and are free to dispute those contentions on the merits. Notably, Defendants' truth-on-the-market defense at the crux of this merits dispute has already been rejected by both the Ninth Circuit and this Court. *See Facebook*, 87 F.4th at 954 (rejecting argument that relevant truth was disclosed in 2015-2017 articles and holding that "[b]efore the March 2018 news broke, reasonable investors would not have known that Cambridge Analytica had improperly accessed Facebook users' data"); Dkt. No. 258 at 23-24 (rejecting same argument).

**<u>Third</u>**, Defendants' claim that Plaintiffs' Responses inject the dismissed "continued misuse theory of fraud" into the case is also incorrect. Plaintiffs contend that the corrective disclosures revealed new facts that illuminated the existence and significance of ***the Initial Misuse*** theory of fraud. For example, the March and July 2018 disclosures revealed new information about the Initial Misuse by showing that Facebook finally acknowledged the initial misuse, that Facebook could not recover or control the improperly transferred data, and that the initial misuse resulted in previously undisclosed business and financial consequences. Such facts reveal and confirm various aspects of the Initial Misuse fraud—indeed, a disclosure that reveals that user data was ***still*** being misused also necessarily confirms that the data was ***initially misused***. This is consistent with Defendants' own definition that a Corrective Disclosure "'reveals new facts that, taken as true, render ***some aspect*** of the defendant's prior statements false or misleading.'" Dkt. No. 272-1 at 1 (emphasis added). Again, Plaintiffs applied

Defendants' own definitions in good faith.

Defendants' merits-based argument—that any fact touching upon "continued misuse" has been forever excluded from the case—is wrong. The Court's motion to dismiss opinion addressed whether continued misuse could proceed as an independent basis for proving ***scienter*** for the remaining user-control and risk-warning misstatements. Dkt. No. 258 at 28-29. The Court did not bar the underlying facts from consideration for other purposes or hold that they are not causally connected to the corrective disclosures and losses. To the contrary, the Court observed that the Ninth Circuit credited continued misuse facts "most prominently in a section that analyzes ***loss causation*** . . . ." *Id.* at 28 (emphasis added; citing *Facebook*, 87 F.4th at 957). The Ninth Circuit held that the March 2018 and July 2018 disclosures were corrective, and that ruling is the law of the case. Recognizing this, Defendants did not challenge Plaintiffs' allegations regarding price impact or loss causation at the pleading stage.

**Finally**, Defendants' unsupported request for a fee sanction fails. Plaintiffs complied in good faith by detailing their contentions, and Defendants do not identify any ignored Definition or Instruction, or missing information. Even if the Court were to ultimately decide that a further response may be appropriate, any deficiency in the Responses was "not willful or in bad faith." *Finjan, Inc. v. Eset, LLC*, 2019 WL 1429596, at *7 (S.D. Cal. Mar. 29, 2019). Facebook and Gibson Dunn should know this onerous standard, as they were recently sanctioned by Judge Chhabria for bad-faith discovery misconduct. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 903-04 (N.D. Cal. 2023) ("The Court finds by clear and convincing evidence that Facebook and Gibson Dunn's conduct reflected [] sustained, concerted, bad-faith" discovery misconduct; imposing a fee sanction for which "Facebook and Gibson Dunn are jointly liable"). The Motion should be denied in full.

**Defendants' Reply**: Plaintiffs all but concede they did not answer the interrogatories as drafted. They admit they rewrote the definition of "Corrective Disclosure" in the interrogatories and instead applied their own "understanding" of the term. In doing so, Plaintiffs violated this Court's order and deprived Defendants of the discovery they need to respond to Plaintiffs' motion for class certification.

Plaintiffs' obligation is simple: respond to the discovery as written. Doing so would not "bar[] Plaintiffs' contentions or exclud[e] facts before discovery is even complete." Plaintiffs are free to make any arguments they want during this litigation. But they are not free to disregard this Court's order to timely respond to the interrogatories *as drafted*.

That clearly is what happened here. The interrogatories asked Plaintiffs to identify new facts about their theories of fraud that had "not been previously disclosed publicly." Plaintiffs rewrote the interrogatories to instead require them to identify information that *was* previously disclosed publicly. Plaintiffs then answered with loads of nonresponsive, unasked-for information. Nor do Plaintiffs even try to defend their obvious nonresponse to Interrogatory No. 2: pasting 17 pages of block quotes from public documents does not identify which facts Plaintiffs contend were newly revealed to the public.

Plaintiffs' obvious gamesmanship begs the question: what are they trying to hide by refusing to answer directly these narrow interrogatories?

Defendants served targeted interrogatories asking for specific contentions essential to class certification. Plaintiffs must answer them and not provide contentions *Defendants did not ask for*. The Court should: (i) compel Plaintiffs to answer the interrogatories *as drafted,* (ii) require a response within two days given the approaching class certification expert deposition and briefing deadline, and (iii) award Defendants their fees incurred in compelling Plaintiffs' compliance with this Court's order.

DATED: September 10, 2026

GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ

*/s/ Brian M. Lutz*

One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415/393-8200
415/393-8306 (fax)
blutz@gibsondunn.com

*Counsel for Defendants Facebook, Inc., Mark E. Zuckerberg, Sheryl K. Sandberg, and David M. Wehner*

DATED: September 10, 2026

ROBBINS GELLER RUDMAN & DOWD LLP
JASON C. DAVIS
KENNETH J. BLACK

*/s/ J. Marco Janoski Gray*

One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kblack@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
LUKE O. BROOKS (212802)
DARRYL J. ALVARADO (253213)
HILLARY B. STAKEM (286152)
J. MARCO JANOSKI GRAY (306547)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jrobertson@rgrdlaw.com

*Counsel for Amalgamated and Co-Lead Counsel for the Class*

DATED: September 10, 2026

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
TIMOTHY G. FLEMING
THOMAS Z. SPERBER

*/s/ Jeremy P. Robinson*

1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com
timothy.fleming@blbglaw.com
thomas.sperber@blbglaw.com

*Counsel for MSPERS and Co-Lead Counsel for the Class*

**ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories.

Dated: September 10, 2026

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Brian M. Lutz*

BRIAN M. LUTZ