ROBBINS GELLER RUDMAN
& DOWD LLP
JASON C. DAVIS (253370)
KENNETH J. BLACK (291871)
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kennyb@rgrdlaw.com

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com

Co-Lead Counsel for the Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FACEBOOK, INC. SECURITIES LITIGATION | Master File No. 5:18-cv-01725-EJD |
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | JOINT STATEMENT REGARDING LEAD PLAINTIFFS' MOTION TO SET NUMBER OF FACT DEPOSITIONS |

**PLAINTIFFS' POSITION**: Lead Plaintiffs respectfully seek leave to take up to 45 fact-witness depositions or, alternatively, up to 245 hours of on-the-record testimony (the equivalent of 35 full-day depositions) to be allocated among witnesses as needed. This reasonable and proportional expansion of Rule 30's default deposition limit is necessary for Plaintiffs to prepare for trial given the complexity and scope of the conduct at issue in this case, which stretches over six years and involves well over a hundred Facebook employees and third parties.

**The Parties' Negotiations**. Plaintiffs reached out to Defendants on August 31, 2026 to discuss deposition limits. The parties met and conferred on September 3, 2026 and exchanged further correspondence thereafter. At Defendants' request, Plaintiffs provided Defendants with a preliminary list of more than 60 fact witnesses with highly relevant knowledge and proposed either: (i) a maximum of 45 fact depositions; or (ii) an aggregate limit of 245 deposition hours. Defendants refused to agree to any depositions beyond the ten-deposition default limit.

**Legal Standard**. Pursuant to Rule 30, a party seeking to take more than ten depositions "must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P. 26(b)(2)(A) (courts may "alter the limits . . . on the number of depositions."). While some courts first require "'the moving party [to have] exhausted the ten depositions permitted as of right', ***the Northern District regularly departs 'from this rule where the complexity of the case clearly warrant[s] more than ten depositions***.'" *Andersen v. Stability AI Ltd.*, 2025 WL 870358, at *10 (N.D. Cal. Mar. 19, 2025) (emphasis added and citations omitted) (collecting cases and permitting plaintiffs to take 30 depositions given "'the complexity of the case,'" with leave for even more depositions based on good cause); *see also Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007) (expanding deposition limits "where the complexity clearly warrants more than ten depositions"); *Kadrey v. Meta Platforms, Inc.*, 2024 WL 4502099, at *1-*2 (N.D. Cal. Oct. 15, 2024) (expanding deposition limit where "the issues at stake in the action are important, . . . the parties' resources justify a significant increase in the deposition limits, and . . . the importance of the discovery in resolving the issues likewise justifies a greater number of depositions").

In practice, plaintiffs in securities class actions are regularly permitted, by either court order or defendants' stipulation, to take over 35 depositions given the complexities of these cases. *E.g.*, *Homyk v. Chemocentryx, Inc., et al.*, No. 4:21-cv-03343 (N.D. Cal. Mar. 13, 2026), ECF No. 361 (38 depositions); *In re Qualcomm Inc. Sec. Litig.*, No. 3:17-cv-00121 (S.D. Cal. Aug. 23, 2024), ECF No. 441 (37 depositions); *In re Allergan, Inc. Proxy Violation Sec. Litig.*, No. 8:14-cv-02004 (C.D. Cal. Apr. 26, 2018), ECF No. 618 (over 70 depositions total); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040, ECF No. 571 (S.D.N.Y. Apr. 17, 2018) (45 depositions); *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, ECF No. 318 (M.D. Tenn. July 14, 2021) (50 depositions).

**The Requested Depositions Are Relevant and Proportional to the Needs of the Case**. Plaintiffs' request is justified, proportional, and necessary to meaningfully prepare their case for trial. ***First***, the complex issues in this case warrant additional depositions. This securities class action concerns alleged misconduct spanning from 2012 to 2018 involving Facebook's practices of sharing user data without users' consent—including third-party access to user data by Cambridge Analytica and hundreds of apps Facebook "whitelisted" to allow them access without user consent. To prevail at trial, Plaintiffs must prove: "'(1) a material misrepresentation or omission by the defendant . . .; (2) scienter; (3) a connection between the misrepresentation or omission and the

purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" ECF No. 258 at 14 (citation omitted). To do so, Plaintiffs will need evidence concerning each of these six elements, which will cover, *inter alia*, Cambridge Analytica's misappropriation of Facebook user data, Facebook's whitelisting of certain apps, its platform control policies and enforcement (or lack thereof) of those policies, and its privacy practices, and the losses caused by Defendants' misrepresentations.

***Second***, the relevant knowledge of these issues is spread among distinct corporate functions and nonparties and cannot be sufficiently developed through only the four Defendants (Facebook, Zuckerberg, Sandberg, and Wehner) and six additional witnesses. Defendants have effectively acknowledged this by producing documents from the custodial files of ***more than 110 individuals*** and incorporating by reference more than 75 current or former Facebook personnel in their initial disclosures as individuals likely to possess discoverable information. The parties have also served over 15 third-party subpoenas. And in derivative and consumer actions related to Cambridge Analytica and Facebook data privacy issues, class plaintiffs were permitted 27 and 34 fact depositions, respectively. *In re Facebook, Inc. Derivative Litig.*, C.A. No. 2018-0307 (Del. Ch. Nov. 20, 2024), Transaction ID 77790808, ¶FF; *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843-VC (N.D. Cal. June 21, 2023), ECF No. 1140, ¶141.

Plaintiffs presently contemplate that witnesses from at least the following groups or departments will be necessary: (1) Defendants; (2) partnerships, product, and operations employees with knowledge of whitelisting, data-reciprocity arrangements, and third-party access; (3) privacy, public-policy, platform, and enforcement employees with knowledge of Cambridge Analytica, Application Programming Interface controls, audits, and compliance; (4) communications and investor-relations employees with knowledge of Facebook's public statements and interactions with investors and the media; (5) finance, growth, and revenue employees with knowledge of the effect of Facebook's data practices and privacy changes on users, revenue, expenses, growth, and margins; and (6) nonparties, including Cambridge Analytica-related witnesses, whistleblowers, directors, auditors, and investigators. Finally, Plaintiffs recently discovered that Defendants have received (but have refused to produce) declarations from third parties. Defendants' effort to forgo taking deposition testimony from these third parties may force Plaintiffs to take their depositions—adding even more necessary deponents.

**Plaintiffs Cannot Rely Solely on Existing Transcripts from Other Matters**. In refusing Plaintiffs' request, Defendants have not cited any financial burden, which would not be credible given their vast resources and army of attorneys. Rather, Defendants' opposition is based on their production of deposition transcripts from different cases involving different claims, different issues, and different plaintiffs and counsel. But those transcripts are wholly inadequate for Plaintiffs to prepare for trial in this case. To start, Defendants have not produced any deposition transcripts for more than 25 of the potential fact witnesses on Plaintiffs' preliminary list. This fact alone demonstrates that the existing transcripts do not provide a valid basis to limit Plaintiffs to ten depositions. Further, at least 18 of the 60 potential witnesses appear to be outside the Court's subpoena power—such that depositions are the only assured means of preserving their testimony for trial. Meanwhile, even the prior transcripts that Defendants ***have*** produced are inadequate. To start, Defendants have declined to stipulate that any of the prior testimony will be admissible against them if a witness is unavailable at trial (see Fed. R. Civ. P. 32(a); Fed. R. Evid. 804(b)(1)), and have not produced videos for most of these depositions. Even if they did stipulate, however, those examinations are not tailored to the issues in this litigation, as they arose in matters involving

different parties, claims, pleadings, document productions, and litigation objectives. Plaintiffs did not select the topics, exhibits, or questions for these depositions. Nor did the other examining parties adequately cover the securities-specific issues, documents, and claims at issue here (but absent in those cases). Indeed, most of the related actions did not implicate the disclosures from Defendants at issue in this case, and none implicated loss causation or the measure of damages at issue here (which Defendants have conceded). Thus, witnesses with relevant knowledge of these case-specific issues were not adequately questioned on them in the other matters. Plaintiffs will use the transcripts to streamline their depositions, but they cannot reasonably be required to forgo relevant testimony from key witnesses concerning the distinct documents and issues in this case merely because those witnesses were questioned for different purposes in another proceeding. Plaintiffs' motion should be granted.

**DEFENDANTS' POSITION**: The Court has already answered this motion. When the parties submitted a stipulated scheduling order, ECF No. 259, the Court did not simply sign it. Aware of the substantial discovery Plaintiffs were already receiving from seven related matters, the Court added an instruction of its own: "the parties shall comply with the presumptive limits on discovery set forth in the Federal Rules of Civil Procedure," and while they "may request leave to conduct additional discovery," they "should not plan their discovery strategies on the assumption that leave will be granted." ECF No. 266 at 1. Plaintiffs nonetheless planned their discovery strategy on exactly that assumption, and before taking a single deposition, they ask the Court to more than quadruple Rule 30's presumptive limit, to 45 depositions or 245 hours of testimony.

Plaintiffs' request is, at best, premature and should be denied. Plaintiffs should take the ten depositions to which they are entitled and, if they can then make a particularized showing that specific additional depositions are necessary, raise the issue at that time.

**The Court's Instruction Made Good Sense in This Case.** The parties repeatedly represented to the Court that discovery in this case would be streamlined and efficient. During the seven years in which motions to dismiss were litigated, discovery proceeded in multiple related matters arising, in part, out of the same underlying events. When discovery opened, Plaintiffs demanded the entire discovery record from seven of those matters, and Defendants agreed to reproduce document productions and deposition transcripts from those matters "subject to Plaintiffs' agreement that any additional document requests will be discrete and targeted to issues not covered by the reproductions" and that "*any additional requests for testimony will be discrete and targeted to issues not covered by testimony from the seven related matters*." Defs.' R&Os to Lead Pls.' First Set of Document Requests at 7-8 (emphasis added); *see also* ECF No. 200 at 1.

Plaintiffs did not object to that condition before accepting the reproductions to which they were not otherwise entitled. *See Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("[C]ompelling a responding party to do duplicate searches—one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation—is definitionally unduly burdensome, as it would consume resources without providing any additional benefit to the propounding party."). In fact, in their March 13, 2025 joint case management statement, the parties jointly represented that they were "hopeful that the majority of topics on which Plaintiffs seek discovery will be covered by these productions save for targeted, narrow additional discovery (if any)," and that Plaintiffs anticipated serving further discovery requests "related to topics relevant to this case to the extent not covered by the reproductions." ECF No. 205 at 5-6.

A year later, Plaintiffs told the Court at the March 12, 2026 case management conference that "there will be a significant number of depositions that need to take place." ECF No. 263 at 5:3-4. The Court responded by revising the parties' joint scheduling stipulation to expressly order the parties to comply with the presumptive limits on discovery. ECF No. 266 at 1.

The parties' original representations were well founded. Plaintiffs began discovery in this case with approximately seven million pages of documents and more than 120 deposition transcripts from related matters. What remained to be done must be gap filling, not discovery from scratch. The Federal Rules contemplate exactly that: a court "must limit" discovery that is "unreasonably cumulative or duplicative" or that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

**Plaintiffs Have Disregarded the Court's Guidance.** Rather than fill gaps, Plaintiffs have set out to reinvent the wheel in this matter and, at every turn, have chosen volume over focus. They demanded an extensive additional document review, which has grown the record in this case to approximately eight million pages, and they continue to demand more documents even now, including from third parties.

In addition to this unfocused approach to document discovery, Plaintiffs now seek 45 depositions or 245 hours of testimony. That request would be difficult to justify in any case. Even Plaintiffs' own authority recognizes that a party ordinarily must exhaust "the ten depositions permitted as of right" before seeking leave to take more. *Andersen v. Stability AI Ltd.*, 2025 WL 870358, at *10 (N.D. Cal. Mar. 19, 2025). And none of the cases Plaintiffs cite involved a plaintiff that began discovery with millions of pages of documents and some 120 deposition transcripts from related litigation. The request is particularly unjustified here given the narrowed scope of this case, the Court's express instructions, and the extensive discovery Plaintiffs already possess.

**The Related Actions Do Not Justify 45 Depositions.** To justify their demand, Plaintiffs cite the number of depositions taken in the related consumer MDL and derivative action. But the number of transcripts Plaintiffs have from related matters should *reduce* (not expand) the number of depositions needed here. Those cases were also substantially broader than this one, and Plaintiffs' assertion that the conduct at issue in this case "stretches over six years and involves well over a hundred Facebook employees and third parties" is wrong.

This case concerns two narrow theories of liability: (1) statements about users' control of their Facebook data were misleading in light of Cambridge Analytica's alleged acquisition and use of user data for the Cruz campaign and Facebook's "whitelisting" of certain third parties, and (2) risk factors in Facebook's SEC filings portrayed third-party misuse of user data as hypothetical after that misuse had already occurred. ECF No. 258 at 33. The Court dismissed all of Plaintiffs' remaining theories with prejudice. *Id.* The alleged class period spans less than 18 months, and the parties agreed to a relevant time period of 2015–2018 for gap-filling document discovery.

By contrast, the consumer MDL concerned virtually every data-sharing and third-party enforcement practice at Facebook between 2007 and 2022, the class spanned that entire 15-year period, and many of the depositions Plaintiffs cite from that matter were technical fact-gathering depositions (and Plaintiffs now have those facts). The shareholder derivative action was similarly broad. It concerned Facebook's board and management's oversight (between 2012 and 2018) of the company's compliance with a 2012 FTC consent order, as well as the board's decision to settle claims by the FTC that Facebook violated that consent order. Much of the deposition testimony

Plaintiffs cite from that action came from the individual director and officer defendants and third parties. Only **<u>ten</u>** depositions were from company witnesses. And the case was litigated in the Delaware Court of Chancery, where the presumptive 10-deposition limit under Rule 30 does not apply. Plaintiffs already have all of this testimony, and they concede they will use it.

Plaintiffs' reliance on the number of custodians from whom they have documents fails for the same reason.[1] That count reflects the roughly seven million pages reproduced from the far broader related matters, not the narrow issues to be tried here. Nor is it true that a party is entitled to depose everyone whose documents are produced. Having demanded reproductions the case law does not allow on the express condition that any further discovery would be discrete and targeted, Plaintiffs cannot now cite the breadth of what they received as a basis to more than quadruple the default deposition limit under the Federal Rules.

**Plaintiffs Do Not Need 45 Depositions to Secure Testimony for Trial.** Plaintiffs also claim they need these depositions to secure trial testimony from witnesses outside the Court's subpoena power. It is inconceivable that Plaintiffs would need anything close to 45 trial witnesses on the narrow issues in this case, which largely concern what senior executives knew and intended when they made certain statements. Plaintiffs certainly do not need 45 witnesses who sit outside the Court's subpoena power; on Plaintiffs' own telling, only 18 of the 60 witnesses on their preliminary list even arguably do. Nor have Plaintiffs explained why the testimony of any of these particular witnesses is necessary. And it is telling that Plaintiffs have taken the position that they would need no fewer depositions even if all of the testimony from the other matters were admissible at trial. That position reinforces that Plaintiffs' request is not about securing testimony for a trial Plaintiffs actually expect to conduct. It is about generating discovery for its own sake. That Defendants obtained declarations from third parties rather than deposing them does not entitle Plaintiffs to more depositions; it reflects the focused approach to discovery the Court directed the parties to take.

Plaintiffs should proceed as the Court instructed. They should take the ten depositions to which they are entitled, focused on the witnesses most important to their case. If, after taking those depositions, Plaintiffs can show that additional depositions are necessary, they may raise the issue at that time, with an appropriate showing as to the particular depositions they need and why, consistent with the Court's order and the Federal Rules. Plaintiffs' motion should be denied.

**PLAINTIFFS' REPLY**: Defendants' opposition fails to: (i) rebut any of the 60 potential deponents across six distinct subject areas; (ii) address the alternative 245-hour cap; (iii) specify how the produced transcripts (that Defendants will not agree are admissible) suffice to address the issues specific to this case; and (iv) cite a single securities case that was limited to 10 depositions. Nor has the Court "already answered this motion." The Amended Case Management Order (ECF No. 266) contains standard language from Judge Davila's case management orders and expressly permits requests for additional discovery. Likewise, Defendants' suggestion that Plaintiffs agreed to limit depositions in exchange for the reproductions—based on language buried in ***Defendants' own*** objections—is false. The parties entered into no such agreement. Rather, Plaintiffs explicitly made clear that they "do not agree in advance to limit the scope of discovery on the basis of Defendants' productions" (*e.g.*, ECF No. 200 at 1:20-21) and have consistently reserved their right to seek additional discovery (ECF No. 257 at 4:14-15). Finally, this dispute is ripe: requiring Plaintiffs to exhaust ten depositions first would impede discovery planning and invite serial motion practice.

[1] Defendants did not identify 75 witnesses in their initial disclosures; they identified six.

DATED: October 5, 2026

ROBBINS GELLER RUDMAN & DOWD LLP
LUKE O. BROOKS (212802)
DARRYL J. ALVARADO (253213)
HILLARY B. STAKEM (286152)
J. MARCO JANOSKI GRAY (306547)
JESSICA E. ROBERTSON (352207)

s/ Marco Janoski
J. MARCO JANOSKI GRAY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JASON C. DAVIS
KENNETH J. BLACK
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
jdavis@rgrdlaw.com
kennyb@rgrdlaw.com

Counsel for Amalgamated and Co-Lead Counsel for the Class

DATED: October 5, 2026

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
SALVATORE J. GRAZIANO
JEREMY P. ROBINSON
PREETHI KRISHNAMURTHY
TIMOTHY G. FLEMING
THOMAS Z. SPERBER
MATTHEW S. GOLDSTEIN

s/ Jeremy P. Robinson
JEREMY P. ROBINSON

1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/554-1400
212/554-1444 (fax)
salvatore@blbglaw.com
jeremy@blbglaw.com
preethi@blbglaw.com
timothy.fleming@blbglaw.com
thomas.sperber@blbglaw.com
matthew.goldstein@blbglaw.com

Counsel for Mississippi and Co-Lead Counsel for the Class

DATED: October 5, 2026

GIBSON DUNN & CRUTCHER LLP
BRIAN M. LUTZ

s/ Brian M. Lutz
BRIAN M. LUTZ

One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415/393-8200
415/393-8306 (fax(
blutz@gibsondunn.com

Counsel for Defendants Facebook, Inc., Mark E. Zuckerberg, Sheryl K. Sandberg, and David M. Wehner

**CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)**

I, J. MARCO JANOSKI GRAY, am the ECF User whose identification and password are being used to file this document. Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: October 5, 2026

s/ Marco Janoski
J. MARCO JANOSKI GRAY