# Exhibit 8

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE FACEBOOK, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | CASE NO. 5:18-CV-01725-EJD<br><br>**DECLARATION OF BRENDAN BRADLEY** |

1. I, Brendan Bradley, joined Acadian Asset Management LLC ("Acadian") in 2004, and am currently the Chief Investment Officer.

2. Acadian is an investment management firm that invests in securities on behalf of its clients using an automated, systematic, quantitative investment strategy.

3. As Chief Investment Officer, I am responsible for overseeing all aspects of Acadian's investment process, research, and strategy.

4. I am authorized to speak on behalf of Acadian as its Chief Investment Officer and as a member of its Executive Committee, Executive Management Team, and Board of Managers.

5. As a systematic investment manager, Acadian seeks to invest in stocks that its automated investment process determines are likely to outperform stocks of other companies. Acadian utilizes an automated investment process to review hundreds of publicly available inputs regarding such security to create an "alpha forecast" for such security.

6. Among Acadian's clients is the Public Employees' Retirement System of Mississippi ("MSPERS"), for which Acadian has served as an investment manager since July 26, 2005.

7. In my time at Acadian, I have helped oversee the investments that Acadian made on behalf of MSPERS.

8. The relationship between Acadian and MSPERS is governed by an investment management agreement dated July 26, 2005, as subsequently amended on July 1, 2012 and October 1, 2017 (collectively, the "Agreement").

9. True and correct copies of the Agreement are attached hereto as **Exhibits 1-3**. [1]

[1] Acadian produced the documents cited herein in response to a third-party subpoena, dated March 9, 2026, served on Acadian by the defendants in the above-captioned action. I certify that these documents are true and correct copies of records that were: made at or near the time of the occurrence

10. As detailed in the Agreement, MSPERS retains ultimate control over Acadian's investments on its behalf, while MSPERS has delegated to Acadian discretion on specific investment decisions, including how and when to "purchase, sell, and otherwise trade in or deal with securities" on MSPERS's behalf, provided such investments comply with the "objectives, guidelines, limitations, terms and ... other instructions" provided by MSPERS. Ex. 1 at 2.

11. Pursuant to the Agreement, MSPERS retains the right to "revoke the authority of [Acadian] to furnish investment management services." Ex. 1 at 5.

12. Between February 3, 2017 and July 25, 2018, Acadian, on behalf of and for MSPERS, made the following transactions in shares of the common stock of Facebook, Inc. ("Facebook"):

| Date | Buy/Sell | Amount | Shares | Price |
|---|---|---|---|---|
| 03/21/2017 | Buy | $2,272,893.36 | 16,219 | $140.14 |
| 04/11/2017 | Sell | $2,267,471.34 | 16,219 | $139.80 |
| 04/27/2018 | Buy | $3,305,762.64 | 18,978 | $174.19 |
| 05/14/2018 | Buy | $1,766,417.09 | 9,444 | $187.04 |
| 06/13/2018 | Buy | $6,690,715.71 | 34,609 | $193.32 |
| 06/27/2018 | Buy | $3,211,359.43 | 16,214 | $198.06 |

13. All of Acadian's investments in Facebook stock on behalf of MSPERS were made via the automated investment process described in Paragraph 5 above.

14. I understand that the following news articles were published regarding Facebook's data privacy controls between 2015 and 2018 (the "Data Privacy Articles"):

| Date | Media Outlet(s) | Article |
|---|---|---|
| December 11, 2015 | The Guardian | "*Ted Cruz using firm that harvested data on millions of unwitting Facebook users*" |
| March 17, 2018 | The Guardian | "*Revealed: 50 million Facebook profiles harvested for Cambridge Analytica in major data breach*" |

of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters; kept in the course of regularly conducted business activity; and made during the course of regularly conducted business activity.

| | | |
|---|---|---|
| March 17, 2018 | The New York Times | *"How Trump Consultants Exploited the Facebook Data of Millions"* |
| June 3, 2018 | The New York Times | *"Facebook Gave Device Makers Deep Access to Data on Users and Friends"* |
| June 8, 2018 | The Wall Street Journal | *"Facebook Gave Some Companies Special Access to Additional Data About Users' Friends"* |

15. None of the Data Privacy Articles fell within categories Acadian's investment model consumed at the time and thus none of the Data Privacy Articles were an input into the "alpha forecasts" for Facebook. Throughout the relevant period, the model's news-derived inputs were confined to specific corporate-event types — principally earnings-announcement outcomes and changes in analysts' stock recommendations.

16. Therefore, none of the Data Privacy Articles had a material impact on Acadian's "alpha forecast" for Facebook (i.e., the Data Privacy Articles did not change Acadian's existing view on whether Facebook would outperform stocks of other companies).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of September, 2026, at Boston, Massachusetts.

/s/ Brendan O. Bradley
Brendan Bradley

# EXHIBIT 1

PERS
PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI
PROVIDING SECURITY FOR YOUR FUTURE

PUBLIC EMPLOYEES' RETIREMENT SYSTEM BUILDING
429 MISSISSIPPI STREET
JACKSON, MISSISSIPPI 39201-1005
(601) 359-3589
1-800-444-PERS
FRANK READY
Executive Director

BOARD OF TRUSTEES
ED LEGRAND, CHAIRMAN
State Employees
VIRGIL F. BELUE
Retirees
LEE CHILDRESS
Public Schools, Community/Junior Colleges
DEBORAH F. GILES
Appointed by Governor
DOUG HAGUE
Municipal Employees
LESTER HERRINGTON
Retirees
RICHARD C. MILLER
Inst. of Higher Learning
TATE REEVES
State Treasurer
JEANNE R. WALKER
County Employees
VACANT
State Employees

PROGRAMS ADMINISTERED
Public Employees' Retirement System of Mississippi
Mississippi Highway Safety Patrol Retirement System
Government Employees' Deferred Compensation Plan
Mississippi Municipal Retirement Systems
Supplemental Legislative Retirement Plan
Retiree Group Life & Health Benefits
Optional Retirement Plan for Institutions of Higher Learning

# PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI
# INVESTMENT MANAGEMENT AGREEMENT

AGREEMENT made as of this 26th day of July , 2005, by the Board of Trustees of the Public Employees' Retirement System of Mississippi (the "Board"), and Acadian Asset Management, Inc., (the "Investment Advisor"), located at One Post Office Square, Boston, Massachusetts 02109.

In consideration of the mutual agreements herein contained, the Board and the Investment Advisor agree as follows:

1. The Investment Advisor will provide the Board with discretionary investment management services with respect to the securities and other assets held in the assigned Account of the Investment Advisor and all other assets that may be added thereto from time to time. These services will be in accordance with the statutes of the State of Mississippi, objectives, guidelines, limitations, terms and any other instructions established by the Board and communicated in writing to, and previously agreed to in writing by, the Investment Advisor.

2. The Account Assets shall be held by such custodian (the "Custodian") as may be appointed by the Board after notice to the Investment Advisor in an account which the Board shall direct the Custodian to open (the "Investment Account"). The Board shall cause the Custodian to accept instructions from the Investment Advisor, to execute transactions for the Investment Account and to provide the Investment Advisor daily and monthly reports concerning the status of the Investment Account.

3. The Board shall pay all fees and expenses of the Custodian. All transactions will be consummated by payment to, or delivery by, the Custodian of all cash or securities due to or from the Investment Account. The Investment Advisor shall at no time have custody or physical control of any of the Investment Account Assets.

Instructions of the Investment Advisor to the Custodian shall be made in writing sent by first-class mail or facsimile, or, at the option of the Investment Advisor, orally and confirmed in writing as soon as practical. Upon giving instructions to the Custodian, the Investment Advisor shall have no responsibility or liability with respect to custodial arrangements or the acts, omissions or other conduct of the Custodian.

4. The Board hereby authorizes the Investment Advisor on behalf of the Board to issue to brokers instructions to purchase, sell and otherwise to trade in or deal with securities in or to be acquired for the Account and in name of the Board and the Investment Advisor acknowledges its responsibility to so act.

5. The Board agrees to provide the Investment Advisor the following information at the commencement of this Agreement and any changes therein as may occur from time to time:

(a) Provisions of the Code of Mississippi and any subsequent changes therein affecting the Board relating to the management of the assets in the Account;
(b) Investment policy and guidelines established from time to time by the Board;
(c) Certified copies of any resolution adopted by the Board affecting the Investment Advisor or management of assets held in the Account;
(d) A schedule of assets held in the Account at the commencement of this Agreement;
(e) Such other documentation as may reasonably be requested by the Investment Advisor in connection with this agreement or the performance thereof.

6. The Investment Advisor agrees to have a representative to attend periodically meetings of the Board at the offices of the Board, or at some other

agreed upon location on an agreed and reasonable schedule. The Investment Advisor further agrees to report to the Board on all matters which in its opinion at the time represent significant changes in economic forecasts, investment outlook, industry emphasis and any other matters of a general or specific nature, as requested by the Board.

7. The Investment Advisor agrees promptly to notify the Board of any change of the portfolio manager or any other key personnel who is/are assigned by the Investment Advisor as primarily responsible for this account.

8. The Investment Advisor's annual fee for its services on behalf of the Board shall be as set forth in the schedule annexed hereto which shall remain in effect for the term of this Agreement except as may be agreed in writing by the parties hereto. No additional charges will be made for the services agreed to be provided hereunder by the Investment Advisor without prior written consent of the Board. The fee shall be payable promptly for the services for each quarter upon presentation of a written statement.

9. If, at any time from and after the date of this Agreement, the Investment Advisor shall enter into an agreement with any other client to provide investment management services comparable to those provided under this Agreement, and if such Agreement requires the payment of fees that are in any respect lower than the fee established under Paragraph 8, then the Investment Advisor agrees that the fee required under this Agreement shall be reduced to the level specified in the Agreement with such other client. Principal variables which shall be utilized to determine whether the services are comparable include, but are not limited to, size of account, scope and type of other relationships with the Investment Advisor, restrictions on the account, aggressiveness of investment objectives and discretionary character of the account. Such reduction in fees shall be effective as of the effective date of the Agreement with such other client. The Investment

Advisor agrees to provide the Board with timely notice of any event or occurrence that would require a reduction in fees herein provided.

10. The Investment Advisor shall use its best efforts in the performance of its services hereunder. However, the Investment Advisor shall not be liable for any error in judgment or any act or omission performed or omitted to be performed in good faith and with exercise of due care so long as the specific restrictions set forth herein, and in the written instructions from the Board issued pursuant to paragraph 1 above, are fully complied with. Notwithstanding the above, federal and state securities laws may impose liabilities under certain circumstances on persons who act in good faith, and therefore nothing herein shall in any way constitute a waiver or limitation of any rights which the Board may have under any such securities laws.

11. It is understood that the Investment Advisor may be acting in a similar capacity for other institutional and individual clients and that investments and reinvestments of the assets in the Account may differ from other accounts even though the investment objectives may be the same or similar and that the Investment Advisory Services will be independent of other Advisory Services that may be employed by the Board.

12. The Investment Advisor expects that the Account and other portfolios it manages will, from time to time, purchase or sell the same securities. The Investment Advisor may aggregate orders for the purchase or sale of securities on behalf of the Account with orders on behalf of other portfolios the Investment Advisor manages. Securities purchased or proceeds of securities sold through aggregated orders shall be allocated to the account of each portfolio managed by the Investment Advisor that bought or sold such securities at the average execution price. If less than the total of the aggregated orders is executed, purchased securities or proceeds shall generally be allocated pro rata among the

participating portfolios in proportion to their planned participation in the aggregated orders. Further, in the event not all portfolios are allocated the entire number of securities sought to be bought or sold on behalf of such portfolio, it is possible that no portfolio will be deemed to have purchased or sold the entire number of securities sought to be purchased or sold on behalf of such portfolio.

13. The investment management authority delegated to the Investment Advisor pursuant to this Agreement with respect to the Account includes the voting of proxies appurtenant to securities held in the Account; the Board acknowledges that the Investment Advisor is required to use its independent judgment in determining the interests of the Plan's participants and beneficiaries for purposes of such proxy voting.

14. This Agreement shall remain in full force and effect for a period of one year from the date first above written and shall continue in effect thereafter from year to year, unless terminated as provided in paragraph 15 below. The termination of this Agreement shall not affect any obligation or liability of the Board or the Investment Advisor for any transaction entered into or obligation incurred prior to such termination.

15. This Agreement may be terminated upon not less than 30 days written notice by either party to the other. Notwithstanding anything herein contained, the Board may immediately, upon oral notice promptly confirmed in writing, revoke the authority of the Investment Advisor to furnish investment management services.

16. This Agreement shall not be assigned (as defined in the Investment Advisor's Act of 1940, as amended) without the prior written consent of the parties hereto. This Agreement may only be amended in writing signed by both parties.

17. The Investment Advisor shall comply with all applicable laws, regulations, policies and procedures of the United States of America or any agency thereof, the State of Mississippi or any agency thereof and any local governments or political subdivisions that may affect the performance of services under this Contract. Specifically, but not limited to, the Investment Advisor shall not discriminate against any employee nor shall any party be subject to discrimination in the performance of this agreement because of race, creed, color, sex, national origin, age or handicap.

18. This Agreement is made under, and shall be governed by and construed in accordance with, the Laws of the State of Mississippi. Venue for the resolution of any dispute under the terms of this Agreement shall be Hinds County, Jackson, Mississippi.

19. The Board shall provide the Investment Advisor with a list of authorized persons and their specimen signatures from whom the Investment Advisor may accept signed written day-to-day instructions, confirmations or authority under this Agreement.

The Investment Advisor shall not be liable for acting in good faith upon any instruction, confirmation or authority purporting to have been signed by an authorized person, which signature the Investment Advisor reasonably believes to be genuine, notwithstanding the fact that it shall subsequently be shown that such instruction, confirmation or authority was not in fact signed by an authorized person.

20. By signing this Agreement, the Board hereby acknowledges prior receipt of Part II of SEC Form ADV as filed by the Investment Advisor with the Securities and Exchange Commission.

21. Except as otherwise expressly provided in this Agreement, whenever any notice is required or permitted to be given under any provision of this Agreement, such notice shall be in writing, shall be signed by or on behalf of the party giving the notice and shall be mailed by first class mail or sent by courier or telefax with confirmation of transmission to the other party or parties, as applicable, at the addresses set forth below or to such other address as a party may from time to time specify to the other party by such notice hereunder. Any such notice shall be deemed duly given when delivered at such address.

For the Board:

PERS of Mississippi
429 Mississippi Street
Jackson, MS 39201-1005
Attention: Executive Director
Telephone: (601) 359-2241
Facsimile: (601) 359-2285
Email: brenda_pierce@pers.state.ms.us

For the Company:

Acadian Asset Management, Inc.
One Post Office Square, 20th Floor
Boston, Massachusetts 02109
Attention: Churchill G. Franklin
Telephone: (617) 850-3530
Facsimile: (617) 850-3630
Email: cfranklin@acadian-asset.com

IN WITNESS WHEROF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

ATTEST:______________________________

BY Gary C. Bergstrom TITLE: Chairman

ATTEST: Board of Trustees, Public Employees' Retirement System of Mississippi

BY Denise Owens-Mounger TITLE: Interim Executive Director
Denise Owens-Mounger

# ADDENDUM I

**Performance Expectations**

The Public Employees' Retirement System expects the following minimum performance standards over a rolling three year periods.

(a) Consistent above median performance in the Global Equity Style manager universe provided by the PERS' Investment Consultant.

(b) Performance which consistently exceeds the MSCI World Index benchmark by 300 basis points net of fees.

(c) The risk associated with this portfolio as measured by the variability of quarterly returns (standard deviation), should not exceed that of the MSCI World Index benchmark without a corresponding increase in performance.

# EXHIBIT 2

# AMENDMENT TO INVESTMENT MANAGEMENT AGREEMENT

This Amendment (**Amendment**) is entered into by and between the Trustees of the Public Employees' Retirement System of Mississippi (the "Board") and Acadian Asset Management LLC (the "Investment Advisor"). This Amendment shall be effective on July 1, 2012.

**WHEREAS**, effective July 22, 2005, the Board and the Investment Advisor entered into a certain Investment Management Agreement (the "Agreement") for the management of certain assets (the "Account"); and,

**WHEREAS**, the Board and the Investment Advisor desire to amend the Investment Objectives and Guidelines contained in Addendum III of the Agreement;

**NOW, THEREFORE**, the Board and the Investment Advisor for and in consideration of the mutual covenants herein contained and for other good and valuable consideration the parties hereto agree as follows:

1. Replace Addendum II of the Agreement with the Revised Addendum II.
2. Replace Addendum III of the Agreement with the Revised Addendum III.
3. As amended by this Amendment, the Agreement is in all respects ratified and confirmed, and as so amended by this Amendment, the Agreement shall be read, taken and construed as one and the same instrument.
4. This Amendment may be executed in one of more counterparts, all of which shall be deemed an original and all of which taken together shall deemed to be one and the same Amendment.

IN WITNESS THEREOF, the parties hereto have caused this Amendment to be executed as of the day and year first written above

**Trustees of the Public Employees' Retirement System of Mississippi**

By: [signature]

Title: Executive Director

Date: 7-9-12

**Acadian Asset Management LLC**

By: [signature]

Title: COO

Date: 6/27/12

# REVISED
# ADDENDUM I
*Effective July 1, 2012*

**Performance Expectations**

The Public Employees' Retirement System expects the following minimum performance standards over a rolling three year periods.

(a) Consistent above median performance in the Global Equity Style manager universe provided by the PERS' Investment Consultant.

(b) Performance which consistently exceeds the MSCI All Country World Index benchmark by 300 basis points net of fees.

(c) The risk associated with this portfolio as measured by the variability of quarterly returns (standard deviation), should not exceed that of the MSCI All Country World Index benchmark without a corresponding increase in performance.

Approved:

Pat Robertson
Executive Director

Name: Churchill G. Franklin
Title: COO

# REVISED ADDENDUM III

## Investment Objectives and Guidelines

*Effective July 1, 2012*

### I. Investment Objective

The Fund will seek long-term capital appreciation by investing primarily in common stocks of international issuers. This will include both large and small-cap issuers as well as opportunistic exposure to issuers in the emerging markets. The Fund's performance benchmark is MSCI All Country World Index. The Fund will target annualized residual risk of 4%-6% relative to the benchmark over a market cycle.

### II. Investment Guidelines

1. The Fund will principally invest in common stocks traded on equity markets. Also permitted:

- Rights, warrants, convertible securities, and preferred stocks, if issued by companies whose common stocks would be properly held in the portfolio
- ADRs and GDRs
- Forward currency contracts for the purpose of hedging currency fluctuations during settlement
- Equity index futures (up to 10% of the portfolio value) to help gain exposure to selected equity markets in a cost-efficient manner.
- Exchange traded funds

2. Opportunistic currency hedging is allowed up to 50% of portfolio value.

3. The portfolio will not:

- Purchase securities on margin
- Sell securities short
- Use derivatives other than those specified above
- Leverage the portfolio
- Purchase 144A securities

4. The portfolio will generally hold 5% cash or less. The limit may occasionally be exceeded due to contributions, withdrawals, or other special circumstances.

5. Markets included in the MSCI All Country World index are permissible for investment. In addition, investment in countries not described above is permitted on an opportunistic basis up to 10% of portfolio value at time of purchase.

6. The holdings of any one issuer will generally not exceed 5% of the total portfolio value or twice the MSCI All Country World benchmark weight for that issuer, whichever is larger. This guideline applies at time of purchase. This guideline excludes forward currency positions and securities issued by sovereign governments.

Approved: ______________________
Pat Robertson, Executive Director

______________________
Name: Churchill G. Franklin, COO

# EXHIBIT 3

PERS of MISSISSIPPI

Providing Benefits for Life

## SECOND AMENDMENT TO INVESTMENT MANAGEMENT AGREEMENT

This Second Amendment ("Second Amendment") is entered into by and between the Trustees of the Public Employees' Retirement System of Mississippi (the "Board") and Acadian Asset Management LLC, (the "Investment Advisor"). This Second Amendment shall be effective on October 1, 2017

**WHEREAS**, effective July 26, 2005, the Board and the Investment Advisor entered into a certain Investment Management Agreement (the "Agreement") for the management of certain assets (the "Account"); and,

**WHEREAS**, the Board and the Investment Advisor desire to amend the Agreement to reflect a modification of the investment guidelines contained in Addendum II;

**NOW, THEREFORE**, the Board and the Investment Advisor for and in consideration of the mutual covenants herein contained and for other good and valuable consideration the parties hereto agree as follows:

1. Replace Addendum II of the Agreement with the Revised Addendum II dated October 1, 2017.
2. As amended by this Second Amendment, the Agreement is in all respects ratified and confirmed, and as so amended by this Second Amendment, the Agreement shall be read, taken and construed as one and the same instrument.
3. This Second Amendment may be executed in one of more counterparts, all of which shall be deemed as original and all of which taken together shall deemed to be one and the same Amendment.

IN WITNESS THEREOF, the parties hereto have caused this Second Amendment to be executed as of the day and year first written above

**Trustees of the Public Employees' Retirement System of Mississippi**

By: [signature]

Title: Executive Director

Date: September 28, 2017

**Acadian Asset Management LLC**

By: [signature]

Title: Chief Investment Officer

Date: 10/10/2017



Public Employees' Retirement System of Mississippi
429 Mississippi Street, Jackson, MS 39201-1005 601.359.3589 800.444.PERS www.pers.ms.gov

# REVISED ADDENDUM II

October 1, 2017

Pursuant to the term of Paragraph 8 of the Investment Management Agreement dated as of July 22, 2005, and this Second Amendment dated October 1, 2017, the Board and Investment Advisor agree to be governed by the following fee schedule.

75 bps on first $ 25 million
66 bps on next $ 25 million
50 bps on next $100 million
40 bps on next $250 million
30 bps thereafter

Fees will be payable quarterly in arrears in an amount equal to one-fourth of the annual rate, multiplied by the market value (as determined by the Board's custodian) at the end of the current quarter plus any accrued income. Fees for funds invested or redeemed during the quarter will be calculated on a pro-rata basis based on the number of days the funds were actually invested.