# EXHIBIT 33

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE FACEBOOK, INC. SECURITIES LITIGATION

This Document Relates To:

ALL ACTIONS

CASE NO. 5:18-CV-01725-EJD

**SUPPLEMENTAL DECLARATION OF WILLIAM M. THOMAS**

1. I, William M. Thomas, am the CEO, President and Chairman of Wedgewood Partners, Inc. ("Wedgewood"). I previously executed a declaration in this matter in June 2026 (the "June 2026 Declaration").

2. The purpose of this supplemental declaration is to clarify and provide context for statements in the June 2026 Declaration. I do not withdraw any statement in the June 2026 Declaration. I also am not advocating for or against any party to this litigation on any point or issue. Wedgewood is not a party to this case.

3. Counsel for Defendants contacted Wedgewood in connection with a subpoena for documents, which were provided. Defendants' counsel subsequently proposed and provided a draft declaration. Wedgewood reviewed the draft internally and was not represented by counsel at the time. I signed the June 2026 Declaration believing its statements to be true and correct and that belief remains the same today. I am not a lawyer. When I signed, I did not know how the June 2026 Declaration would be used in this litigation. My understanding was only that, by providing a declaration, no further involvement of Wedgewood would be needed in connection with this matter.

4. I have since become aware that my original declaration was filed in this case in a memorandum in opposition to a class certification motion. After this filing, I was contacted by counsel for Plaintiffs to discuss the June 2026 declaration. Wedgewood and I retained legal counsel who responded to Plaintiffs' counsel. I have had no direct communications with Plaintiffs' counsel since our counsel was retained. I nonetheless was made aware that Plaintiffs sought further comment on the matters stated in the June 2026 declaration, and I agreed to submit this supplement.

5. I joined Wedgewood in 2015. I am responsible for the firm's strategic direction and overall management, and I helped oversee Wedgewood's relationship with the Public Employees' Retirement System of Mississippi ("MSPERS"). Wedgewood's decisions to purchase Facebook stock for its firm-wide investment strategy applicable to all of its clients were made through a collaborative process by Wedgewood's investment team. I made the June 2026 Declaration in my capacity as Wedgewood's CEO, and it does not reflect only my own personal knowledge or decision-making.

6. Wedgewood purchased Facebook stock because it believed the stock was attractively valued relative to Facebook's earnings. When I stated that Wedgewood "still would have made those purchases at the same prices," I meant that, hypothetically, Wedgewood would have been willing to buy at those prices based on the same public information then known, with the addition of the Cambridge Analytica and the "whitelisting" news reports. I did not mean Wedgewood would have expected that the market price would have been the same had additional information been disclosed. If the reported information had been public earlier and had caused a lower or different market price, I cannot speculate on what Wedgewood's investment decision would have been under that scenario.

7. Market price is an important factor in Wedgewood's investment decisions on behalf of all of its clients, including its purchases of Facebook stock for its clients, such as MSPERS. In paragraphs 4 and 6 of the June 2026 Declaration, I used the words "immaterial" and "material" in the everyday sense of an investment manager. I meant only that, in Wedgewood's judgment at the time, the news did not change its long-term view of Facebook as an investment for all of its clients. I did not intend to state a legal conclusion, and I offer no opinion on whether any information was "material" in a legal sense or to any other investor. Further, Wedgewood did not ignore the 2018 news. Wedgewood was aware of the news, discussed it and considered it in its investment decisions. As stated in the June 2026 Declaration, Wedgewood believed the news posed some risk to Facebook's business. Wedgewood also considered its obligations to its clients, including MSPERS, and its clients' respective investment guidelines.

8. With respect to any suggestion that Wedgewood disregarded or would have disregarded fraud or alleged fraud in relation to these investments, that suggestion is inaccurate.

9. The June 2026 Declaration and this supplemental declaration speak only for Wedgewood. I do not speak for MSPERS or any other investor.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20 day of October, 2026, in St. Louis, Missouri.

William M. Thomas